**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

————————————————————————————— )
In re:                                                                )      **Chapter 11**
                                                                          )
**CINEMEX USA REAL ESTATE HOLDINGS, INC.,** )      **Case No. 20-14695-LMI**
**CINEMEX HOLDINGS USA, INC., and CB** )
**THEATER EXPERIENCE LLC,** )      **(Jointly Administered)**
                                                                          )
     **Debtors.** )
————————————————————————————— )

**OBJECTION OF CERTAIN UTILITY COMPANIES TO THE
DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I)
APPROVING THE DEBTORS' PROPOSED ADEQUATE ASSURANCE OF
PAYMENT FOR FUTURE UTILITY SERVICES; (II) PROHIBITING UTILITY
COMPANIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICES;
(III) APPROVING THE DEBTORS' PROPOSED PROCEDURES FOR RESOLVING
ADEQUATE ASSURANCE REQUESTS; AND (IV) GRANTING RELATED RELIEF**

Baltimore Gas and Electric Company ("BGE"), Commonwealth Edison Company
("ComEd"), Consolidated Edison Company of New York, Inc. ("Con Ed"), Florida Power &
Light Company ("FPL"), Georgia Power Company ("Georgia Power") and Orange and Rockland
Utilities, Inc. ("ORU") (collectively, the "Utilities"), hereby object to the *Debtors' Emergency
Motion For Interim and Final Orders (I) Approving the Debtors' Proposed Adequate Assurance
of Payment For Future Utility Services; (II) Prohibiting Utility Companies From Altering,
Refusing or Discontinuing Services; (III) Approving the Debtors' Proposed Procedures For
Resolving Adequate Assurance Requests; and (IV) Granting Related Relief* (the "Utility
Motion")(Docket No. 42), and set forth the following:

**Introduction**

The Utility Motion improperly seeks to shift the Debtors' obligations under Section 366(c)(3) from modifying the amounts of adequate assurance of payment requested by the Utilities under Section 366(c)(2) to setting the form and amounts of adequate assurance of payment acceptable to the Debtors.  Specifically, the Debtors seek to have this Court approve their proposed form of adequate assurance of payment, which is to provide supposed two-week cash deposits to the Debtors' utility providers who request such deposit in writing, provided that a utility requesting a two-week deposit does not already hold a deposit equal to or greater than two weeks of utility charges, or is not currently paid in advance for its services.  The Debtors also propose that any utility that accepts a two-week deposit in writing thereby waives its right to seek additional adequate assurance during the course of the Debtors' Chapter 11 cases.  The foregoing proposal does not make sense and is an insufficient form and amount of adequate assurance, and should be rejected by this Court for the following reasons:

(i) Section 366(c) does not allow the Debtors to set the form and amount of adequate assurance of payment;

(ii) A two-week deposit would be an insufficient amount of adequate assurance because the Utilities bill the Debtors in arrears on a monthly basis;

(iii) Acceptance of the inadequate two-week deposit in writing would result in a utility's waiver of its right to seek a modification of adequate assurance of payment pursuant to Section 366(b), even in the event of a material change in circumstances in this matter; and

(iv) Reducing a supposed two-week deposit by any prepetition deposit amount held by a utility does not make sense because the Debtors do not know if any of the prepetition security will

2

remain after a Utility exercises its right under Section 366(c)(4) of the Bankruptcy Code to recoup prepetition deposits against prepetition debt.

Under the applicable legal standard set forth in Section 366(c), it is the Debtors' burden to present evidence to demonstrate, why, if at all, the amounts of the Utilities' adequate assurance of payment requests should be modified.  *See In re Stagecoach Enterprises, Inc., 1 B*.R. 732, 734 (Bankr. M.D. Fla. 1979) (holding that the debtor, as the petitioning party at a Section 366 hearing, bears the burden of proof).  Courts that have found that the courts retain the same discretion as under Section 366(b), or allow the debtor to pick the form and/or amount of security, simply refuse to follow the plain language of the statute.

The Debtors, as customers of the Utilities, are aware that:  (1) the Utilities bill the Debtors on a monthly basis in arrears and provide the Debtors with generous trade terms; and (2) pursuant to state-law tariffs, are allowed to obtain a two-month cash deposits to cover their billing exposure.  With the foregoing knowledge, the Debtors should be required, at a minimum, to set forth a factual and evidentiary basis as to why this Court should consider modifying the amounts of adequate assurance of payment that the Utilities are entitled to request.  The Utilities are seeking the following two-month cash deposits from the Debtors that the Utilities are authorized to obtain from their customers in their service territories pursuant to applicable state law: (a) BGE - $18,700; (b) ComEd - $41,010; (c) Con Ed - $38,755; (d) FPL - $231,084; (e) Georgia Power - $36,285;  and (f) ORU - $6,090.  Based on all the foregoing, this Court should (i) deny the Utility Motion as to the Utilities because the amounts of the Utilities' post-petition deposit requests are reasonable under the circumstances and should not be modified, and (ii) order the Debtors to immediately provide the Utilities with adequate assurance of payment in the form of

3

two-month cash deposits.

## Facts

### Procedural Facts

1.      On April 25, 2020 (the "Petition Date"), the Debtors commenced their cases under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are now pending with this Court.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2.      The Debtors' chapter 11 bankruptcy cases are being jointly administered.

### The Utility Motion

3.      On May 1, 2020, the Debtors filed the Utility Motion.

4.      On May 8, 2020, the Court entered the *Interim Order: (I) Approving the Debtors' Proposed Adequate Assurance of Payment For Future Utility Services; (II) Prohibiting Utility Companies From Altering, Refusing or Discontinuing Services; (III) Approving the Debtors' Proposed Procedures For Resolving Adequate Assurance Requests; and (IV) Granting Related Relief* (the "Interim Utility Order")(Docket No. 70).  The Interim Utility Order set an objection deadline of May 28, 2020 (two days prior to the final hearing on the Utility Motion), with the final hearing on the Utility Motion to take place on June 1, 2020 at 1:30 p.m.

5.      In the Utility Motion, the Debtors seek to avoid the applicable legal standards under Sections 366(c)(2) and (3) by seeking Court approval for their own form of adequate assurance of payment, which is to provide supposed two-week cash deposits to the Debtors' utility providers who request such deposit in writing, provided that a utility requesting a two-week deposit does not already hold a deposit equal to or greater than two weeks of utility charges,

4

or is not currently paid in advance for its services.  Utility Motion at ¶ 12.   The Debtors also propose that any utility that accepts a two-week deposit in writing thereby waives its right to seek additional adequate assurance during the course of the Debtors' Chapter 11 cases.  Utility Motion at ¶ 12.

6.      The Debtors fail to state the amount of their monthly utility expenses in the Utility Motion and Exhibit "A" to the Utility Motion does not set forth the deposit amounts that the Debtors propose to provide to their utility companies.

7.      The Debtors' adequate assurance proposal is unacceptable to the Utilities and should not be considered relevant by this Court because Sections 366(c)(2) and (3) do not allow the Debtors to establish the form or amount of adequate assurance of payment.  Under Sections 366(c)(2) and (3), this Court and the Debtors are limited to modifying, if at all, the amounts of the security sought by the Utilities under Section 366(c)(2).  Additionally, as Section 366(c)(4) of the Bankruptcy Code expressly provides that utilities can offset prepetition deposits against prepetition debt without notice or court order, it is not clear why the Debtors believe they can reduce the amount of adequate assurance they provide to the utilities based on the existence of prepetition security.

8.      The Utility Motion does not address why a supposed two-week deposit, less any prepetition deposit held by a utility, would constitute adequate assurance of payment when the Debtors know that the Utilities are required by applicable state laws, regulations or tariffs to bill the Debtors monthly.  Moreover, the Utilities presume that the Debtors want the Utilities to continue to bill the Debtors monthly in arrears pursuant to the applicable billing cycles established by applicable state law.

9.      Furthermore, the Utility Motion does not address why this Court should consider modifying, if at all, the amounts of the Utilities' adequate assurance requests pursuant to Section 366(c)(2).  Rather, without providing any specifics, the Utility Motion merely states that the payment of post-petition deposits, "in conjunction with the Debtors' previous payment and ability to pay for future services in the ordinary course of business," constitutes sufficient adequate assurance to the Debtors' utility providers.  Utility Motion at ¶ 13.

**The Debtors' Post-Petition Financing**

10.      On May 5, 2020, the Debtors filed the *Debtors' Emergency Motion (I) For Authorization To Obtain Post-Petition Unsecured Financing Pursuant To 11 U.S.C. §§ 105, 361, 362 and 364; and (II) Scheduling a Final Hearing Under Bankruptcy Rule 4001*(the "Financing Motion")(Docket No. 58).

11.      Through the Financing Motion, the Debtors seek approval to obtain post-petition financing from the DIP Lender in an amount not to exceed $1.92 million.   Financing Motion at ¶ 11.

12.      Through the Financing Motion, the Debtors also seek the approval of a carve-out for the payment of fees of the Debtors' professionals up to the amounts set with in the Budget incurred prior to a Carve-Out Trigger Notice, plus an additional $100,000 following delivery of a Carve-Out Trigger Notice (the "Carve-Out").  Financing Motion at page 8.

13.       Attached as Exhibit "B" to the Financing Motion is a budget through May 29, 2020 (the "Interim Budget").   The Interim Budget has a $50,000 line item for utility expenses for the period from the Petition Date to May 29, 2020.  As the Debtors have not set forth what their monthly utility usage is, either before or after the forced closure of their locations, it is

unclear whether the Debtors have budgeted sufficient sums for the timely payment of their post-petition utility expenses for the first month of these cases and whether they will be budgeting sufficient funds for future utility usage.

14.     On May 18, 2020, the Court entered the *Interim Order Granting Debtors' Emergency Motion (I) For Authorization To Obtain Post-Petition Unsecured Financing Pursuant To 11 U.S.C. §§ 105, 361, 362 and 364; and (II) Scheduling a Final Hearing Under Bankruptcy Rule 4001*(the "Interim Financing Order")(Docket No. 114).

15.     The Interim Financing Order authorized the Debtors to borrow up to the amounts set forth in the Interim Budget.  Interim Financing Order at ¶ 8.

16.     The Interim Financing Order also approved the Carve-Out.  Interim Financing Order at ¶ 11.

**<u>Facts Concerning the Utilities</u>**

17.     Each of the Utilities provided the Debtors with prepetition utility goods and/or services and have continued to provide the Debtors with utility goods and/or services since the Petition Date.

18.     Under the Utilities' billing cycles, the Debtors receive approximately one month of utility goods and/or services before the Utility issues a bill for such charges.  Once a bill is issued, the Debtors have approximately 20 to 30 days to pay the applicable bill.  If the Debtors fail to timely pay the bill, a past due notice is issued and, in most instances, a late fee may be subsequently imposed on the account.  If the Debtors fail to pay the bill after the issuance of the past due notice, the Utilities issue a notice that informs the Debtors that they must cure the arrearage within a certain period of time or its service will be disconnected.  Accordingly, under

the Utilities' billing cycles, the Debtors could receive at least two months of unpaid charges before the utility could cease the supply of goods and/or services for a post-petition payment default.

19.    In order to avoid the need to bring witnesses and have lengthy testimony regarding the Utilities regulated billing cycles, the Utilities request that this Court, pursuant to Rule 201 of the Federal Rules of Evidence, take judicial notice of the Utilities' billing cycles.  Pursuant to the foregoing request and based on the voluminous size of the applicable documents, the Utilities' web site links to the following tariffs and/or state laws, regulations and/or ordinances are as follows:

BGE:
    Electric –
    https://www.bge.com/MyAccount/MyBillUsage/Pages/ElectricServiceRatesTariffs.aspx
    Gas –
    https://www.bge.com/MyAccount/MyBillUsage/Pages/GasServiceRatesTariffs.aspx
ComEd:
    Tariffs:  https://www.comed.com/customer-service/rates-pricing/rates-information/Pages/current-rates.aspx
    Regulations:  http://www.ilga.gov/commission/jcar/admincode/083/08300280sections.html

Con Ed:
    Electric -http://www.coned.com/rates/elec-sched1.asp
    Gas - http://www.coned.com/rates/gas_main.asp

FPL - http://www.fpl.com/customer/rates_and_bill/rules_tariffs.shtml

Georgia Power:  https://www.georgiapower.com/business/prices-rates/business-tariffs.cshtml

ORU - https://www.oru.com/en/ny-rates-tariffs

20.    Subject to a reservation of the Utilities' right to supplement their post-petition deposit requests if additional accounts belonging to the Debtors are subsequently identified, the Utilities' estimated prepetition debt and post-petition deposit requests are as follows:

| Utility | No. of Accounts | Estimated Prepet. Debt | Deposit Request |
|---------|-----------------|------------------------|-----------------|
| BGE | 1 | $13,266.48 | $18,700 (2-month) |
| ComEd | 5 | $40,771.65 | $41,010 (2-month) |
| Con Ed | 2 | $54,104.27 | $38,755 (2-month) |
| FPL | 13 | To be supplemented | $231,084 (2-month) |
| Georgia Power | 2 | $41,023.07 | $36,285 (2-month) |
| ORU | 1 | n/a | $6,090 (2-month) |

21.     BGE holds a prepetition cash deposit in the amount of $26,190 that it will recoup against prepetition debt pursuant to Section 366(c)(4) of the Bankruptcy Code.  Any prepetition deposit amount that remains after recoupment can be applied to BGE's post-petition deposit request.

22.     Con Ed holds prepetition cash deposits totaling $3,805.39 that it will recoup against prepetition debt pursuant to Section 366(c)(4) of the Bankruptcy Code.  None of the prepetition deposit will remain after recoupment.

23.     FPL holds prepetition cash deposits totaling $240,058 that it will recoup against prepetition debt pursuant to Section 366(c)(4) of the Bankruptcy Code.  Any prepetition deposit amount that remains after recoupment can be applied to FPL's post-petition deposit request.

24.     ORU holds a prepetition deposit credit in the amount of $1,115 after recoupment against prepetition debt pursuant to Section 366(c)(4) of the Bankruptcy Code that can be applied to ORU's post-petition deposit request.

### Discussion

### A.     THE UTILITY MOTION SHOULD BE DENIED AS TO THE UTILITIES.

Sections 366(c)(2) and (3) of the Bankruptcy Code provide:

> (2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility;

> (3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

As set forth by the United States Supreme Court, "[i]t is well-established that 'when the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms.'" *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) (*quoting Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.,* 530 U.S. 1, 6, 120 S. Ct., 1942, 147 L. Ed. 2d 1 (2000)). *Rogers v. Laurain (In re Laurain)*, 113 F.3d 595, 597 (6th Cir. 1997) ("Statutes . . . must be read in a 'straightforward' and 'commonsense' manner."). A plain reading of Section 366(c)(2) makes clear that a debtor is required to provide adequate assurance of payment satisfactory to its utilities on or within thirty (30) days of the filing of the petition. *In re* Lucre, 333 B.R. 151, 154 (Bankr. W.D. Mich. 2005). If a debtor believes the **_amount_** of the utility's request needs to be modified, then the debtor can file a motion under Section 366(c)(3) requesting the court to modify the **_amount_** of the utility's request under Section 366(c)(2).

In this case, the Debtors filed the Utility Motion to improperly shift the focus of their obligations under Section 366(c)(3) from modifying the amount of the adequate assurance of payment requested under Section 366(c)(2) to setting the form and amount of the adequate assurance of payment acceptable to the Debtors. Accordingly, this Court should not reward the

Debtors for their failure to comply with the requirements of Section 366(c) and deny the Utility Motion as to the Utilities.

Furthermore, in the Utility Motion, the Debtors fail to address why this Court should modify the amounts of the Utilities' requests for adequate assurance of payment. Under Section 366(c)(3), the Debtors have the burden of proof as to whether the amounts of the Utilities' adequate assurance of payment requests should be modified. *See In re Stagecoach Enterprises, Inc.*, 1 B.R. 732, 734 (Bankr. M.D. Fla. 1979) (holding that the debtor, as the petitioning party at a Section 366 hearing, bears the burden of proof). However, the Debtors do not provide the Court with any evidence or factually supported documentation to explain why the amounts of the Utilities' adequate assurance requests should be modified. Accordingly, the Court should deny the relief requested by Debtors in the Utility Motion and require the Debtors to comply with the requirements of Section 366(c) with respect to the Utilities.

### B.    THE COURT SHOULD ORDER THE DEBTORS TO PROVIDE THE ADEQUATE ASSURANCE OF PAYMENT REQUESTED BY THE UTILITIES PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE.

Section 366(c) was amended to overturn decisions such as *Virginia Electric and Power Company v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997), that held that an administrative expense, without more, could constitute adequate assurance of payment in certain cases. Section 366(c)(1)(A) specifically defines the forms that assurance of payment may take as follows:

> (i) a cash deposit;
> (ii) a letter of credit;
> (iii) a certificate of deposit;
> (iv) a surety bond;

11

      (v) a prepayment of utility consumption; or
      (vi) another form of security that is mutually agreed upon between the utility
      and the debtor or the trustee.

Section 366 of the Bankruptcy Code was enacted to balance a debtor's need for utility services from a provider that holds a monopoly on such services, with the need of the utility to ensure for itself and its rate payers that it receives payment for providing these essential services. *See In re Hanratty*, 907 F.2d 1418, 1424 (3d Cir. 1990). The deposit or other security "should bear a reasonable relationship to expected or anticipated utility consumption by a debtor." *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986). In making such a determination, it is appropriate for the Court to consider "the length of time necessary for the utility to effect termination once one billing cycle is missed." *In re Begley*, 760 F.2d 46, 49 (3d Cir. 1985).

The Utilities bill the Debtors on a monthly basis for the charges already incurred by the Debtors in the prior month. The Utilities then provide the Debtors with approximately 20 to 30 days to pay a bill before a late fee may be charged, and also provide written notice before utility service can be terminated for non-payment pursuant to applicable state laws, tariffs and/or regulations. Based on the foregoing state-mandated billing cycles, the minimum period of time the Debtors could receive service from the Utilities before termination of service for non-payment of post-petition bills is approximately two (2) months. Moreover, even if the Debtors timely pay their post-petition utility bills, the Utilities still have potential exposure of approximately 45 to 60 days based on their billing cycles. Furthermore, the amounts of the Utilities' deposit requests are the amounts that the applicable public service commission, which is a neutral third-party entity, permit the Utilities to request from their customers. The Utilities

are not taking the position that the deposits that they are entitled to obtain under applicable state law are binding on this Court, but, instead are introducing those amounts as evidence of amounts that their regulatory entities or contract permit the Utilities to request from their customers.

In addition, it is not clear if the Debtors have access to sufficient post-petition financing to timely pay their post-petition utility bills. The Debtors do not identify what their monthly utility charges are, either before or during the forced shut down period. Moreover, the Interim Budget attached to the Financing Motion only contains $50,000 for the payment of utility charges for the period from the Petition Date to May 29, 2020, with no amounts for any expenses after that time period.

Furthermore, although the Debtors have made certain that post-petition professionals are favored creditors by ensuring that the post-petition bills/expenses of Debtors' professionals are paid, even in the event of a post-petition default on the use of DIP financing and cash collateral, by seeking a $100,000 professionals carve-out for the payment of their fees/expenses after a default and a guarantee of payment for fees incurred up to a default, the Debtors are not proposing similar treatment to the Utilities. The bottom line is that the Debtors failed to address in the Utility Motion why this Court should modify, if at all, the amounts of the Utilities' adequate assurance of payment requests, which is the Debtors' statutory burden. Moreover, the Debtors do not provide an objective or evidentiary basis for their proposed adequate assurance in the form two-week deposits, less any prepetition deposits held by a Utility.

WHEREFORE, the Utilities respectfully request that this Court enter an order:

1.      Denying the Utility Motion as to the Utilities;

2.      Awarding the Utilities the post-petition adequate assurance of payments pursuant

to Section 366 in the amount and form satisfactory to the Utilities, which is the

form and amount requested herein; and

3.      Providing such other and further relief as the Court deems just and appropriate.

Dated:  May 26, 2020              ADAMS AND REESE LLP

/s/ Edmund S. Whitson III
Edmund S. Whitson III
101 East Kennedy Boulevard, Suite 4000
Tampa, Florida 33602
E-mail:  edmund.whitson@arlaw.com

and

LAW FIRM OF RUSSELL R. JOHNSON III, PLC
Russell R. Johnson III (VSB No. 31468)
John M. Craig (VSB No. 32977)
2258 Wheatlands Drive
Manakin-Sabot, Virginia  23103
Telephone: (804) 749-8861
Facsimile: (804) 749-8862
E-mail: russell@russelljohnsonlawfirm.com
              john@russelljohnsonlawfirm.com

*Counsel for Baltimore Gas and Electric Company,
Commonwealth Edison Company, Consolidated Edison Company
of New York, Inc., Florida Power & Light Company, Georgia
Power Company and Orange and Rockland Utilities, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 26, 2020, I caused a true and correct copy of the foregoing *Objection* to be served upon all counsel of record and the parties listed below, by e-service through the Court's ECMF system or by depositing a true copy thereof in the United States mail, postage prepaid:

Jeffrey P. Bast
Brett M. Amron
BAST AMRON LLP
One Southeast Third Avenue, Suite 1400
Sun Trust International Center
Miami, Florida 33131
Email:  jbast@bastamron.com, bamron@bastamron.com
*Debtors' Counsel*

Eric Winston
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Email:  ericwinston@quinnemanuel.com
*Debtors' Counsel*

Juan P. Morillo
QUINN EMANUEL URQUHART & SULLIVAN LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Email:  juanmorillo@quinnemanuel.com
*Debtors' Counsel*

Patricia B. Tomasco
QUINN EMANUEL URQUHART & SULLIVAN LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Email:  pattytomasco@quinnemanuel.com
*Debtors' Counsel*

Ariel Rodriguez
Office of the US Trustee
51 SW 1 Avenue, #1204
Miami, Florida 33130

Email: ariel.rodriguez@usdoj.gov

/s/ Edmund S. Whitson III
Edmund S. Whitson III