UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

CINEMEX USA REAL ESTATE
HOLDINGS, INC., CINEMEX
HOLDINGS USA, INC., and CB THEATER
EXPERIENCE LLC,[1]

        Debtors.

_____/

Chapter 11

Case No. 20-14695-LMI

(Jointly Administered)

**AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
OF CINEMEX USA REAL ESTATE  HOLDINGS, INC., CINEMEX
HOLDINGS USA, INC. AND CB THEATER EXPERIENCE LLC**

QUINN EMANUEL URQUHART &
SULLIVAN LLP
Patricia B. Tomasco (admitted *pro hac vice*)
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: 713-221-7000
Facsimile: 713-221-7100
Email: pattytomasco@quinnemanuel.com

and

Juan P. Morillo (FBN 135933)
1300 I Street, NW, Suite 900
Washington, D.C.  20005
Telephone: 202-538-8000
Facsimile: 202-538-8100
Email: juanmorillo@quinnemanuel.com

BAST AMRON LLP
Jeffrey P. Bast (FBN 996343)
Brett M. Amron (FBN 148342)
One Southeast Third Avenue, Suite 1400
Sun Trust International Center
Miami, Florida 33131
Telephone: 305-379-7904
Facsimile: 305-379-7905
Email: jbast@bastamron.com

*Co-Counsel to the Debtors and Debtors in
Possession*

Dated: [●], 2020

---

[1]    The Debtors in these cases and the last four digits of each Debtor's federal tax identification number are as follows:  (i) Cinemex USA Real Estate Holdings, Inc. (2194); (ii) Cinemex Holdings USA, Inc. (5502); and (iii) CB Theater Experience LLC (0563).  The address for the Debtors is 175 South West 7th Street, Suite 1108, Miami, Florida 33130.

**TABLE OF CONTENTS**

**Page**

**Article I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW** ................................................................ 1
- A. Defined Terms. .................................................................................... 1
- B. Rules of Interpretation. ..................................................................... 12
- C. Computation of Time. ....................................................................... 13
- D. Governing Law. ................................................................................. 13
- E. Reference to Monetary Figures. ....................................................... 13
- F. Conflicts. ........................................................................................... 14

**Article II. ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND DIP LOAN CLAIMS** .................................................................................... 14
- A. Administrative Claims. ..................................................................... 14
- B. Priority Tax Claims. .......................................................................... 16
- C. DIP Loan Claims. .............................................................................. 16
- D. Statutory Fees. .................................................................................. 16

**Article III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ................. 16
- A. Classification of Claims and Interests. ............................................. 16
- B. Treatment of Claims and Interests. .................................................. 17
- C. Special Provision Governing Unimpaired Claims. ........................... 20
- D. Elimination of Vacant Classes. ........................................................ 20
- E. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. ............................................................................. 20
- F. Voting Classes; Presumed Acceptance by Non-Voting Classes. ...... 21
- G. Presumed Acceptance and Rejection of the Plan. ........................... 21
- H. Intercompany Interests. ................................................................... 21
- I. Controversy Concerning Impairment. .............................................. 21
- J. Subordinated Claims and Interests. .................................................. 21

**Article IV. MEANS FOR IMPLEMENTATION OF THE PLAN** ................................ 21
- A. Restructuring Transactions. ............................................................. 21
- B. Settlement and Compromise. ............................................................ 22
- C. Settlement of Claims After the Effective Date. ............................... 22
- D. Sources of Consideration for Plan Distributions. ........................... 22
- E. Cancellation of Existing Securities and Agreements. ...................... 23
- F. Release of Liens. ............................................................................... 23
- G. Corporate Action. ............................................................................. 23
- H. Effectuating Documents; Further Transactions. ............................. 24
- I. Section 1146 Exemption. .................................................................. 24
- J. Corporate Existence. ......................................................................... 25
- K. Vesting of Assets. ............................................................................. 25
- L. New Organizational Documents. ..................................................... 25
- M. Directors and Officers of the Reorganized Debtors. ....................... 25
- N. Management Incentive Plan. ............................................................ 26
- O. Employee Obligations. ...................................................................... 26
- P. Preservation of Causes of Action. .................................................... 26
- Q. Payment of Certain Fees. .................................................................. 27

R.       Document Retention ...................................................................................... 27

**Article V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES............ 27**
A.       Assumption and Rejection of Executory Contracts and Unexpired Leases...................... 27
B.       Claims Based on Rejection of Executory Contracts or Unexpired Leases. .................... 28
C.       Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. .................. 28
D.       Preexisting Obligations to the Debtors under Executory Contracts and Unexpired
         Leases. ........................................................................................................ 29
E.       Indemnification Obligations. .......................................................................... 29
F.       Insurance Policies. ....................................................................................... 30
G.       Modifications, Amendments, Supplements, Restatements, or Other Agreements. .......... 30
H.       Reservation of Rights. ................................................................................... 30
I.       Nonoccurrence of Effective Date...................................................................... 31
J.       Contracts and Leases Entered Into After the Petition Date. ................................... 31

**Article VI. PROVISIONS GOVERNING DISTRIBUTIONS.................................................. 31**
A.       Timing and Calculation of Amounts to Be Distributed. ....................................... 31
B.       Delivery of Distributions and Undeliverable or Unclaimed Distributions. .................. 32
C.       Special Rules for Distributions to Holders of Disputed Claims and Interests. ............. 32
D.       Manner of Payment....................................................................................... 33
E.       SEC Exemption. ........................................................................................... 33
F.       Compliance with Tax Requirements. ................................................................. 34
G.       No Postpetition or Default Interest on Claims. ................................................... 34
H.       Setoffs and Recoupment. ............................................................................... 34
I.       No Double Payment of Claims. ........................................................................ 34
J.       Claims Paid or Payable by Third Parties. .......................................................... 35
K.       Allocation of Distributions Between Principal and Interest. ................................... 35

**Article VII. PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND**
**DISPUTED CLAIMS ....................................................................................... 36**
A.       Allowance of Claims. .................................................................................... 36
B.       Claims Administration Responsibilities. ............................................................ 36
C.       Adjustment to Claims Without Objection........................................................... 36
D.       Time to File Objections to Claims or Interests. .................................................. 36
E.       Estimation of Claims. ................................................................................... 36
F.       Disputed and Contingent Claims Reserve. ......................................................... 37
G.       Disallowance of Claims. ................................................................................ 36
H.       Amendments to Proofs of Claim. ..................................................................... 37
I.       Reimbursement or Contribution. ..................................................................... 38
J.       No Distributions Pending Allowance. ............................................................... 38
K.       Distributions After Allowance. ....................................................................... 38

**Article VIII. RELEASE, INJUNCTION, EXCULPATION AND RELATED PROVISIONS ......... 38**
A.       Discharge of Claims and Termination of Interests. .............................................. 38
B.       **Release of Liens.** ...................................................................................... 39
C.       **Releases by the Debtors.** ............................................................................ 39
D.       **Releases by Holders of Claims and Interests.**................................................... 40
E.       **Exculpation.**............................................................................................ 40
F.       **Injunction.** ............................................................................................. 41
G.       **Bar Order and Channeling Injunction.** ......................................................... 41
H.       Protections Against Discriminatory Treatment.................................................... 43

I.      Recoupment. ................................................................................................ 43
J.      Binding Effect. ........................................................................................... 43

**Article IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION
OF THE PLAN** ................................................................................................... **43**
A.      Conditions Precedent to Confirmation. ...................................................... 43
B.      Conditions Precedent to the Effective Date. .............................................. 44
C.      Waiver of Conditions. ................................................................................ 45
D.      Substantial Consummation. ........................................................................ 45
E.      Effect of Failure of Conditions. ................................................................ 45

**Article X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** .................... **45**
A.      Modification and Amendments. ................................................................. 45
B.      Effect of Confirmation on Modifications. .................................................. 46
C.      Revocation or Withdrawal of Plan. ............................................................ 46

**Article XI. RETENTION OF JURISDICTION** .............................................................. **46**

**Article XII. MISCELLANEOUS PROVISIONS** ............................................................. **48**
A.      Immediate Binding Effect. ......................................................................... 48
B.      Additional Documents. ............................................................................... 48
C.      Dissolution of the Committee. ................................................................... 48
D.      Payment of Statutory Fees. ........................................................................ 49
E.      Reservation of Rights. ................................................................................ 49
F.      Successors and Assigns. ............................................................................. 49
G.      Notices. ...................................................................................................... 49
H.      Term of Injunctions or Stays. .................................................................... 50
I.      Entire Agreement. ...................................................................................... 50
J.      Exhibits. ..................................................................................................... 51
K.      Nonseverability of Plan Provisions. .......................................................... 51
L.      Votes Solicited in Good Faith. ................................................................... 51
M.      Waiver or Estoppel. .................................................................................... 51
N.      Closing of Chapter 11 Cases. ..................................................................... 51
O.      Creditor Default. ........................................................................................ 52

**INTRODUCTION**

Cinemex USA Real Estate Holdings, Inc., Cinemex Holdings USA, Inc., and CB Theater Experience LLC, as debtors and debtors in possession (collectively, the "Debtors") propose this amended joint chapter 11 plan of reorganization (the "Plan") for the resolution of the outstanding Claims against, and Interests in, the Debtors  Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in Article I.A of the Plan.  Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, business, assets, results of operations, historical financial information, events during the Chapter 11 Cases, and projections of future operations, as well as a summary and description of the Plan and certain related matters.  The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.  The Plan constitutes a separate plan for each of the Debtors, and the Debtors reserve the right to seek confirmation of the Plan for each separate Debtor at one or more Confirmation Hearings as may be applicable.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

*A.    Defined Terms.*

As used in the Plan, capitalized terms have the meanings set forth in the Introduction above or in the definitions below.

1.    "341 Notice" means the notice of chapter 11 bankruptcy case filed in the Chapter 11 Cases at ECF No. 15, which, inter alia, specified the Bar Date.

2.    "503(b)(9) Claim" means a Claim or any portion thereof entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code.

3.    "Additional Guarantor Payment" means a Cash payment from Grupo Cinemex to any Holder of an Allowed Landlord Claim With Guaranty equal to [[50%]] of (i) any Allowed Lease Rejection Damages Claim and (ii) any Allowed Prepetition Arrearages Claim.

4.    "Administrative Claim" means a Claim for costs and expenses of administration of the Estates or the Chapter 11 Cases under sections 503(b) (including 503(b)(9) Claims), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date through the Effective Date of preserving the Estates and operating the business of the Debtors; (b) Allowed Professional Fee Claims; (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911–1930; and (d) all Intercompany Claims authorized pursuant to the Cash Management Order.

5.    "Administrative Claims Bar Date" means the deadline for Filing requests for payment of Administrative Claims, which: (a) with respect to General Administrative Claims other than those that were accrued in the ordinary course of business, shall be 30 days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be 60 days after the Effective Date.

6.    "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code.

7.      "Allowed" means, with respect to any Claim or Interest, except as otherwise provided herein: (a) a Claim or Interest in a liquidated amount as to which no objection has been Filed prior to the applicable Claims Objection Deadline and that is evidenced by a Proof of Claim or Interest, as applicable, timely Filed by the applicable Bar Date or that is not required to be evidenced by a Filed Proof of Claim or Interest, as applicable, under the Plan, the Bankruptcy Code, or a Final Order; (b) a Claim or Interest that is scheduled by the Debtors as neither Disputed, contingent, nor unliquidated, and for which no Proof of Claim or Interest, as applicable, has been timely Filed in an unliquidated or a different amount;  (c) a Claim or Interest that is upheld or otherwise Allowed (i) pursuant to the Plan; (ii) in any stipulation that is approved by the Bankruptcy Court; (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith; or (iv) by Final Order (including any such Claim to which the Debtors had objected or which the Bankruptcy Court had Disallowed prior to such Final Order); provided that with respect to a Claim or Interest described in clauses (a) through (c) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to the allowance thereof has been or, in the Debtors', Reorganized Debtors' reasonable good faith judgment, may be interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest, as applicable, shall have been Allowed by a Final Order; provided, further, that no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim or Interest is or has been timely Filed, is not considered Allowed and shall be deemed expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.  For the avoidance of doubt a Proof of Claim or Interest Filed after the Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim.  "Allow," "Allowing," and "Allowance" shall have correlative meanings.

8.      "Assumed Executory Contract and Unexpired Lease List" means the list, compiled by the Debtors or the Reorganized Debtors, as applicable, of Executory Contracts and Unexpired Leases (with proposed cure amounts) that will be assumed by the Reorganized Debtors, which list shall be included in the Plan Supplement.

9.      "Assumed Executory Contracts and Unexpired Leases" means those Executory Contracts and Unexpired Leases to be assumed by the applicable Reorganized Debtors, including as set forth on the Assumed Executory Contract and Unexpired Lease List.

10.     "Auction" means the competitive bidding process in relation to the sale of equity ownership of Cinemex Holdings, conducted pursuant to the Bid Procedures Order.

11.     "Ballot" means the ballot applicable to the relevant Holder of a Claim, substantially in the form attached to the Disclosure Statement Order.

12.     "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

13.     "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Florida or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, the United States District Court for the Southern District of Florida.

14.     "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

15.     "Bar Date" means the applicable date established by which Proofs of Claims and Interests must be Filed in these Chapter 11 Cases pursuant to Local Bankruptcy Rule 3003-1 and the 341 Notice, which date is July 6, 2020, except with respect to Proofs of Claims filed by governmental units and certain other exceptions set forth in the 341 Notice.

16.     "Bar Order and Channeling Injunction" shall have the meaning set forth in Article VIII of the Plan, and shall be implemented by the Confirmation Order.

17.     "Bid Procedures Order" means the order of the Bankruptcy Court, dated August 27, 2020 (ECF No. 512), setting for the procedures for competitive bidding for the sale of the equity interests in Cinemex Holdings, as reorganized.

18.     "Business Day" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

19.     "Cash" means the legal tender of the U.S. and equivalents thereof, including bank deposits, checks, and other similar items.

20.     "Cash Management Order" means the interim order dated May 8, 2020, authorizing the Debtors to, inter alia, continue to use their existing cash management system and maintain existing bank accounts (ECF No. 73), as may be further amended.

21.     "Causes of Action" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise.  Causes of Action also include:  (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 551, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

22.     "Chapter 11 Cases" means, collectively:  (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court; and (b) when used with reference to all the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

23.     "Cinemex" means Cinemex Holdings and its subsidiaries, including Cinemex USA Real Estate Holdings, Inc. and CB Theater Experience LLC.

24.     "Cinemex Holdings" means Cinemex Holdings USA, Inc.

25.     "Claim" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

3

26.     "Claims Objection Deadline" means the later of:  (a) the date that is 180 days after the Effective Date; and (b) such other date as may be fixed by the Bankruptcy Court, after notice and hearing, upon a motion Filed before the expiration of such deadline.

27.     "Claims Register" means the official register of Claims maintained by the Bankruptcy Court.

28.     "Class" means a category of Claims or Interests as set forth in Article III of the Plan.

29.     "CM/ECF" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

30.     "Committee" means the statutory committee of unsecured creditors of the Debtors, appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on May 22, 2020, the membership of which may be reconstituted from time to time.

31.     "Confirmation" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

32.     "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

33.     "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

34.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the Committee.

35.     "Consummation" means the occurrence of the Effective Date.

36.     "Convenience Claim" means any Allowed GUC Claim in an Allowed amount that is greater than $0 but less than or equal to [$5,000]; provided that a Holder of an Allowed GUC Claim in excess of [$5,000] may irrevocably elect on its Ballot to have such Claim irrevocably reduced to [$5,000] and treated as a Convenience Claim for the purposes of the Plan, in full and final satisfaction of such Claim.

37.     "Convenience Claims Distribution" means Cash in an amount equal to [[$100,000]], to be distributed to Holders of Allowed Convenience Claims; provided that no Holder of an Allowed Convenience Claim shall receive a distribution in excess of 25 percent of such Allowed Convenience Claim; provided, further, that any excess Convenience Claims Distribution shall be returned to the Reorganized Debtors.

38.     "Cure Claim" means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtors' defaults on an Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code, other than with respect to a default that is not required to be cured under section 365(b)(2) of the Bankruptcy Code.  As set forth in Article V(C), to the extent the Plan implements a Sale Transaction, the Purchaser shall pay the Cure Costs associated with each Assumed Executory Contract or Unexpired Lease.

39.     "Debtors" means, collectively: (a) Cinemex USA Real Estate Holdings, Inc.; (b) Cinemex Holdings; and (iii) CB Theater Experience LLC.

40.     "DIP Lender" means Grupo Cinemex, in its capacity as lender under the DIP Loan.

41.     "DIP Loan" means the postpetition financing provided by the DIP Lender on the terms and conditions set forth in the DIP Order.

42.     "DIP Loan Claims" means any Claims arising in connection with the DIP Loan.

43.     "DIP Order" means the Order Granting Debtors' Second Emergency Motion for Authorization to Obtain Post-Petition Unsecured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364 (ECF No. 363), as may be amended.

44.     "Disallowed" means, with respect to any Claim, a Claim or any portion thereof that (a) has been disallowed by a Final Order, including a Final Order, (b) is scheduled as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or the Plan, (c) is not scheduled and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or the Plan, (d) has been waived or withdrawn by agreement of the applicable Debtor or Reorganized Debtor, as applicable, and the Holder thereof, or (e) has been waived or withdrawn by the Holder thereof.

45.     "Disclosure Statement" means the Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Cinemex USA Real Estate Holdings, Inc., Cinemex Holdings USA, Inc. and CB Theater Experience LLC, dated as of [●] (ECF No. [●]), as may be amended, including all exhibits and schedules thereto, as approved pursuant to the Disclosure Statement Order.

46.     "Disclosure Statement Order" means the [[Order (I) Approving the Disclosure Statement, (II) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (III) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Amended Plan and for Filing Objections to the Amended Plan, and (IV) Approving the Manner and Forms of Notice and Other Related Documents]] (ECF No. [●]).

47.     "Disputed" means with regard to any Claim or Interest, a Claim or Interest that is not yet Disallowed or Allowed.

48.     "Distribution Date" means, with respect to any Claim or Interest that is Allowed as of the Effective Date, the date on which distributions are made pursuant to the Plan, which shall be on or as soon as reasonably practicable following the Effective Date.

49.     "Distribution Record Date" means the record date for purposes of making distributions under the Plan on account of Allowed Claims and Allowed Interests, which date shall be the date that is five (5) Business Days after the Confirmation Date or such other date as designated in a Final Order of the Bankruptcy Court.

50.     "DTC" means the Depository Trust Company.

51.     "Effective Date" means, with respect to the Plan and any such applicable Debtor(s), the date that is the first Business Day upon which:  (a) all conditions precedent specified in Article IX.A and Article IX.B have been satisfied or waived (in accordance with Article IX.C); and (b) the Plan is declared effective with respect to such applicable Debtor(s).

52.     "Enjoined Claims" has the meaning set forth in Article VIII.G of the Plan.

53.     "Enjoined Parties" means all Holders of Claims and Interests holding Enjoined Claims; provided that those Holders of Claims and Interests who exercised their right to opt out of the Third Party Release in accordance with the Plan shall not be Enjoined Parties.

54.     "Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

55.     "Estate" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

56.     "Exchange Act" means the Securities Exchange Act of 1934, as amended.

57.     "Exculpated Parties" means, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Lender; (d) the Committee; (e) the individual members of the Committee; and (f) with respect to each of the foregoing (a) through (i), such Entity and its current and former Affiliates, and such Entity's and its current and former Affiliates' current and former members, equity holders (regardless of whether such interests are held directly or indirectly), subsidiaries, officers, directors, managers, predecessors, successors, assigns, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, restructuring advisors, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

58.     "Executory Contract" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

59.     "Exit Facility" means the credit facility, in the amount of $___ million, with approximately $___ million drawn on the Effective Date, which shall be on such terms as set forth in the applicable Exit Facility Documents.

60.     "Exit Facility Documents" means, in connection with the Exit Facility, the applicable credit agreements, collateral documents, Uniform Commercial Code statements, and other loan documents, to be dated as of the Effective Date, governing the Exit Facility, which documents shall be included in the Plan Supplement.

61.     "Federal Judgment Rate" means the federal judgment rate in effect as of the Petition Date, compounded annually.

62.     "File," "Filed," or "Filing" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

63.     "Final Order" means (a) an order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction, or (b) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Case (or in any related adversary proceeding or contested matter), in each case

that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; provided that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order.

64.    "General Administrative Claim" means any Administrative Claim, other than a Professional Fee Claim.

65.    "Governance Term Sheet" means the term sheet included in the Plan Supplement setting forth the terms of certain agreements related to the corporate governance of the Reorganized Debtors.

66.    "Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

67.    "Grupo Cinemex" means Grupo Cinemex, S.A. de C.V.

68.    "GUC Claim" means any Unsecured Claim against any Debtor.

69.    "GUC Claims Allocation" means Cash in the amount of $_____, to be distributed to Holders of GUC Claims pursuant to the Plan.

70.    "Holder" means an Entity holding a Claim or an Interest, as applicable.  "Hold" and "Held" shall have the correlative meanings.

71.    "Impaired" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

72.    "Indemnification Obligations" means each of the Debtors' indemnification obligations in place as of the Effective Date, whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, management or indemnification agreements, or employment or other contracts, for their current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals, advisors, and agents of the Debtors, as applicable.

73.    "Insurance Policies" means the policies of insurance listed in the Plan Supplement.

74.    "Insurers" means the insurance companies providing insurance coverage under the Insurance Policies.

75.    "Intercompany Claim" means any Claim held by any Debtor or non-Debtor affiliate or subsidiary against any other Debtor.

76.    "Intercompany Interest" means any Interest held by a Debtor in another Debtor or a subsidiary of a Debtor.

77.     "Interest" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Entity.

78.     "Interim Compensation Order" means the Order Establishing Procedures to Permit Monthly Payment of Interim Fee Applications of Chapter 11 Professionals, dated June 28, 2020 (ECF No. 432).

79.     "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended.

80.     "IRS" means the Internal Revenue Service.

81.     "Judicial Code" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

82.     "Landlord Claim With Guaranty" means a Claim of a lessor of nonresidential real property under an lease with one or more of the Debtors under which a non-Debtor has guaranteed payment of sums owed under such lease.

83.     "Lease Rejection Damages Claim" means a Claim arising from the rejection of an unexpired lease of non-residential real property as calculated using the limitation in Bankruptcy Code section 502(b)(6)..

84.     "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

85.     "Local Bankruptcy Rules" means the local rules of bankruptcy procedure promulgated in this district in accordance with Bankruptcy Rule 9029 that are applicable to all cases and proceedings arising in, under, or related to cases pending under the Bankruptcy Code in the Bankruptcy Court.

86.     "Management Incentive Plan" means a post-Effective Date management incentive plan that may be adopted by the board of directors of the Reorganized Debtors.

87.     "New Common Stock" means the new common stock or limited liability company units in Reorganized Cinemex Holdings whether issued or unissued on the Effective Date to be distributed under and in accordance with the Plan.

88.     "New Organizational Documents" means such certificates or articles of incorporation, by-laws, limited liability company operating agreements, stockholders' agreements, or other applicable formation and governance documents of each of the Reorganized Debtors, as applicable, the form of which shall be included in the Plan Supplement.

89.     "Noticing Agent" means Omni Agent Solutions, the noticing, balloting and administrative agent employed by the Debtors by Order entered June 16, 2020 (ECF No. 297).

90.     "Other Priority Claim" means any Claim against a Debtor, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

91.    "Petition Date" means April 25, 2020, with respect to Cinemex Holdings and Cinemex Holdings USA, Inc., and April 26, 2020, with respect to CB Theater Experience LLC, which are the respective dates on which the Debtors commenced the Chapter 11 Cases.

92.    "Plan" has the meaning set forth in the Introduction.

93.    "Plan Supplement" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed by the Debtors, in form and substance reasonably acceptable to the Committee, in accordance with the Disclosure Statement Order or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents Filed with the Bankruptcy Court before the Effective Date as amendments to the Plan Supplement.  The Plan Supplement shall be comprised of, among other documents, the following:  (a) the New Organizational Documents; (b) the Assumed Executory Contract and Unexpired Lease List; (c) the Rejected Executory Contract and Unexpired Lease List; (d) the Schedule of Retained Causes of Action; (e) the identity of the members of the Reorganized Cinemex Board and management for the Reorganized Debtors; (f) the Exit Facility Documents; and (g) the Governance Term Sheet.  Any reference to the Plan Supplement in the Plan shall include each of the documents identified above as (a) through (f).  Notwithstanding the foregoing, the Debtors may amend, with the consent of the Committee, the documents contained in, and exhibits to, the Plan Supplement through the Effective Date or as otherwise provided herein.

94.    "Prepetition Arrearages Claim" means a claim for the amount owed as of the Petition Date under a lease of nonresidential real property.

95.    "Priority Claims" means, collectively, the (a) Administrative Claims, (b) Priority Tax Claims, and (c) Other Priority Claims.

96.    "Priority Tax Claim" means the Claims of Governmental Units of the type specified in section 507(a)(8) of the Bankruptcy Code.

97.    "Pro Rata" means the proportion that the amount of an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of the Allowed Claims or Allowed Interests, in that Class, or the proportion of the Allowed Claims or Allowed Interests in a particular Class and other Classes, respectively, entitled to share in the same recovery as such Claim or Interest under the Plan.

98.    "Professional" means an Entity, excluding those Entities entitled to compensation pursuant to the Ordinary Course Professional Order:  (a) retained pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

99.    "Professional Fee Claims" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

100.    "Professional Fee Escrow Account" means an interest-bearing account in an amount equal to the Professional Fee Reserve Amount and funded by the Debtors on the Effective Date, pursuant to Article II.A.2(b) of the Plan.

101.    "Professional Fee Reserve Amount" means the total amount of Professional Fee Claims estimated in accordance with Article II.A.2(c) of the Plan.

102.    "Proof of Claim" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

103.    "Proof of Interest" means a proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

104.    "Purchase Price" means the amount, in Cash, as set forth in, and subject to the adjustments set forth in, the Sale Order.

105.    "Purchaser" means the acquirer of the New Common Stock of Cinemex Holdings pursuant to the Transaction.

106.    "Reinstate," "Reinstated," or "Reinstatement" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired for purposes of section 1124 of the Bankruptcy Code.

107.    "Rejected Executory Contract and Unexpired Lease List" means the list, compiled by the Debtors or the Reorganized Debtors, as applicable, of Executory Contracts and Unexpired Leases that will be rejected by the Debtors pursuant to the Plan, which list shall be included in the Plan Supplement.

108.    "Released Parties" means, collectively, and in each case only in its capacity as such: (a) each of the Settling Lenders; (b) the DIP Agent; (c) the DIP Lenders; (d) the Committee; (e) the individual members of the Committee (both in their capacity as such and as individual creditors); (f) the Supporting Creditors; (g) each of the Debtors' current and former directors or officers; and (h) with respect to each of the foregoing (a) through (g), each of such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; provided that any Holder of a Claim or Interest that votes against or objects to the Plan or opts out of the Third Party Release, shall not be a Released Party.

109.    "Releasing Parties" means, collectively, and in each case only in its capacity as such: (a) each of the Debtors; (b) the Reorganized Debtors; (c) the DIP Lender; (d) the DIP Lenders; (e) the Committee; (f) the individual members of the Committee; (g) the Supporting Creditors; (h) each of the Debtors' current and former directors or officers; (i) all Holders of Claims or Interests who (i) vote in favor of the Plan or (ii) abstain from voting, are not entitled to vote, or vote to reject the Plan and do not opt out of the Third Party Release on a timely submitted Ballot or opt out form; and (j) with respect to each of the foregoing (a) through (i), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers,

directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

110. "Reorganized" means, as to any Debtor or Debtors, such Debtor(s) as reorganized pursuant to and under the Plan or any successor thereto, by merger, consolidation, taxable disposition, or otherwise, on or after the Effective Date.

111. "Reorganized Debtors" means, collectively, and each in its capacity as such, the Debtors, as reorganized pursuant to and under the Plan or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date, and from and after the Effective Date, shall include (without limitation) Reorganized Cinemex.

112. "Reorganized Cinemex" means Cinemex, as reorganized pursuant to and under the Plan or any successor thereto, as set forth in the Plan and the New Organizational Documents.

113. "Reorganized Cinemex Board" means the board of directors of Reorganized Cinemex on and after the Effective Date.

114. "Restructuring Transactions" means those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, sales, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Debtors reasonably determine to be necessary or desirable to implement the Plan with respect to the Debtors, including, without limitation, the Exit Facility, and the transactions contemplated by the New Organizational Documents.

115. "Retained Causes of Action" means any Causes of Action that are set forth on the Schedule of Retained Causes of Action to be retained by the Debtors or the Reorganized Debtors, as applicable, and prosecuted on behalf of the Debtors or the Reorganized Debtors, as applicable.

116. "Sale Order" means the order of the Bankruptcy Court dated ____, 2020 (ECF No. ___), approving the sale of equity ownership of Cinemex Holdings.

117. "Sale Proceeds Account" means a bank account established by the Debtors on or before the Effective Date into which the Purchaser shall deposit the Purchase Price.

118. "Sale Transaction" means the sale of equity ownership of Cinemex Holdings, conducted via the Auction and approved by the Sale Order, to be implemented under the Plan.

119. "Schedule of Retained Causes of Action" means the schedule of certain Causes of Action of the Debtors that are not released or waived pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors, which shall be included in the Plan Supplement, provided that such schedule shall not include any Causes of Action against any Released Party, and any such inclusion will be deemed void ab initio.

120. "Schedules" means the schedules of assets and liabilities, schedules of Executory Contracts or Unexpired Leases, and statement of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules.

121. "SEC" means the Securities and Exchange Commission.

122.    "Secured Claim" means a Claim that is: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan or separate order of the Bankruptcy Court as a secured claim.

123.    "Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77–77a, as amended, together with the rules and regulations promulgated thereunder.

124.    "Security" or "Securities" has the meaning set forth in section 2(a)(1) of the Securities Act.

125.    "Syndicated Bank Loan" means the bank loan on the terms set forth in the Syndicated Bank Loan Credit Agreement.

126.    "Syndicated Bank Loan Claim" means claim held by a Syndicated Bank Loan Lender arising from the Syndicated Bank Loan Credit Agreement.

127.    "Syndicated Bank Loan Claims Allocation" means Cash in the amount of $_____, to be distributed to holders of Syndicated Bank Loan Claims pursuant to the Plan.

128.    "Syndicated Bank Loan Credit Agreement" means the credit agreement dated as of March 20, 2018, by and among Grupo Cinemex, Operadora de Cinemas, S.A. de C.V. and Cinemex Holdings, as borrowers, certain guarantors, certain lenders, and BBVA Bancomer S.A., Institución de Banca Múltiple, Grupo Financiero BBV Bancomer, as Administrative Agent, as such may be amended from time to time.

129.    "Syndicated Bank Loan Lender" means a lender under the Syndicated Bank Loan Credit Agreement.

130.    "Third Party Release" means the release provided by the Releasing Parties in favor of the Released Parties as set forth in Article VIII.D of the Plan.

131.    "U.S." means the United States of America.

132.    "U.S. Trustee" means the Office of the U.S. Trustee Region 21 for the Southern District of Florida.

133.    "Unexpired Lease" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

134.    "Unimpaired" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

135.    "Unsecured", when referring to a Claim, means any Claim that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, or Secured Claim.

*B.*        *Rules of Interpretation.*

For purposes of the Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neutral gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, or similar formation document or agreement, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (14) any immaterial effectuating provisions may be interpreted by the Debtors or Reorganized Debtors, as applicable, in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (15) except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors and the Reorganized Debtors, shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

*C.*        *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

*D.*        *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate governance matters relating to

13

the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or Reorganized Debtor.

E.       *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States, unless otherwise expressly provided.

F.       *Conflicts.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND DIP LOAN CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and DIP Loan Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests.

A.       *Administrative Claims.*

1.       General Administrative Claims.

Except as specified in this Article II, unless the Holder of an Allowed General Administrative Claim and the Debtors or the Reorganized Debtors, as applicable, agree to less favorable treatment, each Holder of an Allowed General Administrative Claim will receive, in full satisfaction of its General Administrative Claim, Cash equal to the amount of such Allowed General Administrative Claim either: (a) on the Effective Date; (b) if the General Administrative Claim is not Allowed as of the Effective Date, sixty (60) days after the date on which an order allowing such General Administrative Claim becomes a Final Order, or as soon thereafter as reasonably practicable; or (c) if the Allowed General Administrative Claim is based on a liability incurred by the Debtors in the ordinary course of their business after the Petition Date, pursuant to the terms and conditions of the particular transaction or agreement giving rise to such Allowed General Administrative Claim, without any further action by the Holders of such Allowed General Administrative Claim, and without any further notice to or action, order, or approval of the Bankruptcy Court.

Except for Claims of Professionals, requests for payment of General Administrative Claims that were not accrued in the ordinary course of business must be Filed and served on the Debtors or the Reorganized Debtors, as applicable, no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the Effective Date.  Holders of General Administrative Claims that are required to File and serve a request for payment of such General Administrative Claims by the Administrative Claims Bar Date and do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such General Administrative Claims against the Debtors or Reorganized Debtors, as applicable, or their respective property, and such General Administrative Claims shall be deemed forever discharged and released as of the Effective Date.  Any requests for payment of General Administrative Claims that are not properly Filed and served by the Administrative Claims Bar Date shall not appear on the Claims Register and shall be Disallowed automatically without the need for further action by the Debtors or the Reorganized Debtors, as applicable, or further order of the Bankruptcy Court.  To the extent this Article

II.A.1 conflicts with Article XII.C of the Plan with respect to fees and expenses payable under section 1930(a) of the Judicial Code, including fees and expenses payable to the U.S. Trustee, Article XII.C of the Plan shall govern.  Notwithstanding the foregoing, no request for payment of a General Administrative Claim need be Filed with respect to a General Administrative Claim previously Allowed by Final Order.

The Debtors or the Reorganized Debtors, in their sole and absolute discretion, may settle General Administrative Claims without further Bankruptcy Court approval.  The Reorganized Debtors may also choose to object to any Administrative Claim no later than sixty (60) days from the Administrative Claims Bar Date, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court.  Unless the Debtors or Reorganized Debtors (or other party with standing), as applicable, object to a timely filed and properly served Administrative Claim, such Administrative Claim will be deemed Allowed in the amount requested.  In the event that the Debtors or Reorganized Debtors, as applicable, object to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such Administrative Claim should be Allowed and, if so, in what amount.

2.    Professional Compensation.

(a)    Final Fee Applications.

All final requests for payment of Professional Fee Claims, including the Professional Fee Claims incurred during the period from the Petition Date through the Confirmation Date, must be Filed and served on the Reorganized Debtors no later than sixty (60) days after the Effective Date.  All such final requests will be subject to approval by the Bankruptcy Court after notice to other parties on the regular service list and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Cases, including the Interim Compensation Order, and once approved by the Bankruptcy Court, promptly paid from the Professional Fee Escrow Account up to the full Allowed amount.

(b)    Professional Fee Escrow Account.

On the Effective Date, the Debtors or Reorganized Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors, as applicable. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by a Final Order. When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court. If the Professional Fee Escrow Account is insufficient to fund the full Allowed amounts of Professional Fee Claims, remaining unpaid Allowed Professional Fee Claims will be paid by the Debtors or the Reorganized Debtors, as applicable.

(c)    Professional Fee Reserve Amount.

Professionals shall estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Confirmation Date and shall deliver such estimate to the Debtors no later than five business days before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. The aggregate amount for all Professionals estimated pursuant to this section shall comprise the Professional Fee Reserve Amount.

(d)    Post-Confirmation Date Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtors. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

B.    *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

C.    *DIP Loan Claims.*

Except to the extent that a Holder of an Allowed DIP Loan Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each

Allowed DIP Loan Claim, each Holder of such Allowed DIP Loan Claim shall be paid in full in Cash from the proceeds of the Exit Facility.  Upon the payment or satisfaction of the Allowed DIP Loan Claims in accordance with this Article II.C, all Liens, security interests and superpriority claims granted in connection with the Allowed DIP Loan Claims shall be automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

D.      *Statutory Fees.*

All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date shall be paid by the Debtors.  On and after the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each Reorganized Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the case of that particular Debtor being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

A.      *Classification of Claims and Interests.*

Claims and Interests, except for Administrative Claims, Priority Tax Claims, Professional Fee Claims, and DIP Loan Claims, are classified as required by the Bankruptcy Code in the Classes set forth in this Article III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.  The Debtors reserve the right to assert that the treatment provided to Holders of Claims and Interests pursuant to Article III.B of the Plan renders such Holders Unimpaired.

    1.    Class Identification for the Debtors.

The Plan constitutes a separate chapter 11 plan of reorganization for each Debtor, each of which shall include the classifications set forth below.  Subject to Article I.D of the Plan, to the extent that a Class contains Claims or Interests only with respect to one or more particular Debtors, such Class applies solely to such Debtor.

The following chart represents the classification of Claims and Interests for each Debtor pursuant to the Plan.

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| Class 1 | Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Syndicated Bank Loan Claims | Impaired | Entitled to Vote |
| Class 4 | GUC Claims | Impaired | Entitled to Vote |

17

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 5 | Convenience Claims | Impaired | Entitled to Vote |
| Class 6 | Landlord Claims with Guarantees | Impaired | Entitled to Vote |
| Class 7 | Intercompany Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 8 | Intercompany Interests | Unimpaired | Not Entitled to Vote |
| Class 9 | Interests in Cinemex Holdings | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.      *Treatment of Claims and Interests.*

To the extent that a Class contains Allowed Claims or Allowed Interests with respect to any Debtor, the treatment of Allowed Claims and Allowed Interests in such Class is specified below.

1.      Class 1 – Secured Claims.

(a)      *Classification*:  Class 1 consists of Secured Claims.

(b)      *Treatment*:  Except to the extent that a Holder of an Allowed Secured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Secured Claim, each such Holder shall receive, at the option of the applicable Debtor(s), either:

(i)      payment in full in Cash;

(ii)      delivery of collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code;

(iii)      Reinstatement of such Claim; or

(iv)      other treatment rendering such Claim Unimpaired.

(c)      *Voting:*  Class 1 is Unimpaired under the Plan.  Holders of Claims in Class 1 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

2.      Class 2 – Other Priority Claims.

(a)      *Classification*:  Class 2 consists of Other Priority Claims.

(b)      *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive, at the option of the applicable Debtor(s), either:

(i)      payment in full in Cash; or

(ii)     other treatment rendering such Claim Unimpaired or otherwise permitted by the Bankruptcy Code.

(c)     *Voting*: Class 2 is Unimpaired under the Plan. Holders of Claims in Class 2 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Claims in Class 2 are not entitled to vote to accept or reject the Plan.

3.     Class 3 – Syndicated Bank Loan Claims.

(a)     *Classification*: Class 3 consists of Syndicated Bank Loan Claims.

(b)     *Treatment*: Except to the extent that a Holder of an Allowed Syndicated Bank Loan Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Syndicated Bank Loan Claim, each such Holder shall receive its Pro Rata share of the Syndicated Bank Loan Claims Allocation.

(c)     *Voting:* Class 3 is Impaired under the Plan. Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.     Class 4 – GUC Claims.

(a)     *Classification*: Class 4 consists of GUC Claims.

(b)     *Treatment*: Except to the extent that a Holder of an Allowed GUC Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed GUC Claim, each such Holder shall receive its Pro Rata share of the GUC Claims Allocation; *provided* that to the extent such GUC Claim is a Convenience Claim, such Holder shall receive its Pro Rata share of the Convenience Claims Distribution.

(c)     *Voting:* Class 4 is Impaired under the Plan. Holders of Claims in Class 4 are entitled to vote to accept or reject the Plan.

5.     Class 5 – Convenience Claims.

(a)     *Classification*: Class 5 consists of Convenience Claims.

(b)     *Treatment*: Each Allowed Convenience Claim shall receive, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Convenience Claim, a Cash distribution equal to 25% of its Allowed Convenience Claim, on or after the Effective Date.

(c)     *Voting:* Class 5 is Impaired under the Plan. Holders of Claims in Class 5 are entitled to vote to accept or reject the Plan.

6.      Class 6 – Landlord Claims With Guaranty.

      (a)     *Classification*:  Class 6 consists of all Landlord Claims With Guaranty.

      (b)     Treatment:  Except to the extent that a Holder agrees to less favorable treatment of its Allowed Claim, each Holder of an Allowed Landlord Claims With Guaranty shall receive, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Landlord Claim With Guaranty (i) a payment in Cash of its Pro Rata share of the GUC Claim Allocation, and (ii) with respect any Holder of Landlord Claims With Guaranty that agrees to grant a release to Grupo Cinemex, an Additional Guarantor Payment.

      (c)     *Voting:*  Class 6 is Impaired under the Plan.  Holders of Claims in Class 6 are entitled to vote to accept or reject the Plan

7.      Class 7 – Intercompany Claims.

      (a)     *Classification*:  Class 6 consists of all Intercompany Claims.

      (b)     Treatment:  Intercompany Claims shall be Reinstated as of the Effective Date.

      (c)     *Voting:*  Class 7 is Unimpaired, and such Holders of Class 7 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

8.      Class 8 – Intercompany Interests.

      (a)     *Classification*:  Class 8 consists of all Intercompany Interests.

      (b)     Treatment:  Intercompany Interests shall be Reinstated as of the Effective Date.[2]

      (c)     *Voting:*  Class 8 is Unimpaired, and such Holders of Class 8 Interests are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

9.      Class 9 – Interests in Cinemex Holdings

      (a)     *Classification*:  Class 8 consists of any Interests in Cinemex Holdings.

      (b)     *Treatment*:  On the Effective Date, existing Interests in Cinemex Holdings shall be deemed canceled, discharged, released, and extinguished, and there shall be no distribution to Holders of Interests in Cinemex Holdings on account of such Interests.

      (c)     *Voting:*  Class 9 is Impaired under the Plan.  Holders of Interests in Cinemex Holdings are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Interests in Class 9 are not entitled to vote to accept or reject the Plan.

---

2    Reinstatement of Intercompany Interests is for administrative purposes only as a means to preserve the corporate structure for holding company purposes and avoid the unnecessary cost of having to reconstitute that structure.  There is no distribution under the Plan on account of Intercompany Interests.

C.      *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

D.      *Elimination of Vacant Classes.*

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes pursuant to the Disclosure Statement Order shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

E.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B of the Plan. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules or to withdraw the Plan as to such Debtor.

F.      *Voting Classes; Presumed Acceptance by Non-Voting Classes.*

If a Class contains Holders of Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims or Interests in such Class.

G.      *Presumed Acceptance and Rejection of the Plan.*

To the extent that Claims of any Class receive no distribution under the Plan, each Holder of a Claim in such Class is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan. To the extent that Claims or Interests of any Class are Reinstated, each Holder of a Claim or Interest in such Class is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

H.     *Intercompany Interests.*

Holders of Intercompany Interests are not receiving any distribution under the Plan on account of such Intercompany Interests; rather Intercompany Interests are preserved under the Plan as a matter of administrative convenience, for the ultimate benefit of the Holders of New Common Stock and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the Holders of Allowed Claims.  For the avoidance of doubt, any Interest in non-Debtor subsidiaries owned by a Debtor as of the Effective Date shall continue to be owned by the applicable Reorganized Debtor.

I.     *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

J.     *Subordinated Claims and Interests.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable or contractual subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Reorganized Debtors reserve the right to re-classify any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.     *Restructuring Transactions.*

On the Effective Date, the Debtors or the Reorganized Debtors, as applicable, in consultation with the Committee, will effectuate the Restructuring Transactions, and will take any actions as may be necessary or advisable to effect a corporate restructuring of their respective business.  The actions to implement the Restructuring Transactions may include, as applicable, and without limitation:  (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree, including, if applicable, the formation of any entity or entities that will constitute, in whole or in part, the Reorganized Debtors; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, dissolution, or other organizational documents pursuant to applicable state law; (4) the execution and delivery of the New Organizational Documents; (5) the execution and delivery of the Exit Facility Documents (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees to be paid by the Debtors or the Reorganized Debtors, as applicable), subject to any post-closing execution and delivery periods provided for in the Exit Facility Documents; (6) the issuance of the New Common Stock as set forth in the Plan; and (7) all other actions

that the applicable Entities determine to be necessary or advisable, including making filings or recordings that may be required by law in connection with the Plan.

The Confirmation Order shall and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

B.    *Settlement and Compromise.*

The Plan shall be deemed a motion to approve the good-faith compromise and settlement set forth in the Plan pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement. The compromises and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan. The Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise, settlement, and releases set forth in the Plan, as well as a finding by the Bankruptcy Court that such settlement and compromise, and the releases and indemnities provided to effectuate such settlement, are in the best interests of the Debtors, their Estates, and the Holders of Claims and Interests, and is fair, equitable, and reasonable.

C.    *Settlement of Claims After the Effective Date.*

In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against, and Interests in, the Debtors and their Estates, and Causes of Action against other Entities.

D.    *Sources of Consideration for Plan Distributions.*

The Debtors shall fund distributions under the Plan with, as applicable: (1) Cash on hand (including Cash derived from the Sale Transaction); (2) proceeds of the Exit Facility; (3) with respect to Cure Costs associated with Assumed Executory Contracts and Unexpired Leases in connection with a Sale Transaction, Cash funded by the Purchaser, and (4) the New Common Stock. Each distribution and issuance referred to in Article VI of the Plan shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance. The issuance, distribution, or authorization, of certain securities in connection with the Plan, including the New Common Stock, will be exempt from SEC registration to the fullest extent permitted by law, as described more fully in Article VI.F below.

1.    *Exit Facility.*

On the Effective Date, the Reorganized Debtors shall enter into the Exit Facility. The Exit Facility shall be on terms set forth in the Exit Facility Documents.

Confirmation shall be deemed approval of the Exit Facility (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees to be paid by the Debtors or the Reorganized Debtors in connection therewith), to the extent not previously approved by the Bankruptcy Court, and the Reorganized Debtors shall be authorized to execute and deliver those documents necessary or appropriate to obtain the Exit Facility, including any and all documents required to enter into the Exit Facility and all collateral documents related thereto,

without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any person, subject to such modifications as the Reorganized Debtors may deem to be necessary to consummate entry into the Exit Facility.

E.      *Cancellation of Certain Existing Securities and the DIP Loan Agreement.*

Except as otherwise provided in the Plan, on and after the Effective Date, all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing any Claims against any of the Debtors, and any Interests in Cinemex Holdings, shall be deemed canceled, surrendered, and discharged without any need for further action or approval of the Bankruptcy Court or any Holder or other person and the obligations of the Debtors or Reorganized Debtors, as applicable, thereunder or in any way related thereto shall be deemed satisfied in full and discharged, and the counterparties to any such documents or agreements shall be released from all duties thereunder; *provided* that notwithstanding Confirmation or Consummation, any such document or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of:  (1) allowing Holders to receive distributions under the Plan; (2) allowing creditors to enforce their rights, claims, and interests vis-à-vis any parties other than the Debtors; and (3) preserving any rights of any creditors to enforce any obligations owed to each of them under the Plan, and to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including, but not limited, to enforce the respective obligations owed to such parties under the Plan.

F.      *Release of Liens.*

Except as otherwise expressly provided herein (including with regard to Other Secured Claims that the Debtors elect to Reinstate in accordance with Article III.B.2(b) of the Plan), on the Effective Date, all Liens on any property of any Debtors shall automatically terminate, all property subject to such Liens shall be automatically released, and all guarantees of any Debtors shall be automatically discharged and released.

G.      *Corporate Action.*

On the Effective Date, all actions contemplated under the Plan with respect to the Debtors and the Reorganized Debtors, as applicable, shall be deemed authorized and approved in all respects, including, as applicable:  (1) implementation of the Restructuring Transactions; (2) formation by the Debtors or such other party as contemplated in the Plan, Plan Supplement, or Confirmation Order, of Reorganized Cinemex, and the any transactions related thereto; (3) selection of, and the election or appointment (as applicable) of, the directors and officers for the Reorganized Debtors; (4) adoption of and entry into any employment agreements; (5) execution and delivery of the Exit Facility Documents and incurrence of the Exit Facility; (6) approval and adoption of (and, as applicable, the execution, delivery, and filing of) the New Organizational Documents; (7) issuance and distribution of New Common Stock as set forth in the Plan; and (8) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date).

All matters provided for herein involving the corporate structure of the Debtors or the Reorganized Debtors, as applicable, and any corporate action, authorization, or approval that would otherwise be required by the Debtors or the Reorganized Debtors, as applicable, in connection with the Plan shall be deemed to have occurred or to have been obtained and shall be in effect as of the Effective Date, without any requirement of further action, authorization, or approval by the Bankruptcy Court, security holders, directors, managers, or officers of the Debtors, the Reorganized Debtors, or any other person.

On or before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments, and take such actions, contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors including, as applicable, the Exit Facility Documents, the New Organizational Documents, the New Common Stock, and any and all other agreements, documents, securities, and instruments relating to the foregoing, and all such documents shall be deemed ratified.  The authorizations and approvals contemplated by this Article IV.F shall be effective notwithstanding any requirements under non-bankruptcy law.

H.    *Effectuating Documents; Further Transactions.*

On or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, and the officers, directors, agents and members thereof are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, notice, or consents, except for those expressly required pursuant to the Plan.

I.    *Section 1146 Exemption.*

Pursuant to, and to the fullest extent permitted by, section 1146 of the Bankruptcy Code, any transfers of property pursuant to, in contemplation of, or in connection with, the Plan, including: (1) the Restructuring Transactions; (2) the Exit Facility; (3) the issuance of the New Common Stock, including with regard to the Management Incentive Plan, (4) the transfer, if any, of the Debtors' assets to the Reorganized Debtors; (5) the assignment or surrender of any lease or sublease and; (6) the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer, mortgage recording tax, or other similar tax, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers or property without the payment of any such tax, recordation fee, or governmental assessment.

J.    *Corporate Existence.*

Except as otherwise provided in the Plan or the Plan Supplement, each Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and by-laws (or other formation documents) are amended under the Plan, the Plan Supplement, or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan or Plan Supplement and require no further action or approval (other than any requisite filings required under applicable state or federal law).

K.      *Vesting of Assets.*

Except as otherwise provided in the Plan, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each applicable Reorganized Debtor, free and clear of all Liens, Claims, charges, Interests, or other encumbrances other than those specifically granted pursuant to the Plan or the Confirmation Order. Except as otherwise provided in the Plan, on and after the Effective Date, each of the Reorganized Debtors may operate their business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

L.      *New Organizational Documents.*

On the Effective Date, to the extent provided in the Plan and/or Plan Supplement, each of the Reorganized Debtors will file its New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state of incorporation or formation in accordance with the applicable laws of the respective state of incorporation or formation, to the extent required for such New Organizational Documents to become effective. Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents will prohibit the issuance of non-voting equity securities. Such New Organizational Documents shall contain customary minority protections, reasonably acceptable to the Committee. The initial board of directors of the Reorganized Debtors shall consist of five (5) persons, three (3) of whom shall be chosen by Cinemex, one (1) of whom shall be chosen by the Committee, and one (1) of whom shall qualify as independent under the New York Stock Exchange definition of such term and shall be chosen jointly by Cinemex and the Committee. After the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents and other constituent documents as permitted by the laws of their respective state of incorporation and its respective New Organizational Documents and other constituent documents of the Reorganized Debtors.

M.      *Directors and Officers of the Reorganized Debtors.*

As of the Effective Date, the initial Reorganized Cinemex Board shall consist of five directors, the identities of whom will be disclosed in the Plan Supplement. As of the Effective Date, the terms of the current members of the boards of directors or managers, as applicable, of each of the Debtors shall expire, and the initial Reorganized Cinemex Board and the boards of directors or managers of each of the other Reorganized Debtors will include those directors and officers set forth in the lists of directors and officers of the Reorganized Debtors included in the Plan Supplement.

After the Effective Date, the officers of each of the Reorganized Debtors shall be appointed in accordance with the respective New Organizational Documents. Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose in the Plan Supplement the identity and affiliations of each person proposed to be an officer or to serve on the initial board of directors of any of the Reorganized Debtors. To the extent any such director or officer of the Reorganized Debtors is an "insider" under the Bankruptcy Code, the Debtors also will disclose the nature of any compensation to be paid to such director or officer. Each such director or officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents.

N.      *Management Incentive Plan.*

After the Effective Date, the Reorganized Cinemex Board may adopt and implement a Management Incentive Plan pursuant to which management and key employees will receive a percentage of equity in Reorganized Cinemex, comprised of New Common Stock. The participants in the

26

Management Incentive Plan, the timing and allocations of the awards to participants, and the other terms and conditions of such awards (including, but limited to, vesting, exercise prices, base values, hurdles, forfeiture, repurchase rights, and transferability) shall be determined by the Reorganized Cinemex Board.

O.    *Employee Obligations.*

Except as otherwise provided in the Plan or the Plan Supplement, the Reorganized Debtors shall honor, to the extent not previously rejected, the Debtors' written contracts, agreements, policies, programs, plans, and Insurance Policies for, among other things, compensation, reimbursement, indemnity, health care benefits, disability benefits, vacation and sick leave benefits, workers' compensation claims, savings, severance benefits, including in the event of a change of control, retirement benefits, welfare benefits, relocation programs, certain grandfathered benefits, life insurance and accidental death and dismemberment insurance, including written contracts, agreements, policies, programs and plans for bonuses and other incentives or compensation for the directors, officers and employees of any of the Debtors who served in such capacity at any time (including any compensation programs approved by the Bankruptcy Court); *provided* that the consummation of the transactions contemplated herein shall not constitute a "change in control" with respect to any of the foregoing arrangements.  To the extent that the above-listed written contracts, agreements, policies, programs, plans, and Insurance Policies are Executory Contracts, pursuant to sections 365 and 1123 of the Bankruptcy Code, each of them will be deemed assumed as of the Effective Date and assigned to the Reorganized Debtors.

P.    *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action belonging to the Debtors, whether arising before or after the Petition Date, including, without limitation, any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations set forth in Article VIII of the Plan, which shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date,

The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Disclosure Statement, or the Schedule of Retained Causes of Action to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action of the Debtors against it.  The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise provided in the Plan, including Article VIII of the Plan.  Unless any Cause of Action of the Debtors against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the Debtors and the Reorganized Debtors expressly reserve all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation.

The Reorganized Debtors shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Cause of Action that a Debtor may hold against any Entity shall vest in the applicable Reorganized Debtor, except as

otherwise provided in the Plan, including Article VIII of the Plan. The Reorganized Debtors shall retain, and through their authorized agents or representatives shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment, any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

Q.    *Payment of Certain Fees.*

Without any further notice to or action, order, or approval of the Bankruptcy Court, the Debtors, or the Reorganized Debtors, as applicable, shall pay on the Effective Date any reasonable and documented unpaid fees and expenses incurred on or before the Effective Date by all of the attorneys, accountants, and other professionals, advisors, and consultants (a) payable under the Exit Facility Documents, and (b) payable under the DIP Order (which fees and expenses shall be paid pursuant to the terms of the DIP Order).

R.    *Document Retention*

On and after the Effective Date, the Reorganized Debtors may maintain or dispose of documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, any Executory Contract or Unexpired Lease of the Debtors is deemed to be an Assumed Executory Contract or Unexpired Lease, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that: (1) previously were assumed, assumed and assigned, or rejected by the Debtors; (2) are identified on the Rejected Executory Contract and Unexpired Lease List; (3) are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; or (4) are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute a court order approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan, the Rejected Executory Contract and Unexpired Lease List, or the Assumed Executory Contract and Unexpired Lease List pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order. Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A or by any order of the Bankruptcy Court, which has not been assigned to a third party before the Confirmation Date, shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms are modified by the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption or rejection under applicable federal law. Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Rejected Executory Contract and Unexpired Lease List and the Assumed Executory Contract and Unexpired Lease List at any time through and including thirty (30) days after the Effective Date.

*B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed within thirty (30) days after the later of:  (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; and (2) the effective date of such rejection.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, Reorganized Debtors, the Estates, or their property without the need for any objection by the Debtors or the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as GUC Claims and shall be treated in accordance with the Plan, unless a different security or priority is otherwise asserted in such Proof of Claim and Allowed in accordance with Article VII of the Plan.

*C.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Any monetary defaults under each Assumed Executory Contract or Unexpired Lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, or as soon as reasonably practicable thereafter, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  To the extent the Plan implements a Sale Transaction, the Purchaser shall pay the Cure Costs associated with each Assumed Executory Contract or Unexpired Lease.  In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

Any objection by a contract or lease counterparty to a proposed assumption (including, for purposes of the Plan, assumption and assignment) of an Executory Contract or Unexpired Lease or the related cure cost (including as set forth on the Assumed Executory Contract or Unexpired Lease List) must be Filed, served, and actually received by the Debtors in accordance with the Disclosure Statement Order or other applicable Final Order of the Bankruptcy Court.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have consented to such assumption and the proposed cure amount.  For the avoidance of doubt, to the extent an Executory Contract or Unexpired Lease proposed to be assumed is not listed as having a related cure cost, any counterparty to such Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption will be deemed to have consented to such assumption and deemed to release any Claim or Cause of Action for any monetary defaults, including any cure payment, under such Executory Contract or Unexpired Lease.

For the avoidance of doubt, the Debtors or the Reorganized Debtors, as applicable, may add any Executory Contract or Unexpired Lease proposed to be assumed to the Rejected Executory Contracts and Unexpired Lease List in accordance with the time limits provided by the Plan for any reason, including if the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or

Unexpired Lease is greater than the amount set forth in the applicable cure notice or the Plan, in which case such Executory Contract or Unexpired Lease is deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption. Any Proofs of Claim Filed with respect to an Assumed Executory Contract or Unexpired Lease shall be deemed Disallowed, without further notice to or action, order, or approval of the Bankruptcy Court.

D.     *Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed by the Executory Contract or Unexpired Lease counterparty or counterparties to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases.

E.     *Indemnification Obligations.*

The Debtors and the Reorganized Debtors shall assume the Indemnification Obligations for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals, advisors, and agents of the Debtors, to the extent consistent with applicable law, and such Indemnification Obligations shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose. Notwithstanding the foregoing, nothing shall impair the ability of Reorganized Debtors to modify Indemnification Obligations (whether in the bylaws, certificates or incorporate or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, employment contracts, or otherwise) arising after the Effective Date; *provided* that none of the Reorganized Debtors shall amend or restate any of the New Organizational Documents before the Effective Date to terminate or adversely affect any of the Reorganized Debtors' Indemnification Obligations. For the avoidance of doubt, nothing in this paragraph shall affect the assumption of any Indemnification Obligations arising under any applicable insurance policies.

F.     *Insurance Policies.*

Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, any other document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases), (i) on the Effective Date each of the Debtors' Insurance Policies shall be deemed assumed by the applicable Reorganized Debtor pursuant to sections 105 and 365 of the Bankruptcy Code as though listed on the Assumed Executory Contract and Unexpired Lease List and the Reorganized Debtors shall become and remain jointly and severally liable in full for all of the Debtors' obligations under the Insurance Policies, regardless of whether such obligations arise before or after the Effective Date, without the requirement or need for any Insurer to File a Proof of Claim, an Administrative Claim, a Cure Claim or to object to any cure amount; (ii) nothing alters, modifies or otherwise amends the terms and conditions of (or the coverage provided by) any of the Insurance Policies; (iii) such Insurance Policies shall not be impaired in any way by the Plan or Confirmation Order, but will remain valid and enforceable in accordance with their terms and applicable non-bankruptcy law; and (iv) if and to the extent applicable, the automatic stay of Bankruptcy Code section 362(a) and the injunction

set forth in Article VIII.F of the Plan, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (a) claimants with valid workers' compensation claims or with valid direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims; (b) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (1) workers' compensation claims, (2) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay or the injunction set forth in Article VIII.F of the Plan to proceed with its claim, and (3) all costs in relation to each of the foregoing; and (c) the Insurers to cancel any Insurance Policies, and take other actions relating thereto, to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the Insurance Policies.

G.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or are rejected or repudiated under the Plan.

Unless otherwise provided herein or in the applicable Executory Contract or Unexpired Lease (as may have been amended, modified, supplemented, or restated), modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

H.    *Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumed Executory Contract and Unexpired Lease List or the Rejected Executory Contract and Unexpired Lease List, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Debtors or the Reorganized Debtors has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

I.    *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur with respect to a Debtor, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases with respect to such Debtor pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

J.    *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Assumed Executory Contracts or Unexpired Leases, will be performed by the applicable Debtor or the applicable Reorganized Debtor that is party thereto in the ordinary course of their business.  Accordingly, any such

contracts and leases (including any Assumed Executory Contracts or Unexpired Leases) that have not been rejected as of the date of the Confirmation Date shall survive and remain unaffected by entry of the Confirmation Order.

# ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Distribution Date (or if a Claim is not an Allowed Claim on the Distribution Date, on the date that such Claim or Interest becomes an Allowed Claim), each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for such Allowed Claim in accordance with its priority and Allowed amount.  No Holder of a Claim shall recover more than 100 percent of the Allowed amount of such Claim.

If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan.

To the extent any distributions made in accordance with the Plan are subject to disgorgement to the Reorganized Debtors, the Reorganized Debtors shall effectuate the distribution of such disgorged distribution to the Holders of Allowed Claims entitled to such distributions in accordance with the Plan as soon as reasonably practicable.  For the avoidance of doubt, to the extent disgorgement of a distribution made to a Holder of a Claim pursuant to the Plan is required, such Holder shall be required to disgorge any distribution but shall not be required to remit interest on such distribution.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

B.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.    Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on such Distribution Record Date.

2.    Delivery of Distributions.

Except as otherwise provided herein, the Reorganized Debtors shall be authorized to make distributions to Holders of Allowed Claims and Allowed Interests as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided* that the Distribution Record Date shall not apply to publicly-traded Securities.  The manner of such distributions shall be determined at the discretion of the Reorganized Debtors, and the address for each Holder of an Allowed Claim or Allowed Interest shall be deemed to be the address set forth in any Proof of Claim or Interest Filed by that Holder.

3.    Delivery of Distributions to Holders of GUC Claims.

The Debtors and the Reorganized Debtors, will, in their reasonable discretion, determine the method for a timely distribution of all distributions to Holders of Allowed GUC Claims pursuant to the Plan.

4.    Minimum Distribution.

No Cash payment of less than $100 shall be made to a Holder of an Allowed Claim on account of such Allowed Claim.

5.    Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Reorganized Debtors have determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date such distribution is returned as undeliverable.  After such date, all unclaimed property or interests in property shall revert to the applicable Reorganized Debtor(s) automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and any claim of any Holder to such property shall be fully discharged, released, and forever barred.

For the avoidance of doubt, the Reorganized Debtors and their respective agents and attorneys are under no duty to take any action to attempt to locate any Claim Holder.

C.    *Special Rules for Distributions to Holders of Disputed Claims and Interests.*

Except as otherwise provided in the Plan, agreed to by the Debtors or the Reorganized Debtors, or set forth in an order of the Bankruptcy Court:  (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim or Interest until all such disputes in connection with such Disputed Claim or Interest have been resolved by settlement or Final Order; *provided* that if a portion of a Claim is not Disputed, the Debtors or the Reorganized Debtors may make a partial distribution based on such portion of such Claim that is not Disputed; and (b) any Entity that holds both an Allowed Claim or Interest and a Disputed Claim or Interest shall not receive any distribution on the Allowed Claim or Interest unless and until all objections to the Disputed Claim or Interest have been resolved by settlement or Final Order or the Claims or Interests have been Allowed or Disallowed.  Any dividends or other distributions arising from property distributed to Holders of Allowed Claims or Interests, as applicable, in a Class and paid to such Holders under the Plan shall also be paid, in the applicable amounts, to any Holder of a Disputed Claim or Interest, as applicable, in such Class that becomes an Allowed Claim or Interest after the date or dates that such dividends or other distributions were earlier paid to Holders of Allowed Claims or Interests in such Class.

D.    *Manner of Payment.*

Unless otherwise set forth herein, all distributions of New Common Stock and Cash under the Plan to the Holders of Allowed Claims and the Purchaser shall be made by the Debtors or the Reorganized Debtors.  At the option of the Debtors and the Reorganized Debtors, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.  For the avoidance of doubt, to the extent the Plan implements a Sale Transaction,

the Purchaser shall pay the Cure Costs associated with each Assumed Executory Contract or Unexpired Lease.

E.      *SEC Exemption.*

The New Common Stock may be "securities," as defined in Section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws.

All shares of the New Common Stock issued pursuant to the Plan will be issued in reliance upon section 1145 of the Bankruptcy Code.

Pursuant to section 1145 of the Bankruptcy Code, the issuance of (1) the New Common Stock, and (2) any other securities issued in reliance on section 1145 of the Bankruptcy Code, are exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration before the offering, issuance, distribution, or sale of such securities. Each of the foregoing securities (a) is not a "restricted security" as defined in Rule 144(a)(3) under the Securities Act, and (b) is freely tradable and transferable by any initial recipient thereof that (i) at the time of transfer, is not an "affiliate" of the Reorganized Cinemex as defined in Rule 144(a)(1) under the Securities Act and has not been such an "affiliate" within 90 days of such transfer, and (ii) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

Should the Reorganized Debtors elect on or after the Effective Date to reflect any ownership of the New Common Stock through the facilities of DTC, the Reorganized Debtors need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of the New Common Stock under applicable securities laws.

To the extent applicable, DTC shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether any of the New Common Stock issuable pursuant to the Plan are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

Notwithstanding anything to the contrary in the Plan, no entity (including, for the avoidance of doubt, DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the New Common Stock issuable pursuant to the Plan is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

F.      *Compliance with Tax Requirements.*

In connection with the Plan, as applicable, the Debtors and the Reorganized Debtors, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit with respect to distributions pursuant to the Plan. Notwithstanding any provision herein to the contrary, the Debtors and the Reorganized Debtors, as applicable, shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, and establishing any other mechanisms they believe are reasonable and appropriate to comply with such requirements. The Debtors and the Reorganized Debtors, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances. The

Reorganized Debtors shall not have any duty to obtain an executed Internal Revenue Service Form W-9 (or other applicable tax form) from any Claim Holder.

G.      *No Postpetition or Default Interest on Claims.*

Notwithstanding any documents that govern the Debtors' prepetition funded indebtedness or Proofs of Claim to the contrary, (1) postpetition and/or default interest shall not accrue or be paid on any Claims and (2) no Holder of a Claim shall be entitled to: (a) interest accruing on or after the Petition Date on any such Claim; or (b) interest at the contract default rate. For the avoidance of doubt, no interest shall accrue or be paid as a result of a delay, if any, between the Confirmation Date and the date a Holder of an Allowed Claim receives a distribution pursuant to the Plan.

H.      *Setoffs and Recoupment.*

The Debtors or the Reorganized Debtors, as applicable, may, but shall not be required to, setoff against or recoup any payments or distributions to be made pursuant to the Plan in respect of any Claims of any nature whatsoever that the Debtors or the Reorganized Debtors, as applicable may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors, as applicable, of any such right it may have against the Holder of such Claim.

I.      *No Double Payment of Claims.*

To the extent that a Claim is Allowed against more than one Debtor's Estate, there shall be only a single recovery on account of that Allowed Claim, but the Holder of an Allowed Claim against more than one Debtor may recover distributions from all co-obligor Debtors' Estates until the Holder has received payment in full on the Allowed Claims. No Holder of an Allowed Claim shall be entitled to receive more than payment in full of its Allowed Claim, and each Claim shall be administered and treated in the manner provided by the Plan only until payment in full on that Allowed Claim.

J.      *Claims Paid or Payable by Third Parties.*

1.      Claims Paid by Third Parties.

The Debtors and the Reorganized Debtors shall reduce a Claim, and such Claim shall be deemed Disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor or Reorganized Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or Reorganized Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day period specified above until the amount is repaid; provided however that the provisions of this paragraph shall not apply to any Additional Guarantor Payment.

2.      Claims Payable by Third Parties.

Except as otherwise provided for in the Plan, no distributions under the Plan shall be made on account of a Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such a Claim has exhausted all remedies with respect to such Insurance Policy.  To the extent that one or more of the Debtors' Insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such Insurers' agreement, the applicable portion of such Claim may be Disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

       3.    Applicability of Insurance Policies.

Except as otherwise provided in the Plan, any distributions of insurance proceeds to Holders of Allowed Claims covered by Insurance Policies shall be in accordance with the provisions of any applicable Insurance Policy.  Except as otherwise provided in the Plan, the Plan shall not otherwise constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including Insurers under any Insurance Policies, nor shall anything contained herein (a) constitute or be deemed a waiver by such Insurers of any rights or defenses, including coverage defenses, held by such Insurers, or (b) establish, determine, or otherwise imply any liability or obligation, including any coverage obligation, of any Insurer.

K.    *Allocation of Distributions Between Principal and Interest.*

For distributions in respect of Allowed Claims, to the extent that any such Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

A.    *Allowance of Claims.*

Except as otherwise set forth in the Plan, after the Effective Date, the Reorganized Debtors shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim immediately before the Effective Date.  Except as specifically provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed in accordance with the Plan.

B.    *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, and subject to the rights and duties of the applicable Reorganized Debtor(s) as set forth herein, after the Effective Date, (a) the Reorganized Debtors shall have the sole authority to File, withdraw, or litigate to judgment, objections to all Claims; and (b) the applicable Reorganized Debtor(s) shall have the authority to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) the applicable Reorganized Debtor(s) shall have the authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.      *Adjustment to Claims Without Objection.*

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted on the Claims Register by the Reorganized Debtors without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

D.      *Time to File Objections to Claims or Interests.*

Any objections or challenges to Claims or Interests shall be Filed on or before the applicable Claims Objection Deadline.

E.      *Estimation of Claims.*

Before or after the Effective Date, the Debtors or the Reorganized Debtors may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. § 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.  Notwithstanding any provision to the contrary in the Plan, a Claim that has been Disallowed or expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated.  Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

F.      *Disputed and Contingent Claims Reserve.*

On or after the Effective Date, the Debtors and the Reorganized Debtors shall establish one or more reserves for Claims that are contingent or have not yet been Allowed, in an amount or amounts as reasonably determined by the applicable Debtors and Reorganized Debtors, consistent with the Proof of Claim Filed by the applicable Holder of such Disputed Claim.

Any assets held in any such reserve shall be subject to the tax rules that apply to "disputed ownership funds" under 26 C.F.R. 1.468B–9.  As such, such assets will be subject to entity-level taxation, and the Debtors and Reorganized Debtors shall be required to comply with the relevant rules.

G.      *Disallowance of Claims.*

Any Claims held by Entities from which the Bankruptcy Court has determined that property is recoverable under section 542, 543, 547, 548, 549, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer that the Bankruptcy Court has determined is avoidable under section 522(f),

522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and the full amount of such obligation to the Debtors has been paid or turned over in full.

All Proofs of Claim Filed on account of an Indemnification Obligation shall be deemed satisfied and Disallowed as of the Effective Date to the extent such Indemnification Obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court. All Proofs of Claim Filed on account of an employee benefit shall be deemed satisfied and Disallowed as of the Effective Date to the extent the Reorganized Debtors elect to honor such employee benefit, without any further notice to or action, order, or approval of the Bankruptcy Court.

Except as provided herein or otherwise agreed to by the Reorganized Debtors in their sole discretion, any and all Proofs of Claim Filed after the Bar Date shall be deemed Disallowed as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.

H.      *Amendments to Proofs of Claim.*

On or after the Effective Date, a Proof of Claim or Interest may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and any such new or amended Proof of Claim or Interest Filed that is not so authorized before it is Filed shall be deemed Disallowed in full without any further action.

I.      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever Disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless before the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

J.      *No Distributions Pending Allowance.*

Except as otherwise set forth herein, if an objection to a Claim or portion thereof is Filed as set forth in Article VII.C of the Plan, no payment or distribution provided under the Plan shall be made on account of such Disputed Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

K.      *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date a Disputed Claim becomes Allowed, the Reorganized Debtors shall provide to the Holder of such Claim the distribution (if any) to which such Holder is

entitled under the Plan, as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim unless required under such order or judgment of the Bankruptcy Court.

## ARTICLE VIII.
## RELEASE, INJUNCTION, EXCULPATION, AND RELATED PROVISIONS

A.    *Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors, if applicable), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date.   The entry of the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.  For the avoidance of doubt, from and after the Effective Date, any Claim for adequate protection (as required by the Bankruptcy Code) of any Secured Claim for post-Effective Date diminution in value shall be deemed satisfied, discharged, and released, effective as of the Effective Date, and neither the Debtors nor the Reorganized Debtors shall have any obligation to provide such protection.

B.    ***Release of Liens.***

**Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, and except with regard to Secured Claims that the Debtors elect to Reinstate in accordance with Article III.B.2(b) of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns (including Reorganized Cinemex, if applicable), in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or the Reorganized Debtors, as applicable.  The Reorganized Debtors are authorized to execute any document or make any filing necessary to further document the release of any lien, security interest or similar encumbrance.**

C.      *Releases by the Debtors.*

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates, from any and all claims and Causes of Action whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the day-to-day management of the Debtors, any decisions made or not made by the Debtors' board members, and/or the ownership or operation of the Debtors), the Reorganized Debtors (including the formation thereof, if applicable), the Debtors' prepetition activities (including any intercompany transactions), the DIP Order (and any payments or transfers in connection therewith), the New Organizational Documents, any preference or avoidance claims pursuant to sections 544, 547, 548, or 549 of the Bankruptcy Code, the formulation, preparation, dissemination, negotiation, or consummation of the Exit Facility, the settlements and/or treatment of Claims and Interests contemplated by the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including the reliance by any Released Party on the Plan or the Confirmation Order) created or entered into in connection with the Disclosure Statement, the Plan, the Exit Facility, the Sale Transaction, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan (if any), or the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the releases described herein are: (1) in exchange for the good and valuable consideration provided by or on behalf of the Released Parties; (2) a good faith settlement and compromise of the Claims and Interests released herein; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any claim or Cause of Action released pursuant to the releases described herein or asserting (directly or indirectly) or trading any claim or Cause of Action released pursuant to the releases described herein against any Released Party at any time.

D.      *Releases by Holders of Claims and Interests.*

As of the Effective Date, except to enforce distributions under the Plan, each Releasing Party is deemed to have released and discharged each Released Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the day-to-day management of the Debtors, any decisions made or not made by the Debtors' board members, and/or the ownership or operation of the Debtors), Reorganized

Cinemex (including the formation thereof), the Debtors' prepetition operations and activities, the New Organizational Documents, the DIP Order (and any payments or transfers in connection therewith), the formulation, preparation, dissemination, negotiation, or consummation of the Exit Facility, the Sale Transaction, the settlements contemplated by the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including the reliance by any Released Party on the Plan or the Confirmation Order) created or entered into in connection with the Disclosure Statement, the Plan, the Exit Facility, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan (if any), or the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that each release described herein is: (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise as set forth in the Plan; (5) in the best interests of the Debtors and their Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the releases described herein.

E.     *Exculpation.*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of any prepetition transactions, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including the reliance by any Exculpated Party on the Plan or the Confirmation Order) created or entered into in connection with the Disclosure Statement, the Plan, the Exit Facility, he Sale transaction, the Filing of the Chapter 11 Cases, the negotiation, terms, or execution of any settlement agreements effectuated pursuant to Federal Rule of Bankruptcy Procedure 9019, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan (if any), or the distribution of property under the Plan, or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to or in connection with the Plan and the Restructuring Transactions. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

*F.*        *Injunction.*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have Held, Hold, or may Hold Claims or Interests that have been released pursuant to Article VIII.C or Article VIII.D of the Plan, shall be discharged pursuant to Article VIII.A of the Plan, or are subject to exculpation pursuant to Article VIII.E of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; (5) asserting any claim relating to or arising from the Sale Transaction; and (6) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

*G.*        *Bar Order and Channeling Injunction.*

Except as otherwise specifically provided in the Plan, the Enjoined Parties shall be permanently barred, restrained, and enjoined, with regard to the Claims set forth in this Article VIII.G (1)-(6) (collectively, the "Enjoined Claims") from ever:

1.        commencing, asserting, continuing, filing, conducting, or bringing, directly, indirectly, or derivatively, any Claim, demand, suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum), against any of the Released Parties, or their respective property, including the proceeds of such property, with regard to all matters arising out of or related to any involvement of any of the Released Parties whatsoever in transactions, acts, or events in any manner related to the Debtors and their predecessors, affiliates, successors, principals, directors, officers, and related entities;

2.        asserting, continuing, filing, conducting, or bringing, directly, indirectly, or derivatively, any Claim, demand, suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum), against any of the Released Parties, or their respective property, including the proceeds of such property that would result in the avoidance of allegedly fraudulent (actual or constructive) or preferential transfers from the Debtors to any of the Released Parties, regardless of whether such Released Party is the initial or subsequent transferee, and/or recovery of such allegedly fraudulent (actual or constructive) or preferential transfers from such Released Party;

3.      **enforcing, levying, employing legal process (including proceedings supplementary), whether prejudgment or post-judgment, attaching, garnishing, sequestering, collecting, or otherwise recovering by any means or in any manner, any Claims against the Released Parties, or their respective property, including the proceeds of such property, with regard to all matters arising out of or related to any involvement of any of the Released Parties whatsoever in transactions, acts, or events in any manner related to the Debtors, and their predecessors, affiliates, successors, principals, directors, officers, and related entities;**

4.      **pursuing, aiding, or abetting any action brought by any person or entity seeking recovery, contribution and/or indemnity from any of the Released Parties, or their respective property, including the proceeds of such property, with regard to all matters arising out of or related to any involvement of any of the Released Parties whatsoever in transactions, acts, or events in any manner related to the Debtors and their predecessors, affiliates, successors, principals, directors, officers, and related entities;**

5.      **enforcing any terms set forth in any settlement agreement by and among any of the Released Parties and any of the Enjoined Parties that would resolve, compromise, or settle Claims that would otherwise be enjoined by the bar order or the channeling injunction set forth in this section; and**

6.      **pursuing any of the Enjoined Claims recited herein as they relate to any Claims against retained professionals including accountants and legal counsel as well as their agents and assigns of any of the Released Parties.**

**The injunction described in this section and incorporated into the Confirmation Order shall be referred to as the "Bar Order and Channeling Injunction."**

The Bankruptcy Court shall expressly retain jurisdiction in enforcing, implementing and interpreting the scope of the Bar Order and Channeling Injunction.

H.      *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

I.      *Recoupment.*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Proof of Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

*J.*      *Binding Effect.*

On the Effective Date, except as otherwise provided herein to the contrary, and effective as of the Effective Date, the Plan will bind, and will be deemed binding upon, all Holders of Claims against and Interests in the Debtors, and such Holder's respective successors and assigns, to the maximum extent permissible by law, notwithstanding whether or not such Holder (1) will receive any property or interest in property under the Plan, or (2) has filed a Proof of Claim or Interest in the Chapter 11 Cases, or (3) failed to vote to accept or reject the Plan or affirmatively voted to reject the Plan.

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND CONSUMMATION OF THE PLAN**

*A.*      *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation that the following shall have been satisfied or waived pursuant to the provisions of Article IX.C of the Plan:

1.      the Bankruptcy Court shall have entered the Disclosure Statement Order and the Confirmation Order in a manner consistent in all material respects with the Plan; and

2.      the Confirmation Order shall, among other things:

(a)      decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(b)      authorize the Debtors and the Reorganized Debtors, as applicable, to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

(c)      authorize the Debtors and the Reorganized Debtors, as applicable/necessary, to: (i) implement the Restructuring Transactions; (ii) authorize, issue and/or incur the Exit Facility, (iii) distribute the New Common Stock; and (iv) enter into any agreements, transactions, and sales of property, as set forth in the Plan Supplement with respect to the Debtors or the Reorganized Debtors, as applicable, including the Exit Facility Documents;

(d)      provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order in furtherance of, or in connection with, any transfers of property pursuant to the Plan, including any deeds, mortgages, security interest filings, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan shall not be subject to transfer or recording taxes or fees to the extent permissible under section 1146 of the Bankruptcy Code, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment;

       (e)       authorize and approve the compromise and settlement set forth in the Plan; and

       (f)       contain the release, injunction, and exculpation provisions contained in Article VIII herein.

B.     *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C of the Plan:

       1.       the Confirmation Order shall have become a Final Order;

       2.       the Plan and the applicable documents included in the Plan Supplement, including any exhibits, schedules, documents, amendments, modifications, or supplements thereto, and inclusive of any amendments, modifications, or supplements made after the Confirmation Date but before the Effective Date, shall have been filed and be in form and substance reasonably satisfactory to the Committee;

       3.       the New Organizational Documents with respect to the Reorganized Debtors and the Exit Facility Documents shall be in full force and effect (with all conditions precedent thereto having been satisfied or waived), subject to any post-closing execution and delivery requirements provided for in the Exit Facility Documents, and shall be in form and substance reasonably satisfactory to the Committee;

       4.       the Purchaser shall have deposited the Purchase Price into the Sale Proceeds Account;

       5.       the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and the Restructuring Transactions; and

       6.       all Allowed Professional Fee Claims approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such Allowed Professional Fee Claims after the Effective Date have been placed in the Professional Fee Escrow Account pending approval of the Professional Fee Claims by the Bankruptcy Court and all fees and expenses payable pursuant to Article II of the Plan shall have been paid in full.

C.     *Waiver of Conditions.*

The conditions to Confirmation and Consummation set forth in this Article IX may be waived by the Debtors and/or Reorganized Debtors with the prior written consent of the Committee without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

D.     *Substantial Consummation.*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), with respect to any of the Debtors, shall be deemed to occur on the Effective Date with respect to such Debtor.

E.     *Effect of Failure of Conditions.*

If the Effective Date does not occur with respect to any of the Debtors, the Plan shall be null and void in all respects with respect to such Debtor, and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by or Claims against or Interests in such

Debtors; (2) prejudice in any manner the rights of such Debtors, any Holders of a Claim or Interest, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by such Debtors, any Holders, or any other Entity in any respect.

# ARTICLE X.
# MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments.*

Subject to the limitations contained in the Plan, and on prior notice to and with the consent of the Committee, the Debtors reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.    *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.    *Revocation or Withdrawal of Plan.*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date.  If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effectuated by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

# ARTICLE XI.
# RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code to the extent provided under applicable law, including jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or Unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or Unsecured status, priority, amount, or Allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V of the Plan, any Executory Contracts or Unexpired Leases to the Rejected Executory Contracts and Unexpired Lease List, or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

5.      adjudicate, decide, or resolve any and all matters related to the Causes of Action enumerated in the Schedule of Retained Causes of Action;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary to execute, implement, or consummate the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement, including injunctions or other actions as may be necessary to restrain interference by an Entity with Consummation or enforcement of the Plan;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      adjudicate, decide, or resolve any and all matters related to the Restructuring Transactions or the Plan;

10.     resolve any cases, controversies, suits, disputes, Causes of Action, or any other matters that may arise in connection with the Consummation, interpretation, or enforcement of the Plan, the Disclosure Statement, the Confirmation Order, the Restructuring Transactions, or any Entity's obligations incurred in connection with the foregoing, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, the Disclosure Statement, the Confirmation Order, or the Restructuring Transactions;

11.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary to implement such releases, injunctions, and other provisions;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action relating to the distribution or the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.J.1 of the Plan;

13.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by or assess damages against any Entity with Consummation or enforcement of the Plan or the Restructuring Transactions;

14.     enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.     enter an order or decree concluding or closing the Chapter 11 Cases;

16.     adjudicate any and all disputes arising from or relating to distributions under the Plan or any of the transactions contemplated therein;

17.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code, including any request made under section 505 of the Bankruptcy Code for the expedited determination of any unpaid liability of a Debtor for any tax incurred during the administration of the Chapter 11 Cases, including any tax liability arising from or relating to the Restructuring Transactions, for tax periods ending after the Petition Date and through the closing of the Chapter 11 Cases;

20.     hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee benefit program, regardless of whether such termination occurred before or after the Effective Date;

21.     hear and determine all pre-Effective Date disputes involving the obligations or terms of the Exit Facility;

22.     except as otherwise limited herein, recover all assets of the Debtors and property of the Estates, wherever located;

23.     enforce all orders previously entered by the Bankruptcy Court and resolve any issues not enumerated above related to any matters adjudicated in the Chapter 11 Cases; and

24.     hear any other matter not inconsistent with the Bankruptcy Code.

Notwithstanding the foregoing, the Bankruptcy Court shall retain non-exclusive jurisdiction to adjudicate, decide, or resolve any and all matters related to objections to Claims.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect.*

Subject to Article I.B of the Plan, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately

effective and enforceable and deemed binding upon, as applicable, the Debtors, the Reorganized Debtors, the Committee, any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, exculpations, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B.    *Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or advisable to effectuate and further evidence the terms and conditions of the Plan. The Debtors, the Reorganized Debtors, and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Dissolution of the Committee.*

On the Effective Date, the Committee shall dissolve and all members, employees, or agents thereof shall be released and discharged from all rights and duties arising from or related to the Chapter 11 Cases; *provided* that such official committee shall be deemed to remain in existence solely with respect to, and shall not be heard on any issue except, applications filed by the Professionals pursuant to sections 330 and 331 of the Bankruptcy Code. From and after the Effective Date, neither the Debtors, nor the Reorganized Debtors, nor their respective estates shall be responsible for paying any fees or expenses incurred after the Effective Date by the members of or advisors to the Committee.

D.      *Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of the Judicial Code, including fees and expenses payable to the U.S. Trustee, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, will be paid by each of the applicable Reorganized Debtors for each quarter (including any fraction thereof) until the applicable Chapter 11 Case of such Reorganized Debtors is converted, dismissed, or closed, whichever occurs first.  All such fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the applicable Reorganized Debtor shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee, until the earliest of the date on which the applicable Chapter 11 Case of the Reorganized Debtors is converted, dismissed, or closed.

E.      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor, Settling Lender, or any other Entity with respect to the Holders of Claims or Interests prior to the Effective Date.

F.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, assign, Affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.      *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

    1.    if to the Debtors, to:

          Cinemex Holdings USA, Inc.,
          175 South West 7th St., Suite 1108
          Miami, FL 33130
          Attention:  Luis Castelazo
          Email address:  luis.castelazo@cmxcinemas.com

          with copies (which shall not constitute notice) to:

          Quinn Emanuel Urquhart & Sullivan, LLP
          711 Louisiana Street, Suite 500
          Houston, Texas 77002
          Attention:  Patricia Tomasco
          Email: pattytomasco@quinnemanuel.com

–and–

Bast Amron LLP
One Southeast Third Avenue
Suite 1400
Miami, FL 33131
Attention: Jeffrey Bast
E-mail address: jbast@bastamron.com

2.    if to the Committee, to:

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, DE 19801
Attention:  Robert J. Feinstein
        Bradford J, Sandler
Email Addresses: rfeinstein@pszjlaw.com
            bsandler@pszjlaw.com

Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Attention:  Paul Steven Singerman
        Brian Rich
Email Addresses:  singerman@bergersingerman.com
            brich@bergersingerman.com

After the Effective Date, the Reorganized Debtors shall have the authority to send a notice to Entities that request to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.    *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.    *Entire Agreement.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.      *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://cases.omniagentsolutions.com/?clientId=CsgAAncz%252b6aNtnjd6rqTitY%252fx6XJshUmQi%252b3lKhKkn4uBdbe1U7fUh6SdWqR6nEa0B670DzpRv0%253d or the Bankruptcy Court's website at http:/www.flsb.uscourts.gov/bankruptcy.

K.      *Nonseverability of Plan Provisions.*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as applicable, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors and/or the Reorganized Debtors; and (3) nonseverable and mutually dependent.

L.      *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors shall be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys shall be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors shall have any liability for the violation of any applicable law (including the Securities Act), rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

M.      *Waiver or Estoppel.*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed before the Confirmation Date.

N.      *Closing of Chapter 11 Cases.*

Upon the occurrence of the Effective Date, the Reorganized Debtors shall be permitted to close all of the Chapter 11 Cases except for the Chapter 11 Case of Cinemex Holdings, and all contested matters and adversary proceedings relating to each of the Debtors, including objections to Claims, shall

be administered and heard in the Chapter 11 Case of Cinemex Holdings; *provided* that for purposes of sections 546 and 550 of the Bankruptcy Code, the Chapter 11 Cases shall be deemed to remain open until the Chapter 11 Case of Cinemex Holdings has been closed.

When all Disputed Claims have become Allowed or Disallowed and all remaining Cash has been distributed in accordance with the Plan, the Reorganized Debtors shall seek authority from the Bankruptcy Court to close the Chapter 11 Case of Cinemex Holdings in accordance with the Bankruptcy Code and the Bankruptcy Rules.

O.    *Creditor Default.*

On and after the Effective Date, any act or omission by a holder of a Claim or an Interest in contravention of the provisions of the Plan shall be deemed an event of default under the Plan. Upon an event of default, the Reorganized Debtors may seek to hold the defaulting party in contempt of the Confirmation Order and shall be entitled to reasonable attorneys' fees and costs in remedying such default.  Upon the finding of such a default by a creditor, the Bankruptcy Court may: (a) designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (b) enforce the Plan by order of specific performance; (c) award judgment against such defaulting creditor in favor of the Reorganized Debtors an amount, including interest, to compensate the Reorganized Debtors for the damages caused by such default; and (d) make such other order as may be equitable that does not materially alter the terms of the Plan.

[*Remainder of page intentionally left blank.*]

Dated: September __, 2020                    CINEMEX USA REAL ESTATE  HOLDINGS,
                                            INC., CINEMEX HOLDINGS USA, INC. and CB
                                            THEATER EXPERIENCE LLC


                                            _*/s/ Draft*_____


Prepared by:
QUINN EMANUEL URQUHART & SULLIVAN LLP
Patricia B. Tomasco (admitted pro hac vice)
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: 713-221-7000
Facsimile: 713-221-7100
Email: pattytomasco@quinnemanuel.com

–and–

Juan P. Morillo (FBN 135933)
1300 I Street, NW, Suite 900
Washington, D.C.  20005
Telephone: 202-538-8000
Facsimile: 202-538-8100
Email: juanmorillo@quinnemanuel.com

–and–

Eric D. Winston (admitted pro hac vice)
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: 203-443-3000
Facsimile: 203-443-3100
Email: ericwinston@quinnemanuel.com

–and–

BAST AMRON LLP
Jeffrey P. Bast (FBN 996343)
Brett M. Amron (FBN 148342)
One Southeast Third Avenue, Suite 1400
Sun Trust International Center
Miami, Florida 33131
Telephone: 305-379-7904
Facsimile: 305-379-7905
Email: jbast@bastamron.com  Email: bamron@bastamron.com

*Co-Counsel to the Debtors and Debtors in Possession*