**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

In Re:

CINEMEX USA REAL ESTATE HOLDINGS,
INC., CINEMEX HOLDINGS USA, INC.,
and CB THEATER EXPERIENCE LLC,

           Debtors.

_____/

Case No.  20-14695-LMI

Chapter 11

(Jointly Administered)

**OBJECTION OF MN THEATERS 2006 LLC TO THIRD AMENDED JOINT CHAPTER
11 PLAN OF REORGANIZATION OF CINEMEX USA REAL ESTATE HOLDINGS,
INC., CINEMEX HOLDINGS USA, INC. AND CB THEATER EXPERIENCE LLC**

        MN Theaters 2006 LLC ("MN Theaters"), by and through its undersigned counsel, files

this objection (this "Objection") to the *Third Amended Joint Chapter 11 Plan of Reorganization*

*of Cinemex USA Real Estate Holdings, Inc., Cinemex Holdings USA, Inc. and CB Theater*

*Experience LLC* [ECF 772] (the "Plan").[1]

**Summary of Objection**

        1.      Although the statutory goal of a chapter 11 case is to confirm a plan, a proposed

plan must comply with other parts of the Bankruptcy Code.  Indeed, the Bankruptcy Code contains

strict requirements that a plan of reorganization must satisfy before it is approved, including those

in section 1129(a)(3) of the Bankruptcy Code, which requires that a plan be "proposed in good

faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  The Plan as currently

proposed by Cinemex Holdings USA, Inc. ("Cinemex Holdings"), Cinemex USA Real Estate

Holdings, Inc. ("RE Holdings"), and CB Theater Experience LLC ("CB Theater", and collectively

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

with Cinemex Holdings and RE Holdings, the "Debtors") does not satisfy either of these requirements.

2.       First, the Plan is not proposed in good faith because it is not designed to effectuate a reorganization that maximizes value for creditors.  Rather, the Plan is a vehicle to further the interests of Grupo Cinemex S.A. de C.V. ("Grupo Cinemex")—the Debtors' controlling parent— and its other non-debtor affiliates, without disclosing significant terms and based on a value that is unsupported by competent evidence.  Moreover, there is no reason to believe that a bona fide sales process occurred that would create confidence in the Debtors' valuation.  Instead, the process appears to have been designed to return the Debtors' value to their affiliates on the cheap.

3.       The improper motives behind the Plan are laid bare by the all-encompassing releases and exculpations granted to Grupo Cinemex and its affiliate, Wine and Roses, S.A. de C.V. ("Wine & Roses").  Neither Grupo Cinemex nor Wine & Roses are providing sufficient value in these chapter 11 cases to warrant such releases and exculpations.  It appears that these releases and exculpations are designed to prevent creditors, such as MN Theaters, from bringing claims against these entities for their ongoing wrongful conduct (as discussed further below).

4.       Second, under the Plan, the Debtors and Wine & Roses are aiding and abetting Grupo Cinemex's ongoing violation of the Confirmation Order (as defined below) issued by the United States District Court for the Southern District of New York in an action by MN Theaters against Grupo Cinemex (the "District Court", and such case, the "District Court Case").  Under that order, Grupo Cinemex has been required to deliver to the U.S. Marshal in the Southern District of New York property sufficient to secure MN Theaters' more than $56 million claim against Grupo Cinemex.  Rather than comply, Grupo Cinemex has flouted it, taking the position that Mexican law prohibits any person or any entity from transferring property located in Mexico to

2

the United States to comply with a lawful United States court's order.[2]  The Plan aids and abets Grupo Cinemex's ongoing violation and contempt of the Confirmation Order by permitting Grupo Cinemex to receive a distribution from the Debtors to repay, among other things, the debtor-in-possession ("DIP") loans, which Grupo Cinemex will then take across the border to Mexico and will claim such funds are beyond the reach of United States law.

5.      Third, the Plan would enable fraudulent transfers.  The Plan allows Grupo Cinemex to compromise its right to repayment of the DIP loans.  Given MN Theaters' levy on all of Grupo Cinemex's property, including its right to repayment of the DIP loans, such a compromise would be nothing more than a transfer with the intent to hinder and delay MN Theaters' recovery and defraud MN Theaters, as the ultimate beneficiary of any such compromise would be Grupo Cinemex's affiliate and alter ego Wine & Roses.

6.      This would not be the first fraudulent transfer that the Debtors and its affiliates have effectuated using the bankruptcy laws in these proceedings.  Under this Court's orders, Grupo Cinemex had the obligation to provide certain DIP loans to the Debtors and a right to provide additional DIP loans.  But the Debtors' filings, including their monthly operating reports, show that Grupo Cinemex transferred that right to Wine & Roses so that Wine & Roses could provide (and has now provided) DIP loans to the Debtors.  This was done only after this Court held that MN Theaters' levy on the DIP Loan was not a violation of the automatic stay.  Thus, it is clear that Debtors, Group Cinemex, and Wine & Roses are engaged in a scheme not just to violate the District Court's lawful order, but this Court's rulings as well.  The fact that this was all done

---

[2] Grupo Cinemex's position is frivolous.  For example, under Grupo Cinemex's view, a Florida corporation or a life-long citizen and resident of Florida who was subject to a Florida's court's judgment to pay money could avoid complying with that order simply by transferring property to Mexico.  That is not the law.  MN Theaters expects that the District Court will shortly confirm that Grupo Cinemex is in contempt.  But regardless of whether it is in contempt, there is no question that Grupo Cinemex is currently in violation of that order and the Court should not authorize a Plan that assist in further violations of that order.

124121305.1

without Court approval—or even notice to the parties in interest—underscores the bad-faith nature of these parties' conduct.

7.      At bottom, the Plan appears to be nothing more than a vehicle for non-debtor Grupo Cinemex to use the Bankruptcy Code and this Court to benefit itself at the expense of its and the Debtors' creditors.  As such, it does not satisfy section 1129(a)(3)'s requirements and cannot be confirmed.

## Background

### A.      General Background.

8.      Prior to the Petition Date (as defined below), Debtor CB Theater and MN Theaters were parties to two unexpired leases (the "Leases") pursuant to which CB Theater, as tenant, leased nonresidential real property from MN Theaters, as landlord.  Grupo Cinemex guaranteed CB Theaters' obligations under the Leases.

9.      On April 25, 2020, Cinemex Holdings and RE Holdings filed petitions for relief under chapter 11 of the Bankruptcy Code.  On April 26, 2020 (collectively with April 25, 2020, the "Petition Date"), CB Theater filed a chapter 11 petition. Debtors continue to operate their businesses and manage their properties as debtors-in-possession.

10.     During these cases (the "Chapter 11 Cases"), the Court authorized Debtors to obtain debtor-in-possession ("DIP") financing from Grupo Cinemex in the aggregate amount of up to $11,620,000. (*See* ECF 249, 363.)  At no time have the Debtors sought, or the Court authorized, permission to receive DIP financing from any other entity.

### B.      The District Court Case.

11.     On July 29, 2020, MN Theaters commenced the District Court Case (Case No. 1:20-cv-05860-PKC) based on Grupo Cinemex's failure to comply with its obligations under the

guaranties.  [District Court Case ECF ("DC ECF") 12.]  On July 30, 2020, the District Court entered an order providing MN Theaters with prejudgment attachment to secure its ability to recover on a favorable judgment [DC ECF 2] (the "Attachment Order", a copy of which is attached hereto as **Exhibit A**).  By the terms of the Attachment Order and New York law, service of the Attachment Order on Grupo Cinemex on August 3, 2020, provided MN Theaters with a levy on Grupo Cinemex's property, including on its (i) ownership interests in Cinemex Holdings (the "Stock Rights") and (ii) right to repayment of the DIP Loan (the "DIP Repayment Rights", and together with the Stock Rights, the "Exempted Property").  *See* N.Y. C.P.L.R. § 6214(e); Ex. A at ¶ 3.  Under New York law, the levy originally was in place from August 3, 2020, through at least November 1, 2020 (the "Levy Period").  *See* N.Y. C.P.L.R. § 6214(e).

12.     On August 17, 2020, the Debtors commenced an adversary proceeding (Adv. Pro. No. 20-01310) (the "Adversary Proceeding") against MN Theaters and filed an emergency motion seeking to stay or enjoin the District Court Case.  The Debtors argued that such relief was warranted because "Grupo Cinemex has provided debtor-in-possession financing in this bankruptcy case and has expressed a willingness to fund a plan of reorganization," but that, "[a]s a result of MN Theaters' attachments, Grupo Cinemex has indicated through counsel that it will no longer provide funding to the Debtors."  [Adv. Proc. ECF 2 (the "Stay Order") at 3.][3]

13.     In ruling on the Debtors' motion, the Court found that "the proceedings in the District Court Case up to and including entry of the Attachment Order" and, therefore, including MN Theaters levy on the DIP Loan, "did not constitute violations of the automatic stay[.]"  [Stay Order at 3.]  As discussed further below, once the Court held that the levy on the DIP Loan was

---

[3] At that hearing, Debtors did not call any witnesses.  And they never put forward any evidence that their lone independent director supported the drastic remedy they sought.

not void, i.e., that it would stand, the Debtors and Grupo Cinemex decided to side-step both that order and the District Court's order, having Wine & Roses step into Grupo Cinemex's shoes to provide a DIP loan without Court authorization and to replace Grupo Cinemex as the affiliate offering to fund the Debtors' emergence from bankruptcy.

14.    On September 25, 2020, the District Court entered the Confirmation Order [DC ECF 48] (a copy of which is attached hereto as **Exhibit B**) confirming the Attachment Order, except with respect to the Exempted Property (as required by the Stay Order), and requiring Grupo Cinemex to "forthwith pay, transfer, or deliver any property to the U.S. Marshal . . . any property in the possession or custody of [Grupo Cinemex] except for the Exempted Property."  (*See* Confirmation Order at ¶¶ 2-3.).

15.    As described in MN Theaters' first *Motion for Relief from the Automatic Stay* [ECF 739] (the "First Motion for Relief"), Grupo Cinemex has refused to comply with the Confirmation Order.  (*See* First Motion for Relief at ¶¶ 14-15.)  Instead, Grupo Cinemex has taken the frivolous position that delivering its property in Mexico to the United States absent an order from a Mexican court would violate Mexican law.  Accordingly, it became necessary for MN Theaters to seek an extension of its levy on the DIP Loan, and—after MN Theaters received permission from this Court to do so—it asked the District Court for such an extension.  On October 30, 2020, the District Court entered an Order [DC ECF 75] extending the Levy Period on the Exempted Property through January 12, 2021.

16.    As of the date of this filing, Grupo Cinemex still has not delivered any property to the U.S. Marshal to serve as security in the District Court Case.  It is thus undisputed (and indisputable) that Grupo Cinemex has violated and continues to violate the Confirmation Order.

124121305.1

A motion for contempt against Grupo Cinemex for its willful noncompliance with the Confirmation Order is pending before the District Court. [DC ECF 57-59.]

**C.    Plan and Disclosure Statement.**

17.    On October 28, 2020, the Court entered an Order [ECF 777], which, among other things, approved the adequacy of the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Reorganization of Cinemex USA Real Estate Holdings, Inc., Cinemex Holdings USA, Inc. and CB Theater Experience LLC* [ECF 773] (the "Disclosure Statement") and scheduled a confirmation hearing regarding the Plan for November 24, 2020.

18.    The Plan contemplates the sale of the equity in the Reorganized Debtors (as defined in the Plan) (the "Sale") to Wine & Roses that would result in, among other things, the payment in full and in cash of all administrative claims arising in connection with the DIP (such claim held by Grupo Cinemex, the "DIP Claim"), except to the extent that Grupo Cinemex "agrees to a less favorable treatment, in full and final satisfaction, settlement, release and discharge of and in exchange for" the DIP Claim.  (*See* Plan at 5 (Definition of "DIP Loan Claims"), 18.).  Because Grupo Cinemex is under an obligation to deliver property to the U.S. Marshal, any distribution on the DIP Claim should be paid directly to the U.S. Marshal to avoid aiding and abetting a further violation and contempt of the Confirmation Order.  The Plan, however, provides that any distribution on the DIP Claim will be paid to Grupo Cinemex. (*See* Plan at 18.)

19.    The Plan also contemplates the Debtors repaying a "DIP Loan No. 2", which purports to be a commitment by Wine & Roses to fund some undisclosed amount of financing. (*See* Plan at 5.)  The Plan provides that "DIP Loan No. 2" is expressly subject to the Bankruptcy Court's approval (*see* Plan at 5 (Definition of "DIP Loan No. 2")), as required by the Bankruptcy Code, and to date, the Debtors have not sought this Court's approval for DIP Loan No. 2.

124121305.1

However, as disclosed in the Debtors' recently-filed monthly operating report, in September, ***the Debtors had already received $6,010,000 in "DIP Financing" from Wine & Roses*** (*see* ECF 791 at 19).  But even more shocking is that this payment appears to be in lieu of Grupo Cinemex's obligation to fund up to $11,620,000 in DIP Loans.  The Debtors' monthly operating reports through September show that the Debtors have received exactly $11,620,000 in DIP financing (the amount authorized by the Court).  But ***only $4,110,000*** has actually come from Grupo Cinemex.  In addition to the $6,010,000 from Wine & Roses, in August, the Debtors received another authorized DIP payment of $1.5 million from Operadora de Cinemas, S.A. de C.V. ("Operadora") (*see* ECF 664 at 3. 19), which is Grupo Cinemex's direct subsidiary.  (*See* Disclosure Statement at 60.)  The Plan appears to propose repaying Wine & Roses and Operadora for claims arising from these unauthorized financings (although Operadora is not included in the definition of "DIP Lenders" (see Plan at 5 (Definition of "DIP Lenders")).

20.    The Plan also provides for broad releases (the "Releases") and exculpations (the "Exculpations") of any and all claims and causes of action that could be brought against Wine & Roses and Grupo Cinemex, among others, arising from or related to, among other things, the Debtors, the Debtors' prepetition activities and operations, the Plan and any distributions thereunder, the Disclosure Statement, any "Restructuring Transaction", the Sale, and the Chapter 11 Cases.  (*See* Plan at 46-47; 11 (Definition of "Released Parties"; 6-7 (Definition of "Exculpated Parties").)  Although creditors may opt out of the Releases, there is no corresponding option to opt out of the Exculpations.  Thus, if the Plan is confirmed, even an objecting creditor will be deemed to have released Wine & Roses and Grupo Cinemex from any claims and causes of action related to their conduct in the Chapter 11 Cases, including the actions they have taken to hinder and delay MN Theaters from recovering against Grupo Cinemex.

8

124121305.1

## Objection

**A.     Legal Standard.**

21.     The requirements for confirmation of a chapter 11 plan are set out in section 1129 of the Bankruptcy Code.  "In order for a Chapter 11 plan to be confirmed, the proponent of the plan has the burden of establishing the requirements enumerated in 11 U.S.C. § 1129(a)(1)-(a)(16) by a preponderance of the evidence."  *In re Mableton, LLC*, Case No. 15-40124-EJC, 2017 WL 2480579, *10 (Bankr. S.D. Ga. June 7, 2017).  Bankruptcy courts also have an "independent duty" to determine whether a plan satisfies each confirmation requirement.  *Id*. at *11.  One of these, set forth in section 1129(a)(3), requires that a plan be "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).

22.     As the proponent of the Plan, the Debtors bear the burden of proving that the Plan satisfies all the requirements of confirmation under section 1129 of the Bankruptcy Code, including that the plan was proposed in good faith and not by any means forbidden by law.

23.     Whether a plan is filed in good faith "is determined in light of the totality of the circumstances."  *In re Proud Mary Marina Corp.*, 338 B.R. 114, 123 (Bankr. M.D. Fla. 2006).  Good faith requires a "reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Code."  *In re Malkus, Inc.*, No. 03-07711-GLP, 2004 WL 3202212, *3 (Bankr. M.D. Fla. Nov. 15, 2004).

24.     In assessing good faith, "courts have looked to whether the debtor intended to abuse the judicial process and the process of the reorganization provisions."  *In re Proud Mary Marina Corp.*, 338 B.R. at 123.  Denial of confirmation for lack of good faith is appropriate where "it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights."  *In re Bravo Enterprises USA, LLC*, 331 B.R. 459, 472 (Bankr. M.D. Fla.

124121305.1

2005).  Similarly, plans designed to benefit a debtor's insiders do not satisfy the good faith requirement.  *See*, *e.g.*, *In re Malkus, Inc.*, 2004 WL 3202212 at *3-4 (denying confirmation for lack of good faith where plan filed to benefit debtor's principal); *In re Davis Heritage GP Holdings, LLC*, 443 B.R. 448, 461-62 (Bankr. N.D. Fla. 2011) (denying confirmation for lack of good faith where plan designed for "sole and exclusive benefit" of debtors' insiders by reducing obligations on their guarantees).

25.     In addition to requiring good faith, section 1129(a)(3) also requires that a plan not be proposed "by any means forbidden by law." Subsection (a)(3) requires that a plan "comply with all applicable law, not merely bankruptcy law."  *In re Jandous Elec. Const. Corp.*, 115 B.R 46, 51 (Bankr. S.D.N.Y. 1990).  A plan "must comply with state law unless it has been preempted by the Bankruptcy Code."  *See In re Alaska Fur Gallery, Inc.*, No. A09-00196-DMD, 2011 WL 4904425, *7-8 (Bankr. D. Alaska Apr. 29, 2011) (denying confirmation where proposed transfer under plan was likely a fraudulent transfer under state law).

**B.     The Plan Fails to Comply Section 1129(a)(3)'s Requirement that It Be Proposed in Good Faith and Not by any Means Forbidden by Law.**

### 1.    The Debtors' Plan Benefits Their Controlling Parent

26.     Here, the Debtors' Plan is designed solely to benefit their controlling parent, Grupo Cinemex, and to insulate it and the other entities it controls from liability, despite the lack of value such entities contributed in these Chapter 11 Cases.  At a high level, the Plan proposes a stock sale to Wine & Roses, an entity under common control with Grupo Cinemex and, upon information and belief, formed for the sole purpose of acquiring the stock of the Reorganized Debtors (as defined in the Plan).  This mere shuffling of the Debtors from one group of entities controlled by Grupo Cinemex to another (which is likely Grupo Cinemex's alter ego), without any meaningful consideration being provided by Wine & Roses, is not a legitimate reorganization.

124121305.1

27.     The Debtors have failed to disclose many of the material binding terms of the transaction documents regarding the Sale. Accordingly, no party has any sense of the terms controlling the Sale, what, if any, non-cash consideration is implicated in the Sale, including any assumed liabilities, and what tax or other benefits flow from the Sale. For example, the Debtors have not advised the Court or any of the creditors whether any of the Debtors' net operating losses ("NOLs") will be preserved by the Sale, and, if so, what benefit that conveys to Wine & Roses. If the NOLs are preserved, Wine & Roses likely will receive far more value from the transaction with the Debtors than it is paying. Instead of providing this critical information, the Plan provides only that, following the Sale, the Debtors' equity, assets, and operations will be controlled by the exact same equity owners; they will just be held by an entity with a new name.

28.     The only parties that benefit from that transaction are the Debtors' shareholders.[4] Meanwhile, general unsecured creditors will likely receive only pennies on the dollar, will obtain no benefit from the Sale or any purchase price paid by Wine & Roses, and will not benefit from the NOLs that will profit Wine & Roses.

29.     The bad faith purpose of the Plan is glaring in light of the Releases and Exculpations, and particularly given that creditors cannot opt out of the Exculpations, which are substantively identical in effect to the Releases. There is simply no justification for these provisions of the Plan. Neither Wine & Roses nor Grupo Cinemex are providing sufficient value to warrant the benefit of the Releases and Exculpations, particularly in light of the fact that most of the Debtors' creditors are receiving pennies on the dollar. These provisions are a transparent

---

[4] On November 10, 2020, MN Theaters served Debtors, Wine & Roses, and Grupo Cinemex with discovery on topics related to this objection. Wine & Roses and Grupo Cinemex have not yet agreed to provide relevant discovery on these issues. Remarkably, Debtors' counsel initially took that position that these discovery requests were simultaneously **premature** because MN Theaters had not yet filed this objection and **too late** because confirmation was scheduled for November 24, 2020. The parties are in ongoing discussions regarding discovery, but MN Theaters has reserved all rights with respect thereto, including the right to request an adjournment of the confirmation hearing.

effort to shield Grupo Cinemex and Wine & Roses from misconduct in these proceedings.  Indeed, the releases and exculpations will directly harm MN Theaters by potentially shielding Grupo Cinemex and Wine & Roses from consequences for the terms of the Plan that, as discussed further below, aid and abet Grupo Cinemex's ongoing contempt of the Confirmation Order and effectuate fraudulent transfers.

30.    The theme of the Plan is to retain all the value available in these Chapter 11 Cases through a secret and hurried sale to the Debtors' shareholders/affiliates, all while having the Plan provide for Releases and Exculpations to insulate those entities for no value and without any option to opt-out.  "This is the opposite of the intended purpose for Chapter 11 relief and is not good faith. Chapter 11 was not designed for the purpose of protecting assets and interests of non-debtor parties under the guise of a legitimate plan of reorganization."  *In re Davis Heritage GP Holdings, LLC*, 443 B.R. at 46.  Because the Plan has not been proposed in good faith it cannot be confirmed.  *See, e.g., In re Malkus, Inc.*, 2004 WL 3202212 at *3-4; *In re Davis Heritage GP Holdings, LLC*, 443 B.R. at 461-62.

**2.    The Debtors' Plan Aids and Abets An Ongoing Violation and Contempt of the Confirmation Order and Authorizes Fraudulent Transfers.**

31.    By providing for distribution on the DIP Claim to Grupo Cinemex, the Plan perpetuates Grupo Cinemex's ongoing violation of and contempt of the District Court's Confirmation Order.  It also authorizes the Debtors, Grupo Cinemex, and Wine & Roses to commit a fraudulent transfer.

32.    *First*, as described above, any distribution received by Grupo Cinemex on the DIP Claim is subject to the Confirmation Order, and Grupo Cinemex will be required to turn over such distribution to the U.S. Marshal.  However, Grupo Cinemex will not do so.  Rather, consistent with its ongoing violation of the Confirmation Order, Grupo Cinemex will simply take that distribution

12

over the border to Mexico, never to be seen again.  Allowing the distribution on the DIP Claim to be paid to Grupo Cinemex rather than the U.S. Marshal effectively licenses Grupo Cinemex to abscond with the funds to Mexico and continue its refusal to comply with the District Court's orders.  The Plan as proposed would allow Grupo Cinemex to continue this contempt and further frustrate MN Theaters' claims against it.[5]

33.    The Plan also runs counter to applicable non-bankruptcy law and is in bad faith because it authorizes Grupo Cinemex and the Debtors to "agree to less favorable treatment" than payment in full of the DIP Claim.  (*See* Plan at 18.)  This authorization allows Grupo Cinemex and the Debtors to commit a blatant violation of New York law.  Specifically, any reduction or compromise of the DIP Claim, which is subject to MN Theaters' levy pursuant to the Attachment Order, would be a voidable fraudulent transfer, as it would transfer the value of the DIP Repayment Rights from Grupo Cinemex to its affiliate, Wine & Roses, with actual intent to hinder, delay, and defraud MN Theaters.  *See*, *e.g.*, N.Y. Debt. & Cred. Law § 273(a)(1) (making a transfer voidable of it is made with "actual intent to hinder, delay or defraud any creditor of the debtor").  The Court should not allow the Plan to be used as a vehicle for a fraudulent transfer.

34.    The same is true for the value of any NOLs the Plan purports to provide to Wine & Roses.  Those NOLs exist for the benefit of the Debtors' shareholders, Grupo Cinemex, and constitute value in the Stock Rights that are subject to the Attachment Order.  To the extent the Plan purports to preserve that value for Wine & Roses for no consideration, that is a further

---

[5] Seeking to avoid raising this objection, on November 9, 2020, MN Theaters requested that both the Debtors and Grupo Cinemex agree to make any distributions under the Plan to Grupo Cinemex directly to the U.S. Marshal, so that these funds could be secure.  It was not until nearly a week later that Debtors' counsel suggested that Debtors might consent to this.  A copy of MN Theaters' counsel's November 9, 2020 letter is attached hereto as **Exhibit C**. To the extent that parties are able to agree on a revision to the Plan that requires that the full amount of the DIP Loans be transferred to the U.S. Marshal, rather than to Grupo Cinemex and its affiliates, MN Theaters will inform the Court.

fraudulent transfer under New York law by Grupo Cinemex.  Again, the Plan cannot be proposed in good faith when it countenances fraudulent transfers.

35.    Finally, the Plan contemplates transactions that are forbidden by the Bankruptcy Code.  Specifically, the Plan contemplates the repayment of DIP Loan No. 2 in full and in cash to Wine & Roses, even though the Debtors never sought authority for post-petition borrowings from any party other than Grupo Cinemex.  The financing by Wine & Roses (and Operadora) were in clear violation of the Bankruptcy Code.  11 U.S.C. § 364(b), (c), and (d) (providing that a debtor may obtain credit outside the ordinary course only if authorized by the bankruptcy court after notice and a hearing).  Accordingly, using the Plan to repay those loans to Wine & Roses and Operadora not only furthers improper transactions in violation of the Bankruptcy Code, but also rewards Grupo Cinemex—which owns Operadora and is believed to be the alter ego of Wine & Roses—for violating this Court's DIP orders and scheming to evade the District Court's orders.

36.    Moreover, repayment of the DIP financing provided by Wine & Roses (and Operadora) to those parties would complete yet another fraudulent transfer.  It was Grupo Cinemex that was authorized to provide that funding.  To the extent that Grupo Cinemex transferred that right to Wine & Roses and Operadora, that is yet another fraudulent transfer.  Any confirmable plan must provide that those funds, likewise, when repaid by the Debtors, would be directed to the U.S. Marshal.

## Conclusion

37.    For the reasons set forth above, the Plan does not satisfy the requirements for confirmation, including those pursuant to section 1129(a)(3) of the Bankruptcy Code, as the Plan was not proposed in good faith and would result in violations of non-bankruptcy law.  Accordingly, confirmation of the Plan should be denied.

124121305.1

WHEREFORE, MN Theaters respectfully requests that the Court enter an order (i) denying

confirmation of the Plan and (ii) granting such other and further relief as is just and proper.

Dated: November 16, 2020

Respectfully submitted,

/s/ David L. Gay
David L. Gay
Florida Bar No. 839221
Carlton Fields, P.A.
100 SE 2nd Street, Suite 4200
Miami, FL 33131
Telephone:  305-530-0050
Facsimile:  305-530-0055
E-mail:  dgay@carltonfields.com

and

KATTEN MUCHIN ROSENMAN LLP

/s/ Peter A. Siddiqui
Peter A. Siddiqui
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone: 312-902-5455
Facsimile: 312-902- 1061
peter.siddiqui@katten.com

*Counsel to MN Theaters 2006 LLC*

124121305.1

**<u>CERTIFICATE OF SERVICE</u>**

I certify that, on November 16th, 2020, a true and correct copy of the foregoing *Objection of MN Theaters 2006 LLC to Third Amended Joint Chapter 11 Plan of Reorganization of Cinemex USA Real Estate Holdings, Inc., Cinemex Holdings USA, Inc. and CB Theater Experience LLC* was served via ECF on all parties who receive service in these jointly administered Bankruptcy case via electronic case filings.

_____*/s/ David L. Gay*_____

124121305.1