UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

CINEMEX USA REAL ESTATE        Chapter 11
HOLDINGS, INC., CINEMEX
HOLDINGS USA, INC., and CB        Case No. 20-14695-LMI
THEATER EXPERIENCE LLC,[1]

    Debtors.                  (Jointly  Administered)

_____/

**DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF
CONFIRMATION OF THE DEBTORS' THIRD AMENDED JOINT
PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE
BANKRUPTCY CODE AND OMNIBUS REPLY TO OBJECTIONS THERETO**

---

[1]   The Debtors in these cases and the last four digits of each Debtor's federal tax identification number are as follows:
(1) Cinemex USA Real Estate Holdings, Inc. (2194); (2) Cinemex Holdings USA, Inc. (5502); and (3) CB Theater
Experience, LLC (0563).  The address for the Debtors is 175 South West 7th Street, Suite 1108, Miami, Florida 33130.

# TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ................................................................................. 1

**BACKGROUND** ........................................................................................................ 2

**I.**　　**PROCEDURAL BACKGROUND.** ...................................................................... 2

**II.**　　**SOLICITATION AND NOTIFICATION PROCESS.** ......................................... 3

**ARGUMENT** ............................................................................................................. 5

**III.**　**THE PLAN SATISFIES EACH REQUIREMENT FOR CONFIRMATION.** ........... 5

　　A.　The Plan Complies with the Applicable Provisions of the Bankruptcy
　　　　Code (Section 1129(a)(1)). ..............................................................................5

　　B.　The Debtors Have Complied with the Applicable Provisions of the
　　　　Bankruptcy Code (Section 1129(a)(2)). ............................................................ 13

　　C.　The Debtors Proposed the Plan in Good Faith and Not by Any Means
　　　　Forbidden by Law (Section 1129(a)(3)). ........................................................... 15

　　D.　The Plan Provides That the Debtors' Payment of Professional Fees and
　　　　Expenses Are Subject to Court Approval (Section 1129(a)(4)). .......................... 19

　　E.　The Debtors Have Complied with the Bankruptcy Code's Governance
　　　　Disclosure Requirement (Section 1129(a)(5)). ................................................... 21

　　F.　The Plan Does Not Require Government Regulatory Approval of Rate
　　　　Changes (Section 1129(a)(6)). .......................................................................... 22

　　G.　The Plan Is in the Best Interests of Holders of Claims and Interests
　　　　(Section 1129(a)(7)). ........................................................................................ 22

　　H.　The Plan Is Confirmable Notwithstanding the Requirements of Section
　　　　1129(a)(8) of the Bankruptcy Code. .................................................................. 23

　　I.　The Plan Complies With Statutorily Mandated Treatment of
　　　　Administrative and Priority Tax Claims (Section 1129(a)(9)). ........................... 23

　　J.　At Least One Impaired Class of Claims Has Accepted the Plan, Excluding
　　　　the Acceptances of Insiders (Section 1129(a)(10)). ............................................ 25

　　K.　The Plan Is Feasible and Is Not Likely to Be Followed by the Need for
　　　　Further Financial Reorganization (Section 1129(a)(11)). .................................... 25

　　L.　The Plan Provides for the Payment of All Fees Under 28 U.S.C. § 1930
　　　　(Section 1129(a)(12)). ...................................................................................... 26

　　M.　The Plan Provides for the Payment of All Retiree Benefits (Section
　　　　1129(a)(13)). .................................................................................................... 27

　　N.　Section 1129(a)(14) Through Section 1129(a)(16) of the Bankruptcy Code
　　　　Do Not Apply to the Plan. ............................................................................... 27

　　O.　The Plan Satisfies the "Cram Down" Requirements of Section 1129(b) of

the Bankruptcy Code. ........................................................................27

P.    The Plan Complies with the Other Provisions of Section 1129 of the
      Bankruptcy Code (Sections 1129(c)-(e)). ........................................30

**IV.   THE PLAN'S RELEASE, EXCULPATION, AND INJUNCTION
        PROVISIONS ARE APPROPRIATE AND COMPLY WITH THE
        BANKRUPTCY CODE. ................................................................... 31**

A.    The Debtor Release Is Appropriate and Complies with the Bankruptcy
      Code. ..............................................................................................31

B.    The Third-Party Release Is Consensual, Appropriate, and Complies with
      the Bankruptcy Code. .....................................................................33

C.    The Exculpation Provision Is Appropriate and Complies with the
      Bankruptcy Code. ...........................................................................37

D.    The Injunction Provision Is Appropriate and Complies with the
      Bankruptcy Code. ...........................................................................39

**V.    THE REMAINING OBJECTIONS ARE WITHOUT MERIT AND
        SHOULD BE OVERRULED. ........................................................... 40**

**WAIVER OF BANKRUPTCY RULE 3020(E) ................................................... 40**

**CONCLUSION ............................................................................................... 40**

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ad Hoc Group of Vitro Noteholders v. Vitro S.A.B. de C.V.* (*In re Vitro S.A.B. de C.V.*),
  701 F.3d 1031 (5th Cir. 2012) .......................................................................34

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
  526 U.S. 434 (1999) ...........................................................................22, 28

*DISH Network Corp. v. DBSD N. Am., Inc.*
  (*In re DBSD N. Am., Inc.*), 634 F.3d 79 (2d Cir. 2011)...................................28

*Heartland Federal Savings & Loan Ass'n v. Briscoe Enter., Ltd. II*
  (*In re Briscoe Enter., Ltd. II*), 994 F.2d 1160 (5th Cir. 1993) .........................5

*In re 203 N. LaSalle St. Ltd. P'ship*,
  190 B.R. 567, 585 (Bankr. N.D. Ill. 1995) ...................................................29

*In re AJ Town Centre, LLC*,
  2012 WL 2524731 (Bankr. D. Ariz. Jan. 5, 2012) ........................................37

*In re Aleris Int'l, Inc.*,
  2010 WL 3492664 (Bankr. D. Del. May 13, 2010) ........................................29

*In re Armstrong World Indus., Inc.*,
  348 B.R. 136 (D. Del. 2006). .............................................................25, 30

*In re Armstrong World Indus., Inc.*,
  432 F.3d 507 (3d Cir. 2005)......................................................................28

*In re Aztec Co.*,
  107 B.R. 585 (Bankr. M.D. Tenn. 1989) .....................................................29

*In re Bigler LP*,
  442 B.R. 537 (Bankr. S.D. Tex. Nov. 24, 2010) ...........................................32

*In re Block Shim Dev. Company-Irving*,
  939 F.2d 289 (5th Cir. 1991)......................................................................16

*In re Camp Arrowhead, Ltd.*,
  451 B.R. 678 (Bankr. W.D. Tex. Mar. 21, 2011) ..........................................39

*In re Chemtura Corp.*,
  439 B.R. 561 (Bankr. S.D.N.Y. 2010) ........................................................38

*In re Cypresswood Land Partners, I*,
  409 B.R. 396 (Bankr. S.D. Tex. Jan. 20, 2009) ..................................5, 13, 16

*In re Davis Heritage GP Holdings, LLC*,
    443 B.R. 448 (Bankr. N.D. Fla. 2011) .........................................................................17

*In re DiMaria*,
    202 B.R. 634 (Bankr. S.D. Fla. 1996) ......................................................................... 5

*In re Dow Corning Corp.*,
    280 F.3d 648 (6th Cir. 2002) ......................................................................................34

*In re Drexel Burnham Lambert Group Inc.*,
    138 B.R. 723 (Bankr. S.D.N.Y. 1992) ........................................................................26

*In re Enron Corp.*,
    2004 WL 6075307 (Bankr. S.D.N.Y. July 15, 2004) ...................................................25

*In re Freymiller Trucking, Inc.*,
    190 B.R. 913 (Bankr. W.D. Okla. 1996) ....................................................................29

*In re General Dev. Corp.*,
    135 B.R. 1002 (Bankr. S.D. Fla. 1991) ......................................................................16

*In re General Homes Corp.*,
    134 B.R. 853 (Bankr. S.D. Tex. 1991) ..................................................................32, 34

*In re Heritage Org., LLC*,
    375 B.R. 230 (Bankr. N.D. Tex. Aug. 31, 2007) ........................................................32

*In re Idearc Inc.*,
    423 B.R. 138 (Bankr. N.D. Tex. 2009) ......................................................................29

*In re ION Media Networks, Inc.*,
    419 B.R. 585 (Bankr. S.D.N.Y. Nov. 24, 2009) .........................................................28

*In re IPC Atlanta Ltd. P'Ship*,
    142 B.R. 547 (Bankr. N.D. Ga. 1992). ......................................................................26

*In re J T Thorpe Co.*,
    308 B.R. 782 (Bankr. S.D. Tex. 2003). ...................................................................... 5

*In re Landing Assocs.*,
    157 B.R. 791 (Bankr. W.D. Tex. Jul. 19, 1993) ....................................................21, 25

*In re Lason, Inc.*,
    300 B.R. 227 (Bankr. D. Del. Oct. 15, 2003) .............................................................22

*In re Lernout & Hauspie Speech Prods., N.V.*,
    301 B.R. 651  (Bankr. D. Del. 2003) .........................................................................29

*In re Lisanti Foods, Inc.*,
    329 B.R. 491 (D. N.J. 2005) ......................................................................................20

*In re Malkus*,
    2004 WL 3202212 (Bankr. M.D. Fla. Nov. 15, 2004) ..................................................17

*In re Marvel Entm't Grp., Inc.*,
    273 B.R. 58 (D. Del. 2002) ....................................................................................18

*In re Mirant Corp.*,
    348 B.R. 725 (Bankr. N.D. Tex. Aug. 9, 2006) ...........................................................32

*In re Neff*,
    60 B.R. 448 (Bankr. N.D. Tex. 1985) *aff'd,* 785 F.2d 1033 (5th Cir. 1986) ...................22

*In re Nutritional Sourcing Corp.*,
    398 B.R. 816 (Bankr. D. Del. 2008) ......................................................................... 5

*In re One Times Square Assocs. Ltd. P'ship*,
    159 B.R. 695 (Bankr. S.D.N.Y. 1993) ......................................................................25

*In re Piper Aircraft Corp.*,
    244 F.3d 1289 (11th Cir. 2001) ........................................................................15, 16

*In re Porcelli*,
    319 B.R. 8 (Bankr. M.D. Fla. 2004) ......................................................................... 6

*In re PWS Holding Corp.*,
    228 F.3d 224 (3d. Cir. 2000) ..........................................................................38, 39

*In re S & W Enterprise,*
    37 B.R. 153 (Bankr. N.D. Ill. 1984) ......................................................................... 5

*In re Seaside Eng'g & Surveying, Inc.*,
    780 F.3d 1070 (11th Cir. 2015) ...........................................................15, 16, 34, 36

*In re Sentry Operating Co. of Texas, Inc.*,
    264 B.R. 850 (Bankr. S.D. Tex. Jun. 19, 2001) ........................................................ 6

*In re SGPA, Inc.* ,
    2001 WL 34750646 (Bankr. M.D. Pa. Sept. 28, 2001) ................................................25

*In re SM 104 Ltd.*,
    160 B.R. 202 (Bankr. S.D. Fla. 1993) ......................................................................16

*In re Star Ambulance Service, LLC*,
    540 B.R. 251 (Bankr. S.D. Tex. Aug. 24, 2015). .......................................................26

*In re Station Casinos, Inc.*,
    2010 WL 11492265 (Bankr. D. Nev. Aug. 27, 2010). ..................................................27

*In re Sun Country Dev., Inc.*,
    764 F.2d 406 (5th Cir. 1985). ...............................................................................16

*In re Texaco, Inc.*,
    84 B.R. 893 (Bankr. S.D.N.Y. 1988), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y.
    1988) ..............................................................................................................15

*In re Texas Extrusion Corp.*,
    844 F.2d 1142 (5th Cir. 1988) ..............................................................................22

*In re T-H New Orleans Ltd. P'ship*,
    116 F.3d 790 (5th Cir. 1997) ........................................................25, 26

*In re The Leslie Fay Cos., Inc.*,
    207 B.R. 764 (Bankr. S.D.N.Y. 1997) ...................................................26

*In re Toy & Sports Warehouse, Inc.*,
    37 B.R. 141 (Bankr. S.D.N.Y. 1984) ..................................................5, 13

*In re Transwest Resort Props., Inc.*,
    554 B.R. 894 (D. Ariz. 2016) ................................................................25

*In re United Marine*,
    197 B.R. 942 (Bankr. S.D. Fla. 1996) ...................................................16

*In re W.R. Grace & Co.*,
    475 B.R. 34 (D. Del. 2012) ..................................................................... 6

*In re Wool Growers Cent. Storage Co.*,
    371 B.R. 768 (Bankr. N.D. Tex. Jul. 19, 2007) ....................................34

*JP Morgan Chase Bank, N.A. v. Charter Commc'ns Operating, LLC (In re Charter Commc'ns)*,
    419 B.R. 221 (Bankr. S.D.N.Y. 2009) ..................................................25

*John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Associates*,
    987 F.2d 154 (3d. Cir. Jan. 22, 1993) ...................................................28

*Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'Ship (In re Ambanc La Mesa Ltd. P'ship)*,
    115 F.3d 650 (9th Cir. 1997) .................................................................28

*Matter of Cajun Elec. Power Co-op., Inc.*,
    150 F.3d 503 (5th Cir. 1998) ...........................................................13, 20

*Matter of Foster Mortg. Corp.*,
    68 F.3d 914 (5th Cir. 1995) ...................................................................33

*Matter of Transwest Resort Props., Inc.*,
    881 F.3d 724 (9th Cir. 2018) .................................................................25

*McCormick v. Banc One Leasing Corp.*,
    49 F.3d 1524 (11th Cir. 1995) .........................................................15, 16

*Olympia & York Florida Equity Corp. v. Bank of N.Y. (In re Holywell Corp.)*,
    913 F.2d 873 (11th Cir. 1990) ................................................................ 6

*Pub Fin. Corp. v. Freeman*
    712 F.3d 219 (5th Cir. 1983) .................................................................16

*United Dominion Indus. Inc. v. United States*,
    532 U.S. 822 (2001) ..............................................................................16

## STATUTES

11 U.S.C. § 328 ...................................................................................................................20

11 U.S.C. § 330 ...................................................................................................................20

11 U.S.C. § 365 ...................................................................................................................10

11 U.S.C. § 365(b)(1) ..........................................................................................................11

11 U.S.C. § 503(b) ...............................................................................................................24

11 U.S.C. § 507(a)(1) ...........................................................................................................24

11 U.S.C. § 507(a)(2) ...........................................................................................................24

11 U.S.C. § 507(a)(4) ...........................................................................................................24

11 U.S.C. § 507(a)(7) ...........................................................................................................24

11 U.S.C. § 507(a)(8) ...........................................................................................................24

11 U.S.C. § 1107(a) ...............................................................................................................2

11 U.S.C. § 1108 ...................................................................................................................2

11 U.S.C. § 1114 .................................................................................................................27

11 U.S.C. § 1122 .....................................................................................................5, 6, 7, 13

11 U.S.C. § 1122(a) ...............................................................................................................6

11 U.S.C. § 1123 .......................................................................................................5, 10, 13

11 U.S.C. § 1123(a) .......................................................................................................7, 8, 9

11 U.S.C. § 1123(a)(1) ......................................................................................................7, 8

11 U.S.C. § 1123(a)(2) ......................................................................................................7, 8

11 U.S.C. § 1123(a)(3) ......................................................................................................7, 8

11 U.S.C. § 1123(a)(4) ...........................................................................................................8

11 U.S.C. § 1123(a)(5) ......................................................................................................8, 9

11 U.S.C. § 1123(a)(6) ...........................................................................................................9

11 U.S.C. § 1123(a)(7) ......................................................................................................9, 10

11 U.S.C. § 1123(a)(8) .........................................................................................................10

11 U.S.C. § 1123(b) ...............................................................................................10, 31, 33

11 U.S.C. § 1123(b)(1) .............................................................................................10

11 U.S.C. § 1123(b)(2) .........................................................................................10, 11

11 U.S.C. § 1123(b)(3) .........................................................................................11, 31

11 U.S.C. § 1123(b)(4) .............................................................................................11

11 U.S.C. § 1123(b)(5) .............................................................................................11

11 U.S.C. § 1123(b)(6) ...................................................................................11, 12, 31

11 U.S.C. § 1125 ..................................................................................................13, 14

11 U.S.C. § 1125(a) .................................................................................................14

11 U.S.C. § 1125(b) ...............................................................................................13, 14

11 U.S.C. § 1125(c) .................................................................................................14

11 U.S.C. § 1126 ..............................................................................................3, 14, 17

11 U.S.C. § 1126(d) .................................................................................................15

11 U.S.C. § 1129 ..................................................................................................5, 27

11 U.S.C. § 1129(a)(1) ...........................................................................................5, 13

11 U.S.C. § 1129(a)(2) .............................................................................................15

11 U.S.C. § 1129(a)(3) ................................................................................15, 16, 17, 38

11 U.S.C. § 1129(a)(4) ...........................................................................................19, 20

11 U.S.C. § 1129(a)(5) .............................................................................................21

11 U.S.C. § 1129(a)(6) .............................................................................................22

11 U.S.C. § 1129(a)(7) ...........................................................................................22, 23

11 U.S.C. § 1129(a)(8) ...........................................................................................23, 27

11 U.S.C. § 1129(a)(9) ...............................................................................19, 23, 24, 25

11 U.S.C. § 1129(a)(10) .............................................................................................25

11 U.S.C. § 1129(a)(11) ...........................................................................................25, 26

11 U.S.C. § 1129(a)(12) .............................................................................................26

11 U.S.C. § 1129(a)(13) .............................................................................................27

11 U.S.C. § 1129(a)(14) .............................................................................................27

11 U.S.C. § 1129(a)(15) ..................................................................................................27

11 U.S.C. § 1129(a)(16) ..................................................................................................27

11 U.S.C. § 1129(b) ................................................................... 23, 27, 28, 29, 30, 32

11 U.S.C. § 1129(c) ..........................................................................................................30

11 U.S.C. § 1129(d) ..........................................................................................................30

11 U.S.C. § 1129(e) ..........................................................................................................30

28 U.S.C. § 157(b)(2)(L). ...............................................................................................38

28 U.S.C. § 1930 ...............................................................................................................26

## RULES

Fed. R. Bankr. P. 1015(b) .............................................................................................. 2

Fed. R. Bankr. P. 3020(e) ..............................................................................................40

## OTHER AUTHORITIES

5 Collier on Bankruptcy 1129.02[11]
    (15th ed. 1992) .........................................................................................................26

H.R. Rep. No. 95-595,
    95th Cong., 1st Sess. 412 (1977) ......................................................................5, 13

S. Rep. No. 95-989, 95th Cong.,
    2d Sess. 126 (1978) .............................................................................................5, 13

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this memorandum of law (this "Memorandum") in support of confirmation of the *Third Amended Joint Chapter 11 Plan of Reorganization of Cinemex USA Real Estate Holding, Inc., Cinemex Holdings USA, Inc., and CB Theater Experience LLC* (ECF No. 779) (as modified, amended, or supplemented from time to time, the "Plan").[2] In support of confirmation of the Plan, the Debtors respectfully state as follows:

## Preliminary Statement

1.     The Debtors' reorganization has been marked by consistent progress—and, ultimately, global consensus amongst key stakeholders—nearly every step of the way. Facing the unprecedented COVID-19 pandemic, the Debtors commenced these cases. Immediately thereafter, the Debtors turned their attention to building broad consensus with the rest of their stakeholder base, including the Official Committee of Unsecured Creditors (the "Committee").

2.     After nearly seven months of hard-fought negotiations with the Committee, landlords, studios, and other creditors, the Debtors have a consensual Plan, supported by the Committee and numerous of the Debtors' landlords. Under the Plan, the Debtors will emerge as a leaner, well-capitalized company, having consummated a transformative restructuring in less than eight months—no small or easy task for a movie theater business in the midst of a pandemic. The Debtors have also worked diligently and in good faith to resolve all formal and informal objections to confirmation of the Plan (the "Objections" and, such parties, the "Objectors").[3] *As of the filing of this Memorandum, all objections except that filed by MN Theaters 2006, LLC at*

---

[2]   Capitalized terms used but not defined in this Memorandum have the meanings ascribed to them in the Plan.

[3]   A summary chart of Objections is attached hereto as **Exhibit A** (the "Objection Chart"). Many of the objections relate to cure amounts for executory contracts and unexpired leases. The Debtors are working with the parties to verify the cure amounts. The Debtors intend to request at the Confirmation Hearing that the Court schedule hearings to determine unresolved cure amounts approximately ten days after the conclusion of the Confirmation Hearing.

ECF No. 863 ("*MN Theaters*" and the "*MN Objection*") have been substantively resolved by consent. As detailed herein, the Bankruptcy Court should overrule the MN Objection outright.

3.       In light of the support from all key stakeholders, the Plan's satisfaction of all confirmation requirements under the Bankruptcy Code, and for the reasons set forth herein and the evidence to be presented at the Confirmation Hearing, the Debtors respectfully request that the Bankruptcy Court confirm the Plan.

## Background

## I.    PROCEDURAL BACKGROUND.

4.       On the Petition Dates, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On April 28, 2020, the Bankruptcy Court entered an order (ECF No. 9) authorizing the joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  On May 22, 2020, the United States Trustee for the Southern District of Florida appointed the Committee (ECF No. 140).

5.       On October 29, 2020, the Bankruptcy Court entered the *Order (I) Approving Adequacy of Disclosure Statement; (II) Setting Hearing on Confirmation of Plan; (III) Approving Solicitation, Form of Ballot, Notices and Notice Procedures with Respect to Confirmation; (IV) Setting Hearing on Fee Applications; (V) Setting Various Deadlines and (VI) Describing Plan Proponent's Obligations* (ECF No. 777) (the "Disclosure Statement Order").  The Disclosure Statement Order approved, among other things, the proposed procedures for solicitation of the Plan and related notices, forms, and ballots (collectively, the "Solicitation Packages").

6.       The deadline for parties in interest to file Objections to confirmation of the Plan

was November 18, 2020, at 4:00 p.m., prevailing Eastern Time (the "Plan Objection Deadline"), and the deadline for all Holders of Claims and Interests entitled to vote on the Plan to cast their ballots was November 18, 2020, at 4:00 p.m., prevailing Eastern Time (the "Voting Deadline"). On November 20, 2020, the Debtors filed the (a) *Certificate of Proponent of Plan on Acceptances of Plan, Report on Amount to be Deposited, Certificate of Amount Deposited and Fee Payment of Fees* (ECF No. 909) (the "Voting Report"), and the (b) *Confirmation Declaration of Jose Leonardo Marti* (ECF No. 910) (the "Confirmation Declaration"), which are summarized below in detail. The hearing on confirmation of the Plan (the "Confirmation Hearing") is scheduled for November 24, 2020, at 9:30 a.m., prevailing Eastern Time. Prior to the Confirmation Hearing, the Debtors will submit a proposed order confirming the Plan (the "Proposed Confirmation Order").

## II.   SOLICITATION AND NOTIFICATION PROCESS.

7.      In compliance with the Bankruptcy Code, only Holders of Claims and Interests in Impaired Classes receiving or retaining property on account of such Claims or Interests were entitled to vote to accept or reject the Plan.[4] Holders of Claims and Interests were not entitled to vote if their rights are Unimpaired under the Plan (in which case they were conclusively deemed to accept the Plan) or Impaired and not entitled to receive a distribution under the Plan (in which case they were conclusively deemed to reject the Plan). The voting results for Impaired Classes, as reflected in the Voting Report, are summarized as follows:

| Class | Class Name | ACCEPT | | REJECT | | Result |
|---|---|---|---|---|---|---|
| | | Number (% of Voting) | Amount (% of Voting) | Number (% of Voting) | Amount (% of Voting) | |
| 3 | Syndicated Bank Loan Claims | 100% | 100% | 0% | 0% | Accept |

---

[4]  *See* 11 U.S.C. § 1126.

| Class | Class Name | ACCEPT | | REJECT | | Result |
|---|---|---|---|---|---|---|
| | | Number (% of Voting) | Amount (% of Voting) | Number (% of Voting) | Amount (% of Voting) | |
| 4 | GUC Claims[5] | 84.38% | 70.38% | 15.62% | 29.62% | Accept |
| 5 | Convenience Claims | 100% | 100% | 0% | 0% | Accept |
| 6 | Intercompany Claims | N/A | N/A | N/A | N/A | Reject |
| 8 | Interests in Cinemex Holdings | N/A | N/A | N/A | N/A | Reject |

8.      As set forth in the Plan and in the Voting Report, Classes 1, 2, and 7 are presumed to accept the Plan, and Classes 3, 4, and 5 voted to accept the Plan.  Classes 6 and 8 are deemed to reject the Plan.

9.      In addition to the facts set forth above, many of the pertinent facts related to the Debtors' reorganization are set forth more exhaustively in the (i) *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Reorganization of Cinemex USA Real Estate Holding, Inc., Cinemex Holdings USA, Inc., and CB Theater Experience LLC* (ECF No. 779) (the "Disclosure Statement"); (ii) the Confirmation Declaration; (iii) the Voting Report; and (iv) and testimony that may be proffered and/or otherwise adduced at the Confirmation Hearing.  The documents and the testimony that may be proffered and/or adduced at the Confirmation Hearing are hereby expressly incorporated herein by reference.

---

[5]  The Voting Report includes the vote of MN Theaters, which voted its rejection damages claim of $7,291,599.65 against the Plan.  Voting Report, Ex. B.  However, the Debtors have since assumed the relevant contracts with MN Theaters, thereby eliminating MN Theaters' rejection claim.  Without counting MN Theaters' vote and rejection damages claim, 87.1% of the number of votes and 84.9% of the amount of claims voted in Class 4 have accepted the Plan.

## Argument

10.     To confirm the Plan, the Bankruptcy Court must find that the Debtors have satisfied the provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence.[6]  As described in detail below, the Plan complies with all relevant provisions of the Bankruptcy Code and all other applicable law.  The Plan far exceeds the preponderance of evidence standard set forth in the Bankruptcy Code and will be further supported by evidence that will be submitted at the Confirmation Hearing.  The Debtors thus respectfully request that the Bankruptcy Court confirm the Plan.

## III.    THE PLAN SATISFIES EACH REQUIREMENT FOR CONFIRMATION.

### A.    The Plan Complies with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(1)).

11.     Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply with the applicable provisions of the Bankruptcy Code.[7]  The principal aim of this provision is to ensure compliance with the sections of the Bankruptcy Code governing classification of claims and interests and the contents of a plan of reorganization.[8]  Accordingly, the determination of whether the Plan complies with section 1129(a)(1) of the Bankruptcy Code requires an analysis of sections 1122 and 1123 of the Bankruptcy Code.[9]

---

[6]  *In re DiMaria*, 202 B.R. 634, 638 (Bankr. S.D. Fla. 1996); *see Heartland Federal Savings & Loan Ass'n v. Briscoe Enter., Ltd. II (In re Briscoe Enter., Ltd. II)*, 994 F.2d 1160, 1165 (5th Cir. 1993); *In re Cypresswood Land Partners, I*, 409 B.R. 396, 422 (Bankr. S.D. Tex. Jan. 20, 2009); *In re J T Thorpe Co.*, 308 B.R. 782, 785 (Bankr. S.D. Tex. 2003).

[7]  *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984) ("In order for a plan of reorganization to pass muster for confirmation purposes, it must comply with all the requirements of chapter 11 as stated in Code § 1129(a)(1).").

[8]  *See* S. Rep. No. 95-989, 95th Cong., 2d Sess. 126 (1978); H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 412 (1977).

[9]  *See, e.g.*, *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 824 (Bankr. D. Del. 2008); *In re S & W Enterprise*, 37 B.R. 153, 158 n. 15 (Bankr. N.D. Ill. 1984).

### i.    The Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code.

12.    Section 1122(a) of the Bankruptcy Code provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." Because claims only need to be "substantially" similar to be placed in the same class, plan proponents have broad discretion in determining to classify claims together.[10]

13.    The Plan's classification of Claims and Interests satisfies the requirements of section 1122 of the Bankruptcy Code because the Plan places Claims and Interests into a number of separate Classes, with the Claims and Interests in each Class differing from the Claims and Interests in each other Class in a legal or factual nature or based on other relevant criteria.[11] Specifically, the Plan provides for the separate classification of Claims and Interests into the following Classes:

| | |
|---|---|
| Class 1: | Secured Claims; |
| Class 2: | Other Priority Claims; |
| Class 3: | Syndicated Bank Loan Claims; |
| Class 4: | GUC Claims; |
| Class 5: | Convenience Claims; |
| Class 6: | Intercompany Claims; |
| Class 7: | Intercompany Interests; and |
| Class 8: | Interests in Cinemex Holdings. |

14.    Claims and Interests assigned to each particular Class described above are substantially similar to the other Claims or Interests in such Class. In addition, valid business,

---

[10]    *Olympia & York Florida Equity Corp. v. Bank of N.Y. (In re Holywell Corp.)*, 913 F.2d 873, 880 (11th Cir. 1990); *In re Porcelli*, 319 B.R. 8, 10 (Bankr. M.D. Fla. 2004); *see In re Sentry Operating Co. of Texas, Inc.*, 264 B.R. 850, 860 (Bankr. S.D. Tex. Jun. 19, 2001) (recognizing that section 1122 is permissive of any classification scheme that is not specifically proscribed, and that substantially similar claims may be separately classified).

[11]    Plan, Art. III; *see, e.g.*, *In re W.R. Grace & Co.*, 475 B.R. 34, 110 (D. Del. 2012) ("In analyzing whether claims within a given class are substantially similar, 'the focus of the classification [should be on] the legal character of the claim as it relates to *assets of the debtor*.'").

legal, and factual reasons justify the separate classification of the particular Claims or Interests into the Classes created under the Plan, and no unfair discrimination exists between or among Holders of Claims and Interests. Interests may be preserved under the Plan for the administrative convenience of ensuring the preservation of the Debtors' corporate structure after the Effective Date.

15.    Accordingly, the Claims or Interests assigned to each particular Class described above are substantially similar to the other Claims or Interests in each such Class, and the distinctions among Classes are based on valid business, factual, and legal distinctions. The Plan fully complies with and satisfies section 1122 of the Bankruptcy Code. Each of these categories of Claims and Interests have distinct rights under the Plan and applicable non-bankruptcy law. The Plan's classifications not only serve the purpose of facilitating ease of distributions on the Effective Date but also acknowledge the fundamental differences between those types of Claims and Interests. For the foregoing reasons, the Plan satisfies section 1122 of the Bankruptcy Code. No party in interest asserts that this requirement has not been met.

        **ii       The Plan Satisfies the Seven Mandatory Plan Requirements of Section 1123(a) of the Bankruptcy Code.**

16.    The seven applicable requirements of section 1123(a) of the Bankruptcy Code generally relate to the specification of claims treatment and classification, the equal treatment of claims within classes, and the mechanics of implementing a plan. The Plan satisfies each of these requirements.

17.    *Specification of Classes, Impairment, and Treatment 11 U.S.C. § 1123(a)(1), (2), and (3)).*  The first three requirements of section 1123(a) are that a plan specify (1) the classification of claims and interests, (2) whether such claims and interests are impaired or unimpaired, and (3) the precise nature of their treatment under the plan. The Plan, in particular

Article III.A-B, sets forth these specifications in detail in satisfaction of these three requirements. Thus, the Plan satisfies 1123(a)(1)–(3).  No party asserts otherwise.

18.     *Equal Treatment (11 U.S.C. § 1123(a)(4))*.  The fourth requirement of section 1123(a) is that a plan must "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment."  The Plan meets this requirement because Holders of Allowed Claims or Interests in each Class will receive the same rights and treatment as other Holders of Allowed Claims or Interests within such Holders' respective Class.  Thus, the Plan satisfies section 1123(a)(4).

19.     *Adequate Means for Implementation (11 U.S.C. § 1123(a)(5))*.  The fifth requirement of section 1123(a) of the Bankruptcy Code is that a plan must provide adequate means for its implementation.   The Plan, together with the Disclosure Statement and the documents and forms of agreement included in the Plan Supplement (defined below), provides a detailed blueprint for the transactions contemplated by the Plan.  Article IV of the Plan, in particular, sets forth the means for implementation of the Plan.  Among other things, the Plan provides for:[12]

- Effectuation of the Restructuring Transactions;
- The issuance of New Common Stock;
- The sources of consideration for Plan distributions;
- The cancellation of existing securities; and
- The authorization for the Debtors to take corporate actions necessary to effectuate the Plan.

20.     The Plan further sets forth the other critical mechanics of the Debtors' emergence, such as the vesting of assets in the Reorganized Debtors, and the settlement of Claims and Interests. The precise terms governing the execution of these transactions are set forth in greater detail in the

---

[12]  Plan, Art. IV.A, B, F, G, K.

applicable definitive documents or forms of agreements included in the Plan Supplement.[13]  Thus, the Plan satisfies section 1123(a)(5).

21.     *Non-Voting Stock (11 U.S.C. § 1123(a)(6)).* The sixth requirement of section 1123(a) is that a plan must contemplate a provision in the reorganized debtor's corporate charter that prohibits the issuance of non-voting equity securities or, with respect to preferred stock, adequate provisions for the election of directors upon an event of default.  Here, the Plan provides that the New Organizational Documents for the Reorganized Debtors will prohibit the issuance of non-voting stock to the extent required under section 1123(a)(6) of the Bankruptcy Code.[14] Additionally, the form of the Amended and Restated Certificate of Incorporation of Cinemex Holdings USA, Inc., attached as Exhibit A to the Plan Supplement, prohibits the issuance of nonvoting stock, and only contains one class of common stock.  Thus, the Plan complies with this requirement.   No party has asserted otherwise.

22.     *Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).* Section 1123(a)(7) requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan."  The Plan provides that the GUC Claims Trustee of the GUC Claims Trust shall be selected by the Committee.[15]  Additionally, pursuant to Article IV.P of the Plan and the Plan Supplement, the initial Reorganized Cinemex Board will consist of three specified directors and a board observer. The officers of the Reorganized Cinemex Holdings USA,

---

[13]   *See Notice of Filing of Plan Supplement Related to Third Amended Joint Chapter 11 Plan of Reorganization of Cinemex USA Real Estate Holdings, Inc., Cinemex Holdings USA, Inc. and CB Theater Experience LLC (*ECF No. 885) (as modified, amended, or supplemented from time to time, the "Plan Supplement").

[14]   Plan, Art. IV.O.

[15]   Plan at 8.

Inc. are also listed in the Plan Supplement.[16]  Thus, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.  No party has asserted otherwise.

23.      *Treatment of Earnings and Future Income (11 U.S.C. § 1123(a)(8)).*  Section 1123(a)(8) applies to cases where the debtor is an individual,  and, therefore, is inapplicable  to the Debtors and the Plan.

### iii      The Plan Contains Permissible Provisions Pursuant to Section 1123(b) of the Bankruptcy Code.

24.      *Impairment/Unimpairment of Claims/Equity Interests (11 U.S.C. § 1123(b)(1)).* Section 1123(b)(1) of the Bankruptcy Code states that a Plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests."  As discussed above, Claims and Interests in Classes 3, 4, 5, 6, and 8 are impaired.  Claims and Interests in Classes 1, 2, and 7 are unimpaired. Therefore, the Plan complies with § 1123(b)(1).

25.      *Assumption of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).* Under section 1123(b)(2) of the Bankruptcy Code, a plan may, subject to section 365, "provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section."  Pursuant to Article V.A of the Plan, all executory contracts or unexpired leases of the Debtors, shall be deemed assumed in accordance with the provisions and requirements of §§ 365 and 1123 of the Bankruptcy Code as of the Effective Date, other than those that: (i) were previously assumed, assumed and assigned, or rejected by the Debtors; (ii) are identified on the Rejected Executory Contract and Unexpired Lease List; or (iii) are the subject of a motion to reject that is pending on the Confirmation Date.  Moreover, pursuant to the Stock Purchase Agreement, the Purchase Price includes the payment of cure costs related to

---

[16]  Plan Supplement, Ex. F.

assumption of certain go-forward leases and executory contracts.[17]  Therefore, the Plan complies with section 1123(b)(2).

26.    *Settlement/Preservation of Claims (11 U.S.C. § 1123(b)(3).*  A plan may provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estate, or for the "retention and enforcement by the debtor, by the trustee, or by the representative of the estate appointed for such purpose of any such claim or interest." Article IV.S of the Plan provides for the preservation of claims by the Reorganized Debtors.  Article III.H of the Plan contains a waiver of all Avoidance Actions for the benefit of all Holders of GUC Claims and Holders of Syndicated Bank Loan Claims.  The Debtors have submitted evidence that these Plan provisions are in the appropriate and in the best interests of the Debtors, their estates, Creditors, and parties in interest.[18]  No party has asserted otherwise.  Therefore, the Plan complies with section 1123(b)(3).

27.    *Sale of Property of the Estate and Modification of Creditor Rights (11 U.S.C. § 1123(b)(4), (5)).*  Section 1123(b)(4) of the Bankruptcy Code states that a plan may provide for the sale of all or substantially all of the property of the estate, and section 1123(b)(5) provides that a plan may modify the rights of holders of certain secured claims, unsecured claims, or leave unaffected the rights of holders of any class of claims.  The Plan does not provide for the sale of all or substantially all of the property of the estate, nor does it modify the rights of holders of secured claims.  Pursuant to the Plan, holders of GUC Claims are impaired.  Thus, section 1123(b)(4) does not apply, and the Plan permissibly impairs GUC Claims under section 1123(b)(5).

28.    *Releases and Exculpations (11 U.S.C. § 1123(b)(6)).*  Section 1123(b)(6) of the

---

[17]  ECF No. 885 (Plan Supplement, Ex. D); *see* 11 U.S.C. § 365(b)(1).

[18]  Confirmation Declaration ¶ 13(c).

Bankruptcy Code provides that a plan may "include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]." Article VIII.D-E of the Plan contain release and exculpation provisions. The release provision in Article VIII.D of the Plan provides for a release of each Released Party (as defined in the Plan) but provides parties an opportunity to opt out of such releases. Additionally, the release provision in Article VIII.D of the Plan does not operate as a release by a Holder of a GUC Claim against Grupo Cinemex, Operadora De Cinemas, S.A. DE C.V. or any other non-Debtor Entity arising under or related to any claim, right or defense, that such Holder of a GUC Claim may hold against such non-Debtor arising from or relating to any contractual obligations of such non-Debtor to a Holder of a GUC Claim.

29.    The exculpation provision in Article VIII.E of the Plan limits liability arising out of postpetition acts and omissions of the Debtors and certain parties related to them. The exculpation provision expressly carves out and does not apply to any claims against any of the exculpated parties resulting from acts or omissions determined by a court to have constituted actual fraud, willful misconduct, or gross negligence. Moreover, the exculpation provision in Article VIII.E of the Plan does not release or exculpate any non-Debtor Entity from its obligations to satisfy any claim held by a Holder of a Claim for compliance with and satisfaction of guarantees or payment assurances given in connection with any Executory Contracts and Unexpired Leases.

30.    These release and exculpation provisions are integral to the Plan and the compromises contained in the Plan[19] and thus comport with § 1123(b)(6) of the Bankruptcy Code.[20]

---

[19]  Confirmation Declaration ¶ 13(e).

[20]  *See supra* § IV.

31.    Because the Plan complies with section 1122 and 1123 of the Bankruptcy Code, it also satisfies the confirmation requirements set forth in section 1129(a)(1).

**B.    The Debtors Have Complied with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2)).**

32.    Section 1129(a)(2) of the Bankruptcy Code requires that plan proponents comply with the applicable provisions of the Bankruptcy Code. Case law and legislative history indicate this section principally reflects the disclosure and solicitation requirements of section 1125 of the Bankruptcy Code,[21] which prohibits the solicitation of plan votes without a court-approved disclosure statement.[22]

**i.    The Debtors Complied with Section 1125 of the Bankruptcy Code.**

33.    Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan of reorganization "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." Section 1125 of the Bankruptcy Code ensures that parties in interest are fully informed regarding the debtor's condition so they may make an informed decision whether to approve or reject a plan.[23]

34.    Section 1125 of the Bankruptcy Code is satisfied here. Before the Debtors solicited

---

[21]    *Toy & Sports Warehouse,* 37 B.R. at 149; *In re Texaco, Inc.,* 84 B.R. 893, 907 (Bankr. S.D.N.Y. 1988), *appeal dismissed,* 92 B.R. 38 (S.D.N.Y. 1988) ("The principal purpose of section 1129(a)(2) is to assure that the proponents have complied with the requirements of section 1125 in the solicitation of acceptances to the plan."); *Cypresswood Land Partners,* 409 B.R. at 424 ("Bankruptcy courts limit their inquiry under § 1129(a)(2) to ensuring that the plan proponent has complied with the solicitation and disclosure requirements of § 1125."); *see* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978).

[22]    11 U.S.C. § 1125(b).

[23]    *See Matter of Cajun Elec. Power Co-op., Inc.,* 150 F.3d 503, 518 (5th Cir. 1998) (finding that section 1125 of the Bankruptcy Code obliges a debtor to engage in full and fair disclosure that would enable a hypothetical reasonable investor to make an informed judgment about the plan).

votes on the Plan, the Bankruptcy Court entered the Disclosure Statement Order.[24]    The Bankruptcy Court also approved the contents of the Solicitation Packages provided to Holders of Claims entitled to vote on the Plan, the notices provided to parties not entitled to vote on the Plan, and the deadlines for voting on and objecting to the Plan.[25]    The Debtors, through their Voting Agent, complied with the content and delivery requirements of the Disclosure Statement Order, thereby satisfying sections 1125(a) and (b) of the Bankruptcy Code.[26]    The Debtors also satisfied section 1125(c) of the Bankruptcy Code, which provides that the same disclosure statement must be transmitted to each holder of a claim or interest in a particular class.    Here, the Debtors caused the same Disclosure Statement to be transmitted to all parties entitled to vote on the Plan.[27]

35.    Based on the foregoing, the Debtors have complied in all respects with the solicitation requirements of section 1125 of the Bankruptcy Code and the Disclosure Statement Order.  No party has asserted otherwise.

### ii.    The Debtors Complied with Section 1126 of the Bankruptcy Code.

36.    Section 1126 of the Bankruptcy Code provides that only holders of allowed claims and equity interests in impaired classes that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject a plan.[28]    Accordingly, the Debtors did not solicit votes on the Plan from the following Classes:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

---

[24]    *See* Disclosure Statement Order (ECF No. 777).

[25]    *See id.*

[26]    *See* Certificate of Service (ECF No. 903).

[27]    *See id.*

[28]    *See* 11 U.S.C. § 1126.

| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 6 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Intercompany Interests | Unimpaired | Not Entitled to Vote |
| 8 | Interests in Cinemex Holdings | Impaired | Not Entitled to Vote (Deemed to Reject) |

37.     The Debtors solicited votes only from Holders of Allowed Claims in Classes 3, 4, and 5 (collectively, the "Voting Classes"), because each of these Classes is Impaired or could potentially have been be Impaired and entitled to receive a distribution under the Plan.[29] The Voting Report reflects the results of the voting process in accordance with section 1126 of the Bankruptcy Code.[30] As set forth in the Voting Report and summarized above, Classes 3, 4, and 5 voted to accept the Plan. Based on the foregoing, the Debtors have satisfied the requirements of section 1129(a)(2). No party asserts otherwise.

### C.     The Debtors Proposed the Plan in Good Faith and Not by Any Means Forbidden by Law (Section 1129(a)(3)).

38.     Section 1129(a)(3) of the Bankruptcy Code requires that the proponent of a plan propose the plan "in good faith and not by any means forbidden by law." In assessing the good faith standard, courts in the Eleventh Circuit consider whether the plan was proposed with "the legitimate and honest purpose to reorganize and has a reasonable hope of success."[31] A plan must

---

[29]     *See* Plan, Art. III.A–B.

[30]     A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of section 1126 of the Bankruptcy Code, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of section 1126 of the Bankruptcy Code, that have accepted or rejected such plan. 1 A class of interests has accepted a plan if such plan has been accepted by holders of such interests, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount of the allowed interests of such class held by holders of such interests, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan. 11 U.S.C. §1126(d).

[31]     *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1300 (11th Cir. 2001) (citing *McCormick v. Banc One Leasing Corp.*, 49 F.3d 1524, 1526 (11th Cir. 1995)); *see In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d 1070, 1081-82 (11th Cir.

also achieve a result consistent with the Bankruptcy Code.[32] The purpose of chapter 11 is to enable a distressed business to reorganize and achieve a fresh start.[33] Other purposes include "preserving jobs in the community, allowing the business to continue to operate instead of liquidate, and achieving a consensual resolution between debtors and creditors."[34]

39.    Whether a plan is proposed in good faith must be determined in light of the totality of the circumstances of the cases.[35] The focus of the inquiry under section 1129(a)(3) is not on all facts relating to the conduct of the plan proponent.[36] In fact, section 1129(a)(3) of the Bankruptcy Code "requires only that the plan's proposal, as opposed to the contents of the plan, be in good faith and in compliance with all non-bankruptcy laws."[37] Thus, plans that provide some benefit to insiders are proposed in good faith so long as they allow for non-shareholder employees to maintain jobs and provide distributions to creditors over time.[38]

40.    Here, the Plan easily satisfies the standards set forth in section 1129(a)(3). It

---

2015) ("[C]ourts have interpreted 'good faith' as requiring that there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Code."); *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985).

[32]   *Seaside*, 780 F.3d at 1082; *see In re Block Shim Dev. Company-Irving*, 939 F.2d 289, 292 (5th Cir. 1991).

[33]   *Sun Country Dev.*, 764 F.2d at 408 ("The requirement of good faith must be viewed in light of the totality of circumstances surrounding establishment of a [c]hapter 11 plan, keeping in mind the purpose of the Bankruptcy Code to give debtors a reasonable opportunity to make a fresh start.").

[34]   *Seaside*, 780 F.3d at 1082.

[35]   *McCormick*, 49 F.3d at 1526; *see Pub. Fin. Corp. v. Freeman*, 712 F.2d 219 (5th Cir. 1983); *Cypresswood Land Partners, I*, 409 B.R. at 425.

[36]   *Piper*, 244 F.3d at 1300; *In re SM 104 Ltd.*, 160 B.R. 202, 244 (Bankr. S.D. Fla. 1993) (courts generally do not consider prepetition conduct in section 1129(a)(3) analysis).

[37]   *In re General Dev. Corp.*, 135 B.R. 1002, 1007 (Bankr. S.D. Fla. 1991) (citations omitted).

[38]   *Seaside*, 780 F.3d at 1082; *see In re United Marine, Inc.*, 197 B.R. 942, 947 (Bankr. S.D. Fla. 1996) (plan proposed in good faith because it saved jobs and permitted a business to continue to operate, and achieved a consensual resolution of priority and tax claims).

permits the Debtors to emerge from the bankruptcy cases as operating companies that can continue to employ hundreds (and perhaps thousands) of people in the locations with profitable theaters.[39] It embodies hard-fought and hard-negotiated compromises with major creditor constituencies, including the Committee, the studios, and numerous landlords.[40]  It pays several creditors in full (the holders of assumed leases), and pays numerous other creditors a substantial distribution (11.4-15.3%).[41]  It preserves claims for the benefit of general unsecured creditors through the GUC Trust, which may provide additional recoveries.  And it has the support of the Committee, which has fiduciary obligations to the body of general unsecured creditors.[42]

41.     The sole objection on this point was filed by MN Theaters (ECF No. 863).  It makes three arguments, all of which lack merit, are unsupported by evidence, and are based solely on conjecture.  In fact, at the November 20, 2020 hearing, the Court rejected much of MN Theaters' section 1129(a)(3) argument, stating that it was not well-founded as a matter of law.

42.     *First*, MN Theaters' speculates that the Plan is "a vehicle to further the interests of Grupo … and its other non-debtor affiliates."[43]  Not only is the premise of the argument faulty, but the robust record before this Court belies this argument.  For example, MN Theaters asserts that

---

[39]  Disclosure Statement at 2.

[40]  *Id.* at 48-49.

[41]  *Id.*

[42]  Disclosure Statement at 2.  The two cases that MN Theaters cites in its objection are entirely distinguishable.  In *In re Malkus*, 2004 WL 3202212, at *4 (Bankr. M.D. Fla. Nov. 15, 2004), the court denied confirmation because the debtors' president had failed to investigate preference claims, and shareholders kept their interests while unsecured creditors received nothing.  Here, claims are being compromised under the Plan, and Wine & Roses is providing substantial consideration of approximately $70 million in exchange for the Debtors' stock.  Similarly, *In re Davis Heritage GP Holdings, LLC*, 443 B.R. 448, 462 (Bankr. N.D. Fla. 2011) is inapposite, because unlike here, that plan provided no benefit to non-insider creditors.

[43]  MN Theaters Objection ¶¶ 2, 26-30.

Grupo has contributed no value in these chapter 11 cases,[44] even while acknowledging that Grupo advanced funds during these cases that enabled the Debtors to continue their operations.[45]   It also asserts, without any evidence, that Wine & Roses is Grupo's alter ego.[46]   And it states that Wine & Roses is not providing any "meaningful consideration" for the Debtors' stock or for the Plan's releases and exculpations,[47] speculating that Wine & Roses will receive more value than it is paying.[48]   These arguments, however, simply ignore the various disclosures in both the Plan and the Disclosure Statement discussing approximately $70 million in value provided by Wine & Roses under the Stock Purchase Agreement, the terms of the Stock Purchase Agreement, and the extensive negotiations with the Committee, which supports the Plan.[49]

43.    *Second*, MN Theaters argues that the Plan cannot be confirmed because, in its view, the Plan aids and abets violations of a prejudgment attachment it obtained in the District Court Case ("Attachment Order").[50]   According to MN Theaters, if the Debtors pay back Grupo for the DIP Loan, Grupo will "simply take that distribution over the border to Mexico, never to be seen

---

[44]   MN Theaters Objection ¶ 26.

[45]   *Id.* ¶ 19.

[46]   *Id.* ¶ 26.

[47]   *Id.* ¶¶ 26-29.

[48]   MN Theaters' references to net operating losses ("NOLs") is curious. *Id.* ¶¶ 27, 34.   It suggests that NOLs may provide more value to Wine & Roses than the value it is providing in exchange for the Debtors' stock.   It also argues that NOLs exist for the benefit of Grupo, and if the Plan preserves that value for Wine & Roses for no consideration, that is a fraudulent transfer by Grupo.   Of course, MN Theaters cites no law in support of this argument.   MN Theaters' argument ignores that Grupo does not own the NOLs, Cinemex Holdings USA holds the NOLs as the parent entity in the corporate tax group. *See* Disclosure Statement at 66 (Debtors carry NOLs, not Grupo). *In re Marvel Entm't Grp., Inc.,* 273 B.R. 58, 85 (D. Del. 2002) (dismissing case alleging fraudulent transfer of NOLs within corporate group); *United Dominion Indus. Inc. v. United States,* 532 U.S. 822 (2001) (concept of separate NOLs for individual members of a consolidated tax group does not exist).

[49]   *See, e.g.,* Disclosure Statement at 47-48.

[50]   MN Theaters Objection ¶¶ 32-34.

again," and allowing the DIP Claim to be paid to Grupo rather than the U.S. Marshal "effectively licenses" Grupo to refuse to comply with the Attachment Order.[51] That argument is frankly absurd. MN Theaters does not cite any evidence demonstrating that the Debtors are required to do anything under the Attachment Order (indeed, any provision in the Attachment Order requiring the Debtors to do anything would have violated the automatic stay). More importantly, this argument is rendered moot by the Debtors' agreement to place any proceeds due to Grupo in escrow pending further orders of the District Court in the Southern District of New York.

44.    *Last*, MN Theaters makes the remarkable argument that the Plan authorizes fraudulent transfers because it contains language that holders of administrative claims must be paid in full unless the holder of that claim has agreed to less favorable treatment.[52] MN Theaters is apparently unaware of section 1129(a)(9), which states that administrative claims must be paid in full "[e]xcept to the extent that the holder of a particular claim has agreed to a different treatment of such claim."[53] It defies logic to suggest that a plan provision based on a statutory requirement lacks good faith or is forbidden by law.

45.    For these reasons, MN Theaters' objection lacks merit, and the Plan meets the requirements of section 1129(a)(3).

**D.    The Plan Provides That the Debtors' Payment of Professional Fees and Expenses Are Subject to Court Approval (Section 1129(a)(4)).**

46.    Section 1129(a)(4) of the Bankruptcy Code requires that certain fees and expenses paid by the plan proponent, by the debtor, or by a person receiving distributions of property under

---

[51]  *Id.* ¶¶ 18, 32.

[52]  *Id.* ¶ 33.

[53]  11 U.S.C. § 1129(a)(9).

the plan, be approved by the Bankruptcy Court as reasonable or subject to approval by the Bankruptcy Court as reasonable. In other words, the Plan Proponents must disclose to the Court all professional fees and expenses, and such fees and expenses must be subject to Court approval.[54] When routine legal fees and expenses that have been approved as reasonable in the first instance, "the court will ordinarily have little reason to inquire further with respect to the amount charged."[55]

47.    In general, the Plan provides that Professional Fee Claims and corresponding payments are subject to prior Bankruptcy Court approval and the reasonableness requirements under sections 328 or 330 of the Bankruptcy Code.[56] Moreover, Article II.A of the Plan provides that all final requests for payment of Professional Fee Claims must be filed and served in accordance with the Disclosure Statement Order.[57] On or before the Effective Date, the Debtors will escrow funds sufficient to pay all Professional Fee Claims not paid as of the Effective Date, and payment of such fees will be made from the Professional Fee Escrow Account pending Bankruptcy Court approval.[58] Further, the Plan provides for the payment of Allowed DIP Loan Claims.[59] For the foregoing reasons, the Plan complies with section 1129(a)(4) of the Bankruptcy Code. No party has asserted otherwise.

---

[54]  *See In re Lisanti Foods, Inc.*, 329 B.R. 491, 503 (D. N.J. 2005) ("Pursuant to § 1129(a)(4), a plan should not be confirmed unless fees and expenses related to the Plan have been approved, or are subject to the approval, of the Bankruptcy Court.").

[55]  *See Cajun Elec. Power Co-op.*, 150 F.3d at 517-18.

[56]  Plan, Art. II.A.2.

[57]  *Id.*

[58]  Plan, Art. II.A.2(b).

[59]  Plan, Art. II.C.

E.    **The Debtors Have Complied with the Bankruptcy Code's Governance Disclosure Requirement (Section 1129(a)(5)).**

48.    The Bankruptcy Code at section 1129(a)(5)(A)(i) requires the proponent of a plan to disclose the identity and affiliation of any individual proposed to serve as a director or officer of the debtor or a successor to the debtor under the plan. Section 1129(a)(5)(A)(ii) requires that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy. Lastly, section 1129(a)(5)(B) requires that the plan proponent have disclosed the identity of insiders to be retained by the reorganized debtor and the nature of any compensation for such insider. Courts have held that these provisions ensure that the post-confirmation governance of a reorganized debtor is in "good hands."[60]

49.    In this case, the Plan satisfies section 1129(a)(5)(A)(i) of the Bankruptcy Code because the Debtors have, to the extent known, disclosed the identities and affiliations of all persons proposed to serve on the Reorganized Cinemex Board, as well as the post-reorganization management of Cinemex Holdings USA, Inc. in Exhibit F to the Plan Supplement. The Plan Supplement also discloses the identities of each officer and director. The Debtors believe that control of the Reorganized Debtors by the proposed individuals or individuals to be appointed in accordance with the Plan and New Organizational Documents will be consistent with public policy.[61] Thus, the Plan complies with section 1129(a)(5) of the Bankruptcy Code. No party asserts otherwise.

---

[60]  *See In re Landing Assocs.,* 157 B.R. 791, 817 (Bankr. W.D. Tex. Jul. 19, 1993) ("In order to lodge a valid objection under § 1129(a)(5), a creditor must show that a debtor's management is unfit or that the continuance of this management post-confirmation will prejudice the creditors").

[61]  *See* Confirmation Declaration ¶ 17.

F.    **The Plan Does Not Require Government Regulatory Approval of Rate Changes (Section 1129(a)(6)).**

50.    Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that has or will have jurisdiction over a debtor after confirmation has approved any rate change provided for in the plan. No such rate changes are provided for in the Plan. Thus, section 1129(a)(6) of the Bankruptcy Code is inapplicable to these chapter 11 cases. No party has asserted otherwise.

G.    **The Plan Is in the Best Interests of Holders of Claims and Interests (Section 1129(a)(7)).**

51.    The best interests of creditors test in section 1129(a)(7) requires that, "[w]ith respect to each impaired class of claims or interests," members of such class that have not accepted the plan will receive at least as much as they would in a hypothetical chapter 7 liquidation. The best interests test applies to each non-consenting member of an impaired class, and is generally satisfied through a comparison of the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation of that debtor's estate against the estimated recoveries under that debtor's plan of reorganization.[62]

52.    The Plan designates Classes 3, 4, 5, 6, and 8 as impaired. With respect Classes 3 and 5, each holder of a claim in such Classes that voted accepted the Plan.[63] With respect to the

---

[62] *Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 442 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan."); *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1159 n. 23 (5th Cir. 1988) (stating that under section 1129(a)(7) of the Bankruptcy Code a bankruptcy court was required to determine whether impaired claims would receive no less under a reorganization than through a liquidation); *see In re Neff*, 60 B.R. 448, 452 (Bankr. N.D. Tex. 1985) *aff'd*, 785 F.2d 1033 (5th Cir. 1986) (stating that "best interests" of creditors means "creditors must receive distributions under the [c]hapter 11 plan with a present value at least equal to what they would have received in a [c]hapter 7 liquidation of the Debtor as of the effective date of the [p]lan"); *In re Lason, Inc.*, 300 B.R. 227, 232 (Bankr. D. Del. Oct. 15, 2003) ("Section 1129(a)(7)(A) requires a determination whether 'a prompt chapter 7 liquidation would provide a better return to particular creditors or interest holders than a chapter 11 reorganization.'").

[63]    11 U.S.C. § 1129(a)(7)(A)(i).

remaining holders of Claims in Classes 3 and 5, and with respect to Classes 4, 5, 6, and 8, as demonstrated in the Debtors' Liquidation Analysis, all Holders of Claims and Interests in such Classes will recover at least as much under the Plan as they would in a hypothetical chapter 7 liquidation.[64]   That is because each holder would receive 0% of their Claims in a liquidation, whereas under the Plan, each holder of a Claim in Classes 3, 4, and 5 will receive far more, while holders of Claims or Interests in Classes 6 and 8 will receive the same amount.[65]

53.     Accordingly, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code and the best interests test. No party has asserted otherwise.

**H.     The Plan Is Confirmable Notwithstanding the Requirements of Section 1129(a)(8) of the Bankruptcy Code.**

54.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan. As discussed above, Classes 1, 2, and 7 are unimpaired under the Plan.   Classes 3, 4, and 5, which are impaired have overwhelmingly accepted the Plan. Only Classes 6 and 8 are impaired and have not accepted the Plan. Although the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code as to Classes 6 and 8, the Plan is confirmable nonetheless because it satisfies section 1129(b) of the Bankruptcy Code with respect to those Classes, as discussed below.

**I.     The Plan Complies With Statutorily Mandated Treatment of Administrative and Priority Tax Claims (Section 1129(a)(9)).**

55.     Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a plan and that the holders of certain other priority claims receive deferred cash payments. In particular, pursuant to section 1129(a)(9)(A) of the Bankruptcy

---

[64]    *See* Disclosure Statement, Ex. D.

[65]    Disclosure Statement at 11-12.

Code, holders of claims of a kind specified in section 507(a)(2) of the Bankruptcy Code—administrative claims allowed under section 503(b) of the Bankruptcy Code—must receive on the effective date cash equal to the allowed amount of such claims. Section 1129(a)(9)(B) of the Bankruptcy Code requires that each holder of a claim of a kind specified in section 507(a)(1) or (4) through (7) of the Bankruptcy Code—which generally include domestic support obligations, wage, employee benefit, and deposit claims entitled to priority—must receive deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim (if such class has accepted the plan), or cash of a value equal to the allowed amount of such claim on the effective date of the plan (if such class has not accepted the plan). Finally, section 1129(a)(9)(C) provides that the holder of a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code—*i.e.*, priority tax claims—must receive cash payments over a period not to exceed five years from the petition date, the present value of which equals the allowed amount of the claim.

56.     The Plan satisfies section 1129(a)(9) of the Bankruptcy Code. *First*, Article II.A of the Plan satisfies section 1129(a)(9)(A) of the Bankruptcy Code, because it provides that each Holder of an Allowed Administrative Claim of the kind specified in section 1129(a)(9)(A) of the Bankruptcy Code will receive payment in full in cash of the due and unpaid portion of its Allowed Administrative Claim on the Effective Date, or as soon as reasonably practicable thereafter, or at such other time as defined in Article II.A of the Plan. *Second*, the Plan satisfies section 1129(a)(9)(B) of the Bankruptcy Code because no Holders of the types of Claims specified by 1129(a)(9)(B) are Impaired under the Plan.[66] *Finally*, Article II.B of the Plan satisfies section 1129(a)(9)(C) of the Bankruptcy Code because it specifically provides that each Holder of an

---

[66] *See* Plan, Art. III.B.

Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code. Thus, the Plan satisfies each of the requirements set forth in section 1129(a)(9) of the Bankruptcy Code.

**J.    At Least One Impaired Class of Claims Has Accepted the Plan, Excluding the Acceptances of Insiders (Section 1129(a)(10)).**

57.    Section 1129(a)(10) of the Bankruptcy Code provides that, to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan "without including any acceptance of the plan by any insider." Pursuant to the plain language of section 1129(a)(10), only one class of impaired claims need accept the plan, even if the plan is proposed in a multi-debtor case.[67] As detailed herein and in the Voting Report, Class 3, 4, and 5 have voted to accept the Plan, exclusive of any acceptances by insiders. Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. No party has asserted otherwise.

**K.    The Plan Is Feasible and Is Not Likely to Be Followed by the Need for Further Financial Reorganization (Section 1129(a)(11)).**

58.    Feasibility refers to section 1129(a)(11)'s requirement that plan confirmation must not be "likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor ... , unless such liquidation or reorganization is proposed in the plan." To satisfy this standard, a plan need only have a "reasonable probability of success."[68] Success need not be guaranteed.[69] Indeed, a relatively low threshold of proof will satisfy § 1129(a)(11) so long as

---

[67]   *Matter of Transwest Resort Props., Inc.*, 881 F.3d 724 (9th Cir. 2018); *In re Transwest Resort Props., Inc.*, 554 B.R. 894, 899-901 (D. Ariz. 2016); *In re Station Casinos, Inc.*, 2010 WL 11492265 (Bankr. D. Nev. Aug. 27, 2010); *JPMorgan Chase Bank, N.A. v. Charter Commc'ns Operating, LLC (In re Charter Commc'ns)*, 419 B.R. 221, 266 (Bankr. S.D.N.Y. 2009); *In re Enron Corp.*, 2004 WL 6075307 (Bankr. S.D.N.Y. July 15, 2004); *In re SGPA, Inc.*, 2001 WL 34750646 (Bankr. M.D. Pa. Sept. 28, 2001).

[68]   *In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 801 (5th Cir. 1997) (quoting *In re Landing Assocs., Ltd.*, 157 B.R. 791, 820 (Bankr. W.D. Tex. 1993)); *In re Armstrong World Indus., Inc.*, 348 B.R. 136, 167 (D. Del. 2006).

[69]   *In re One Times Square Assocs. Ltd. P'ship*, 159 B.R. 695, 709 (Bankr. S.D.N.Y. 1993) ("'It is not necessary that the success be guaranteed, but only that the plan present a workable scheme of reorganization and operation from

adequate evidence supports a finding of feasibility.[70]  In particular, "[w]here the projections are credible, based upon the balancing of all testimony, evidence, and documentation, even if the projections are aggressive, the court may find the plan feasible."[71]  "The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds."[72]

59.    The Plan is feasible.  As reflected in the Financial Projections,[73] the escrows required to be funded under the Stock Purchase Agreement, and the provision for funding of the GUC Claims Trust under the Plan, the Debtors, the Reorganized Debtors, or the GUC Claims Trust, as the case may be, will have sufficient cash on hand and available cash to pay the amounts required to be paid on the Effective Date and under the Plan.  Thus, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  No party asserts otherwise.

**L.    The Plan Provides for the Payment of All Fees Under 28 U.S.C. § 1930 (Section 1129(a)(12)).**

60.    The Bankruptcy Code at section 1129(a)(12) requires the payment of all fees payable under 28 U.S.C. § 1930.  The Plan includes an express provision requiring payment of all such fees at Article XII.D.  The Plan, therefore, complies with section 1129(a)(12) of the Bankruptcy Code.  No party has asserted otherwise.

---

which there may be a reasonable expectation of success.'" (*quoting* 5 Collier on Bankruptcy 1129.02[11], at 1129-54 (15th ed. 1992))).

[70]    *In re Star Ambulance Service, LLC*, 540 B.R. 251, 266 (Bankr. S.D. Tex. Aug. 24, 2015).

[71]    *T-H New Orleans*, 116 F.3d at 802; *In re The Leslie Fay Cos., Inc.*, 207 B.R. 764, 789 (Bankr. S.D.N.Y. 1997).

[72]    *In re Drexel Burnham Lambert Group Inc.*, 138 B.R. 723, 762 (Bankr. S.D.N.Y. 1992); *see also In re IPC Atlanta Ltd. P'Ship*, 142 B.R. 547, 559-60 (Bankr. N.D. Ga. 1992).

[73]    Disclosure Statement, Ex. E.

**M.    The Plan Provides for the Payment of All Retiree Benefits (Section 1129(a)(13)).**

61.    Pursuant to section 1129(a)(13) of the Bankruptcy Code, and as provided in Article IV.R of the Plan, the Reorganized Debtors will continue to pay all obligations on account of retiree benefits (as such term is used in section 1114 of the Bankruptcy Code) on and after the Effective Date in accordance with applicable law. As a result, the requirements of section 1129(a)(13) of the Bankruptcy Code are satisfied.

**N.    Section 1129(a)(14) Through Section 1129(a)(16) of the Bankruptcy Code Do Not Apply to the Plan.**

62.    A number of the Bankruptcy Code's confirmation requirements are inapplicable to the Plan. Section 1129(a)(14) of the Bankruptcy Code does not apply because the Debtors are not subject to any domestic support obligations. Section 1129(a)(15) of the Bankruptcy Code is inapplicable because no Debtor is an "individual" as defined in the Bankruptcy Code. Section 1129(a)(16) of the Bankruptcy Code is inapposite because the Plan does not provide for any property transfers by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

**O.    The Plan Satisfies the "Cram Down" Requirements of Section 1129(b) of the Bankruptcy Code.**

63.    Section 1129(b)(1) of the Bankruptcy Code provides that, if all applicable requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8) of the Bankruptcy Code, a plan may be confirmed so long as the requirements set forth in section 1129(b) of the Bankruptcy Code are satisfied. To confirm a plan that has not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the plan proponent must show that the plan does not "discriminate unfairly" and is "fair and equitable" with

respect to the non-accepting impaired classes.[74]

64.    The Plan satisfies section 1129(b) of the Bankruptcy Code.  As described below, the Plan satisfies both of these cram down requirements with respect to Classes 6 and 8 that are deemed to reject the Plan.

### i.    The Plan is Fair and Equitable (§ 1129(b)(2)(B) and (C)).

65.    A plan is "fair and equitable" with respect to an impaired class of claims or interests that rejects a plan (or is deemed to reject a plan) if it follows the "absolute priority" rule.[75]  The absolute priority rule provides that a junior stakeholder may not receive or retain property under a plan of reorganization "on account of" its junior claims or interests unless all senior classes either (a) are paid in full or (b) vote in favor of the plan.[76]  As set forth above, Class 1, 2, 3, 4, 5, and 7 have either voted to accept or are deemed to accept the Plan.

66.    Classes 6 and 8 are deemed to reject the Plan, and the Plan is fair and equitable to Holders of Claims or Interests in Classes 6 and 8.  With respect to Class 6 (Intercompany Claims), holders of claims in junior classes will not receive or retain property on account of such claim or interest.  Class 7 consists of holders of Intercompany Interests, which will be reinstated for administrative purposes only as a means to preserve the corporate structure and to avoid the unnecessary cost of having to reconstitute that structure.  Thus, those holders will not receive any economic substance.[77]  With respect to Class 8, there are no junior Classes.  Accordingly, the Plan

---

[74]    *John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Associates*, 987 F.2d 154, n.5 (3d. Cir. Jan. 22, 1993); *Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'Ship (In re Ambanc La Mesa Ltd. P'ship)*, 115 F.3d 650, 653 (9th Cir. 1997).

[75]    *203 N. LaSalle*, 526 U.S. at 441-42.

[76]    *See* 11 U.S.C. § 1129(b)(2)(B)(ii),  (C)(ii); *DISH Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.)*, 634 F.3d 79, 88 (2d Cir. 2011); *In re Armstrong World Indus., Inc.*, 432 F.3d 507, 512 (3d Cir. 2005).

[77]    *See In re ION Media Networks, Inc.*, 419 B.R. 585, 601 (Bankr. S.D.N.Y. Nov. 24, 2009) ("This technical

satisfies the "fair and equitable" requirement of the Bankruptcy Code.  No party has asserted otherwise.

### ii.    The Plan Does Not Unfairly Discriminate with Respect to the Impaired Classes that Have Not Voted to Accept the Plan (§ 1129(b)(1)).

67.    Although the Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists, courts typically examine the facts and circumstances of the particular case to make the determination.[78]  In general, courts have held that a plan unfairly discriminates in violation of section 1129(b) of the Bankruptcy Code only if it provides materially different treatment for creditors and interest holders with similar legal rights without compelling justifications for doing so.[79]  A threshold inquiry to assessing whether a proposed plan of reorganization unfairly discriminates against a dissenting class is whether the dissenting class is equally situated to a class allegedly receiving more favorable treatment.[80]

68.    Here, the Plan's treatment of the rejecting Classes is proper because all similarly situated Holders of Claims and Interests will receive substantially similar treatment and the Plan's

---

preservation of equity is a means to preserve the corporate structure that does not have any economic substance and that does not enable any junior creditor or interest holder to retain or recover any value under the Plan. The Plan's retention of intercompany equity interests for holding company purposes constitutes a device utilized to allow the Debtors to maintain their organizational structure and avoid the unnecessary cost of having to reconstitute that structure.").

[78]    *In re 203 N. LaSalle St. Ltd. P'ship*, 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, *203 N. LaSalle*, 526 U.S. 434 (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a [c]hapter 11 plan" and that "the limits of fairness in this context have not been established"); *In re Aztec Co.*, 107 B.R. 585, 589 (Bankr. M.D. Tenn. 1989) ("Courts interpreting language elsewhere in the Code, similar in words and function to § 1129(b)(1), have recognized the need to consider the facts and circumstances of each case to give meaning to the proscription against unfair discrimination."); *In re Freymiller Trucking, Inc.*, 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances").

[79]    *See In re Idearc Inc.*, 423 B.R. 138, 171 (Bankr. N.D. Tex. 2009) ("[T]he unfair discrimination standard prevents creditors and equity interest holders with similar legal rights from receiving materially different treatment under a proposed plan without compelling justifications for doing so."); *In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 661 (Bankr. D. Del. 2003) (permitting different treatment of two classes of similarly situated creditors upon a determination that the debtors showed a legitimate basis for such discrimination).

[80]    *See In re Aleris Int'l, Inc.*, 2010 WL 3492664, at *31 (Bankr. D. Del. May 13, 2010).

classification scheme rests on a legally permissible rationale. Claims and Interests in the rejecting Classes 6 and 8 are not similarly situated to any other Classes, given that they consist of Intercompany Claims and equity Interests in Cinemex Holdings—*i.e.* these two Classes contain claims of affiliates and insiders. The remaining Classes set forth in the Plan have either voted to accept the Plan or are deemed to have accepted the Plan, rendering section 1129(b) inapplicable to such Classes. Thus, the Plan does not discriminate unfairly in contravention of section 1129(b)(1) of the Bankruptcy Code and the Plan may be confirmed notwithstanding the rejecting Classes. No party has asserted otherwise.

**P.    The Plan Complies with the Other Provisions of Section 1129 of the Bankruptcy Code (Sections 1129(c)-(e)).**

69.    The Plan satisfies the remaining provisions of section 1129 of the Bankruptcy Code. Section 1129(c) of the Bankruptcy Code, which prohibits confirmation of multiple plans, is not implicated because there is only one proposed plan of reorganization.

70.    The purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933. Moreover, no governmental unit or any other party has requested that the Bankruptcy Court decline to confirm the Plan on such grounds. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

71.    Lastly, section 1129(e) of the Bankruptcy Code is inapplicable because none of the Debtors' chapter 11 cases is a "small business case."

72.    In sum, the Plan satisfies all of the Bankruptcy Code's mandatory chapter 11 plan confirmation requirements.

IV.     **THE PLAN'S RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS ARE APPROPRIATE AND COMPLY WITH THE BANKRUPTCY CODE.**

73.     The Bankruptcy Code identifies various additional provisions that may be incorporated into a chapter 11 plan,[81] including "any other appropriate provision not inconsistent with the applicable provisions of this title."[82] Among other discretionary provisions, the Plan at Article VIII contains certain Debtor and consensual third-party releases, an exculpation provision, and an injunction provision. These provisions are the product of extensive good faith, arms'-length negotiations, were material inducements for the settlement of controversies embodied in the Plan, are an integral part of the Debtors' overall restructuring efforts, and were an essential element of the negotiations between the Debtors and their key constituencies in obtaining their support for the Plan. They comply with the Bankruptcy Code and prevailing law. Moreover, the approval of the Plan by the Debtors' economic stakeholders strongly supports the conclusion that the release and exculpation provisions are appropriate.

A.      **The Debtor Release Is Appropriate and Complies with the Bankruptcy Code.**

74.     Article VIII.C of the Plan provides for releases by the Debtors, their Estates, and the Reorganized Debtors of any and all Causes of Action, including any derivative claims, the Debtors could assert against the Released Parties (the "Debtor Release"). The Debtor Release is an essential piece of the whole reorganization and is a recognition of the Released Parties' contributions to the Debtors' restructuring. No party has asserted otherwise.

75.     The Bankruptcy Code supports the inclusion of debtor releases in a chapter 11 plan. Section 1123(b)(3)(A) of the Bankruptcy Code states that a chapter 11 plan may provide for "the

---

[81]   11 U.S.C. § 1123(b).

[82]   11 U.S.C. § 1123(b)(6).

settlement or adjustment of any claim or interest belonging to the debtor or to the estate." This provision allows the Debtors to release estate causes of action as consideration for concessions made by their various stakeholders pursuant to the Plan.[83] In determining the appropriateness of such releases, courts generally consider whether the release is (a) "fair and equitable" and (b) "in the best interests of the estate."[84] The "fair and equitable" prong is generally interpreted, consistent with that term's usage in section 1129(b) of the Bankruptcy Code, to require compliance with the Bankruptcy Code's absolute priority rule (discussed above).[85] Courts generally determine whether a debtor release is "in the best interest of the estate" by considering the following factors:

a.    the probability of success of the litigation being settled;

b.    the complexity and likely duration of the litigation, any attendant expense, inconvenience, or delay, and possible problems collecting a judgment;

c.    the interest of creditors with proper deference to their reasonable views; and

d.    the extent to which the settlement is truly the product of arm's-length negotiations.[86]

Ultimately, courts afford debtors some discretion in determining for themselves the appropriateness of granting plan releases of estate causes of action.[87]

76.    The Debtor Release easily meets this standard. As an initial matter, the Debtor Release is "fair and equitable" and complies with the absolute priority rule. The Debtor Release

---

[83]    *See, e.g.*, *In re Bigler LP*, 442 B.R. 537, 547 (Bankr. S.D. Tex. Nov. 24, 2010) (plan release provision "constitutes an acceptable settlement under § 1123(b)(3) because the [d]ebtors and the [e]state are releasing claims that are property of the [e]state in consideration for funding of the [p]lan"); *In re Heritage Org., LLC*, 375 B.R. 230, 307-308 (Bankr. N.D. Tex. Aug. 31, 2007); *In re General Homes Corp.*, 134 B.R. 853, 861 (Bankr. S.D. Tex. 1991).

[84]    *In re Mirant Corp.*, 348 B.R. 725, 738 (Bankr. N.D. Tex. Aug. 9, 2006); *see also Heritage*, 375 B.R. at 259.

[85]    *Mirant*, 348 B.R. at 738.

[86]    *Id.* at 739-40.

[87]    *See General Homes*, 134 B.R. at 861 ("[t]he court concludes that such a release is within the discretion of the [d]ebtor").

and the settlements embodied therein do not result in any junior Classes improperly receiving or retaining any property on account of junior Claims or Interests. In addition to being fair and equitable, the Debtor Release is in the best interest of the Debtors' Estates.

77.    *First*, to the extent that the Debtors have colorable Claims or Causes of Action against any of the Released Parties that would inure material benefit to creditor recoveries, the probability of success in litigation with respect to Causes of Action the Debtors may have against the Released Parties is uncertain. *Second*, prosecution of any potential Claims or Causes of Action released under the Debtor Release would undoubtedly be complex and time consuming and could mire the Debtors and parties in interest in litigation rather than effectuation of the Plan. *Third*, the Debtor Release is in the best interests of the Debtors' stakeholders. Stakeholders, including the Committee, have agreed to support the Plan, including the Debtor Release.[88] *Last*, the Plan, including the Debtor Release, was vigorously negotiated by sophisticated entities that were represented by able counsel and financial advisors. Accordingly, the Debtor Release is consistent with applicable law, represents a valid settlement and release of claims the Debtors may have against the Released Parties pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, is a valid exercise of the Debtors' business judgment, and is in the best interests of their estates. No party has asserted otherwise.

### B.    The Third-Party Release Is Consensual, Appropriate, and Complies with the Bankruptcy Code.

78.    Article VIII.D of the Plan contains a third-party release (the "Third-Party Release"). It provides that each Releasing Party—including all Holders of Claims and Interests that do not elect to opt out of the releases contained in the Plan or timely file with the Bankruptcy Court on

---

[88]    *Matter of Foster Mortg. Corp.*, 68 F.3d 914, 917 (5th Cir. 1995) ("While the desires of the creditors are not binding, a court 'should carefully consider the wishes of the majority of the creditors.'").

the docket of the chapter 11 cases an objection to the releases contained in the Plan—releases any and all Causes of Action such parties could assert against the Debtors, the Reorganized Debtors, and the Released Parties.[89]  Ultimately, the value-maximizing restructuring contemplated by the Plan would not be possible absent the support of the Released Parties.  Thus, the Third-Party Release operates to maximize the Debtors' fresh start by minimizing the possibility of distracting post-emergence litigation or other disputes.  Moreover, as set forth below, the Third-Party Release is a permissible consensual release.

79.    While some decisions from other Circuits limit the availability of third-party releases,[90] the Eleventh Circuit permits bankruptcy courts to approve even nonconsensual third party releases.[91]  Moreover, "[m]ost courts allow *consensual* non-debtor releases to be included in a plan."[92]  This makes sense as "[t]he validity of a consensual release is primarily a question of contract law because such releases are no different from any other settlement or contract."[93]

80.    In *Seaside*, the Eleventh Circuit adopted the factors set out in *In re Dow Corning Corp.,* 280 F.3d 648, 658 (6th Cir. 2002)[94] that courts should consider when determining whether to approve a nonconsensual non-debtor release: "(1) There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate; (2) The non-debtor

---

[89]    The foregoing description is meant as a summary of the operative plan provisions only.  Certain of the Releasing Parties are defined as such in multiple capacities.  To the extent there is any conflict between the foregoing summary and the definition of "Releasing Party" contained in Article I of the Plan, the Plan shall control.

[90]    *See, e.g., Ad Hoc Group of Vitro Noteholders v. Vitro S.A.B. de C.V. (In re Vitro S.A.B. de C.V.),* 701 F.3d 1031, 1059 (5th Cir. 2012).

[91]    *Seaside*, 780 F.3d at 1076.

[92]    *In re Wool Growers Cent. Storage Co.*, 371 B.R. 768, 775 (Bankr. N.D. Tex. Jul. 19, 2007) (emphasis added).

[93]    *Id*. (internal citation omitted).

[94]    *Seaside*, 780 F.3d at 1079.

has contributed substantial assets to the reorganization; (3) The injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor; (4) The impacted class, or classes, has overwhelmingly voted to accept the plan; (5) The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction; (6) The plan provides an opportunity for those claimants who choose not to settle to recover in full and; (7) The bankruptcy court made a record of specific factual findings that support its conclusions."[95]   These factors guide the Bankruptcy Court's determination, not all apply, and "should be applied flexibly" in a manner that is fair and equitable.[96]

81.      The Third-Party Release easily meets the standard set forth in *Seaside*. As a threshold matter, the Third-Party Release is consensual. All parties in interest were provided extensive notice of these chapter 11 cases, the Plan, and the deadline to object to confirmation of the Plan. With respect to the Third-Party Release, each of the Disclosure Statement, the Plan, the Ballots, and the Notices of Non-Voting Status, expressly states that Holders of Claims and Interests that do not either (i) check the box labeled "opt out" on the applicable ballot or notice returned before the Voting Deadline or (ii) timely file with the Bankruptcy Court on the docket of the chapter 11 cases an objection to the releases contained in the Plan will be bound by the Third-Party Release. The Debtors also provided free access to all documents on their restructuring website and took all steps reasonably practicable under the circumstances to ensure the broadest possible notice to parties in interest.

82.      In addition to being consensual, the Third-Party Release satisfies several of the

---

[95]   *Id.*

[96]   *Id.*

factors referenced in *Seaside* and is fair and equitable.  *First*, many of the Released Parties have made substantial contributions to the reorganization.  The Syndicated Bank Loan Lenders have agreed to a fraction of their aliquot distribution on account of their Claims, and the Purchaser has agreed to purchase the New Common Stock for substantial and valuable consideration.  Moreover, the DIP Lenders provided substantial value to the Debtors during the cases, which allowed them to operate and reach the precipice of confirmation.  Moreover, the definition of "Released Parties" expressly carves out Grupo and any non-Debtor entities to specify that such entities are not released from obligations in their capacity as "Loan Parties" or as contractual obligors to holders of GUC Claims.  In other words, a landlord with a guarantee against Grupo will retain that guarantee post-confirmation.

83.    *Second*, the Third-Party Release is integral to the Plan.  The provisions of the Plan were heavily negotiated. The Third-Party Release (together with the Debtor Release) is a key component of the Debtors' restructuring and a key inducement to bring stakeholder groups to the bargaining table. Put simply, the Debtors and their key stakeholders would be unwilling to support the Plan without assurances that they would not be subject to post-emergence litigation or other disputes related to the restructuring. The Third-Party Release therefore benefits not only the non-debtor Released Parties, but also the Debtors' post-emergence enterprise as a whole, as it provides finality and closure for the Debtors and these chapter 11 cases.

84.    *Third*, the Plan has broad support by all of the Debtors' stakeholders.  As discussed above, every Class entitled to vote has accepted the Plan, including Classes 3, 4, and 5, which consist of the Syndicated Bank Loan Claims, the GUC Claims, and the Convenience Claims.

85.    *Fourth,* the Plan permits any party in interest to opt out of the Third Party Releases.

86.    Ultimately, that the relevant factors weigh so heavily in favor of approving the

Third-Party Release speaks to the extraordinary nature of the restructuring embodied in the Plan. As set forth above, the Third-Party Release is fully consensual and otherwise complies with the controlling Eleventh Circuit standards.

### C. The Exculpation Provision Is Appropriate and Complies with the Bankruptcy Code.

87.    Article VIII.E of the Plan provides that each Exculpated Party shall be released and exculpated from any Cause of Action arising out of acts or omissions in connection with these chapter 11 cases and certain related transactions, except for claims related to any act or omission that constitutes actual fraud, willful misconduct, or gross negligence (the "Exculpation Provision").[97]  Currently, the Exculpated Parties include the Debtors, the Reorganized Debtors, the DIP Lenders, the Committee, members of the Committee, and the Purchaser. The Exculpated Parties do not include Grupo or any other non-Debtor entity in their capacity as a "Loan Party" under the Syndicated Bank Loan Agreement, or as a contractual obligor to any holder of GUC Claim.

88.    At the outset, it is important to underscore the difference between the Third-Party Release and the Exculpation Provision.  Unlike a release, the Exculpation Provision does not affect the liability of Exculpated Parties *per se*, but rather sets a standard of care of actual fraud, willful misconduct, or gross negligence in hypothetical future litigation against an Exculpated Party for acts arising out of the Debtors' restructuring.[98]  A bankruptcy court has the power to approve an exculpation provision in a chapter 11 plan because it cannot confirm a chapter 11 plan unless it

---

[97]    The foregoing description is a summary of the operative plan provisions only. To the extent there is any conflict between the foregoing summary and the definition of "Exculpated Parties" contained in Article I of the Plan, the Plan shall control.

[98]    *In re AJ Town Centre, LLC*, 2012 WL 2524731 (Bankr. D. Ariz. Jan. 5, 2012).

finds that the plan has been proposed in good faith under section 1129(a)(3).  Thus, an exculpation provision represents a legal conclusion that flows from several different findings a bankruptcy court must reach in confirming a plan.[99]  Once the court makes its good faith finding, it is appropriate to set the standard of care of the parties involved in the formulation of that chapter 11 plan.[100]  Exculpation provisions, therefore, appropriately prevent future collateral attacks against fiduciaries of the Debtors' estates.  Here, the Exculpation Provision is likewise appropriate and vital because it provides protection to the Exculpated Parties who served and assisted with the restructuring process.

89.    Exculpation provisions are essential to ensure that capable individuals are willing to manage and assist a debtor in the chapter 11 context.[101]  The Debtors' directors, officers, and other agents and advisors have made substantial contributions to the success of the Debtors' restructuring.  These contributions include negotiations pre-dating these chapter 11 cases in addition to the negotiations that have occurred during these chapter 11 cases.  The Debtors' directors and officers worked tirelessly to reach the myriad compromises embodied in the Plan and the multiple term sheets, stipulations and compromises in this bankruptcy case.  The Debtors' officers and directors achieved all of this while still attending to the Debtors' day-to-day business, ensuring that the Debtors' business continued to operate smoothly during the chapter 11 cases, thereby preserving value for the benefit of all parties in interest.  The Debtors could not have

---

[99]  *See* 28 U.S.C. § 157(b)(2)(L).

[100]  *See In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d. Cir. 2000) (observing that creditors providing services to the debtors are entitled to a "limited grant of immunity . . . for actions within the scope of their duties ").

[101]  *See In re Chemtura Corp.*, 439 B.R. 561, 610 (Bankr. S.D.N.Y. 2010) (recognizing that "exculpation provisions are included so frequently in chapter 11 plans because stakeholders all too often blame others for failures to get the recoveries they desire; seek vengeance against other parties; or simply wish to second guess the decision-makers in the chapter 11 case").

developed the Plan without the support and contributions of the Exculpated Parties. To the extent the Debtors acted in good faith, the Debtors' management and professionals should presumptively not be subject to liability.[102]   Insofar as any Exculpated Parties do not, strictly speaking, owe fiduciary duties to the Debtors, they were integral participants to the global settlement embodied by the Plan and are therefore properly included in the Exculpation Provision. In sum, then, the Exculpation Provision complies with the Bankruptcy Code. Accordingly, the Exculpation Provision should be approved.

### D.    The Injunction Provision Is Appropriate and Complies with the Bankruptcy Code.

90.    The injunction provision set forth in Article VIII.F of the Plan (the "Injunction Provision") merely implements the Plan's discharge, release, and exculpation provisions by permanently enjoining all Entities from commencing or maintaining any action against the Debtors, the Reorganized Debtors, and the Released Parties on account of, or in connection with, or with respect to, any such Claims or Interests discharged, released, exculpated, or settled under the Plan. The Injunction Provision is a necessary part of the Plan precisely because it enforces the discharge, release, and exculpation provisions that are centrally important to the Plan. Further, as described above, the injunction provided for in the Plan is consensual as to any party that did not specifically object thereto. Accordingly, to the extent the Bankruptcy Court finds that the Plan's exculpation and release provisions are appropriate, the Debtors respectfully request that the Bankruptcy Court approve the Injunction Provision.[103]

---

[102]    *Id.*; *see also PWS*, 228 F.3d at 246 (observing that creditors providing services to the debtors are entitled to a limited grant of immunity for actions within the scope of their duties).

[103]    *See, e.g.*, *In re Camp Arrowhead, Ltd.*, 451 B.R. 678, 701-02 (Bankr. W.D. Tex. Mar. 21, 2011) ("[T]he Fifth Circuit does allow permanent injunctions *so long as there is consent*. Without an objection, this court was entitled to rely on [the creditor's] silence to infer consent at the confirmation hearing.").

## V.     THE REMAINING OBJECTIONS ARE WITHOUT MERIT AND SHOULD BE OVERRULED.

91.     As set forth in greater detail in the Objection Chart attached hereto, the Debtors received numerous formal and informal Objections.  Since the Objection Deadline, the Debtors have been working diligently with the Objectors to resolve all Objections consensually.  The Debtors anticipate that all remaining good-faith Objections will be resolved through agreed language in the Plan or the Confirmation Order or otherwise in advance of the Confirmation Hearing.  However, to the extent the Debtors are unable to resolve any remaining Objections in advance of such time, the Debtors request that the Court overrule such Objections for the reasons set forth above and in the Objection Chart.

### Waiver of Bankruptcy Rule 3020(e)

92.     To implement the Plan, the Debtors seek a waiver of the 14-day stay of an order confirming a chapter 11 plan under Bankruptcy Rule 3020(e).  The Debtors' swift emergence from chapter 11 is an important component of their restructuring, and requiring the Debtors to pause before confirmation would be prejudicial to all parties in interest that continue to incur the cost and expense of the Debtors' chapter 11 cases.

### Conclusion

For the reasons set forth herein, the Debtors respectfully request that the Bankruptcy Court confirm the Plan and enter the Confirmation Order.

Respectfully submitted this 23rd day of November, 2020.

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Patricia B. Tomasco (admitted *pro hac vice*)
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone:  713-221-7000
Facsimile:  713-221-7100

Email:  pattytomasco@quinnemanuel.com

By:  /s/  *Patricia B. Tomasco*
    Patricia B. Tomasco (admitted *pro hac vice*)

Juan P. Morillo  (FBN 135933)
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-8100
Email: juanmorillo@quinnemanuel.com

-and-

BAST AMRON LLP
Jeffrey P. Bast (FBN 996343)
Brett M. Amron (FBN 148342)
One Southeast Third Avenue, Suite 1400
Sun Trust International Center
Miami, Florida 33131
Telephone: 305-379-7904
Facsimile: 305-379-7905
Email: jbast@bastamron.com
Email: bamron@bastamron.com

COUNSEL FOR CINEMEX USA REAL ESTATE HOLDINGS, INC., CINEMEX HOLDINGS USA, INC., and CB THEATER EXPERIENCE LLC

**<u>EXHIBIT A</u>**

**Objection Chart**

**IN RE CINEMEX USA REAL ESTATE HOLDINGS, INC.**, *ET AL.*, **CASE NO. 20-14695-LMI**

**PLAN OBJECTION SUMMARY CHART[1]**

| OBJECTOR | OBJECTION | STATUS/DEBTORS' RESPONSE |
|---|---|---|
| MN Theaters 2006, LLC (ECF No. 863) | • The Plan does not comply with section 1129(a)(3). | • *See* Memorandum ¶¶ 38-45. |
| 400 East 62nd Properties LLC (ECF No. 874) | • Seeks escrow for its asserted administrative claim of $373,500. | • The Debtors are working with 400 East 62nd Properties LLC to confirm its asserted claim and will add language to the Confirmation Order, if necessary. |
| Oracle America, Inc. (ECF No. 875) | • Objects to assumption of its contract and states that it is opting out of the Third-Party Releases. | • The Debtors are not assuming any contract or license with Oracle, Inc., and are working with Oracle, Inc. to confirm its asserted claim. |
| Ecolab, Inc. (ECF No. 876) | • Objects to the proposed cure amount. | • The Debtors are working with Ecolab, Inc. to confirm the cure amount. |
| Cobb Lakeside LLC (ECF No. 878) | • Objects under section 1129(a)(9) because there is no indication of how the administrative claims will be funded.<br><br>• Asserts that its administrative claim must be paid in full. | • The Plan Supplement specifies the payment of all allowed administrative claims, through the Purchase Price. *See* Plan Supplement, Ex. D. |

---

[1]  Capitalized terms used herein but not defined have the same meaning given to such terms in the Plan, the Disclosure Statement, the relevant Objection, or the Memorandum (each as defined in the Memorandum), as applicable.

| | | • The Debtors are working with Cobb Lakeside, LLC to confirm the amount of its claim. |
|---|---|---|
| Paramount Pictures Corporation (ECF No. 879) | • Objects to the Injunction provision to the extent that it can be read to impair any rights of setoff and/or recoupment. | • The Debtors will add language to the Confirmation Order to resolve this objection, and are awaiting a copy of the audit on which the setoff claim is based. |
| Brookfield Properties Retail, Inc., National Retail Properties, LP, USEF HCG Fenton, LLC, and Shopcore Properties, Ltd. (ECF No. 881) | • Objects to proposed cure amounts.<br><br>• Objects to the extent that the Plan cuts off obligations to cure defaults, extends the time to assume or reject unexpired leases past the date of confirmation of the Plan, and to the extent the Plan extinguishes creditors' rights to setoff. | • The Debtors are working with these objectors to confirm the cure amount.<br><br>• The Debtors will add language to the Confirmation Order to resolve this objection. |
| Windstream Services, LLC (ECF No. 891) | • Joins in Cobb Lakeside LLC's objection under section 1129(a)(9) regarding funding of administrative claims.<br><br>• Requests an escrow for its asserted administrative expense claim. | • This objection is untimely.<br><br>• The Plan Supplement specifies the payment of all allowed administrative claims, through the Purchase Price. *See* Plan Supplement, Ex. D. |