UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

CINEMEX USA REAL ESTATE
HOLDINGS, INC., CINEMEX
HOLDINGS USA, INC., and CB
THEATER EXPERIENCE LLC,[1]

      Debtors.

_____/

Chapter 11

Case No. 20-14695-LMI

(Jointly Administered)

**NOTICE OF FILING THE PROPOSED FINDINGS OF FACT, CONCLUSIONS OF
LAW AND ORDER CONFIRMING THE THIRD AMENDED JOINT
CHAPTER 11 PLAN OF REORGANIZATION OF CINEMEX USA
REAL ESTATE HOLDINGS, INC., CINEMEX HOLDINGS USA, INC.
AND CB THEATER EXPERIENCE LLC**

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors-in-possession

(collectively, the "Debtors"), hereby file the proposed Findings of Fact, Conclusions of Law and

Order Confirming the Third Amended Joint Chapter 11 Plan of Reorganization of Cinemex USA

Real Estate Holdings, Inc., Cinemex Holdings USA, Inc., and CB Theater Experience LLC (the

"Proposed Confirmation Order") with the United States Bankruptcy Court for the Southern District

of Florida (the "Court"), attached hereto as Exhibit A.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right to materially

alter, amend, or modify the Proposed Confirmation Order, provided that the Debtors file a revised

---

[1]    The Debtors in these cases and the last four digits of each Debtor's federal tax identification
number are as follows:  (1) Cinemex USA Real Estate Holdings, Inc. (2194); (2) Cinemex
Holdings USA, Inc. (5502); and (3) CB Theater Experience, LLC (0563).  The address for the
Debtors is 175 South West 7th Street, Suite 1108, Miami, Florida 33130.

version of the Proposed Confirmation Order if such document is altered, amended, or modified in any material respect.

PLEASE TAKE FURTHER NOTICE that the hearing at which the Court will consider confirmation of the Plan and entry of the Proposed Confirmation Order shall commence on November 24, 2020, at 9:30 a.m. (prevailing Eastern Time) before the Honorable Laurel M. Isicoff, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of Florida.

PLEASE TAKE FURTHER NOTICE that copies of all documents filed in these chapter 11 cases are available free of charge by visiting the website maintained by the Debtors' voting agent, Omni Agent Solutions at https://cases.omniagentsolutions.com/ or by telephone at 1-866-771-0562.  You may also obtain copies of any pleadings by visiting the Court's website at http://www.flsb.uscourts.gov/ in accordance with the procedures and fees set forth therein.

Respectfully submitted this 23rd day of November, 2020.

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

Patricia B. Tomasco (admitted *pro hac vice*)
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: 713-221-7000
Facsimile: 713-221-7100
Email: pattytomasco@quinnemanuel.com

By:  /s/  *Patricia B. Tomasco*
     Patricia B. Tomasco (admitted *pro hac vice*)

-and-

Eric Winston (admitted *pro hac vice*)
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213-443-3000
Facsimile: 213-443-3100
Email: ericwinston@quinnemanuel.com

-and-

Juan P. Morillo (FBN 135933)
1300 I Street, NW, Suite 900
Washington, D.C.  20005
Telephone: 202-538-8000
Facsimile: 202-538-8100
Email: juanmorillo@quinnemanuel.com

-and-

BAST AMRON LLP

Jeffrey P. Bast (FBN 996343)
Brett M. Amron (FBN 148342)
One Southeast Third Avenue, Suite 1400
Sun Trust International Center
Miami, Florida 33131
Telephone: 305-379-7904
Facsimile: 305-379-7905
Email: jbast@bastamron.com
Email: bamron@bastamron.com

COUNSEL FOR CINEMEX USA REAL
ESTATE HOLDINGS, INC.,  CINEMEX
HOLDINGS USA, INC., and CB THEATER
EXPERIENCE LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

| | |
|---|---|
| CINEMEX USA REAL ESTATE HOLDINGS, INC., CINEMEX HOLDINGS USA, INC., and CB THEATER EXPERIENCE LLC,[1] | Chapter 11 |
| | Case No. 20-14695-LMI |
| | (Jointly Administered) |
| Debtors. | |

_____/

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER
CONFIRMING THIRD AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION OF CINEMEX USA REAL ESTATE HOLDINGS, INC.,
CINEMEX HOLDINGS USA, INC. AND CB THEATER EXPERIENCE LLC**[2]

---

[1]    The Debtors in these cases and the last four digits of each Debtor's federal tax identification number are as follows:  (1) Cinemex USA Real Estate Holdings, Inc. (2194); (2) Cinemex Holdings USA, Inc. (5502); and (3) CB Theater Experience LLC (0563).  The address for the Debtors is 175 South West 7th Street, Suite 1108, Miami, Florida 33131.

[2]    Capitalized terms used but not otherwise defined in these findings of fact, conclusions of law, and order (collectively, the "Confirmation Order") shall have the meaning ascribed to them in the Third Amended Joint Chapter 11 Plan of Cinemex USA Real Estate Holdings, Inc., Cinemex Holdings USA, Inc., and CB Theater Experience LLC, a copy of which is attached hereto as Exhibit A (as may be amended, supplemented, or otherwise modified from time to time, and including all exhibits and supplements thereto, the "Plan").  The rules of interpretation set forth in Article I.B of the Plan apply to this Confirmation Order.

1

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), having:

a.    Commenced these chapter 11 cases (the "Chapter 11 Cases"), on April 25 and 26, 2020 (the "Petition Date"), by filing voluntary petitions in the United States Bankruptcy Court for the Southern District of Florida (the "Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

b.    continued to operate their businesses and manage their properties as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

c.    filed, on October 29, 2020, solicitation versions of the *Third Amended Joint Chapter 11 Plan of Cinemex USA Real Estate Holdings, Inc., Cinemex Holdings USA, Inc., and CB Theater Experience LLC* (ECF No. 779) (the "Plan") and the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Reorganization of Cinemex USA Real Estate Holdings, Inc., Cinemex Holdings USA, Inc. and CB Theater Experience LLC* (ECF No. 779) (the "Disclosure Statement");

d.    obtained, on October 29, 2020, entry of the *Order (I) Approving Adequacy of the Disclosure Statement; (II) Setting Hearing on Confirmation of Plan; (III) Approving Solicitation, Form of Ballots, Notices and Notice Procedures With Respect to Confirmation; (IV) Setting Hearing on Fee Applications; (V) Setting Various Deadlines and (VI) Describing Plan Proponent's Obligations* (ECF No. 777), approving the Disclosure Statement, solicitation procedures, and related notices, forms, and ballots (the "Disclosure Statement Order");

e.    filed, on November 19, 2020, a *Plan Supplement* (ECF No. 885) (the "First Plan Supplement");

f.    caused, beginning on or about October 31, 2020 (the "Solicitation Date"), the Solicitation Packages (as defined in the Disclosure Statement Order) and notice of the Confirmation Hearing and the deadline for objecting to confirmation of the Plan to be distributed in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Disclosure Statement Order, and the Solicitation Procedures, as evidenced by, among other things, the *Certificate of Service* (ECF No. 903) (the "Solicitation Affidavit");

g.    filed, on November 23, 2020, the *Debtors' Memorandum of Law in Support of Confirmation of the Third Amended Joint Chapter 11 Plan of*

2

*Cinemex USA Real Estate Holdings, Inc., Cinemex Holdings USA, Inc., and CB Theater Experience LLC* (ECF No. 902) (the "<u>Confirmation Brief</u>"); and

h.     filed, on November 20, 2020, the *Certificate of Proponent of Plan on Acceptance of Plan, Report on Amount to be Deposited, Certificate of Amount Deposited and Payment of Fees (LF-34)* (as amended supplemented, or modified from time to time, the "<u>Voting Report</u>") (ECF No. 909).

This Court having:

a.     entered the Disclosure Statement Order on October 29, 2020;

b.     set Wednesday, November 18, 2020, at 4:00 p.m. (prevailing Eastern Time) as the deadline for filing objections in opposition to the Plan;

c.     set Wednesday, November 18, 2020, at 4:00 p.m. (prevailing Eastern Time) as the deadline for submitting ballots accepting or rejecting the Third Amended Plan and Opt Out Forms;

d.     set Tuesday, November 24, 2020, at 9:30 a.m. (prevailing Eastern Time) as the date and time for the commencement of the Confirmation Hearing in accordance with Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

e.     reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Voting Report, and all pleadings, exhibits, declarations, affidavits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

f.     held the Confirmation Hearing;

g.     heard the statements and arguments made by counsel in respect of Confirmation;

h.     considered all oral representations, live testimony, written direct testimony, designated deposition testimony, exhibits, documents, filings, and other evidence presented at the Confirmation Hearing;

i.     made rulings on the record at the Confirmation Hearing (the "<u>Confirmation Ruling</u>");

3

j.   overruled any and all objections to the Plan and to Confirmation, except as otherwise stated or indicated on the record, and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated; and

k.   taken judicial notice of all papers and pleadings filed in the Chapter 11 Cases.

NOW, THEREFORE, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the record of the Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing, including without limitation, the declarations in support, establish just cause for the relief granted in the Confirmation Order; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and order:

## I.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.   Jurisdiction and Venue.**

1.   The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1334. The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed and to enter a final order with respect thereto. The Debtors confirm their consent, pursuant to rule 7008 of the Bankruptcy Rules, to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders

or judgments in connection herewith consistent with Article III of the United States Constitution. Venue in this Court was proper as of the Petition Date and continues to be proper under 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2).

**B.     Eligibility for Relief.**

2.     The Debtors were and continue to be entities eligible for relief under section 109 of the Bankruptcy Code.

**C.     Commencement and Joint Administration of the Chapter 11 Cases.**

3.     On the Petition Date, the Debtors commenced the Chapter 11 Cases.  On April 30, 2020, the Bankruptcy Court entered an order approving the Debtors' motion for joint administration (ECF No. 9) in accordance with Bankruptcy Rule 1015(b).   The Debtors have operated their business and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.

**D.     Appointment of Committee.**

4.     On May 22, 2020, the U.S. Trustee Filed the Notice of Appointment of Committee of Unsecured Creditors (ECF No. 140), thereby notifying parties in interest that the U.S. Trustee had appointed the Official Committee of Unsecured Creditors (the "Committee") to represent the interests of the unsecured creditors of the Debtors in the Chapter 11 Cases.

**E.     Plan Supplement.**

5.     On November 18, 2020, the Debtors filed the Plan Supplement (ECF No. 885). The Plan Supplement (as amended, supplemented, or otherwise modified from time to time according to the Plan) complies with the terms of the Plan, and the Debtors provided good and

proper notice of the filing in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and the facts and circumstances of the Chapter 11 Cases. No other or further notice is or will be required with respect to the Plan Supplement or any of the documents contained therein or related thereto. Subject to the terms of the Plan, the Debtors are authorized to modify the Plan Supplement in accordance with the time limits set forth in the Plan.

**F.      Modifications to the Plan.**

6.      Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan since the Debtors began the solicitation of votes as described or set forth in this Confirmation Order constitute technical changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest. These modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and solicitation materials served pursuant to the Disclosure Statement Order, and notice of these modifications was adequate and appropriate under the facts and circumstances of the Chapter 11 Cases.

7.      In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosures under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims and Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Accordingly, the Plan, as modified, is properly before this Court and all votes cast with

respect to the Plan prior to such modifications shall be binding and shall apply with respect to the Plan.

**G.    Objections Overruled.**

8.    Any resolution or disposition of objections to Confirmation of the Plan explained or otherwise ruled upon by the Court on the record at the Confirmation Hearing is hereby incorporated by reference. All unresolved objections, statements, and reservations of rights with respect to Confirmation are hereby overruled on the merits.

**H.    Disclosure Statement Order.**

9.    On October 29, 2020, the Court entered the Disclosure Statement Order (ECF No. 777).  The Disclosure Statement Order, among other things, fixed Wednesday, November 18, 2020, at 4:00 p.m. (prevailing Eastern Time) as the deadline for objecting to the Plan (the "Plan Objection Deadline") and Wednesday, November 18, 2020, at 4:00 p.m. (prevailing Eastern Time) as the deadline for voting to accept or reject the Plan (the "Voting Deadline"). The Disclosure Statement Order also established (a) November 20, 2020, as the deadline for the Debtors to file their confirmation affidavit, (b) November 23, 2020, at 12 noon as the deadline the Debtors to file a reply to objections, if any, to confirmation of the Plan, and (c) Tuesday, November 24, 2020, at 9:30 a.m. (prevailing Eastern Time) as the date and time for the Confirmation Hearing.

**I.    Transmittal and Mailing of Materials; Notice.**

10.    As evidenced by the Solicitation Affidavit, the Debtors provided due, adequate, and sufficient notice of the Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Packages, the Confirmation Hearing Notice, the Plan Supplement, and all the other materials distributed by the Debtors in connection with confirmation of the Plan in compliance

7

with the Bankruptcy Rules, including Bankruptcy Rules 2002, 3017, 3019, and 3020(b), the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Local Rules"), and the procedures set forth in the Disclosure Statement Order. The Debtors provided due, adequate, and sufficient notice of the Voting Deadline and Plan Objection Deadline, the Confirmation Hearing (as continued from time to time), and any applicable hearings described in the Disclosure Statement Order in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Disclosure Statement Order. No other or further notice is or shall be required.

**J.    Solicitation.**

11.    The Debtors solicited votes for acceptance and rejection of the Plan in good faith, and such solicitation complied with sections 1125, 1126, and all other applicable sections of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, 3018, and 3019, the Disclosure Statement Order, the Bankruptcy Local Rules, and all other applicable rules, laws, and regulations. The Solicitation Packages provided the opportunity for voting creditors and non-voting creditors to opt out of the releases contained in the Plan.

**K.    Voting Report.**

12.    Before the Confirmation Hearing, the Debtors filed the Voting Report. The Voting Report was admitted into evidence during the Confirmation Hearing without objection. The procedures used to tabulate ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and all other applicable rules, laws, and regulations.

13.    As set forth in the Plan and Disclosure Statement, Holders of Claims in Classes 3, 4, and 5 of the Plan (collectively, the "Voting Classes") were eligible to vote to accept or

reject the Plan in accordance with the Solicitation Procedures. Holders of Claims and Interests in Classes 1, 2, and 7 of the Plan (collectively, the "Deemed Accepting Classes") are Unimpaired and conclusively presumed to accept the Plan and, therefore, did not vote to accept or reject the Plan. Holders of Claims or Interests in Classes 6 and 8 of the Plan (collectively, the "Deemed Rejecting Classes") are Impaired and are entitled to no recovery under the Plan, and are therefore deemed to have rejected the Plan.

14.     As evidenced by the Voting Report, Classes 3, 4, and 5 voted to accept the Plan at each Debtor.

**L.      Bankruptcy Rule 3016.**

15.     The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The Debtors appropriately filed the Disclosure Statement and Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b). The injunction, release, and exculpation provisions in the Plan, as described in the Disclosure Statement, describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the Entities that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).

**M.      Burden of Proof.**

16.     The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for Confirmation. Further, the Debtors have surpassed that standard and have proven the elements of sections 1129(a) and 1129(b) by clear and convincing evidence. Each witness who provided testimony on behalf of the Debtors in connection with the Confirmation Hearing (including by affidavit, declaration or certification)

was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

**N.      Compliance with the Requirements of Section 1129 of the Bankruptcy Code.**

17.      The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

**a.      Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.**

18.      The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, as required by section 1129(a)(1) of the Bankruptcy Code.

**i.      Sections 1122 and 1123(a)(1)—Proper Classification.**

19.      The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. In accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into eight different Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Facility Claims, which are each addressed in Article II of the Plan and are required not to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code). Valid business, factual, and legal reasons exist for the classification of the various Classes of Claims and Interests created under the Plan; the classifications were not implemented for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims and Interests.

20.      In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims or Interests contains only Claims or Interests substantially similar to the other Claims or

Interests within that Class.  Accordingly, the Plan satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

### ii.    Sections 1123(a)(2)—Specification of Unimpaired Classes.

21.    Article III of the Plan specifies that Claims in the Deemed Accepting Classes are Unimpaired under the Plan.   In addition, Article II of the Plan specifies that Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Facility Claims with respect to the Plan are Unimpaired, although the Plan does not classify these Claims.  Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

### iii.    Sections 1123(a)(3)—Specification of Treatment of Impaired Classes.

22.    Article III of the Plan specifies the treatment of each Impaired Class under the Plan.  Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

### iv.    Sections 1123(a)(4)—No Discrimination.

23.    Article III of the Plan provides the same treatment to each Claim or Interest in any particular Class, as the case may be, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.   Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### v.    Section 1123(a)(5)—Adequate Means for Plan Implementation.

24.    The Plan and the various documents included in the Plan Supplement provide adequate and proper means for the Plan's execution and implementation, including: (a) the restructuring of the Debtors' balance sheet and other financial transactions provided for by the Plan, including the issuance of the New Common Stock;

(b) the New Organizational Documents; (c) the Assumed Executory Contract and Unexpired Lease List; (d) the Rejected Executory Contract and Unexpired Lease List; (e) the Stock Purchase Agreement; (f) the Schedule of Retained Causes of Action; (g) the identity of the members of the Reorganized Cinemex Holdings Board and management for the Reorganized Debtors and the nature of their compensation; (h) the Cap-Ex Escrow Agreements; (i) the GUC Claims Trust Agreement; (j) the Governance Term Sheet; (k) the list of insurance policies; (l) the Opt Out Form; (m) the list of Assumed Theaters; (n) the form of TLCF Note; (o) the cancellation of certain existing agreements, obligations, instruments, and Interests, as provided in Article III of the Plan; (p) the vesting of the assets of the Debtors' Estates in the Reorganized Debtors; and (q) the execution, delivery, filing, or recording of all contracts, instruments, releases, and other agreements or documents in furtherance of the Plan.  Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

### vi.    Section 1123(a)(6)—Non-Voting Equity Securities.

25.    The New Organizational Documents for the Debtors prohibit the issuance of non- voting securities. Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

### vii.    Section 1123(a)(7)—Directors, Officers, and Trustees.

26.    The selection of the members of the Reorganized Cinemex Holdings Board is set forth in the Plan Supplement.  Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

      **b.**      **Section 1123(b)—Permissive Contents of the Plan.**

27.      The Plan contains various discretionary provisions that are permitted by section 1123(b) of the Bankruptcy Code. Each such provision complies with section 1123(b) of the Bankruptcy Code and is not inconsistent with the applicable provisions of the Bankruptcy Code. Thus, the Plan satisfies section 1123(b) of the Bankruptcy Code.

      **i.**      **Impairment/Unimpairment of Any Class of Claims or Interests.**

28.      Pursuant to the Plan, Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

      **ii.**      **Assumption and Rejection of Executory Contracts and Unexpired Leases.**

29.      Article V of the Plan provides for the assumption of the Debtors' Executory Contracts and Unexpired Leases as of the Effective Date of the Plan, unless such Executory Contracts or Unexpired Leases: (a) previously were assumed, assumed and assigned, or rejected by the Debtors; (b) are identified on the Rejected Executory Contract and Unexpired Lease List; (c) are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Effective Date; or (d) are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

      **iii.**      **Compromise and Settlement.**

30.      In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan constitute a good faith

compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The Plan (as expressly modified by paragraphs 152-157 and 166-173 of this Confirmation Order) incorporates integrated compromises and settlements (collectively, the "Settlements"), of numerous claims and Causes of Action, issues, and disputes designed to achieve a beneficial and efficient resolution of the Chapter 11 Cases for all parties in interest.

31.    Accordingly, in consideration for the distributions and other benefits provided under the Plan, this Confirmation Order shall constitute the Court's approval of the Settlements as well as a finding by the Court that such Settlements are in the best interests of the Debtors, their Estates, and the Holders of Claims and Interests and are fair, equitable, and reasonable.

32.    Based upon the representations and arguments of counsel to the Debtors and all other testimony either actually given or proffered and other evidence introduced at the Confirmation Hearing and the full record of the Chapter 11 Cases, this Confirmation Order constitutes the Court's approval of the Settlements incorporated in the Plan and this Confirmation Order, because, among other things: (a) the Settlements reflect a reasonable balance between the possible success of litigation with respect to each of the settled claims and disputes, on the one hand, and the benefits of fully and finally resolving such claims and disputes and allowing the Debtors to expeditiously exit chapter 11, on the other hand; (b) absent the Settlements, there is a potential for complex and protracted litigation involving, among other things, the Settlements, with the attendant expense,

14

inconvenience, and delay that have a possibility to derail the Debtors' reorganization efforts; (c) each of the parties supporting the Settlements, including the Debtors, the Syndicated Bank Loan Lenders, and the Committee are represented by counsel that is recognized as being knowledgeable, competent, and experienced; (d) the Settlements are the product of arm's-length bargaining and good faith negotiations between sophisticated parties; and (e) the Settlements are fair, equitable, and reasonable and in the best interests of the Debtors, Reorganized Debtors, their respective Estates and property, creditors, and other parties in interest, will maximize the value of the Estates by preserving and protecting the ability of the Reorganized Debtors to continue operating outside of bankruptcy protection and in the ordinary course of business, and are essential to the successful implementation of the Plan. Based on the foregoing, the Settlements satisfy the requirements of applicable Eleventh Circuit law for approval of settlements and compromises pursuant to Bankruptcy Rule 9019.

### iv.    Debtors' Release.

33.    The releases of claims and Causes of Action by the Debtors described in Article VIII.C of the Plan and incorporated into this Confirmation Order in accordance with section 1123(b)(3)(A) of the Bankruptcy Code represent a valid exercise of the Debtors' business judgment under Bankruptcy Rule 9019 (the "Debtors' Release"). The Debtors' or the Reorganized Debtors' pursuit of any such claims against the Released Parties is not in the best interest of the Estates' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such claims. The Debtors' Release is fair and equitable.

34.     The Debtors' Release is furthermore an integral part of the Plan and the Settlements embodied therein and in this Confirmation Order, and is in the best interests of the Debtors' Estates as a component of the comprehensive settlement implemented under the Plan. The probability of success in litigation with respect to the released Causes of Action supports the Debtors' Release. In negotiations between the Debtors, the Purchaser, the Syndicated Bank Loan Agent (on behalf of the Syndicated Bank Loan Lenders) and the Committee, the parties identified various potential claims and Causes of Action held by the Debtors. With respect to each of these potential claims and Causes of Action, parties could assert colorable defenses, and the probability of success is highly uncertain and appropriately reflected in the recoveries provided under the Plan.

35.     Creditors have overwhelmingly voted in favor of the Plan, including the Debtors' Release. The Plan, including the Debtors' Release contained therein, was negotiated by sophisticated parties represented by able counsel and financial advisors, including the Settling Lenders, the Supporting Creditors, and the Committee. The Debtors' Release is therefore the result of an arm's-length negotiation process.

36.     The Debtors' Release appropriately offers protection to parties that provided consideration to the Debtors and that participated in the Debtors' restructuring process. Specifically, the Released Parties under the Plan, including (in each case only in its capacity as such): (a) each of the Syndicated Bank Loan Lenders; (b) the Syndicated Bank Loan Agent; (c) the DIP Lenders; (d) the Committee; (e) the individual members of the Committee (both in their capacity as such and as individual creditors); (f) each of the Debtors' current and former directors or officer; (g) the Purchaser; and (h) with respect to

16

each of the foregoing (a) through (g), each of such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such, made significant concessions and contributions to the Chapter 11 Cases, including, as applicable, entering into the Settlements and actively supporting the Plan and the Chapter 11 Cases, *provided however,* that as set forth in the Plan, neither Grupo Cinemex, Operadora De Cinemas, S.A. DE C.V., or any other Entity that is not a Debtor shall be released from their obligations in their capacity as (i) a "Loan Party" under the Syndicated Bank Loan Agreement or (ii) a contractual obligor to a Holder of a GUC Claim, whether as a guarantor or surety with respect to any guarantees or payment assurances arising under or relating to Executory Contracts and Unexpired Leases, whether or not rejected prior to the Confirmation Date.  For the avoidance of doubt, the Debtors' Release does not release any of the Released Parties from their obligations under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including without limitation under the TLCF Note or the Purchaser from its obligations under the Stock Purchase Agreement.

17

37.    The Debtors' Release for the Debtors' directors and officers is appropriate because the Debtors' directors and officers share an identity of interest with the Debtors, supported the Plan and the Chapter 11 Cases, actively participated in meetings, negotiations, and implementation during the Chapter 11 Cases, and have provided other valuable consideration to the Debtors to facilitate the Debtors' reorganization.

38.    As such, the releases are: (a) in exchange for the good and valuable consideration provided by or on behalf of the Released Parties; including the Third Party Releases granted by the Released Parties; (b) a good faith settlement and compromise of the claims or Causes of Action released herein; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the releases described herein.  In light of the foregoing, the Debtors' Release is approved.

### v.    Release by Holders of Claims and Interests.

39.    The release by the Releasing Parties set forth in Article VIII.D of the Plan and incorporated into this Confirmation Order (the "Third Party Release") is an essential provision of the Plan. The Third Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Debtors' Release; (d) a good faith settlement and compromise of such claims or Causes of Action; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after

due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the releases described herein.

40.    The Third Party Release is an integral part of the Plan.  Similar to the Debtors' Release, the Third Party Release was integral to the formulation of the Plan, including the Settlements embodied therein and in this Confirmation Order.   The Third Party Release was critical in incentivizing the Released Parties to support the Plan and the Settlements and preventing potentially significant and time-consuming litigation.   The Third Party Release appropriately offers certain protections to parties who constructively participated in the Debtors' restructuring process by supporting the Plan through the Settlements.  Furthermore, the Third Party Release is consensual, as the Releasing Parties in interest were provided notice of the chapter 11 proceedings, the Plan, and the deadline to object to confirmation of the Plan. Additionally, voting creditors and non-voting parties were given the opportunity to opt out of the Third Party Release (which would also cause such parties to lose the benefit of the Debtors' Release), and the release provisions of the Plan were conspicuous and emphasized with boldface type in the Plan, the Disclosure Statement, and the applicable ballots and Opt-Out Form.

41.    The scope of the Third Party Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases, and parties received due and adequate notice of the Third Party Release.  Among other things, the Plan provides appropriate and specific disclosure with respect to the claims and Causes of Action that are subject to the Third Party Release, and no other disclosure is necessary.  The Debtors, as evidenced by the Solicitation Affidavit, provided sufficient notice of the Third Party Release, and no

further or other notice is necessary.    The Third Party Release is consistent with established practice in this jurisdiction and others.  The Third Party Release is specific in language, integral to the Plan, a condition of the settlement, and given for substantial consideration.

### vi.    Exculpation.

42.    The exculpation provision set forth in Article VIII.E of the Plan and incorporated into this Confirmation Order is essential to the Plan.  The record in the Chapter 11 Cases supports the exculpation provision set forth in Article VIII.E of the Plan, which is appropriately tailored to protect the Exculpated Parties from unnecessary litigation.  The exculpation, including the carveout for actual fraud, gross negligence, or willful misconduct, is consistent with established practice in this jurisdiction and others.

### vii.    Injunction.

43.    The injunction provision set forth in Article VIII.F of the Plan is essential to the Plan and is necessary to implement the Plan and to preserve and enforce the discharge, the Debtors' Release, the Third Party Release, and the exculpation provision in Article VIII.E of the Plan.  The injunction provision is appropriately tailored to achieve those purposes.

### viii.    Channeling Injunction.

44.    The channeling injunction provision set forth in Article VIII.G of the Plan is an essential provision of the Plan and is necessary to implement the Plan.  The parties benefiting from channeling injunction provided consideration to effectuate the Settlements.  The channeling injunction is instrumental to the Plan and was critical in incentivizing creditors to support the Plan and avoiding potentially significant and time-

consuming litigation.    The channeling injunction was a core negotiation point in connection with the Settlements and instrumental in developing the Plan in a manner that maximized value for all of the Debtors' creditors and kept the Debtors intact as a going concern.

45.    The scope of the channeling injunction is appropriately tailored under the facts and circumstances of the Chapter 11 Cases, and parties received due and adequate notice of the channeling injunction.  The channeling injunction is fair and appropriate in these Chapter 11 Cases.

### ix.    Preservation of Claims and Causes of Action.

46.    Article IV.S of the Plan, as well as the Plan Supplement, appropriately provide for the preservation by the Debtors or the Reorganized Debtors of certain Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.    Causes of Action not released by the Debtors or exculpated under the Plan or this Confirmation Order will be retained by the Reorganized Debtors as provided by the Plan.  The Plan is specific and unequivocal with respect to the Causes of Action to be retained by the Reorganized Debtors, and the Plan and the Plan Supplement provide meaningful disclosure with respect to the potential Causes of Action that the Reorganized Debtors may retain, and all parties in interest received adequate notice with respect to such Causes of Action.  The provisions regarding Causes of Action in the Plan, and as set forth in the Plan Supplement, are appropriate and in the best interests of the Debtors, their respective Estates, and Holders of Claims and Interests.

### x.    Lien Releases.

47.     The release and discharge of all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates set forth in Article VIII.B of the Plan and (the "Lien Releases") is necessary to implement the Plan.    The provisions of the Lien Releases are appropriate, fair, equitable, and reasonable and in the best interests of the Debtors, their Estates, and holders of Claims and Interests.

### xi.     Additional Plan Provisions.

48.     The other discretionary provisions of the Plan, including the Plan Supplement, are appropriate and consistent with applicable provisions of the Bankruptcy Code, including, without limitation, the provisions providing for the implementation of the Restructuring Transactions and performance of the agreements contemplated thereby, and the retention of jurisdiction.

### c.     Section 1123(d)—Cure of Defaults.

49.     Article V.C of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.    Any monetary defaults under each Assumed Executory Contract or Unexpired Lease (calculated as of the Petition Date) shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, or as soon as reasonably practicable thereafter, subject to the limitations described in Article V.C of the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.    Except as expressly provided in this Confirmation Order, any disputed Cure Claims will be determined in accordance with the procedures set forth in Article V.C of

the Plan or this Confirmation Order and applicable bankruptcy and nonbankruptcy law. As such, the Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code. Assumption of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

> ### d. Section 1129(a)(2)—Compliance of the Debtors and Others with the Applicable Provisions of the Bankruptcy Code.

50.     The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, 1128, and 1129 and Bankruptcy Rules 2002, 3017, 3018, and 3019.

51.     The Debtors and their agents solicited votes to accept or reject the Plan after the Court approved the adequacy of the Disclosure Statement, pursuant to section 1125(a) of the Bankruptcy Code and the Disclosure Statement Order.

52.     The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e), and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure

Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provision set forth in Article VIII.E of the Plan. The Debtors and their agents and Affiliates have participated in good faith and in compliance with applicable provisions of the Bankruptcy Code in the offer, issuance, sale, or purchase of the New Common Stock, and the Debtors, the Reorganized Debtors, and their respective agents and Affiliates shall not be held liable on account of such participation for violation of any applicable law, rule, or regulation governing the offer, issuance, sale, or purchase of such securities.

53.     The Debtors and their agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and therefore are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

       **e.     Section 1129(a)(3)—Proposal of Plan in Good Faith.**

54.     The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders, and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan, and the process leading to its formulation.  The Debtors' good faith is evident from the facts and record of the Chapter

11 Cases, the Disclosure Statement, the hearing on the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases.

55.     The Plan is the product of good faith, arm's-length negotiations by and among the Debtors, the Purchaser, the Syndicated Bank Loan Agent (on behalf of the Syndicated Bank Loan Lenders) and the Committee.  The Plan itself and the process leading to its formulation, including the marketing and sale process relating to the New Common Stock, provides independent evidence of the Debtors' and such other parties' good faith, serves the public interest, and assures fair treatment of Holders of Claims and Interests.  Consistent with the overriding purpose of chapter 11, the Debtors filed the Chapter 11 Cases with the belief that the Debtors were in need of reorganization, and the Plan was negotiated and proposed with the intention of accomplishing a successful reorganization and maximizing stakeholder value and for no ulterior purpose. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

56.     The Debtors or the Reorganized Debtors, as appropriate, have been, are, and will continue acting in good faith if they proceed to: (a) consummate the Plan, the Restructuring Transactions, and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed or contemplated by this Confirmation Order. Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

**f.     Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable.**

57.     Any payment made or to be made by the Debtors, or by a person issuing securities or acquiring property under the Plan, for services or costs and expenses in

connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable. Accordingly, the Plan satisfies the requirements of section 1129(a)(4).

> **g.** **Section 1129(a)(5)—Disclosure of Directors and Officers Are Consistent with the Interests of Creditors and Public Policy.**

58. The identities of the Reorganized Debtors' directors and officers were, to the extent reasonably practicable and known to the Debtors, disclosed in the Plan Supplement. To the extent that such directors and officers are insiders, the nature of their compensation has been disclosed to the extent known and reasonably practicable. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

> **h.** **Section 1129(a)(6)—Rate Changes.**

59. The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and therefore will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

> **i.** **Section 1129(a)(7)—Best Interests of Holders of Claims and Interests.**

60. The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing, and the facts and circumstances of the Chapter 11 Cases, establishes that each Holder of Allowed Claims or Interests in each Class either (i) has accepted the Plan; or (ii) will recover as much or more value under the Plan on account of such Claim or Interest, as of the Effective Date of the Plan, than the amount such Holder would receive if the Debtors were liquidated on the Effective Date of the Plan under chapter 7 of the Bankruptcy Code. As a result, the Debtors have demonstrated that the

Plan is in the best interest of their creditors and equity holders, and the requirements of section 1129(a)(7) of the Bankruptcy Code are satisfied.

**j.    Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Certain Impaired Classes; Fairness of Plan with Respect to Rejecting Classes.**

61.    The Deemed Accepting Classes are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  At least one Class of Claims that is Impaired under the Plan has accepted the Plan. Nevertheless, because the Plan has not been accepted by the Rejecting Classes, the Debtors seek Confirmation, solely with respect to the Rejecting Classes, under section 1129(b) of the Bankruptcy Code, rather than section 1129(a)(8) of the Bankruptcy Code.  Although section 1129(a)(8) has not been satisfied with respect to the Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes, and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below.  As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

**k.    Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

62.    The treatment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Claims under Article II of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**l.    Section 1129(a)(10)—Acceptance by at Least One Impaired Class.**

63.    As set forth in the Voting Reports, each Impaired Class that was entitled to vote on the Plan has voted to accept the Plan.  Specifically, Holders of Claims in Classes

3, 4, and 5 voted to accept the Plan. As such, there is at least one Class of Claims that is Impaired under the Plan and has accepted the Plan, determined without including any acceptance of the Plan by any insider (as defined by the Bankruptcy Code). Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied with respect to the Plan.

      **m.**     **Section 1129(a)(11)—Feasibility of the Plan.**

64. The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence supporting the Plan proffered or adduced by the Debtors at or before the Confirmation Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization; (d) establishes that the Debtors will have sufficient funds available to meet their obligations under the Plan—including sufficient amounts of Cash to reasonably ensure payment of, among other Allowed Claims, Allowed General Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed DIP Claims, Allowed Other Secured Claims, Allowed Professional Fee Claims, and Allowed GUC Claims that will receive the Convenience Claims Distribution pursuant to the terms of the Plan, and other expenses in accordance with the terms of the Plan and section 507(a) of the Bankruptcy Code; and (e) establishes that the Debtors or the Reorganized Debtors, as applicable, will have the financial wherewithal to pay any Claims that accrue, become payable, or are allowed by Final Order following the Effective Date.

65.     Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**n.      Section 1129(a)(12)—Payment of Statutory Fees.**

66.     Article XII.D of the Plan provides that all fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Court at the Confirmation Hearing in accordance with section 1128 of the Bankruptcy Code, will be paid by the applicable Debtor (on the Effective Date) or each applicable Reorganized Debtor for each quarter (including any fraction of a quarter) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.   Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**o.      Section 1129(a)(13)—Retiree Benefits.**

67.     Pursuant to section 1129(a)(13) of the Bankruptcy Code, and as provided in Article IV.R of the Plan, the Reorganized Debtors will continue to pay all obligations on account of retiree benefits (as such term is used in section 1114 of the Bankruptcy Code) on and after the Effective Date in accordance with applicable law.   As a result, the requirements of section 1129(a)(13) of the Bankruptcy Code are satisfied.

**p.      Section 1129(a)(14), (15), and (16)—Domestic Support Obligations, Individuals, and Nonprofit Corporations.**

68.     The Debtors do not owe any domestic support obligations, are not individuals, and are not nonprofit corporations.   Therefore, sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.

29

**q.     Section 1129(b)—Confirmation of the Plan Over Non-acceptance of Impaired Classes.**

69.     Notwithstanding the fact that the Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because: (a) at least one Impaired Class voted to accept the Plan; and (b) the Plan does not discriminate unfairly and is fair and equitable with respect to the Claims and Interests in the Rejecting Classes.  As a result, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.   Thus, the Plan may be confirmed even though section 1129(a)(8) of the Bankruptcy Code is not satisfied with respect to the Rejecting Classes. After entry of this Confirmation Order and upon the occurrence of the Effective Date, the Plan shall be binding upon all Holders of Claims and Interests, including the members of the Rejecting Classes.

**r.     Section 1129(c)—Only One Plan.**

70.     Other than the Plan with respect to the Debtors, no other plan has been confirmed in the Chapter 11 Cases.   Accordingly, the requirements of section 1129(c) of the Bankruptcy Code are satisfied.

**s.     Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes or Section 5 of the Securities Act.**

71.     No Governmental Unit has requested that the Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  As evidenced by its terms, the principal purpose of the Plan is not the avoidance of the taxes or the application of section 5 of the Securities Act. Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

**t.**      **Section 1129(e)—Not Small Business Cases.**

72.      The Chapter 11 Cases are not small business cases, and, accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

**u.**      **Satisfaction of Confirmation Requirements.**

73.      Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Debtors, as applicable, satisfy all the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

**v.**      **Conditions to Effective Date.**

74.      The Plan shall not become effective unless and until the conditions set forth in Article IX.B of the Plan have been satisfied or waived pursuant to Article IX.C of the Plan.

**w.**      **Implementation.**

75.      All documents and agreements necessary to implement transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, the Cap-Ex Escrow Agreements, the GUC Claims Trust Agreement, and the New Organizational Documents for the Reorganized Debtors, and all other relevant and necessary documents have been negotiated in good faith and at arm's-length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law. The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

31

**x.    Vesting of Assets.**

76.    Except as otherwise provided in the Plan (including, without limitation, Article IV.N of the Plan), on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each applicable Reorganized Debtor free and clear of all Liens, Claims, charges, Interests, or other encumbrances other than those specifically granted pursuant to the Plan or this Confirmation Order.  Except as otherwise provided in the Plan, on and after the Effective Date, each of the Reorganized Debtors may operate their business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**y.    Treatment of Executory Contracts and Unexpired Leases.**

77.    Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, the Plan and Plan Supplement provides for the assumption or rejection of certain Executory Contracts and Unexpired Leases.  The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims and other parties in interest in the Chapter 11 Cases.

**z.    GUC Claims Trust Agreement.**

78.    The GUC Claims Trust Agreement is an essential element of the Plan, and approval of the GUC Claims Trust Agreement is necessary for confirmation and consummation of the Plan.  Entry into the GUC Claims Trust Agreement is in the best

interest of the Debtors, their Estates, and all holders of Claims or Interests.  The Debtors have exercised reasonable business judgment in determining to enter into the GUC Claims Trust Agreement and have provided sufficient and adequate notice of the material terms of the agreement, which material terms were filed as part of the Plan, Plan Supplement, and related pleadings. The terms and conditions are fair and reasonable, and were negotiated at arm's length and in good faith.  The Debtors are authorized without further approval of the Court or any other party to execute and deliver all agreements, instruments, certificates, and other documents and to perform their obligations thereunder.

       **aa.**       **Cap-Ex Escrow Agreements.**

79.    The Cap-Ex Escrow Agreements are another essential element of the Plan, and approval of the Cap-Ex Escrow Agreements is necessary for confirmation and consummation of the Plan.  Entry into the Cap-Ex Escrow Agreements is in the best interest of the Debtors, their Estates, and all holders of Claims or Interests.  The Debtors have exercised reasonable business judgment in determining to enter into the Cap-Ex Escrow Agreements and have provided sufficient and adequate notice of the material terms of the agreement, which material terms were filed as part of the Plan, Plan Supplement, and related pleadings.  The terms and conditions are fair and reasonable, and were negotiated at arm's length and in good faith.  The Debtors are authorized without further approval of the Court or any other party to execute and deliver all agreements, instruments, certificates, and other documents and to perform their obligations thereunder.

33

## II. ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

80.     The Plan is confirmed in its entirety except as expressly modified herein.

81.     This Confirmation Order approves the Plan Supplement, including the documents contained therein that may be amended in accordance with and as permitted by the Plan and this Confirmation Order.  The terms of the Plan, the Plan Supplement, and the exhibits thereto are incorporated herein by reference and are an integral part of this Confirmation Order; *provided*, *however*, that if there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control solely to the extent of such conflict.

82.     All Holders of Claims that voted to accept the Plan are conclusively presumed to have accepted the Plan.

83.     The terms of the Plan, the Plan Supplement, all exhibits thereto, and this Confirmation Order shall be effective and binding as of the Effective Date on all parties in interest, including, but not limited to: (a) the Debtors; (b) the DIP Lenders; (c) the Syndicated Bank Loan Lenders; (d) the Purchaser; (e) the Committee; and (f) all Holders of Claims and Interests against the Debtors.

84.     The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

### A.    Objections.

85.    To the extent that any objections (including any reservations of rights contained therein) to Confirmation have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record of the Confirmation Hearing, all such objections (including any reservation of rights contained therein) are hereby overruled in their entirety.

### B.    Findings of Fact and Conclusions of Law.

86.    The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation, including the Confirmation Ruling, are hereby incorporated into this Confirmation Order.   To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such.  To the extent any finding of fact or conclusion of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Court at the Confirmation Hearing and incorporated herein) constitutes an order of this Court, it is adopted as such.

### C.    General Settlement of Claims and Interests.

87.    Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination

rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The compromises and releases described herein and in the Plan shall be deemed nonseverable from each other and from all other terms of the Plan. The entry of this Confirmation Order shall constitute the Court's approval of the compromise, settlement, and releases set forth in the Plan, as well as a finding by the Court that such settlement and compromise, and the releases and other agreements provided to effectuate such settlement, are in the best interests of the Debtors, their Estates, and the Holders of Claims and Interests, and are fair, equitable, and reasonable.

88.      In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors or the GUC Claims Trustee, as the case may be, may compromise and settle Claims against, and Interests in, the Debtors and their Estates, and Causes of Action against other Entities.

**D.      The Releases, Injunction, Exculpation, and Related Provisions Under the Plan.**

89.      The following releases, injunctions, exculpations, and related provisions set forth in Article VIII of the Plan, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of this Court or any other party:

**1.      Releases by the Debtors.**

90.      Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including the Third Party Release, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized

36

Debtors, and their Estates, from any and all claims and Causes of Action whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the day-to-day management of the Debtors, any decisions made or not made by the Debtors' board members, and/or the ownership or operation of the Debtors), the Reorganized Debtors (including the formation thereof, if applicable), the Debtors' prepetition activities (including any intercompany transactions), the DIP Orders (and any payments or transfers in connection therewith), the New Organizational Documents, any preference or avoidance claims pursuant to sections 544, 547, 548, or 549 of the Bankruptcy Code, the settlements and/or treatment of Claims and Interests contemplated by the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including the reliance by any Released Party on the Plan or the Confirmation Order) created or entered into in connection with the Disclosure Statement, the Plan, the Sale Transaction, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan (if any), or the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity

under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. For the avoidance of doubt, the Debtors' Release does not release any Released Party from any obligations under the Plan or agreements relating to implementation of the Plan, including the TLCF Note or the Stock Purchase Agreement.

91.    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the releases described herein are: (1) in exchange for the good and valuable consideration provided by or on behalf of the Released Parties; (2) a good faith settlement and compromise of the Claims and Interests released herein; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any claim or Cause of Action released pursuant to the releases described herein or asserting (directly or indirectly) or trading any claim or Cause of Action released pursuant to the releases described herein against any Released Party at any time.

### 2.    Releases by Holders of Claims and Interests.

92.    As of the Effective Date, except to enforce distributions under the Plan, each Releasing Party is deemed to have released and discharged each Released Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been

38

legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the day-to-day management of the Debtors, any decisions made or not made by the Debtors' board members, and/or the ownership or operation of the Debtors), Reorganized Cinemex (including the formation thereof), the Debtors' prepetition operations and activities, the New Organizational Documents, the DIP Orders (and any payments or transfers in connection therewith), the Sale Transaction, the settlements contemplated by the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including the reliance by any Released Party on the Plan or the Confirmation Order) created or entered into in connection with the Disclosure Statement, the Plan, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan (if any), or the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

93.     In order to avoid being deemed a Releasing Creditor and granting the releases set forth in Article VIII of the Plan, a creditor casting a ballot for acceptance or rejection of the Plan was required to indicate its intent to opt out of the releases by checking the "OPT OUT" box on its Ballot, which also operated to exclude such creditors from the Debtors' Release.  Parties that did not vote were permitted to opt out of these releases by submission of an Opt Out Form in advance of the deadline for voting on the

Plan. Creditors and other parties in interest who failed to take such action are deemed to have consented to the third-party release provision contained in Article VIII.D of the Plan.

94.    Notwithstanding anything to the contrary in the foregoing or otherwise in the Plan, Plan Supplement or Confirmation Order, in no event shall any of the Syndicated Bank Loan Lenders or the Syndicated Bank Loan Agent (regardless of whether they have opted out of the releases or otherwise) be deemed to have released or discharged any claims, rights, defenses or Causes of Action they may have against Grupo Cinemex, Operadora De Cinemas, S.A. DE C.V. or any other non-Debtor Entity arising under or related to the Syndicated Bank Loan Credit Agreement and related documentation.

95.    Notwithstanding anything to the contrary in the foregoing or otherwise in the Plan, Plan Supplement or Confirmation Order, in no event shall any Holder of a GUC Claim (regardless of whether they have opted out of the releases or otherwise) be deemed to have released or discharged any claims, rights, defenses or Causes of Action they may have against Grupo Cinemex, Operadora De Cinemas, S.A. DE C.V. or any other non-Debtor Entity arising under or related to any claim, right or defense, that such Holder of a GUC Claim may hold against such non-Debtor arising from or relating to any contractual obligations of such non-Debtor to a Holder of a GUC Claim including, without limitation, on account of a guaranty, surety, or payment assurances agreed to by such non-Debtor relating to any Executory Contracts or Unexpired Leases, whether or not rejected prior to the Confirmation Date.

96.    Entry of this Confirmation Order constitutes the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in the Plan, which includes by reference each of the related provisions and definitions contained therein, and,

further, constitutes the Bankruptcy Court's finding that each release described therein is: (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise as set forth in the Plan; (5) in the best interests of the Debtors and their Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the releases described herein and in the Plan.

   **3.    Exculpation.**

   97.    Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including the reliance by any Exculpated Party on the Plan or the Confirmation Order) created or entered into in connection with the Disclosure Statement, the Plan, the Sale transaction, the Filing of the Chapter 11 Cases, the negotiation, terms, or execution of any settlement agreements effectuated pursuant to Federal Rule of Bankruptcy Procedure 9019 in the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan (if any), or the distribution of property under the Plan, or any other related agreement in connection with the Plan, except for claims related to any

41

act or omission that is determined in a final order to have constituted actual fraud, willful misconduct, or gross negligence. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  For the avoidance of doubt, nothing in Section VIII.E of the Plan shall be deemed to have released or exculpated either Grupo Cinemex, Operadora De Cinemas, S.A. DE C.V. or any other non-Debtor Entity from their obligations to satisfy any (i) Syndicated Bank Loan Claims arising under or related to the Syndicated Bank Loan Credit Agreement and related documentation; or (ii) claim, including, without limitation, any contractual obligations, held by a Holder of a Claim, for compliance with the terms of, and satisfaction of, guarantees or payment assurances, given in connection with, arising under or relating to any Executory Contracts and Unexpired Leases, whether or not rejected prior to the Confirmation Date.

### 4.    Injunction.

98.    Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have Held, Hold, or may Hold Claims or Interests that have been released pursuant to Article VIII.C or Article VIII.D of the Plan, shall be discharged pursuant to Article VIII.A of the Plan, or are subject to exculpation pursuant to Article VIII.E of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following

actions against, as applicable, the Debtors, the Reorganized Debtors, the GUC Claims Trust, the GUC Claims Trust Assets, the GUC Claims Trustee, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; (5) asserting any claim relating to or arising from the Sale Transaction; and (6) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

**6.      Channeling Injunction.**

99.      Except as otherwise specifically provided in the Plan, the Enjoined Parties shall be permanently restrained, and enjoined, with regard to the Claims set forth in Article VIII.G (1)-(6) of the Plan (collectively, the "Enjoined Claims") from ever:

1. commencing, asserting, continuing, filing, conducting, or bringing, directly, indirectly, or derivatively, any Claim, demand, suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum), against any of the Released Parties, or their respective property, including the proceeds of such property, with regard to all matters arising out of or related to any involvement of any of the Released Parties whatsoever in transactions, acts, or events in any manner related to the Debtors and their predecessors, affiliates, successors, principals, directors, officers, and related entities;

2. asserting, continuing, filing, conducting, or bringing, directly, indirectly, or derivatively, any Claim, demand, suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum), against any of the Released Parties, or their respective property, including the proceeds of such property that would result in the avoidance of allegedly fraudulent (actual or constructive) or preferential transfers from the Debtors to any of the Released Parties, regardless of whether such Released Party is the initial or subsequent transferee, and/or recovery of such allegedly fraudulent (actual or constructive) or preferential transfers from such Released Party;

3. enforcing, levying, employing legal process (including proceedings supplementary), whether prejudgment or post-judgment, attaching, garnishing, sequestering, collecting, or otherwise recovering by any means or in any manner, any Claims against the Released Parties, or their respective property, including the proceeds of such property, with regard to all matters arising out of or related to any involvement of any of the Released Parties whatsoever in transactions, acts, or events

44

in any manner related to the Debtors, and their predecessors, affiliates, successors, principals, directors, officers, and related entities;

4. pursuing, aiding, or abetting any action brought by any person or entity seeking recovery, contribution and/or indemnity from any of the Released Parties, or their respective property, including the proceeds of such property, with regard to all matters arising out of or related to any involvement of any of the Released Parties whatsoever in transactions, acts, or events in any manner related to the Debtors and their predecessors, affiliates, successors, principals, directors, officers, and related entities;

5. enforcing any terms set forth in any settlement agreement by and among any of the Released Parties and any of the Enjoined Parties that would resolve, compromise, or settle Claims that would otherwise be enjoined by the channeling injunction set forth in this section; and

6. pursuing any of the Enjoined Claims recited herein as they relate to any Claims against retained professionals including accountants and legal counsel as well as their agents and assigns of any of the Released Parties or against the GUC Claims Trust, the GUC Claims Trust Assets, the GUC Claims Trustee, or any of its agents or professionals.

The injunction described in this paragraph shall be referred to as the "Channeling Injunction."

100.    Notwithstanding anything herein to the contrary, or in the Plan or the Plan Supplement, in no event shall anything in the Plan, the Plan Supplement or Confirmation Order, including, without limitation, the "Channeling Injunction," restrain or enjoin any of (i) the Syndicated Bank Loan Lenders or the Syndicated Bank Loan Agent from

45

commencing, asserting, continuing, filing, conducting, or bringing any claims, rights, defenses or Causes of Action they may have against Grupo Cinemex, Operadora De Cinemas, S.A. DE C.V. or any other non-Debtor Entity arising from or related to the Syndicated Bank Loan Credit Agreement and related documentation or otherwise taking any enforcement action under the Syndicated Bank Loan Credit Agreement or related documentation against such Entities; or (ii) the Holders of Claims from commencing, asserting, continuing, filing, conducting, or bringing any claims, rights, causes or action, or defenses they may have against Grupo Cinemex, Operadora De Cinemas, S.A. DE C.V. or any other non-Debtor Entity arising under or related to any contractual obligation, including without limitation any guaranty, surety or payment assurances agreed to by such non-Debtors relating to Executory Contracts or Unexpired Leases, whether or not rejected prior to the Confirmation Date. The Bankruptcy Court shall expressly retain jurisdiction in enforcing, implementing and interpreting the scope of the Channeling Injunction.

101.    Notwithstanding anything to the contrary in the foregoing or the Plan, the Releasing Parties shall only include those parties to whom the Debtors provided (or attempted to provide) notice of the Third Party Release and opportunity to opt out of the Third Party Release. The Court shall retain exclusive jurisdiction for determining whether any Releasing Party received constitutionally sufficient notice of the Third Party Release and opportunity to opt out of the Third Party Release.

102.    The Court shall retain exclusive jurisdiction for determining whether any claim or Cause of Action relating to an act or omission that is alleged to have constituted gross negligence, willful misconduct, or actual fraud may proceed notwithstanding Article VIII of the Plan. Notwithstanding the carve-out from the exculpation provision for gross

negligence, willful misconduct, or actual fraud, no person may assert any lawsuit or Cause of Action (including a lawsuit or Cause of Action for gross negligence, willful misconduct, or actual fraud) against any party that is released under this Order without obtaining prior authorization from the Court to assert such a claim, which authorization shall be sought by a motion, subject to notice and hearing.  At any such hearing, the movant must prove by a preponderance of the evidence that such claim is a bona fide claim and conforms with the exceptions to the release provisions in this Order.

E.    **Preservation of Causes of Action.**

103.    In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action belonging to the Debtors, whether arising before or after the Petition Date, including, without limitation, any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than Causes of Action released by the Debtors pursuant to the releases and exculpations set forth in Article VIII of the Plan or under this Order or the Plan, including the Avoidance Action Waiver in favor of Holders of GUC Claims and Holders of Syndicated Bank Loan Claims, which shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date.

104.    The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Disclosure Statement, or the Schedule of Retained Causes of Action to any Cause of

Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action of the Debtors against it. The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise provided in the Plan, including Article VIII of the Plan, or this Order. Unless any Cause of Action of the Debtors against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the Debtors and the Reorganized Debtors expressly reserve all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation.

105.    The Reorganized Debtors, as applicable, shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Cause of Action that a Debtor may hold against any Entity shall vest in the applicable Reorganized Debtor, except as otherwise provided in the Plan, including Article VIII of the Plan and the Avoidance Action Waiver. The Reorganized Debtors shall retain, and through their authorized agents or representatives shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment, any such Causes of Action (except as otherwise provided in the Plan), or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

**F.      Post-Confirmation Notices, Professional Compensation, and Bar Dates.**

106.    In accordance with Bankruptcy Rules 2002 and 3020(c), no later than seven (7) Business Days after the Effective Date of the Plan, the Reorganized Debtors must cause notice of Confirmation and occurrence of such Effective Date (the "Notice of Effective Date") to be served by United States mail, first-class postage prepaid, by hand, or by overnight courier service to all parties served with the Confirmation Hearing Notice; *provided* that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  Mailing of the Notice of Effective Date in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c).  No further notice is necessary.

107.    The Notice of Effective Date will have the effect of an order of the Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non- bankruptcy law.

108.    All final requests for payment of Professional Fee Claims, including the Professional Fee Claims incurred during the period from the Petition Date through the Confirmation Date will be subject to approval by the Court after notice to other parties on the regular service list and a hearing in accordance with the procedures established by the

Bankruptcy Code and prior orders of the Court in the Chapter 11 Cases, including the Interim Compensation Order, and once approved by the Court, promptly paid by the Debtors or from the Professional Fee Escrow Account, as the case may be, up to the full Allowed amount.

109.    On the Effective Date, the Debtors or Reorganized Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors, as applicable.  The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Debtors or by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by a Final Order.  When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court.  If the Professional Fee Escrow Account is insufficient to fund the full Allowed amounts of Professional Fee Claims, all remaining unpaid Allowed Professional Fee Claims will be paid by the Debtors or the Reorganized Debtors, as applicable.

110.    Professionals shall estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Confirmation Date and shall deliver such estimate to the Debtors no later than the Confirmation Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment

of Filed Professional Fee Claims.  If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. The aggregate amount for all Professionals estimated pursuant to this section shall comprise the Professional Fee Reserve Amount.

111.    Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtors. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

112.    Except as otherwise provided in the Plan, requests for payment of General Administrative Claims (other than Claims arising under section 503(b)(9) of the Bankruptcy Code, Professional Fee Claims, and those that accrued in the ordinary course of the Debtors' business against any of the Debtors) must be Filed no later than the first Business Day that is thirty (30) days following the Effective Date.   Holders of General Administrative Claims that are required to, but do not, File and serve a request for payment of such General Administrative Claims against the Debtors by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such General Administrative Claims against the Debtors, the Reorganized Debtors, or their respective property, and such General Administrative Claims will be

51

deemed forever discharged and released as of the Effective Date. Objections to such requests, if any, must be Filed and served no later than 60 days from the Administrative Claims Bar Date.

**G.    Notice of Subsequent Pleadings.**

113.    Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date will be limited to the following parties: (a) the U.S. Trustee; (b) the Reorganized Debtors and their counsel; (c) the GUC Claims Trust and its counsel; and (d) any party known to be directly affected by the relief sought by such pleadings.

**H.    Retention of Jurisdiction.**

114.    Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, this Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan, the matters set forth in Article XI of the Plan, and other applicable provisions of the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code to the extent provided under applicable law. The Court shall retain jurisdiction to enforce the terms of the TLCF Note, including with respect to entry of judgments related to any defaults thereunder.

**I.    Reports.**

115.    The Reorganized Debtors shall timely pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for pre-confirmation periods and simultaneously provide to the United States Trustee an appropriate report indicating the cash disbursements for the relevant period. The Reorganized Debtors shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6)

based upon all disbursements of the Reorganized Debtors for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), until the earlier of the closing of this case either administratively, or by the issuance of a Final Decree by the Court, or upon the entry of an Order by this Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code, and the party responsible for paying the post-confirmation United States Trustee fees shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating all the cash disbursements for the relevant period.

**J.      Effectiveness of All Actions.**

116.    Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, before, or after the Effective Date of the Plan, and pursuant to this Confirmation Order, without further application to, or order of the Court, or further action by the Debtors and/or the Reorganized Debtors and their respective directors, officers, members, or stockholders, and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders.

**K.      Approval of Consents and Authorization to Take Acts Necessary to Implement the Plan.**

117.    This Confirmation Order shall constitute all authority, approvals, and consents required, if any, by the laws, rules, and regulations of any states, federal, and any other governmental authority with respect to the implementation or consummation of the Plan and any certifications, mortgages, documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or

contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any certifications, mortgages, documents, instruments, securities, or agreements, and any amendments or modifications thereto.

**L.      Plan Implementation Authorization.**

118.      The Debtors or the Reorganized Debtors, as the case may be, and their respective directors, officers, members, agents, and attorneys, financial advisors, and restructuring advisors are authorized and empowered from and after the date hereof to negotiate, execute, issue, deliver, implement, file, or record any contract, instrument, mortgage, release, assumption and assignment, or other agreement or document related to the Plan, as the same may be modified, amended, and supplemented, and to take any action necessary or appropriate to implement, effectuate, consummate, or further evidence the Plan in accordance with their terms, or take any or all corporate actions authorized to be taken pursuant to the Plan, whether or not specifically referred to in the Plan or any exhibit thereto, without further order of the Court.  To the extent applicable, any or all such documents shall be accepted upon presentment by each of the respective state filing offices and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law.  No action of the Debtors' boards of directors or the Reorganized Board will be required to authorize the Debtors or Reorganized Debtors, as applicable, to enter into, execute and deliver, adopt or amend, as the case may be, any such contract, instrument, mortgage, release, assumption and assignment, or other agreement or document related to the Plan, and following the Effective Date, each of the documents executed in connection with the Plan will be a legal,

valid, and binding obligation of the Debtors or Reorganized Debtors, as applicable, enforceable against the Debtors and the Reorganized Debtors in accordance with the respective terms thereof.  Consistent with the Plan, the Debtors may also take additional steps on the Effective Date to consolidate and streamline their organization, including, among other things, the creation of new subsidiaries, or the merger, liquidation, or consolidation of one or more of the Debtors.

**M.      Restructuring Transactions.**

119.    On the Effective Date, the Debtors or the Reorganized Debtors, as applicable, in consultation with the Committee, will effectuate the Restructuring Transactions, and will take any actions as may be necessary or advisable to effect a corporate restructuring of their respective business. The actions to implement the Restructuring Transactions may include, as applicable, and without limitation: (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree, including, if applicable, the formation of any entity or entities that will constitute, in whole or in part, the Reorganized Debtors; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree, including the execution and delivery of the GUC Claims Trust

55

Agreement; (3) the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, dissolution, or other organizational documents pursuant to applicable state law; (4) the execution and delivery of the New Organizational Documents; (5) the execution and delivery of Cap-Ex Escrow Agreements; (6) the issuance of the New Common Stock as set forth in the Plan; and (7) all other actions that the applicable Entities determine to be necessary or advisable, including making filings or recordings that may be required by law in connection with the Plan.

120.    This Confirmation Order shall and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

**N.      Approval of Cap-Ex Escrow Agreements.**

121.    On the Effective Date, the Reorganized Debtors shall enter into the Cap-Ex Escrow Agreements, substantially in the form set forth in the Plan Supplement.  The terms of the Cap-Ex Escrow Agreements are fair and reasonable, and the Cap-Ex Escrow Agreements were negotiated in good faith and at arm's-length by the Debtors, the Purchaser and the Committee.  This Confirmation Order constitutes approval of the Cap-Ex Escrow Agreements (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Debtors or the Reorganized Debtors in connection therewith), to the extent not approved

by the Court previously, and the Reorganized Debtors are hereby authorized to execute and deliver those documents necessary or appropriate in connection with the Cap-Ex Escrow Agreements, without further notice to or order of the Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any person, subject to such modifications as the Reorganized Debtors may deem to be necessary to consummate entry into the Cap-Ex Escrow Agreements.

**O.    Binding Effect.**

122.    On the Effective Date, except as otherwise provided herein to the contrary, and effective as of the Effective Date, the Plan will bind, and will be deemed binding upon, all Holders of Claims against and Interests in the Debtors, and such Holder's respective successors and assigns, to the maximum extent permissible by law, notwithstanding whether or not such Holder (a) will receive any property or interest in property under the Plan, or (b) has filed a Proof of Claim or Interest in the Chapter 11 Cases, or (c) failed to vote to accept or reject the Plan or affirmatively voted to reject the Plan.

**P.    Continued Corporate Existence**

123.    Except as otherwise provided in the Plan or the Plan Supplement, each Debtor shall continue to exist after the Effective Date as a separate corporate Entity or limited liability company, as the case may be, with all the powers of a corporation or limited liability company, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and by-

laws (or other formation documents) are amended under the Plan, the Plan Supplement, or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan or Plan Supplement and require no further action or approval (other than any requisite filings required under applicable state or federal law).

**Q.     Vesting of Assets.**

124.    Except as otherwise provided in the Plan, including the transfer of the GUC Claims Trust Assets and the Convenience Claims Distribution to the GUC Claims Trust, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each applicable Reorganized Debtor, free and clear of all Liens, Claims, charges, Interests, or other encumbrances other than those specifically granted pursuant to the Plan or the Confirmation Order. Except as otherwise provided in the Plan, on and after the Effective Date, each of the Reorganized Debtors may operate their business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.as otherwise provided in the Plan, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each applicable Reorganized Debtor free and clear of all Liens, Claims, charges, Interests, or other encumbrances other than those specifically granted pursuant to the Plan or the Confirmation Order. Except as otherwise provided in the Plan, on and after the Effective Date, each of the Reorganized Debtors may operate their business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action

without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  On the Effective Date, the GUC Claims Trust Assets and the Convenience Claims Distribution shall vest in the GUC Claims Trust, free and clear of any Liens, Claims, charges, Interests, or other encumbrances.

**R.    Directors and Officers of Reorganized Debtors.**

125.    Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors have, to the extent reasonably practicable and known, disclosed in advance of the Confirmation Hearing the identity and affiliations of any Person proposed to serve on the Reorganized Board.  To the extent any such director or officer is an "insider" under the Bankruptcy Code, the nature of any compensation to be paid to such director or officer has also been disclosed to the extent reasonably practicable.  Each such director and officer shall serve from and after the Effective Date of the Plan pursuant to the terms of the New Organizational Documents for the Reorganized Debtors, as applicable, and other constituent documents of the Reorganized Debtors.

**S.    Employee Obligations.**

126.    Except as otherwise provided in the Plan or the Plan Supplement, the Reorganized Debtors shall honor the Debtors' written contracts, agreements, policies, programs, plans, and Insurance Policies for, among other things, compensation, reimbursement, indemnity, health care benefits, disability benefits, vacation and sick leave benefits, workers' compensation claims, savings, severance benefits, including in the event of a change of control, retirement benefits, welfare benefits, relocation programs, certain grandfathered benefits, life insurance and accidental death and dismemberment

59

insurance, including written contracts, agreements, policies, programs and plans for bonuses and other incentives or compensation for the directors, officers and employees of any of the Debtors who served in such capacity at any time (including any compensation programs approved by the Court); *provided* that the consummation of the transactions contemplated herein shall not constitute a "change in control" with respect to any of the foregoing arrangements.  To the extent that the above-listed written contracts, agreements, policies, programs, plans, and Insurance Policies are Executory Contracts, pursuant to sections 365 and 1123 of the Bankruptcy Code, each of them will be deemed assumed as of the Effective Date and assigned to the Reorganized Debtors.

**T.**    **Ownership and Control.**

127.    The consummation of the Plan shall not constitute a change in ownership or change in control, as such terms are used in any statute, regulation, contract, or agreement, including, but not limited to, any assumption, assumption and assignment, insurance agreement, mortgage, letter of credit, or hedging arrangement, in effect on the Effective Date and to which any Debtor is a party or under any applicable law of any unit of government.

**U.**    **Cooperation.**

128.    Upon the Effective Date, the Reorganized Debtors and the GUC Claims Trustee agree to reasonably cooperate with respect to resolution of Disputed Claims as set forth in the Plan and Plan Supplement.  Such cooperation shall, as necessary, include, but is not limited to (i) providing access to documents; (ii) providing access to employees and, as applicable, former employees to be interviewed, and prepared as a deposition or trial witness; (iii) causing witnesses to appear at a deposition or trial; and (iv)

retaining all books, records and other documents relating to any applicable Disputed Claims; *provided that* in each case, the GUC Claims Trustee shall use commercially reasonable efforts to minimize disruption to the Reorganized Debtors and their employees; *provided further that* in each case, the GUC Claims Trustee shall direct all requests to, and shall not contact employees without the consent of, the general counsel of the Reorganized Debtor(s).

**V.     Release of Liens.**

129.    Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date of the Plan, except with regard to Other Secured Claims that the Debtors elect to Reinstate in accordance with Article III.B.2(b) of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Court and without any action or Filing being required to be made by the Debtors or the Reorganized Debtors, as applicable.

**W.     Disputed and Contingent Claims Reserves.**

130.    If an objection to a Claim or portion thereof is filed as set forth in Article VII.D of the Plan, no payment or distribution provided under the Plan shall be made on

account of such Disputed Claim or a portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

131.    On or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall establish one or more reserves for Claims that are contingent or have not yet been Allowed, in an amount or amounts as reasonably determined by the applicable Debtors or Reorganized Debtors, consistent with the Proof of Claim Filed by the applicable Holder of such Disputed Claim.

132.    Any assets held in any such reserve shall be subject to the tax rules that apply to "disputed ownership funds" under 26 C.F.R. 1.468B–9.  As such, such assets will be subject to entity-level taxation, and the Debtors and Reorganized Debtors shall be required to comply with the relevant rules.

## X.    Claims Reconciliation Process.

133.    After the Effective Date, (a) the Reorganized Debtors shall have the sole authority to File, withdraw, or litigate to judgment, objections to all Claims other than GUC Claims and the GUC Claims Trust shall have the sole authority to File, withdraw, or litigate to judgment, objections to all GUC Claims; and (b) the applicable Reorganized Debtor(s) and/or the GUC Claims Trust shall have the authority to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) the applicable Reorganized Debtor(s) and/or the GUC Claims Trust shall have the authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or

approval by the Bankruptcy Court.  No claims shall be expunged or disallowed without notice to each affected creditor and an opportunity to be heard.

**Y.      Injunctions and Automatic Stay.**

134.     Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

**Z.      Cancellation of Existing Securities and Agreements.**

135.     Except as otherwise provided in the Plan, on and after the Effective Date, all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing Claims or Interests, other than the Intercompany Interests, shall be deemed canceled, surrendered, and discharged without any need for further action or approval of the Court or any Holder or other person and the obligations of the Debtors or Reorganized Debtors, as applicable, thereunder or in any way related thereto shall be deemed satisfied in full and discharged, *provided*, that nothing in the Plan, the Plan Supplement, or this Confirmation Order, and neither Confirmation nor Consummation of the Plan, shall effectuate any release, cancelation, surrender or discharge of the Syndicated Bank Loan Credit Agreement or any related documents as they pertain to Grupo Cinemex, Operadora De Cinemas, S.A. DE C.V., or any other Entity that is not a Debtor or otherwise affect the joint and several or other obligations of

such Entities under the Syndicated Bank Loan Credit Agreement or any related documents.

**AA.    Securities Law Exemption.**

136.    The shares of New Common Stock are or may be "securities," as defined in Section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws.

137.    All shares of the New Common Stock issued pursuant to the Plan will be issued in reliance upon section 1145 of the Bankruptcy Code and/or exemptions from the registration requirements of section 5 of the Securities Act pursuant to section 4(a)(2) of the Securities Act, or any other available exemption from registration under the Securities Act, as applicable (collectively, the "<u>Securities Act Exemptions</u>").

138.    Pursuant to section 1145 of the Bankruptcy Code and the Securities Act Exemptions, the issuance of (a) the New Common Stock, and (b) any other securities issued in connection with the Plan, are exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration before the offering, issuance, distribution, or sale of such securities.  Each of the foregoing securities (a) is not a "restricted security" as defined in Rule 144(a)(3) under the Securities Act, and (b) is freely tradable and transferable by any initial recipient thereof that (i) at the time of transfer, is not an "affiliate" of the Reorganized Debtors as defined in Rule 144(a)(1) under the Securities Act and has not been such an "affiliate" within 90 days of such transfer, and (ii) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

BB.    **Section 1146 Exemption.**

139.    Pursuant to, and to the fullest extent permitted by, section 1146 of the Bankruptcy Code, any transfers of property pursuant to, in contemplation of, or in connection with, the Plan, including: (1) the Restructuring Transactions; (2) the issuance of the New Common Stock, including with regard to the Management Incentive Plan; (3) the transfer, if any, of the Debtors' assets to the Reorganized Debtors; (4) the assignment or surrender of any lease or sublease; and (5) the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer, mortgage recording tax, or other similar tax, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers or property without the payment of any such tax, recordation fee, or governmental assessment.

CC.    **Payment of Certain Fees.**

140.    Without any further notice to or action, order, or approval of the Bankruptcy Court, the Debtors, or the Reorganized Debtors, as applicable, shall pay on the Effective Date any reasonable and documented unpaid fees and expenses owed by the Debtors in connection with these Chapter 11 Cases incurred on or before the Effective Date by all of the attorneys, accountants, and other professionals, advisors, and consultants, including

without limitation such fees and expenses, if any, payable under the DIP Orders (which fees and expenses shall be paid pursuant to the terms of the DIP Orders).

**DD.    Nonseverability of Plan Provisions upon Confirmation.**

141.    Each term and provision of the Plan as it heretofore may have been altered or interpreted by the Court in accordance with the Plan and as modified by this Confirmation Order is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors', the Reorganized Debtors' consent; and (3) nonseverable and mutually dependent.

**EE.    Waiver or Estoppel.**

142.    Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument concerning such Claim or Interest, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated, by virtue of an agreement made with the Debtors or their counsel or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed before the Confirmation Date.  For the avoidance of doubt, nothing in this section shall bar a creditor from enforcing any of its rights or remedies contained in any written agreement with the Debtors or the Reorganized Debtors that is entered into after the Confirmation Date.

**FF.    Authorization to Consummate.**

143.    The Debtors and the Reorganized Debtors, as applicable, are authorized to consummate the Plan, including the Restructuring Transactions, the Settlements, and any other contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan at any time after the entry of this

Confirmation Order, subject to satisfaction or waiver of the conditions precedent to Consummation set forth in Article IX of the Plan. The substantial consummation of the Plan, within the meaning of sections 1101(2) and 1127 of the Bankruptcy Code, is deemed to occur on the first date, on or after the Effective Date of the Plan, on which distributions are made in accordance with the terms of the Plan to Holders of any Allowed Claims against the Debtors.

**GG.    Assumption and Cure of Executory Contracts.**

144.    The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety, as stated herein.

145.    For the avoidance of doubt, on the Effective Date, except as otherwise provided in the Plan or this Confirmation Order, any Executory Contract or Unexpired Lease of the Debtors will be deemed to be an Assumed Executory Contract or Unexpired Lease in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that: (1) previously were assumed, assumed and assigned, or rejected by the Debtors; (2) are identified on the Rejected Executory Contract and Unexpired Lease List; (3) are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Effective Date; or (4) are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

146.    This Confirmation Order constitutes approval of such assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan, the Rejected Executory Contract and Unexpired Lease List, or the Assumed Executory Contract and Unexpired Lease List pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Court on or after the Effective Date by a Final Order.  Each Executory Contract and Unexpired Lease assumed pursuant to Article V.A of the Plan or by any order of the Court, which has not been assigned to a third party before the Confirmation Date, shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms are modified by the Plan or any order of the Court authorizing and providing for its assumption or rejection under applicable federal law.  The following language from Article V.A of the Plan is hereby struck: "Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Rejected Executory Contract and Unexpired Lease List and the Assumed Executory Contract and Unexpired Lease List at any time through and including the Effective Date."

147.    Any objection by a contract or lease counterparty to a proposed assumption of an Executory Contract or Unexpired Lease or the related cure cost (including as set forth on the Assumed Executory Contract or Unexpired Lease List) must be Filed, served, and actually received by the Debtors in accordance with the Disclosure Statement Order or other applicable Final Order of the Bankruptcy Court.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed

68

assumption or cure amount will be deemed to have consented to such  or proposed cure amount.  For the avoidance of doubt, to the extent an Executory Contract or Unexpired Lease proposed to be assumed is not listed as having a related cure cost, any counterparty to such Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption will be deemed to have consented to such assumption and deemed to release any Claim or Cause of Action for any monetary defaults under such Executory Contract or Unexpired Lease.

148.    Assumption of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption. Any Proofs of Claim Filed with respect to an Assumed Executory Contract or Unexpired Lease shall be deemed Disallowed, without further notice to or action, order, or approval of the Bankruptcy Court.

149.    With respect to any cure amount, either the Debtors or the Reorganized Debtors shall pay all undisputed cure amount pending resolution of the cure or "adequate assurance of future performance"  objection, and any disputed cure cost shall be reserved, in cash, at the highest amount asserted pending resolution. The Court will hold a hearing on the cure or "adequate assurance of future performance" objection at the next omnibus hearing after confirmation of the plan, so long it is at least 7 days from the date the notice of hearing is filed. Upon resolution of the disputed portion of the cure amount, either the

Debtors, Reorganized Debtors or the proposed assignee shall pay the amount due to the applicable counterparty within seven (7) calendar days.

150.    Notwithstanding anything to the contrary herein or in the Plan, with respect to Leases that are assumed, the Reorganized Debtors shall remain liable for: (1) amounts owed under the assumed and assigned unexpired lease of nonresidential real property that are unbilled or not yet due as of the effective date of the assignment, regardless of when such amounts accrued, such as common area maintenance, insurance, taxes, and similar charges; (2) any regular or periodic adjustment or reconciliation of charges under the assumed and assigned Unexpired Lease of nonresidential real property that are not due or have not been determined as of the date of the effective date of the assignment; (3) any percentage rent that may come due under the assumed and assigned Unexpired Lease of nonresidential real property; (4) indemnification obligations, if any, up to the date of the effective date of the assignment; and (5) any unpaid cure costs under the assumed and assigned unexpired lease of nonresidential real property, each calculated in accordance with the terms of any applicable amendment to such Unexpired Lease of nonresidential real property.

**HH.    Provisions Regarding Certain Governmental Unit Liabilities.**

151.    Notwithstanding anything in this Plan or any Order Confirming the Plan to the contrary, nothing in the Plan or Order Confirming the Plan or related documents discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5) ("Claim"); (ii) any Claim of a Governmental Unit first arising on or after the Confirmation Date; (iii) any liability to a Governmental Unit under

70

police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property but only to the extent first arising after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors or Reorganized Debtors. Nor shall anything in this Plan or any Order Confirming the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence.

152. Further, nothing in this Confirmation Order or the Plan or related documents authorizes the transfer or assignment of any Texas governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law, except as provided in 11 U.S.C. § 525. Nothing in the Plan or the Confirmation Order shall relieve any entity from any obligation to address or comply with any non-discriminatory information requests or inquiries from any Texas Governmental Unit. Nothing in this Plan or any Order Confirming the Plan shall affect any setoff or recoupment rights of any Texas Governmental Unit. Nothing in this Plan or any Order Confirming the Plan divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Plan or any Order Confirming the Plan or to adjudicate any defense asserted under this Plan or any Order Confirming the Plan.

## II.    Dissolution of the Committee.

153. On the Effective Date, the Committee shall dissolve and all members, employees, or agents thereof shall be released and discharged from all rights and duties arising from or related to the Chapter 11 Cases; *provided* that such official committee shall

be deemed to remain in existence solely with respect to, and shall not be heard on any issue except, applications filed by the Professionals pursuant to sections 330 and 331 of the Bankruptcy Code.  From and after the Effective Date, none of, as applicable, the Debtors or the Reorganized Debtors shall be responsible for paying any fees or expenses incurred after the Effective Date by the members of or advisors to the Committee, except in connection with the preparation and prosecution of final fee applications, and neither the Debtors or the Reorganized Debtors shall be responsible for paying any fees or expenses incurred by the GUC Claims Trustee or the Board Observer appointed by the Committee.

**JJ.     Effect of Non-Occurrence of Conditions to the Effective Date.**

154.    Notwithstanding the entry of this Confirmation Order, if the Effective Date of the Plan does not occur with regard to any of the Debtors, the Plan shall be null and void in all respects with respect to such Debtor, and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or Claims against or Interests in such Debtors; (b) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

**KK.   Waiver of 14-Day Stay.**

155.    Notwithstanding Bankruptcy Rule 3020(e), and to the extent applicable, Bankruptcy Rules 6004(h), 7062, and 9014, this Confirmation Order is effective and enforceable immediately upon its entry and not subject to any stay.).

72

**LL.    Post-Confirmation Modification of the Plan.**

156.    Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and those restrictions on modifications set forth in the Plan, the Debtors are hereby authorized to alter, amend, or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

**MM.    Final Order.**

157.    This Confirmation Order is a final order and the period in which an appeal must be filed will commence upon entry of this Confirmation Order.

**NN.    Provisions Regarding Individual Creditor Confirmation Issues.**

158.    In resolution of confirmation issues raised by Federal Realty Investment Trust, Gulfstream Park Racing Association, Inc., PGIM Real Estate and Starwood Retail Partners LLC (collectively, the "Specified Landlords"), the Debtors have agreed, and the court hereby orders, that notwithstanding anything in the Plan or this Confirmation Order to the contrary with respect to any Unexpired Lease between any of the Debtors and the Specified Landlords, nothing in the Plan or in the Confirmation Order shall modify the Debtors' or any assignee's obligation, as applicable and unless otherwise agreed, to pay: (1) amounts owed under any unexpired lease of non-residential real property that are unbilled or not yet due as of the Confirmation Date, whether accruing prior to or after the effective date of assumption of such unexpired lease or prior to the date of rejection, such

as for common area maintenance, insurance, taxes, and similar charges; and any regular or periodic ordinary course year-end adjustments and reconciliations of such charges provided for under the terms of the unexpired lease, whether accruing prior to or after the effective date of assumption of such unexpired lease or prior to the date of rejection, as such charges become due in the ordinary course in accordance with the terms of the unexpired lease; (2) any percentage rent that may come due under the assumed or rejected unexpired lease of non-residential real property; (3) any other obligations, including indemnification obligations (if any) that arise from third-party claims asserted with respect to or arising from the Debtors' use and occupancy of the premises prior to the Effective Date for which the Debtors had a duty to indemnify such Landlord pursuant to any unexpired lease, or the Debtors' or any assignee's obligation to pay any postpetition expenses under such unexpired leases as they come due under the unexpired leases; and (4) any unpaid cure amounts or post-assumption obligations under any such assumed Unexpired Lease.

159.    In further resolution of confirmation issues raised by the Specified Landlords, the Debtors have agreed, and the Court hereby orders, that notwithstanding anything in the Plan or this Confirmation Order to the contrary, nothing in the Plan or the Confirmation Order shall modify the rights, if any, of any of the Specified Landlords or Additional Specified Landlords in their capacity as a counterparty to an unexpired lease of non-residential real property to assert any right of setoff or recoupment that they may have under applicable bankruptcy or non-bankruptcy law, including, but not limited to, (i) the ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of their unexpired lease(s) with the Debtors, or any successors to the Debtors, under

74

the Plan; (ii) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation; or (iii) assertion of setoff or recoupment as a defense, if any, to any claim or action by the Debtors or any successors of the Debtors.

160.    In resolution of the confirmation issues raised by Brookfield Properties Retail, Inc., National Retail Properties, LP, USEF HCG Fenton, LLC, and Shopcore Properties, Ltd. (the "Additional Specified Landlords"), the Debtors have agreed, and the Court hereby orders, that notwithstanding anything in the Plan or this Confirmation Order to the contrary, nothing shall modify the rights, if any, of any holder of Claims or any current or former party to an Executory Contract or Unexpired Lease, to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or non-bankruptcy law, including, but not limited to, (i) the ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of their unexpired lease(s) with the Debtors, or any successors to the Debtors, under the Plan; (ii) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation; or (iii) assertion of setoff or recoupment as a defense, if any, to any claim or action by the Debtors or any successors of the Debtors.

161.    The Limited Objection to Confirmation of Plan and Reservation of Rights of Paramount Pictures Corporation (ECF No. 879) was resolved in accordance with the Stipulation Modifying Automatic Stay and Authorizing Agreed Setoff and Payment Under Critical Vendor Order entered into between Paramount Pictures Corporation and the Debtors (ECF No. 920), the terms of which are incorporated herein by reference.

162.    In resolution of the confirmation issues raised by 400 East 62nd Street Properties, LLC, the Debtors shall escrow the sum of $373,500.00 for the administrative

75

expense claim asserted by 400 East 62nd Street Properties, LLC pending resolution of the *Motion of 400 East 62nd Street Properties, LLC for Allowance of Administrative Expense Claim* (ECF No. 614) or as otherwise agreed by the parties.

163.    In resolution of the confirmation issues raised by Oracle America, Inc., notwithstanding anything to the contrary in this Order, (a) no agreement between the Debtor and Oracle America, Inc., successor in interest to MICROS Systems, Inc. ("Oracle") will be assumed without: (i) Oracle's prior written consent, (ii) cure of any default under such agreement, and (iii) the provision to Oracle of satisfactory adequate assurance of future performance; and (b) Oracle shall not be deemed a "Releasing Party" under Article VIII(D) of the Plan.

164.    In resolution of confirmation issues raised by Southgate Mall Owner LLC (together with its successors and assigns, the "Westfield Sarasota Landlord"), the Debtors have agreed, and the Court hereby orders that with respect to Debtor's furniture, fixtures and equipment and other personal property currently or in the future located in or used in connection with Debtor's leased premises located at Westfield Siesta Key, located in Sarasota, Florida (other than items expressly excluded under the lease amendment referenced below and the security agreement executed and delivered by Debtor in connection therewith) (the "Westfield Sarasota Premises FFE & Personalty") demised pursuant to the applicable lease for such premises (the "Westfield Sarasota Lease") with the Westfield Sarasota Landlord, as more fully described in the lease amendment between the Westfield Sarasota Landlord and the Debtor, and in consideration of such lease amendment including the abatement of certain past and accruing rents thereunder, pursuant to 11 USC §§ 363(b) and 363(f), the Westfield Sarasota Premises FFE &

76

Personalty, which is presently unencumbered with any liens or other encumbrances, shall be sold and transferred to the Westfield Sarasota Landlord as of the expiration or earlier termination of the Westfield Sarasota Lease. Debtor's interest in the Westfield Sarasota Premises FFE & Personalty shall be temporal only and Tenant's ownership of the Westfield Sarasota Premises FFE & Personalty shall automatically terminate and expire and the Westfield Sarasota Landlord shall become the owner of the Westfield Sarasota Premises FFE & Personalty free and clear of liens, claims, interests, and encumbrances immediately upon the expiration or sooner termination of the Westfield Sarasota Lease without further order, execution of further agreements, or any other action. The Westfield Sarasota Landlord may file financing statements referencing this Confirmation Order and such notice shall be deemed sufficient notice to, and shall be binding on, all future creditors of the Tenant and its successors and assigns.

165.    In resolution of confirmation issues raised by Old Orchard Urban Limited Partnership (together with its successors and assigns, the "Westfield Skokie Landlord"), the Debtors have agreed, and the Court hereby orders that with respect to Debtor's furniture, fixtures and equipment and other personal property currently or in the future located in or used in connection with Debtor's leased premises located at Westfield Old Orchard, located in Skokie, Illinois (other than items expressly excluded under the lease amendment referenced below and the security agreement executed and delivered by Debtor in connection therewith) (the "Westfield Skokie Premises FFE & Personalty") demised pursuant to the applicable lease for such premises (the "Westfield Skokie Lease") with the Westfield Skokie Landlord, as more fully described in the lease amendment between the Westfield Skokie Landlord and the Debtor, and in consideration of such lease

amendment including the abatement of certain past and accruing rents thereunder, pursuant to 11 USC §§ 363(b) and 363(f), the Westfield Skokie Premises FFE & Personalty, which is presently unencumbered with any liens or other encumbrances, shall be sold and transferred to the Westfield Skokie Landlord as of the expiration or earlier termination of the Westfield Skokie Lease. Debtor's interest in the Westfield Skokie Premises FFE & Personalty shall be temporal only and Tenant's ownership of the Westfield Skokie Premises FFE & Personalty shall automatically terminate and expire and the Westfield Skokie Landlord shall become the owner of the Westfield Skokie Premises FFE & Personalty free and clear of liens, claims, interests, and encumbrances immediately upon the expiration or sooner termination of the Westfield Skokie Lease without further order, execution of further agreements, or any other action. The Westfield Skokie Landlord may file financing statements referencing this Confirmation Order and such notice shall be deemed sufficient notice to, and shall be binding on, all future creditors of the Tenant and its successors and assigns.

166.    In resolution of confirmation issues raised by Countryside Mall, LLC (together with its successors and assigns, the "Westfield Clearwater Landlord"), the Debtors have agreed, and the Court hereby orders that with respect to Debtor's furniture, fixtures and equipment and other personal property currently or in the future located in or used in connection with Debtor's leased premises located at Westfield Countryside, located in Clearwater, Florida (other than items expressly excluded under the lease amendment referenced below and the security agreement executed and delivered by Debtor in connection therewith) (the "Westfield Clearwater Premises FFE & Personalty") demised pursuant to the applicable lease for such premises (the "Westfield Clearwater

Lease") with the Westfield Clearwater Landlord, as more fully described in the lease amendment between the Westfield Clearwater Landlord and the Debtor, and in consideration of such lease amendment including the abatement of certain past and accruing rents thereunder, pursuant to 11 USC §§ 363(b) and 363(f), the Westfield Clearwater Premises FFE & Personalty, which is presently unencumbered with any liens or other encumbrances, shall be sold and transferred to the Westfield Clearwater Landlord as of the expiration or earlier termination of the Westfield Clearwater Lease. Debtor's interest in the Westfield Clearwater Premises FFE & Personalty shall be temporal only and Tenant's ownership of the Westfield Clearwater Premises FFE & Personalty shall automatically terminate and expire and the Westfield Clearwater Landlord shall become the owner of the Westfield Clearwater Premises FFE & Personalty free and clear of liens, claims, interests, and encumbrances immediately upon the expiration or sooner termination of the Westfield Clearwater Lease without further order, execution of further agreements, or any other action. The Westfield Clearwater Landlord may file financing statements referencing this Confirmation Order and such notice shall be deemed sufficient notice to, and shall be binding on, all future creditors of the Tenant and its successors and assigns.

# # #

Submitted by:

BAST AMRON LLP
Jeffrey P. Bast (FBN 996343)
Brett M. Amron (FBN 148342)
Jaime B. Leggett (FBN 1016485)
One Southeast Third Avenue, Suite 1400
Sun Trust International Center
Miami, Florida 33131
Telephone: 305-379-7904
Facsimile: 305-379-7905
Email: jbast@bastamron.com
Email: bamron@bastamron.com
Email: jleggett@bastamron.com

-and-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Juan P. Morillo (FBN 135933)
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-8100
Email: juanmorillo@quinnemanuel.com

-and-

Patricia B. Tomasco (admitted *pro hac vice*)
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: 713-221-7000
Facsimile: 713-221-7100
Email: pattytomasco@quinnemanuel.com


COUNSEL FOR CINEMEX USA REAL ESTATE HOLDINGS, INC.,
CINEMEX HOLDINGS USA, INC. AND CB THEATER EXPERIENCE LLC


*Attorney Patricia B. Tomasco, who shall serve a copy of this order on all
interested parties and file a certificate of service reflecting same.*

80

## Exhibit A

**Plan**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

CINEMEX USA REAL ESTATE
HOLDINGS, INC., CINEMEX
HOLDINGS USA, INC., and CB THEATER
EXPERIENCE LLC,[1]

      Debtors.

_____/

Chapter 11

Case No. 20-14695-LMI

(Jointly Administered)

---

**THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
OF CINEMEX USA REAL ESTATE HOLDINGS, INC., CINEMEX
HOLDINGS USA, INC. AND CB THEATER EXPERIENCE LLC**

---

QUINN EMANUEL URQUHART &
SULLIVAN LLP
Patricia B. Tomasco (admitted *pro hac vice*)
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: 713-221-7000
Facsimile: 713-221-7100
Email: pattytomasco@quinnemanuel.com

and

Juan P. Morillo (FBN 135933)
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-8100
Email: juanmorillo@quinnemanuel.com

Dated: October 28, 2020

BAST AMRON LLP
Jeffrey P. Bast (FBN 996343)
Brett M. Amron (FBN 148342)
One Southeast Third Avenue, Suite 1400
Sun Trust International Center
Miami, Florida 33131
Telephone: 305-379-7904
Facsimile: 305-379-7905
Email: jbast@bastamron.com

*Co-Counsel to the Debtors and Debtors in
Possession*

---

[1] The Debtors in these cases and the last four digits of each Debtor's federal tax identification number are as follows: (i) Cinemex USA Real Estate Holdings, Inc. (2194); (ii) Cinemex Holdings USA, Inc. (5502); and (iii) CB Theater Experience LLC (0563). The address for the Debtors is 175 South West 7th Street, Suite 1108, Miami, Florida 33130.

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................... 1

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW** ............................................................................... 1

    A.     Defined Terms. ....................................................................................................... 1

    B.     Rules of Interpretation. ........................................................................................ 15

    C.     Computation of Time. .......................................................................................... 15

    D.     Governing Law. .................................................................................................... 16

    E.     Reference to Monetary Figures. ........................................................................... 16

    F.     Conflicts. .............................................................................................................. 16

**ARTICLE II. ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND DIP LOAN CLAIMS** ............................................................................................................... 16

    A.     Administrative Claims. ........................................................................................ 16

    B.     Priority Tax Claims. ............................................................................................. 18

    C.     DIP Loan Claims. ................................................................................................ 18

    D.     Statutory Fees. ..................................................................................................... 18

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ........... 19

    A.     Classification of Claims and Interests ................................................................ 19

    B.     Treatment of Claims and Interests. ..................................................................... 20

    C.     Special Provision Governing Unimpaired Claims. ............................................. 22

    D.     Elimination of Vacant Classes. ........................................................................... 22

    E.     Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. .................................................................................................................... 23

    F.     Voting Classes; Presumed Acceptance by Non-Voting Classes. ........................ 23

    G.     Presumed Acceptance and Rejection of the Plan. ............................................... 23

    H.     Intercompany Interests. ....................................................................................... 23

    I.     Controversy Concerning Impairment. ................................................................. 23

    J.     Subordinated Claims and Interests ...................................................................... 23

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN** ............................................. 24

    A.     Restructuring Transactions. ................................................................................. 24

    B.     Issuance of New Common Stock; Purchase of New Common Stock By Purchaser ........ 24

    C.     Administrative Consolidation for Distribution Purposes Only. .......................... 24

    D.     Settlement and Compromise. .............................................................................. 25

    E.     Settlement of Claims After the Effective Date. .................................................. 25

F.      Sources of Consideration for Plan Distributions.................................................. 25

G.      Cancellation of Certain Existing Securities and the DIP Loan Agreement. ..................... 26

H.      Waiver of Avoidance Actions. .............................................................................. 26

I.      Release of Liens. ................................................................................................. 26

J.      Corporate Action. ............................................................................................... 26

K.      Effectuating Documents; Further Transactions. ..................................................... 27

L.      Section 1146 Exemption. ..................................................................................... 27

M.      Corporate Existence. ........................................................................................... 27

N.      Vesting of Assets. ................................................................................................ 28

O.      New Organizational Documents. .......................................................................... 28

P.      Directors and Officers of the Reorganized Debtors. ............................................... 28

Q.      Management Incentive Plan. ................................................................................. 29

R.      Employee Obligations. ........................................................................................ 29

S.      Preservation of Causes of Action. ......................................................................... 29

T.      Payment of Certain Fees. ..................................................................................... 30

U.      Document Retention ............................................................................................ 30

V.      GUC Claims Trust ............................................................................................... 30

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
          LEASES ..................................................................................................... 34**

A.      Assumption and Rejection of Executory Contracts and Unexpired Leases..................... 34

B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases. .................... 34

C.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. .................. 35

D.      Preexisting Obligations to the Debtors under Executory Contracts and Unexpired
        Leases................................................................................................................. 35

E.      Indemnification Obligations. ................................................................................ 36

F.      Insurance Policies. .............................................................................................. 36

G.      Modifications, Amendments, Supplements, Restatements, or Other Agreements. .......... 36

H.      Reservation of Rights............................................................................................ 37

I.      Nonoccurrence of Effective Date........................................................................... 37

J.      Contracts and Leases Entered Into After the Petition Date. ....................................... 37

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ........................................ 37**

A.      Timing and Calculation of Amounts to Be Distributed. ............................................. 37

B.      Delivery of Distributions and Undeliverable or Unclaimed Distributions. .................... 38

C.      Special Rules for Distributions to Holders of Disputed Claims. ................................. 39

D.      Manner of Payment............................................................................................... 39

E.     Exemption from Securities Act Registration Requirements. The offering, issuance, and distribution of the New Common Stock pursuant to the Plan will be exempt from the registration requirements of section 5 of the Securities Act pursuant to section 4(a)(2) of the Securities Act, or any other available exemption from registration under the Securities Act, as applicable. Section 4(a)(2) of the Securities Act exempts transactions not involving a public offering, and section 506 of Regulation D of the Securities Act provides a safe harbor under section 4(a)(2) for transactions that meet certain requirements.  In reliance upon these exemptions, the offer, issuance, and distribution of New Common Stock pursuant to the Plan will not be registered under the Securities Act or any applicable state "Blue Sky" laws, and the New Common Stock issued pursuant to the Plan will be considered "restricted securities" and may not be transferred, encumbered, or otherwise disposed of in the absence of such registration or an exemption therefrom under the Securities Act or under such laws and regulations thereunder.  The New Common Stock issued under the Plan will bear a legend relating to the transfer restrictions applicable thereto. ........................................ 40

F.     Compliance with Tax Requirements. .................................................................. 40

G.    No Postpetition or Default Interest on Claims. .................................................. 40

H.    Setoffs and Recoupment. ................................................................................. 40

I.     No Double Payment of Claims. ......................................................................... 41

J.     Claims Paid or Payable by Third Parties. ......................................................... 41

K.    Allocation of Distributions Between Principal and Interest. .............................. 42

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND DISPUTED CLAIMS ..................................................................................... 42**

A.    Allowance of Claims. ....................................................................................... 42

B.    Claims Administration Responsibilities. ........................................................... 42

C.    Adjustment to Claims Without Objection. ......................................................... 43

D.    Time to File Objections to Claims or Interests. ................................................. 43

E.    Estimation of Claims. ....................................................................................... 43

F.    Disputed and Contingent Claims Reserve. ...................................................... 43

G.    Disallowance of Claims. ................................................................................... 43

H.    Amendments to Proofs of Claim. ..................................................................... 44

I.     Reimbursement or Contribution. ...................................................................... 44

J.     No Distributions Pending Allowance. ................................................................ 44

K.    Distributions After Allowance. .......................................................................... 45

**ARTICLE VIII. RELEASE, INJUNCTION, EXCULPATION, AND RELATED PROVISIONS ............................................................................................... 45**

A.    Discharge of Claims and Termination of Interests. .......................................... 45

B.    **Release of Liens.** ............................................................................................ 45

C.    **Releases by the Debtors.** ............................................................................... 46

| | | |
|---|---|---|
| D. | **Releases by Holders of Claims and Interests.** | 46 |
| E. | **Exculpation.** | 48 |
| F. | **Injunction.** | 48 |
| G. | **Channeling Injunction.** | 49 |
| H. | Protections Against Discriminatory Treatment | 50 |
| I. | Recoupment. | 50 |
| J. | Binding Effect. | 50 |

**ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN** ........ **51**

| | | |
|---|---|---|
| A. | Conditions Precedent to Confirmation. | 51 |
| B. | Conditions Precedent to the Effective Date. | 52 |
| C. | Waiver of Conditions. | 52 |
| D. | Substantial Consummation. | 52 |
| E. | Effect of Failure of Conditions. | 53 |

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ........ **53**

| | | |
|---|---|---|
| A. | Modification and Amendments. | 53 |
| B. | Effect of Confirmation on Modifications. | 53 |
| C. | Revocation or Withdrawal of Plan. | 53 |

**ARTICLE XI. RETENTION OF JURISDICTION** ........ **53**

**ARTICLE XII. MISCELLANEOUS PROVISIONS** ........ **56**

| | | |
|---|---|---|
| A. | Immediate Binding Effect. | 56 |
| B. | Additional Documents. | 56 |
| C. | Dissolution of the Committee. | 56 |
| D. | Payment of Statutory Fees. | 56 |
| E. | Reservation of Rights. | 57 |
| F. | Successors and Assigns. | 57 |
| G. | Notices. | 57 |
| H. | Term of Injunctions or Stays. | 58 |
| I. | Entire Agreement. | 58 |
| J. | Exhibits. | 58 |
| K. | Nonseverability of Plan Provisions. | 59 |
| L. | Votes Solicited in Good Faith. | 59 |
| M. | Waiver or Estoppel. | 59 |
| N. | Closing of Chapter 11 Cases. | 59 |
| O. | Creditor Default. | 60 |

**INTRODUCTION**

Cinemex USA Real Estate Holdings, Inc., Cinemex Holdings USA, Inc., and CB Theater Experience LLC, as debtors and debtors in possession (collectively, the "Debtors") propose this third amended joint chapter 11 plan of reorganization (the "Plan") for the resolution of the outstanding Claims against, and Interests in, the Debtors  Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in Article I.A of the Plan.  Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, business, assets, results of operations, historical financial information, events during the Chapter 11 Cases, and projections of future operations, as well as a summary and description of the Plan and certain related matters.  The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.    *Defined Terms.*

As used in the Plan, capitalized terms have the meanings set forth in the Introduction above or in the definitions below.

1.    "341 Notice" means the notice of chapter 11 bankruptcy case filed in the Chapter 11 Cases at ECF No. 15, which, inter alia, specified the Bar Date.

2.    "503(b)(9) Claim" means a Claim or any portion thereof entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code.

3.    "Administrative Claim" means a Claim for costs and expenses of administration of the Estates or the Chapter 11 Cases under sections 503(b) (including 503(b)(9) Claims), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date through the Effective Date of preserving the Estates and operating the business of the Debtors; (b) Allowed Professional Fee Claims; and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911–1930.

4.    "Administrative Claims Bar Date" means the final deadline for Filing requests for payment of Administrative Claims, which: (a) with respect to General Administrative Claims other than those that were accrued in the ordinary course of business, shall be 30 days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be 60 days after the Effective Date.

5.    "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code.

6.    "Allowed" means, with respect to any Claim or Interest, except as otherwise provided herein:  (a) a Claim or Interest in a liquidated amount as to which no objection has been Filed prior to the applicable Claims Objection Deadline and that is evidenced by a Proof of Claim or Interest, as applicable, timely Filed by the applicable Bar Date or that is not required to be evidenced by a Filed Proof of Claim or Interest, as applicable, under the Plan, the Bankruptcy Code, or a Final Order; (b) a Claim or Interest that is scheduled by the Debtors as neither Disputed, contingent, nor unliquidated, and for which no Proof

of Claim or Interest, as applicable, has been timely Filed in an unliquidated or a different amount; (c) a Claim or Interest that is upheld or otherwise Allowed: (i) pursuant to the Plan, including but not limited to the Syndicated Bank Loan Claims; (ii) in any stipulation that is approved by the Bankruptcy Court; (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith; (iv) by Final Order (including any such Claim to which the Debtors or GUC Claims Trust had objected or which the Bankruptcy Court had Disallowed prior to such Final Order); or (v) in the judgment of the Debtors or the GUC Claims Trustee, as applicable, prior to the expiration of the Claims Objection Deadline; provided that with respect to a Claim or Interest described in clauses (a) through (c) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to the allowance thereof has been or, in the Debtors', Reorganized Debtors' reasonable good faith judgment, may be interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest, as applicable, shall have been Allowed by a Final Order; provided, further, that no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim or Interest is or has been timely Filed, is not considered Allowed and shall be deemed expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. For the avoidance of doubt a Proof of Claim or Interest Filed after the Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim. "Allow," "Allowing," and "Allowance" shall have correlative meanings.

7.      "Assumed Executory Contract and Unexpired Lease List" means the list, compiled by the Debtors or the Reorganized Debtors, as applicable, of Executory Contracts and Unexpired Leases (with proposed cure amounts) that will be assumed by the Reorganized Debtors, which list shall be included in the Plan Supplement.

8.      "Assumed Executory Contracts and Unexpired Leases" means those Executory Contracts and Unexpired Leases to be assumed by the applicable Reorganized Debtors, including as set forth on the Assumed Executory Contract and Unexpired Lease List.

9.      "Auction" means the competitive bidding process in relation to the sale of equity ownership of Cinemex Holdings, conducted pursuant to the Bid Procedures Order.

10.      "Avoidance Action Waiver" means a waiver of the right of the Debtors and their Estates to prosecute or assert offensively or defensively any claims or Causes of Action arising under chapter 5 of the Bankruptcy Code (including, but not limited to sections 544, 547 and 548) or any state law equivalent claims for "preferences" against Holders of GUC Claims and Holders of Syndicated Bank Loan Claims.

11.      "Ballot" means the ballot applicable to the relevant Holder of a Claim, substantially in the form attached to the Disclosure Statement Order.

12.      "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

13.      "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Florida or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, the United States District Court for the Southern District of Florida.

14.     "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

15.     "Bar Date" means the applicable date established by which Proofs of Claims and Interests must be Filed in these Chapter 11 Cases pursuant to Local Bankruptcy Rule 3003-1 and the 341 Notice, which date is July 6, 2020, except with respect to Proofs of Claims filed by governmental units and certain other exceptions set forth in the 341 Notice.

16.     "Bid Procedures Order" means the corrected order of the Bankruptcy Court, dated September 2, 2020 (ECF No. 522), setting forth the procedures for competitive bidding for the sale of the equity interests in Cinemex Holdings, as reorganized, as may be amended or supplemented from time to time.

17.     "Business Day" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

18.     "Cap-Ex Escrow" means the escrow account funded by the Purchaser on or before the Effective Date, in the amount of $34,592,966.00 dedicated to payment of capital expenditures relating to unexpired leases of real property assumed by the Debtors pursuant to the Plan, as set forth in the Cap-Ex Escrow Agreement.

19.     "Cap-Ex Escrow Agreement" means the escrow agreement, substantially in the form included in the Plan Supplement, setting forth the terms and conditions of the Cap-Ex Escrow Account.

20.     "Cash" means the legal tender of the U.S. and equivalents thereof, including bank deposits, checks, and other similar items.

21.     "Cash Management Order" means the interim order dated May 8, 2020, authorizing the Debtors to, inter alia, continue to use their existing cash management system and maintain existing bank accounts (ECF No. 73), as may be further amended.

22.     "Causes of Action" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 551, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

23.     "Channeling Injunction" shall have the meaning set forth in Article VIII of the Plan, and shall be implemented by the Confirmation Order.

24.     "Chapter 11 Cases" means, collectively:  (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court; and (b) when used with reference to all the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

3

25.     "Cinemex" means Cinemex Holdings and its subsidiaries, including Cinemex USA Real Estate Holdings, Inc. and CB Theater Experience LLC.

26.     "Cinemex Holdings" means Cinemex Holdings USA, Inc.

27.     "Claim" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

28.     "Claims Objection Deadline" means the later of: (a) the date that is 180 days after the Effective Date; and (b) such other date as may be fixed by the Bankruptcy Court, after notice and hearing, upon a motion Filed before the expiration of such deadline.

29.     "Claims Register" means the official register of Claims maintained by the Bankruptcy Court.

30.     "Class" means a category of Claims or Interests as set forth in Article III of the Plan.

31.     "CM/ECF" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

32.     "Committee" means the statutory committee of unsecured creditors of the Debtors, appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on May 22, 2020, the membership of which may be reconstituted from time to time.

33.     "Confirmation" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

34.     "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

35.     "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

36.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the Committee and the Syndicated Bank Loan Agent.

37.     "Consummation" means the occurrence of the Effective Date.

38.     "Convenience Claim" means any Allowed GUC Claim in an Allowed amount that is greater than $0 but less than or equal to $15,000; provided that a Holder of an Allowed GUC Claim in excess of $15,000 may irrevocably elect on its Ballot to have such Claim irrevocably reduced to $15,000 and treated as a Convenience Claim for the purposes of the Plan, in full and final satisfaction of such Claim.

39.     "Convenience Claims Distribution" means Cash to be paid from the GUC Claims Allocation that shall be held in a segregated bank account by the GUC Claims Trust for the benefit of Holders of Allowed Convenience Claims to provide each such Holder a distribution equivalent to 12% of such Allowed Convenience Claim, which distribution shall be made by the GUC Claims Trustee as the Plan administrator of such funds; provided, further, that any excess Convenience Claims Distribution shall be returned to the GUC Claims Trust.

40.     "Cure Claim" means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtors' defaults on an Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code, other than with respect to a default that is not required to be cured under section 365(b)(2) of the Bankruptcy Code.  As set forth in Article V(C), to the extent the Plan implements a Sale Transaction, the Purchaser shall pay the Cure Costs associated with each Assumed Executory Contract or Unexpired Lease.

41.     "Debtors" means, collectively: (a) Cinemex USA Real Estate Holdings, Inc.; (b) Cinemex Holdings; and (iii) CB Theater Experience LLC.

42.     "DIP Lenders" means Grupo Cinemex, in its capacity as lender under DIP Loan No. 1 and Wine and Roses, S.A. de C.V. in its capacity as lender under DIP Loan No. 2, to which it has committed.

43.     "DIP Loan Claims" means any Administrative Claims arising in connection with the DIP Loan.

44.     "DIP Loan No. 1" means the postpetition financing approved by the DIP Order.

45.     "DIP Loan No. 2" means the postpetition financing anticipated to be provided by Wine and Roses, S.A. de C.V., subject to Bankruptcy Court approval by DIP Order No. 2.

46.     "DIP Loans" means the postpetition financing provided by the DIP Lenders on the terms and conditions set forth in the DIP Order and to be set forth in DIP Order No. 2.

47.     "DIP Order" means the Order Granting Debtors' Second Emergency Motion for Authorization to Obtain Post-Petition Unsecured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364 (ECF No. 363), as may be amended, and all other Orders of the Bankruptcy Court authorizing the Debtors to obtain post-petition financing at any time prior to Confirmation.

48.     "DIP Order No. 2" means the order that the Debtors will request that the Court enter to approve DIP Loan No. 2.

49.     "DIP Orders" means collectively, the DIP Order and DIP Order No. 2.

50.     "Disallowed" means, with respect to any Claim, a Claim or any portion thereof that (a) has been disallowed by a Final Order, including a Final Order, (b) is scheduled as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or the Plan, (c) is not scheduled and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or the Plan, (d) has been waived or withdrawn by agreement of the applicable Debtor or Reorganized Debtor, as applicable, and the Holder thereof, or (e) has been waived or withdrawn by the Holder thereof.

51.     "Disclosure Statement" means the Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Reorganization of Cinemex USA Real Estate Holdings, Inc., Cinemex Holdings USA,

Inc. and CB Theater Experience LLC, dated as of [●] (ECF No. [●]), as may be amended, including all exhibits and schedules thereto, as approved pursuant to the Disclosure Statement Order.

52.     "Disclosure Statement Order" means the Order (I) Approving the Disclosure Statement, (II) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (III) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Amended Plan and for Filing Objections to the Amended Plan, and (IV) Approving the Manner and Forms of Notice and Other Related Documents (ECF No. [●]).

53.     "Disputed" means with regard to any Claim or Interest, a Claim or Interest that is not yet Disallowed or Allowed.

54.     "Distribution Date" means, with respect to any Claim or Interest that is Allowed as of the Effective Date, the date on which distributions are made pursuant to the Plan, which shall be on or as soon as reasonably practicable following the Effective Date, and, in the case of the Syndicated Bank Loan Claims, on the Effective Date.

55.     "Distribution Record Date" means the record date for purposes of making distributions under the Plan on account of Allowed Claims and Allowed Interests, other than the Syndicated Bank Loan Claims, which date shall be the date that is five (5) Business Days after the Confirmation Date or such other date as designated in a Final Order of the Bankruptcy Court.

56.     "Effective Date" means, with respect to the Plan and any such applicable Debtor(s), the date that is the first Business Day upon which: (a) all conditions precedent specified in Article IX.A and Article IX.B have been satisfied or waived (in accordance with Article IX.C); and (b) the Plan is declared effective with respect to such applicable Debtor(s).

57.     "Enjoined Claims" has the meaning set forth in Article VIII.G of the Plan.

58.     "Enjoined Parties" means all Holders of Claims and Interests holding Enjoined Claims; provided that those Holders of Claims and Interests who exercised their right to opt out of the Third Party Release in accordance with the Plan shall not be Enjoined Parties.

59.     "Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

60.     "Estate" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

61.     "Exchange Act" means the Securities Exchange Act of 1934, as amended.

62.     "Exculpated Parties" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Lenders; (d) the Committee; (e) the individual members of the Committee; (f) the Purchaser; and (g) with respect to each of the foregoing (a) through (f), such Entity and its current and former Affiliates, and such Entity's and its current and former Affiliates' current and former members, equity holders (regardless of whether such interests are held directly or indirectly), subsidiaries, officers, directors, managers, predecessors, successors, assigns, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, restructuring advisors, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; provided, however, neither Grupo Cinemex, Operadora De Cinemas, S.A. DE C.V., or any other Entity that is not a Debtor shall be an Exculpated Party in their capacity as a (i) "Loan Party" with respect to claims or causes of action arising under or relating to the

Syndicated Bank Loan Credit Agreement; or (ii) a contractual obligor to any holder of a GUC Claim, including without limitation, as a guarantor or surety with respect to any guarantees or payment assurances arising under or relating to Executory Contracts and Unexpired Leases, whether or not rejected prior to the Confirmation Date.

63.     "Executory Contract" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

64.     "Federal Judgment Rate" means the federal judgment rate in effect as of the Petition Date, compounded annually, as set forth in 28 U.S.C. § 1961.

65.     "File," "Filed," or "Filing" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

66.     "Final Order" means (a) an order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction, or (b) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Case (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; provided that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order.

67.     "General Administrative Claim" means any Administrative Claim, other than a Professional Fee Claim.

68.     "Governance Term Sheet" means the term sheet included in the Plan Supplement setting forth the terms of certain agreements related to the corporate governance of the Reorganized Debtors.

69.     "Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

70.     "Grupo Cinemex" means Grupo Cinemex, S.A. de C.V.

71.     "GUC Claim" means any Claim as of the Petition Date that is neither secured by a Lien nor entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court; provided that a GUC Claim does not include (a) any Intercompany Claim, (b) any Syndicated Bank Loan Claims, (c) any DIP Loan Claims, or (d) any Claims of an insider as that term is defined under section 101(31) of the Bankruptcy Code.

72.     "GUC Claims Allocation" means Cash in the amount of $5,325,000 to be funded by the Debtors into the GUC Claims Trust on or prior to the Effective Date.

73.     "GUC Claims Trust" means the trust established pursuant to this Plan in favor of the GUC Claims Trust Beneficiaries pursuant to the GUC Claims Trust Agreement.

74.     "GUC Claims Trust Beneficiary" means, in its capacity as such, a holder of an Allowed GUC Claims in Class 4.  For the avoidance of doubt, GUC Claims Trust Beneficiaries shall exclude Class 5 Convenience Claims.

75.     "GUC Claims Trust Agreement" means the trust agreement substantially in the form included in the Plan Supplement to be entered into on or before the Effective Date between the Debtors and the GUC Claims Trustee.

76.     "GUC Claims Trust Assets" means (i) the GUC Claims Allocation, less the Convenience Claims Distribution, and (ii) the TLCF Note and all rights and interests thereto, including but not limited to, any payments made in respect thereof.

77.     "GUC Claims Trust Expenses" means the reasonable expenses (including any taxes imposed on or payable by the GUC Claims Trust or in respect of the GUC Claims Trust Assets and professional fees) incurred by the GUC Claims Trust and any professionals retained by the GUC Claims Trust and any additional amount determined necessary by the GUC Claims Trustee to adequately reserve for the operating expenses of the GUC Claims Trust, which shall be satisfied from the GUC Claims Trust Assets.

78.     "GUC Claims Trust Interest" means a non-certificated beneficial interest in the GUC Claims Trust granted to each GUC Trust Beneficiary, which shall entitle such holder to a Pro Rata share in the GUC Claims Trust Net Assets subject to the terms of the Plan and the GUC Claims Trust Agreement.

79.     "GUC Claims Trust Net Assets" means the GUC Claims Trust Assets less the GUC Claims Trust Expenses.

80.     "GUC Claims Trustee" means, in its capacity as such, the person or entity selected by the Committee to serve as the trustee of the GUC Claims Trust, and any successor thereto, in accordance with the GUC Claims Trust Agreement.

81.     "Holder" means an Entity holding a Claim or an Interest, as applicable.  "Hold" and "Held" shall have the correlative meanings.

82.     "Impaired" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

83.     "Indemnification Obligations" means each of the Debtors' indemnification obligations in place as of the Effective Date, whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, management or indemnification agreements, or employment or other contracts, for their current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals, advisors, and agents of the Debtors, as applicable.

84.     "Insurance Policies" means the policies of insurance listed in the Plan Supplement.

85.     "Insurers" means the insurance companies providing insurance coverage under the Insurance Policies.

86.     "Intercompany Claim" means any Claim held by any Debtor or non-Debtor affiliate or subsidiary against any other Debtor, but not including any DIP Loans.

87.     "Intercompany Interest" means any Interest held by a Debtor in another Debtor or a subsidiary of a Debtor.

88.     "Interest" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Entity.

89.     "Interim Compensation Order" means the Order Establishing Procedures to Permit Monthly Payment of Interim Fee Applications of Chapter 11 Professionals, dated June 28, 2020 (ECF No. 432).

90.     "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended.

91.     "IRS" means the Internal Revenue Service.

92.     "Judicial Code" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

93.     "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

94.     "Local Bankruptcy Rules" means the local rules of bankruptcy procedure promulgated in this district in accordance with Bankruptcy Rule 9029 that are applicable to all cases and proceedings arising in, under, or related to cases pending under the Bankruptcy Code in the Bankruptcy Court.

95.     "Management Incentive Plan" means a post-Effective Date management incentive plan that may be adopted by the board of directors of the Reorganized Debtors.

96.     "New Common Stock" means the new common stock or limited liability company units in Reorganized Cinemex Holdings whether issued or unissued on the Effective Date to be distributed under and in accordance with the Plan.

97.     "New Organizational Documents" means such certificates or articles of incorporation, by-laws, limited liability company operating agreements, stockholders' agreements, or other applicable formation and governance documents of each of the Reorganized Debtors, as applicable, the form of which shall be included in the Plan Supplement.

98.     "Noticing Agent" means Omni Agent Solutions, the noticing, balloting and administrative agent employed by the Debtors by Order entered June 16, 2020 (ECF No. 297).

99.     "Opt Out Form" means a form, substantially in the form contained in the Plan Supplement, by which a creditor or other party in interest may indicate its intent to opt out of the releases contained in Article VIII D of the Plan by submitting such form in advance of the deadline for voting on the Plan.

100.    "Other Priority Claim" means any Claim against a Debtor, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

101.    "Petition Date" means April 25, 2020, with respect to Cinemex Holdings and Cinemex Holdings USA, Inc., and April 26, 2020, with respect to CB Theater Experience LLC, which are the respective dates on which the Debtors commenced the Chapter 11 Cases.

102.    "Plan" has the meaning set forth in the Introduction.

103.    "Plan Supplement" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed by the Debtors, in form and substance reasonably acceptable to the Committee with respect to the document identified below as (h), and in form and substance acceptable to the Purchaser in its reasonable discretion with respect to the documents identified below as (a) through (g) and (i), in accordance with the Disclosure Statement or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents Filed with the Bankruptcy Court before the Effective Date as amendments to the Plan Supplement.  The Plan Supplement shall be comprised of, among other documents, the following:  (a) the New Organizational Documents; (b) the Assumed Executory Contract and Unexpired Lease List; (c) the Rejected Executory Contract and Unexpired Lease List; (d) the Stock Purchase Agreement; (e) the Schedule of Retained Causes of Action; (f) the identity of the members of the Reorganized Cinemex Board and management for the Reorganized Debtors; (g) the Cap-Ex Escrow Agreement; (h) the GUC Claims Trust Agreement; and (i) the Governance Term Sheet.  Any reference to the Plan Supplement in the Plan shall include each of the documents identified above as (a) through (i) and all exhibits thereto.  Notwithstanding the foregoing, the Debtors may amend the Plan Supplement, with the consent of the Committee and the Purchaser (with respect to all such documents other than the GUC Claims Trust Agreement), with such consent not to be unreasonably withheld, delayed or conditioned, through the Effective Date or as otherwise provided herein.

104.    "Prepetition Arrearages Claim" means a claim for the amount owed as of the Petition Date under a lease of nonresidential real property.

105.    "Priority Claims" means, collectively, the (a) Administrative Claims, (b) Priority Tax Claims, and (c) Other Priority Claims.

106.    "Priority Tax Claim" means the Claims of Governmental Units of the type specified in section 507(a)(8) of the Bankruptcy Code.

107.    "Pro Rata" means the proportion that the amount of an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of the Allowed Claims or Allowed Interests, in that Class, or the proportion of the Allowed Claims or Allowed Interests in a particular Class and other Classes, respectively, entitled to share in the same recovery as such Claim or Interest under the Plan.

108.    "Professional" means an Entity, excluding those Entities entitled to compensation pursuant to the Ordinary Course Professional Order:  (a) retained pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

109.    "Professional Fee Claims" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the

amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

110.    "Professional Fee Escrow Account" means an interest-bearing account in an amount equal to the Professional Fee Reserve Amount and funded by the Debtors on the Effective Date, pursuant to Article II.A.2(b) of the Plan.

111.    "Professional Fee Reserve Amount" means the total amount of Professional Fee Claims estimated in accordance with Article II.A.2(c) of the Plan.

112.    "Proof of Claim" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

113.    "Proof of Interest" means a proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

114.    "Purchase Price" means the amount, in Cash, as set forth in, and subject to the adjustments set forth in, the Stock Purchase Agreement.

115.    "Purchaser" means Wine and Roses, S.A. de C.V., the acquirer of the New Common Stock of Cinemex Holdings pursuant to the Transaction.

116.    "Reinstate," "Reinstated," or "Reinstatement" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired for purposes of section 1124 of the Bankruptcy Code.

117.    "Rejected Executory Contract and Unexpired Lease List" means the list, compiled by the Debtors or the Reorganized Debtors, as applicable, of Executory Contracts and Unexpired Leases that will be rejected by the Debtors pursuant to the Plan, which list shall be included in the Plan Supplement.

118.    "Released Parties" means, collectively, and in each case only in its capacity as such: (a) each of the Syndicated Bank Loan Lenders; (b) the Syndicated Bank Loan Agent; (c) the DIP Lenders; (d) the Committee; (e) the individual members of the Committee (both in their capacity as such and as individual creditors); (f) each of the Debtors' current and former directors or officer; (g) the Purchaser; and (h) with respect to each of the foregoing (a) through (g), each of such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided however*, that neither Grupo Cinemex, Operadora De Cinemas, S.A. DE C.V., or any other Entity that is not a Debtor shall be released from their obligations in their capacity as (i) a "Loan Party" under the Syndicated Bank Loan Agreement or (ii) a contractual obligor to a Holder of a GUC Claim, whether as a guarantor or surety with respect to any guarantees or payment assurances arising under or relating to Executory Contracts and Unexpired Leases, whether or not rejected prior to the Confirmation Date; *provided*, further, that any Holder of a Claim or Interest that votes against or objects to the Plan or opts out of the Third Party Release, shall not be a Released Party.

119.    "Releasing Parties" means, collectively, and in each case only in its capacity as such: (a) each of the Debtors; (b) the Reorganized Debtors; (c) each of the Debtors' current and former

11

directors or officers; (d) all Holders of Claims or Interests, including each of the Syndicated Bank Loan Lenders and the Syndicated Bank Loan Agent, who (1) vote in favor of the Plan or (2) abstain from voting, are not entitled to vote, or vote to reject the Plan and do not opt out of the Third Party Release on a timely submitted Ballot or Opt Out Form; and (e) with respect to each of the foregoing (c) through (d), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided, however*, that (i) none of the Syndicated Bank Loan Lenders shall be "Releasing Parties" with respect to any claims or causes of action arising under or relating to the Syndicated Bank Loan Credit Agreement with respect to Grupo Cinemex, Operadora De Cinemas, S.A. DE C.V., or any other "Loan Parties" under the Syndicated Bank Loan Credit Agreement that are not Debtors, and (ii) no holder of a GUC Claim that is or was a party to any contract or lease with any of the Debtors (whether or not rejected prior to the Confirmation Date) shall be "Releasing Parties" with respect to any claims under or in connection with any direct contractual obligation, guarantees or payment assurances made, given, made or undertaken by Grupo Cinemex, Operadora De Cinemas, S.A. DE C.V., or any other Non-Debtor person or entity with respect to any such contract or lease or any obligations thereunder.

120. "Reorganized" means, as to any Debtor or Debtors, such Debtor(s) as reorganized pursuant to and under the Plan or any successor thereto, by merger, consolidation, taxable disposition, or otherwise, on or after the Effective Date.

121. "Reorganized Debtors" means, collectively, and each in its capacity as such, the Debtors, as reorganized pursuant to and under the Plan or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date, and from and after the Effective Date, shall include (without limitation) Reorganized Cinemex.

122. "Reorganized Cinemex" means Cinemex, as reorganized pursuant to and under the Plan or any successor thereto, as set forth in the Plan and the New Organizational Documents.

123. "Reorganized Cinemex Board" means the board of directors of Reorganized Cinemex on and after the Effective Date.

124. "Restructuring Transactions" means those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, sales, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Debtors reasonably determine to be necessary or desirable to implement the Plan with respect to the Debtors, including, without limitation, the execution, deliver and funding of the Cap-Ex Escrow and the GUC Claims Trust Agreement, and the transactions contemplated by the New Organizational Documents.

125. "Retained Causes of Action" means any Causes of Action that are set forth on the Schedule of Retained Causes of Action to be retained by the Debtors or the Reorganized Debtors, as applicable, and prosecuted on behalf of the Debtors or the Reorganized Debtors, as applicable.

126. "Sale Proceeds Account" means a bank account established by the Debtors on or before the Effective Date into which the Purchaser shall deposit the Purchase Price.

127.   "Sale Transaction" means the sale of equity ownership of Cinemex Holdings, conducted via the Auction and approved by the Confirmation Order, to be implemented under the Plan.

128.   "Schedule of Retained Causes of Action" means the schedule of certain Causes of Action of the Debtors that are not released or waived pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors through the Effective Date, which shall be included in the Plan Supplement, provided that such schedule shall not include any Causes of Action against any Released Party, and any such inclusion will be deemed void ab initio.

129.   "Schedules" means the schedules of assets and liabilities, schedules of Executory Contracts or Unexpired Leases, and statement of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules.

130.   "SEC" means the Securities and Exchange Commission.

131.   "Secured Claim" means a Claim that is: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan or separate order of the Bankruptcy Court as a secured claim.

132.   "Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77–77a, as amended, together with the rules and regulations promulgated thereunder.

133.   "Security" or "Securities" has the meaning set forth in section 2(a)(1) of the Securities Act.

134.   "Stock Purchase Agreement" means the agreement pursuant to which Wine and Roses, S.A. de C.V. will acquire the New Common Stock, a copy of which is included in the Plan Supplement.

135.   "Security" or "Securities" has the meaning set forth in section 2(a)(1) of the Securities Act.

136.   "Syndicated Bank Loan" means the bank loan on the terms set forth in the Syndicated Bank Loan Credit Agreement.

137.   "Syndicated Bank Loan Agent" means BBVA Bancomer S.A., Institución de Banca Múltiple, Grupo Financiero BBVA Bancomer in its capacity as Administrative Agent for the lenders under the Syndicated Bank Loan Credit Agreement.

138.   "Syndicated Bank Loan Claims" means claims held by Syndicated Bank Loan Lenders arising from the Syndicated Bank Loan Credit Agreement.

139.   "Syndicated Bank Loan Claims Allocation" means Cash in the amount of $1 million, to be distributed to holders of Syndicated Bank Loan Claims pursuant to the Plan and in accordance with the Syndicated Bank Loan Credit Agreement.

140.   "Syndicated Bank Loan Credit Agreement" means the credit agreement dated as of March 20, 2018, by and among Grupo Cinemex, Operadora de Cinemas, S.A. de C.V. and Cinemex

Holdings, as borrowers, CB Theater Experience LLC, as guarantor, certain lenders, and BBVA Bancomer S.A., Institución de Banca Múltiple, Grupo Financiero BBVA Bancomer, as Administrative Agent, as such may be amended from time to time.

141.     "Syndicated Bank Loan Lender" means a lender under the Syndicated Bank Loan Credit Agreement.

142.     "Theater Level Cash Flow" means cash or other proceeds of sales of movie tickets, food, beverage concessions, and any other revenues at the Debtors' Theaters (including marketing at the level of the individual theaters), net of sales taxes and less operational costs at the Debtors' Theaters, without the allocation of any corporate expenses or marketing expenses at the corporate level.  For the avoidance of doubt, this should generally align with the EBITDA generated by the Debtors' Theaters before deducting general and administrative costs, or allocating corporate overhead, marketing, or corporate incurred or negotiated expenses.  If any refunds/rebates of costs incurred in Theater Level Cash Flow are received at the corporate level, those should be allocated to the theaters based on a reasonable metric and included as a reduction in costs in the same year as the original costs were incurred for this purpose.

143.     "Theaters" means the Debtors' movie theaters as of the Effective Date, as listed in the Plan Supplement.

144.     "Third Party Release" means the release provided by the Releasing Parties in favor of the Released Parties as set forth in Article VIII.D of the Plan.

145.     "TLCF Note" means the note payable to the GUC Claims Trust, substantially in the form set forth in the Plan Supplement, pursuant to which the Reorganized Debtors shall be obligated to pay eight percent (8%) of Theater Level Cash Flow for all Theaters for the period of January 1 through December 31 of each calendar year, distributed on an annual basis for a period of three years following the Effective Date (each such payment, a "TLCF Payment").  The initial TLCF Payment shall be paid no later than June 30, 2022, and the two subsequent TLCF Payments shall be paid promptly following the completion of the Debtors' audited financial statements (but in any event no later than five months after each year's end even if the Debtors' audited financial statements are not yet complete), which the Debtors anticipate will be completed in May 2023 and May 2024.  For the avoidance of doubt, no interest shall accrue or be payable on account of the TLCF Note unless the Reorganized Debtors fail to make a timely TLCF Payment, in which case interest shall accrue at the rate of fifteen percent (15%) per annum with respect to any such TLCF Payment, commencing on (i) July 1, 2022, with respect to the first TLCF Payment, and (ii) June 1, 2023 and June 1, 2024, respectively, for the second and third TLCF Payments, or such earlier date as any TLCF Payment was due.  If any of the Theaters are disposed, closed, or contracted to be managed by another party prior to the end of the third year after Plan Confirmation, the GUC Claims Trust shall receive 8% of the projected Theater Level Cash Flow for that location through year 3 (such projection to be reasonably agreed by the GUC Claims Trustee).  If any of the Theaters is transferred to an affiliate of the Debtors, that the affiliate must assume the obligations under the TLCF Note with respect to any such Theater.  All TLCF Payments (and the underlying calculations) shall be subject to audit, following which the TLCF Payments may be adjusted.

146.     "TLCF Payment" has the meaning set forth in the definition of TLCF Note.

147.     "U.S." means the United States of America.

148.     "U.S. Trustee" means the Office of the U.S. Trustee Region 21 for the Southern District of Florida.

149.     "Unexpired Lease" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

150.     "Unimpaired" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

B.     *Rules of Interpretation.*

For purposes of the Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neutral gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, or similar formation document or agreement, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (14) any immaterial effectuating provisions may be interpreted by the Debtors or Reorganized Debtors, as applicable, in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (15) except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors and the Reorganized Debtors, shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

C.     *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D. *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or Reorganized Debtor.

E. *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States, unless otherwise expressly provided.

F. *Conflicts.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND DIP LOAN CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and DIP Loan Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests.

A. *Administrative Claims.*

    1. General Administrative Claims.

Except as specified in this Article II, unless the Holder of an Allowed General Administrative Claim and the Debtors or the Reorganized Debtors, as applicable, agree to less favorable treatment, each Holder of an Allowed General Administrative Claim will receive, in full satisfaction of its General Administrative Claim, Cash equal to the amount of such Allowed General Administrative Claim either: (a) on the Effective Date; (b) if the General Administrative Claim is not Allowed as of the Effective Date, sixty (60) days after the date on which an order allowing such General Administrative Claim becomes a Final Order, or as soon thereafter as reasonably practicable; or (c) if the Allowed General Administrative Claim is based on a liability incurred by the Debtors in the ordinary course of their business after the Petition Date, pursuant to the terms and conditions of the particular transaction or agreement giving rise to such Allowed General Administrative Claim, without any further action by the Holders of such Allowed General Administrative Claim, and without any further notice to or action, order, or approval of the Bankruptcy Court.

Except for Claims of Professionals, requests for payment of General Administrative Claims that were not accrued in the ordinary course of business must be Filed and served on the Debtors or the Reorganized Debtors, as applicable, no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the Effective Date. Holders of General Administrative Claims that are required to File and serve a request for payment of such General

Administrative Claims by the Administrative Claims Bar Date and do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such General Administrative Claims against the Debtors or Reorganized Debtors, as applicable, or their respective property, and such General Administrative Claims shall be deemed forever discharged and released as of the Effective Date.  Any requests for payment of General Administrative Claims that are not properly Filed and served by the Administrative Claims Bar Date shall not appear on the Claims Register and shall be Disallowed automatically without the need for further action by the Debtors or the Reorganized Debtors, as applicable, or further order of the Bankruptcy Court.  To the extent this Article II.A.1 conflicts with Article XII.C of the Plan with respect to fees and expenses payable under section 1930(a) of the Judicial Code, including fees and expenses payable to the U.S. Trustee, Article XII.C of the Plan shall govern.  Notwithstanding the foregoing, no request for payment of a General Administrative Claim need be Filed with respect to a General Administrative Claim previously Allowed by Final Order.

The Debtors or the Reorganized Debtors, in their sole and absolute discretion, may settle General Administrative Claims without further Bankruptcy Court approval.  The Reorganized Debtors may also choose to object to any Administrative Claim no later than sixty (60) days from the Administrative Claims Bar Date, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court.  Unless the Debtors or Reorganized Debtors (or other party with standing), as applicable, object to a timely filed and properly served Administrative Claim, such Administrative Claim will be deemed Allowed in the amount requested.  In the event that the Debtors or Reorganized Debtors, as applicable, object to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such Administrative Claim should be Allowed and, if so, in what amount.

2.   Professional Compensation.

(a)   <u>Final Fee Applications</u>.

All final requests for payment of Professional Fee Claims, including the Professional Fee Claims incurred during the period from the Petition Date through the Effective Date, must be Filed and served in accordance with the Order Approving the Adequacy of the Disclosure Statement (ECF No. ___) or as may otherwise be directed by the Bankruptcy Court.  All such final requests will be subject to approval by the Bankruptcy Court after notice to other parties on the regular service list and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Cases, including the Interim Compensation Order, and once approved by the Bankruptcy Court, promptly paid from the Professional Fee Escrow Account up to the full Allowed amount.

(b)   <u>Professional Fee Escrow Account</u>.

On the Effective Date, the Debtors or Reorganized Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors, as applicable. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by a Final Order.  When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court.  If the Professional Fee Escrow Account is insufficient to fund

17

the full Allowed amounts of Professional Fee Claims, all remaining unpaid Allowed Professional Fee Claims will be paid by the Debtors or the Reorganized Debtors, as applicable.

(c)     <u>Professional Fee Reserve Amount</u>.

Professionals shall estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Confirmation Date and shall deliver such estimate to the Debtors no later than five business days before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims.  If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.  The aggregate amount for all Professionals estimated pursuant to this section shall comprise the Professional Fee Reserve Amount.

(d)     <u>Post-Confirmation Date Fees and Expenses</u>.

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtors.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

B.     *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

C.     *DIP Loan Claims.*

Except to the extent that a Holder of an Allowed DIP Loan Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed DIP Loan Claim, each Holder of such Allowed DIP Loan Claim shall be paid in full in Cash from the Purchase Price.  Upon the payment or satisfaction of the Allowed DIP Loan Claims in accordance with this Article II.C, all Liens, security interests and superpriority claims granted in connection with the Allowed DIP Loan Claims shall be automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

D.     *Statutory Fees.*

All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date shall be paid by the Debtors.  On and after the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly

reports in a form reasonably acceptable to the U.S. Trustee.  Each Reorganized Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the case of that particular Debtor being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims and Interests.*

Claims and Interests, except for Administrative Claims, Priority Tax Claims, Professional Fee Claims, and DIP Loan Claims, are classified as required by the Bankruptcy Code in the Classes set forth in this Article III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.  The Debtors reserve the right to assert that the treatment provided to Holders of Claims and Interests pursuant to Article III.B of the Plan renders such Holders Unimpaired.

1.    Class Identification for the Debtors.

The Plan constitutes a separate chapter 11 plan of reorganization for each Debtor, each of which shall include the classifications set forth below.  Subject to Article I.D of the Plan, to the extent that a Class contains Claims or Interests only with respect to one or more particular Debtors, such Class applies solely to such Debtor.

The following chart represents the classification of Claims and Interests for each Debtor pursuant to the Plan.

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Syndicated Bank Loan Claims | Impaired | Entitled to Vote |
| Class 4 | GUC Claims | Impaired | Entitled to Vote |
| Class 5 | Convenience Claims | Impaired | Entitled to Vote |
| Class 6 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Intercompany Interests | Unimpaired | Not Entitled to Vote |
| Class 8 | Interests in Cinemex Holdings | Impaired | Not Entitled to Vote (Deemed to Reject) |

19

B.     *Treatment of Claims and Interests.*

       To the extent that a Class contains Allowed Claims or Allowed Interests with respect to any Debtor, the treatment of Allowed Claims and Allowed Interests in such Class is specified below.

1.     Class 1 – Secured Claims.

       (a)     *Classification*:  Class 1 consists of Secured Claims.

       (b)     *Treatment*:  Except to the extent that a Holder of an Allowed Secured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Secured Claim, each such Holder shall receive, at the option of the applicable Debtor(s), either:

               (i)     payment in full in Cash;

               (ii)    delivery of collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code;

               (iii)   Reinstatement of such Claim; or

               (iv)    other treatment rendering such Claim Unimpaired.

       (c)     *Voting:*  Class 1 is Unimpaired under the Plan.  Holders of Claims in Class 1 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

2.     Class 2 – Other Priority Claims.

       (a)     *Classification*:  Class 2 consists of Other Priority Claims.

       (b)     *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive, at the option of the applicable Debtor(s), either:

               (i)     payment in full in Cash; or

               (ii)    other treatment rendering such Claim Unimpaired or otherwise permitted by the Bankruptcy Code.

       (c)     *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Claims in Class 2 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Claims in Class 2 are not entitled to vote to accept or reject the Plan.

3.      Class 3 – Syndicated Bank Loan Claims.

    (a)      *Classification*:  Class 3 consists of Syndicated Bank Loan Claims.

    (b)      *Treatment*:  The Syndicated Bank Loan Claims are Allowed in the full amount due and owing under the Syndicated Bank Loan Credit Agreement, which, as of the Petition Date, is $159,113,879.40.  Except to the extent that a Holder of an Allowed Syndicated Bank Loan Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Syndicated Bank Loan Claim, each such Holder shall receive its Pro Rata share of the Syndicated Bank Loan Claims Allocation.

    (c)      *Voting:*  Class 3 is Impaired under the Plan.  Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.      Class 4 – GUC Claims.

    (a)      *Classification*:  Class 4 consists of GUC Claims other than Convenience Claims.

    (b)      *Treatment*:  Except to the extent that a Holder of an Allowed GUC Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed GUC Claim, each such Holder of an Allowed GUC Claim in Class 4 shall receive its Pro Rata share of the GUC Claims Trust Interest that shall entitle such Holder to its Pro Rata share of the GUC Claims Trust Net Assets; provided that to the extent a GUC Claim is, or by election is treated as, a Convenience Claim, such Holder shall receive its Pro Rata share of the Convenience Claims Distribution.

    (c)      *Voting:*  Class 4 is Impaired under the Plan.  Holders of Claims in Class 4 are entitled to vote to accept or reject the Plan.

5.      Class 5 – Convenience Claims.

    (a)      *Classification*:  Class 5 consists of Convenience Claims.

    (b)      *Treatment*:  Each Allowed Convenience Claim shall receive, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Convenience Claim, a Cash distribution equal to 12% of its Allowed Convenience Claim on or as soon as practicable after the Effective Date or if such Claim is not Allowed on the Effective Date, sixty (60) days after the date of Allowance.

    (c)      *Voting:*  Class 5 is Impaired under the Plan.  Holders of Claims in Class 5 are entitled to vote to accept or reject the Plan.

6.      Class 6 – Intercompany Claims.

(a)      *Classification*:  Class 6 consists of all Intercompany Claims.

(b)      Treatment:  Intercompany Claims shall be canceled, discharged, released, and extinguished in full as of the Effective Date.

(c)      *Voting:*  Class 6 is Impaired, and such Holders of Class 6 Claims are conclusively presumed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.

7.      Class 7 – Intercompany Interests.

(a)      *Classification*:  Class 7 consists of all Intercompany Interests.

(b)      Treatment:  Intercompany Interests shall be Reinstated as of the Effective Date.[2]

(c)      *Voting:*  Class 7 is Unimpaired, and such Holders of Class 7 Interests are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

8.      Class 8 – Interests in Cinemex Holdings

(a)      *Classification*:  Class 8 consists of any Interests in Cinemex Holdings.

(b)      *Treatment*:  On the Effective Date, existing Interests in Cinemex Holdings shall be deemed canceled, discharged, released, and extinguished, and there shall be no distribution to Holders of Interests in Cinemex Holdings on account of such Interests.

(c)      *Voting:*  Class 8 is Impaired under the Plan.  Holders of Interests in Cinemex Holdings are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Interests in Class 9 are not entitled to vote to accept or reject the Plan.

C.      *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

D.      *Elimination of Vacant Classes.*

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes pursuant to the Disclosure Statement Order shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes

---

2      Reinstatement of Intercompany Interests is for administrative purposes only as a means to preserve the corporate structure for holding company purposes and avoid the unnecessary cost of having to reconstitute that structure.  There is no distribution under the Plan on account of Intercompany Interests.

of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

E.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B of the Plan. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules or to withdraw the Plan as to such Debtor.

F.    *Voting Classes; Presumed Acceptance by Non-Voting Classes.*

If a Class contains Holders of Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims or Interests in such Class.

G.    *Presumed Acceptance and Rejection of the Plan.*

To the extent that Claims or Interests of any Class receive no distribution under the Plan, each Holder of a Claim or Interest in such Class is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan. To the extent that Claims or Interests of any Class are Reinstated, each Holder of a Claim or Interest in such Class is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

H.    *Intercompany Interests.*

Holders of Intercompany Interests are not receiving any distribution under the Plan on account of such Intercompany Interests; rather Intercompany Interests are preserved under the Plan as a matter of administrative convenience, for the ultimate benefit of the Holders of New Common Stock and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the Holders of Allowed Claims. For the avoidance of doubt, any Interests in non-Debtor subsidiaries owned by a Debtor as of the Effective Date shall continue to be owned by the applicable Reorganized Debtor.

I.    *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

J.    *Subordinated Claims and Interests.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable or contractual subordination rights relating thereto, whether arising under general principles of

equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Reorganized Debtors or the GUC Claims Trust reserve the right to re-classify any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Restructuring Transactions.*

On the Effective Date, the Debtors or the Reorganized Debtors, as applicable, in consultation with the Committee, will effectuate the Restructuring Transactions, and will take any actions as may be necessary or advisable to effect a corporate restructuring of their respective business.  The actions to implement the Restructuring Transactions may include, as applicable, and without limitation:  (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree, including, if applicable, the formation of any entity or entities that will constitute, in whole or in part, the Reorganized Debtors; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree, including the execution and delivery of the GUC Claims Trust Agreement; (3) the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, dissolution, or other organizational documents pursuant to applicable state law; (4) the execution and delivery of the New Organizational Documents; (5) the execution and delivery of Cap-Ex Escrow Agreement; (6) the issuance of the New Common Stock as set forth in the Plan; and (7) all other actions that the applicable Entities determine to be necessary or advisable, including making filings or recordings that may be required by law in connection with the Plan.

The Confirmation Order shall and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

B.      *Issuance of New Common Stock; Purchase of New Common Stock By Purchaser*

On the Effective Date, the Reorganized Debtors shall issue, and the Purchaser shall purchase, the New Common Stock, on the terms and conditions set forth in the Stock Purchase Agreement.

C.      *Administrative Consolidation for Distribution Purposes Only.*

On the Effective Date, and solely for administrative purposes to facilitate distributions:  (1) all GUC Claims against each of the Debtors shall be deemed merged or treated as liabilities of the GUC Claims Trust to the extent Allowed; (2) all GUC Claim guaranties by a Debtor of the obligations of any other Debtor shall be deemed eliminated and extinguished so that any GUC Claim against any Debtor and any guarantee thereof executed by any Debtor and any joint or several GUC Claim against any of the Debtors shall be deemed to be one obligation of the GUC Claims Trust; (3) each and every GUC Claim filed in any of the Chapter 11 Cases shall be treated as filed against the consolidated Debtors and shall be treated as one GUC Claim against and obligation of the GUC Claims Trust.  For the avoidance of doubt, for purposes of determining the availability of the right of set off under section 553 of the Bankruptcy

Code, the Debtors shall be treated as separate entities so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may not be set off against the liabilities of any of the other Debtors. Such administrative consolidation is solely for the purpose of facilitating distributions to holders of GUC Claims under this Plan and shall not affect the legal and corporate structures of the Reorganized Debtors. Moreover, such administrative consolidation shall not affect any subordination provisions set forth in any agreement relating to any GUC Claim or the ability of the GUC Claims Trustee to seek to have any GUC Claim subordinated in accordance with any contractual rights or equitable principles.

D.    *Settlement and Compromise.*

The Plan shall be deemed a motion to approve the good-faith compromise and settlement set forth in the Plan pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement. The compromises and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan. The Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise, settlement, and releases set forth in the Plan, as well as a finding by the Bankruptcy Court that such settlement and compromise, and the releases and indemnities provided to effectuate such settlement, are in the best interests of the Debtors, their Estates, and the Holders of Claims and Interests, and is fair, equitable, and reasonable.

In order to implement the good-faith compromise and settlement set forth herein, the Plan groups the Debtors together solely for the purpose of describing treatment of Claims and Interests under the Plan and confirmation of the Plan. The Plan applies to all of the Debtors. To the extent there are no Allowed Claims or Interest with respect to a particular Debtor, such Class is deemed to be omitted with respect to such Debtor. Except as otherwise provided herein, to the extent a holder has a Claim that may be asserted against more than one Debtor, the vote of such holder in connection with such Claims shall be counted as a vote of such Claim against each Debtor against which such holder has a Claim. The grouping of the Debtors in this manner shall not affect any Debtor's status as a separate legal Entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger of consolidation of any legal Entities, or cause the transfer of any Assets, and, except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal Entities.

E.    *Settlement of Claims After the Effective Date.*

In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors or the GUC Claims Trustee, as the case may be, may compromise and settle Claims against, and Interests in, the Debtors and their Estates, and Causes of Action against other Entities.

F.    *Sources of Consideration for Plan Distributions.*

The Debtors shall fund distributions under the Plan with, as applicable:  (1) Cash on hand (including Cash derived from the Sale Transaction); (2) the Purchase Price; (3) with respect to Cure Costs associated with Assumed Executory Contracts and Unexpired Leases in connection with a Sale Transaction, Cash funded by the Purchaser, and (4) the New Common Stock. Each distribution and issuance referred to in Article VI of the Plan shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance. The issuance, distribution, or authorization, of

certain securities in connection with the Plan, including the New Common Stock, will be exempt from SEC registration to the fullest extent permitted by law, as described more fully in Article VI.F below.

G.      *Cancellation of Certain Existing Securities and the DIP Loan Agreement.*

Except as otherwise provided in the Plan, on and after the Effective Date, all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing any Claims against any of the Debtors, and any Interests in Cinemex Holdings, shall be deemed canceled, surrendered, and discharged without any need for further action or approval of the Bankruptcy Court or any Holder or other person and the obligations of the Debtors or Reorganized Debtors, as applicable, thereunder or in any way related thereto shall be deemed satisfied in full and discharged, and the counterparties to any such documents or agreements shall be released from all duties thereunder; *provided* that notwithstanding Confirmation or Consummation, any such document or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of:  (1) allowing Holders to receive distributions under the Plan; (2) allowing creditors to enforce their rights, claims, and interests vis-à-vis any parties other than the Debtors; and (3) preserving any rights of any creditors to enforce any obligations owed to each of them under the Plan, and to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including, but not limited, to enforce the respective obligations owed to such parties under the Plan; *provided further*, that nothing in the Plan, the Plan Supplement, or the Confirmation Order, and neither Confirmation nor Consummation of the Plan, shall effectuate any release, cancelation, surrender or discharge of the Syndicated Bank Loan Credit Agreement or any related documents as they pertain to Grupo Cinemex, Operadora De Cinemas, S.A. DE C.V., or any other Entity that is not a Debtor or otherwise affect the joint and several or other obligations of such Entities under the Syndicated Bank Loan Credit Agreement or any related documents.

H.      *Waiver of Avoidance Actions.*

Notwithstanding anything to the contrary in the Plan, upon the Effective Date, the Debtors shall be deemed to have granted the Avoidance Action Waiver for the benefit of all Holders of GUC Claims and Holders of Syndicated Bank Loan Claims.

I.      *Release of Liens.*

Except as otherwise expressly provided herein (including with regard to Other Secured Claims that the Debtors elect to Reinstate in accordance with Article III.B.2(b) of the Plan), on the Effective Date, all Liens on any property of any Debtors shall automatically terminate, all property subject to such Liens shall be automatically released.

J.      *Corporate Action.*

On the Effective Date, all actions contemplated under the Plan with respect to the Debtors and the Reorganized Debtors, as applicable, shall be deemed authorized and approved in all respects, including, as applicable:  (1) implementation of the Restructuring Transactions; (2) formation by the Debtors or such other party as contemplated in the Plan, Plan Supplement, or Confirmation Order, of Reorganized Cinemex, and the any transactions related thereto; (3) selection of, and the election or appointment (as applicable) of, the directors and officers for the Reorganized Debtors; (4) adoption of and entry into any employment agreements; (5) approval and adoption of (and, as applicable, the execution, delivery, and filing of) the New Organizational Documents; (6) issuance and distribution of New Common Stock as set forth in the Plan; (7) execution of the GUC Claims Trust Agreement and transfer of the GUC Claims Trust Assets and the Convenience Claims Distribution to the GUC Claims Trust; and (8) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date).

26

All matters provided for herein involving the corporate structure of the Debtors or the Reorganized Debtors, as applicable, and any corporate action, authorization, or approval that would otherwise be required by the Debtors or the Reorganized Debtors, as applicable, in connection with the Plan shall be deemed to have occurred or to have been obtained and shall be in effect as of the Effective Date, without any requirement of further action, authorization, or approval by the Bankruptcy Court, security holders, directors, managers, or officers of the Debtors, the Reorganized Debtors, or any other person.

On or before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments, and take such actions, contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors including, as applicable, the Cap-Ex Escrow Agreement, the GUC Claims Trust Agreement, the New Organizational Documents, the New Common Stock, and any and all other agreements, documents, securities, and instruments relating to the foregoing, and all such documents shall be deemed ratified. The authorizations and approvals contemplated by this Article IV.I shall be effective notwithstanding any requirements under non-bankruptcy law.

K.    *Effectuating Documents; Further Transactions.*

On or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, and the officers, directors, agents and members thereof are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, notice, or consents, except for those expressly required pursuant to the Plan.

L.    *Section 1146 Exemption.*

Pursuant to, and to the fullest extent permitted by, section 1146 of the Bankruptcy Code, any transfers of property pursuant to, in contemplation of, or in connection with, the Plan, including: (1) the Restructuring Transactions; (2) the GUC Claims Trust Agreement; (3) the issuance of the New Common Stock, including with regard to the Management Incentive Plan, (4) the transfer, if any, of the Debtors' assets to the Reorganized Debtors; (5) the assignment or surrender of any lease or sublease; (6) the Cap-Ex Escrow; and  (7) the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer, mortgage recording tax, or other similar tax, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers or property without the payment of any such tax, recordation fee, or governmental assessment.

M.    *Corporate Existence.*

Except as otherwise provided in the Plan or the Plan Supplement, each Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of

incorporation and by-laws (or other formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and by-laws (or other formation documents) are amended under the Plan, the Plan Supplement, or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan or Plan Supplement and require no further action or approval (other than any requisite filings required under applicable state or federal law).

N.    *Vesting of Assets.*

Except as otherwise provided in the Plan, including the transfer of the GUC Claims Trust Assets and the Convenience Claims Distribution to the GUC Claims Trust, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each applicable Reorganized Debtor, free and clear of all Liens, Claims, charges, Interests, or other encumbrances other than those specifically granted pursuant to the Plan or the Confirmation Order. Except as otherwise provided in the Plan, on and after the Effective Date, each of the Reorganized Debtors may operate their business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

O.    *New Organizational Documents.*

On the Effective Date, to the extent provided in the Plan and/or Plan Supplement, each of the Reorganized Debtors will file its New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state of incorporation or formation in accordance with the applicable laws of the respective state of incorporation or formation, to the extent required for such New Organizational Documents to become effective. Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents will prohibit the issuance of non-voting equity securities. Such New Organizational Documents shall contain customary minority protection. The initial board of directors of the Reorganized Debtors shall consist of three (3) persons. After the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents and other constituent documents as permitted by the laws of their respective state of incorporation and its respective New Organizational Documents and other constituent documents of the Reorganized Debtors.

P.    *Directors and Officers of the Reorganized Debtors.*

As of the Effective Date, the initial Reorganized Cinemex Board shall consist of three (3) directors, the identities of whom will be disclosed in the Plan Supplement. As of the Effective Date, the terms of the current members of the boards of directors or managers, as applicable, of each of the Debtors shall expire, and the initial Reorganized Cinemex Board and the boards of directors or managers of each of the other Reorganized Debtors will include those directors and officers set forth in the lists of directors and officers of the Reorganized Debtors included in the Plan Supplement.

After the Effective Date, the officers of each of the Reorganized Debtors shall be appointed in accordance with the respective New Organizational Documents. Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose in the Plan Supplement the identity and affiliations of each person proposed to be an officer or to serve on the initial board of directors of any of the Reorganized Debtors. To the extent any such director or officer of the Reorganized Debtors is an "insider" under the Bankruptcy Code, the Debtors also will disclose the nature of any compensation to be paid to such director or officer. Each such director or officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents.

Until the TLCF Note is satisfied in full by its terms, Board meetings shall be held no less than quarterly, and the Committee shall have the right to appoint a Board observer as a non-voting member of the Reorganized Cinemex Board (and all subcommittees, special committees, or other groups established by the Reorganized Cinemex Board) and shall receive any and all information provided to any member of the Reorganized Cinemex Board and shall be required to keep all such information confidential. Notwithstanding the foregoing, the Board observer appointed by the Committee need not be permitted to attend any portion of any such meeting of the Cinemex Board or be provided with any portion of such materials to the extent that so doing would result in a waiver of any legal privilege, including the attorney-client privilege. Prior to excluding the observer from any meeting of the Reorganized Cinemex Board or withholding any information made available to the Board on the ground that to do so would waive a privilege, Reorganized Cinemex and the observer shall use best efforts, including executing common interest and confidentiality agreements mutually acceptable to Reorganized Cinemex and the observer, to allow the observer to attend the meeting of the Board and to have access to the information provided.

Q.    *Management Incentive Plan.*

After the Effective Date, the Reorganized Cinemex Board may adopt and implement a Management Incentive Plan pursuant to which management and key employees will receive a percentage of equity in Reorganized Cinemex, comprised of New Common Stock. The participants in the Management Incentive Plan, the timing and allocations of the awards to participants, and the other terms and conditions of such awards (including, but limited to, vesting, exercise prices, base values, hurdles, forfeiture, repurchase rights, and transferability) shall be determined by the Reorganized Cinemex Board.

R.    *Employee Obligations.*

Except as otherwise provided in the Plan or the Plan Supplement, the Reorganized Debtors shall honor, to the extent not previously rejected, the Debtors' written contracts, agreements, policies, programs, plans, and Insurance Policies for, among other things, compensation, reimbursement, indemnity, health care benefits, disability benefits, vacation and sick leave benefits, workers' compensation claims, savings, severance benefits, including in the event of a change of control, retirement benefits, welfare benefits, relocation programs, certain grandfathered benefits, life insurance and accidental death and dismemberment insurance, including written contracts, agreements, policies, programs and plans for bonuses and other incentives or compensation for the directors, officers and employees of any of the Debtors who served in such capacity at any time (including any compensation programs approved by the Bankruptcy Court); *provided* that the consummation of the transactions contemplated herein shall not constitute a "change in control" with respect to any of the foregoing arrangements. To the extent that the above-listed written contracts, agreements, policies, programs, plans, and Insurance Policies are Executory Contracts, pursuant to sections 365 and 1123 of the Bankruptcy Code, each of them will be deemed assumed as of the Effective Date and assigned to the Reorganized Debtors.

S.    *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action belonging to the Debtors, whether arising before or after the Petition Date, including, without limitation, any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than Causes of Action released by the Debtors pursuant to the releases and exculpations set forth in Article VIII of the Plan or under this Plan, including the Avoidance

29

Action Waiver in favor of Holders of GUC Claims and Holders of Syndicated Bank Loan Claims, which shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date.

The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Disclosure Statement, or the Schedule of Retained Causes of Action to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action of the Debtors against it. The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise provided in the Plan, including Article VIII of the Plan. Unless any Cause of Action of the Debtors against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the Debtors and the Reorganized Debtors expressly reserve all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation.

The Reorganized Debtors, as applicable, shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Cause of Action that a Debtor may hold against any Entity shall vest in the applicable Reorganized Debtor, except as otherwise provided in the Plan, including Article VIII of the Plan and the Avoidance Action Waiver. The Reorganized Debtors shall retain, and through their authorized agents or representatives shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment, any such Causes of Action (except as otherwise provided in the Plan), or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

T. *Payment of Certain Fees.*

Without any further notice to or action, order, or approval of the Bankruptcy Court, the Debtors, or the Reorganized Debtors, as applicable, shall pay on the Effective Date any reasonable and documented unpaid fees and expenses incurred on or before the Effective Date by all of the attorneys, accountants, and other professionals, advisors, and consultants payable under the DIP Orders (which fees and expenses shall be paid pursuant to the terms of the DIP Orders).

U. *Document Retention*

On and after the Effective Date, after prior consultation with the GUC Claims Trustee, the Reorganized Debtors may maintain or dispose of documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

V. *GUC Claims Trust*

(a) ***Creation and Governance of the GUC Claims Trust***. On the Effective Date, the Debtors, the Reorganized Debtors and GUC Claims Trustee shall be authorized to take all actions necessary to establish the GUC Claims Trust in accordance with the Plan and the GUC Claims Trust Agreement. Additionally, on the Effective Date, the Debtors shall transfer and shall be deemed to transfer to the GUC Claims Trust all of their rights, title and interest in and to all of the GUC Claims

Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the GUC Claims Trust Assets shall automatically vest in the GUC Claims Trust free and clear of all Claims and Liens, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax. The GUC Claims Trustee shall be the exclusive administrator of the assets of the GUC Claims Trust for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representatives of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, solely for purposes of carrying out the GUC Claims Trustee's duties. The GUC Claims Trust shall be administered by the GUC Claims Trustee. The powers, rights, and responsibilities of the GUC Claims Trustee shall include the authority and responsibility to, among other things, take the actions set forth in the Plan and shall be set forth in the GUC Claims Trust Agreement. The GUC Claims Trustee shall hold and distribute the GUC Claims Trust Assets in accordance with the provisions of the Plan and the GUC Claims Trust Agreement. After the Effective Date, the Debtors and the Reorganized Debtors shall have no interest in the GUC Claims Trust Assets except as set forth herein or the GUC Claims Trust Agreement.

(b)     ***GUC Claims Trustee and GUC Claims Trust Agreement***. The GUC Claims Trustee will, among other things, administer the GUC Claims Trust Assets and will be the Estates' representative with respect to the settlement, release, allowance, disallowance, or compromise of GUC Claims in accordance with the Plan and the Bankruptcy Code. The GUC Claims Trust Agreement generally will provide for, among other things: (i) the transfer of the GUC Claims Trust Assets to the GUC Claims Trust; (ii) the payment of certain reasonable expenses of the GUC Claims Trust from the GUC Claims Trust Assets; and (iii) distributions to holders of Allowed GUC Claims who are GUC Claims Trust Beneficiaries, as provided herein and in the GUC Claims Trust Agreement. On and after the Effective Date, the GUC Claims Trustee shall be responsible for all decisions and duties with respect to the GUC Claims Trust and the GUC Claims Trust Assets, except as otherwise provided in the GUC Claims Trust Agreement.

(c)     ***Cooperation of the Reorganized Debtors***. The Debtors or Reorganized Debtors, as applicable, upon reasonable notice, shall reasonably cooperate with the GUC Claims Trustee in the administration of the GUC Claims Trust, including by providing reasonable access to pertinent documents, including books and records, to the extent the Debtors or Reorganized Debtors, as applicable, have such information or documents, to the GUC Claims Trustee sufficient to enable the GUC Claims Trustee to perform its duties hereunder. The Debtors and Reorganized Debtors, as applicable, shall reasonably cooperate with the GUC Claims Trustee in the administration of the GUC Claims Trust, including by providing reasonable access to documents and current officers and directors with respect to contesting, settling, compromising, reconciling, and objecting to GUC Claims; provided that, in each case, the GUC Claims Trustee agrees upon request to reimburse the Reorganized Debtors for reasonable out-of-pocket expenses for preservation of documents by the Reorganized Debtors, copying, or similar expenses. The collection, review by the Reorganized Debtors, and preservation of documents requested by the GUC Claims Trustee shall be at the expense of the GUC Claims Trustee.

Any audit firm used to audit the financial statements of the Reorganized Debtors or to review the calculation of Theater Level Cash Flow must be reasonably acceptable to the GUC Claims Trustee.

The Reorganized Debtors shall provide quarterly financial statements within 45 days of each quarter end, including a calculation of Theater Level Cash Flow to the GUC Claims Trustee for the term of the TLCF Note and provide audited financial statements when available. The Reorganized Debtors agree to timely provide all reasonable information and support requested by the GUC Claims Trustee or his professionals related to Theater Level Cash Flow calculations or projections, or to an audit firm if one is so appointed by the GUC Claims Trustee, for the term of the TLCF Note.

(d)     *Preservation of Privilege*.  The Debtors or Reorganized Debtors, as applicable, and the GUC Claims Trust shall be deemed to be working in common interest whereby the Debtors will be able to share documents, information or communications (whether written or oral) relating to GUC Claims, subject to a common interest privilege.  The GUC Claims Trust shall seek to preserve and protect all applicable privileges attaching to any such documents, information, or communications.  The GUC Claims Trustee's receipt of such documents, information or communications shall not constitute a waiver of any privilege.  All privileges shall remain in the control of the Debtors or Reorganized Debtors, as applicable, and the Debtors or Reorganized Debtors, as applicable, retain the exclusive right to waive their own privileges.

(f)     *GUC Claims Trust Fees and Expenses*.  From and after the Effective Date, the GUC Claims Trustee, on behalf of the GUC Claims Trust, shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay using the GUC Claims Trust Assets the reasonable expenses (including any taxes imposed on or payable by the GUC Claims Trust or in respect of the GUC Claims Trust Assets and professional fees) incurred by the GUC Claims Trust and any professionals retained by the GUC Claims Trust and any additional amount determined necessary by the GUC Claims Trustee to adequately reserve for the operating expenses of the GUC Claims Trust from the GUC Claims Trust Assets.  The GUC Claims Trustee is authorized to allocate such expenses to, and pay them from, the GUC Claims Trust Assets, as the GUC Claims Trustee may determine in good faith is fair (such as based upon the GUC Claims Trustee's good faith determination of the nature or purpose of the fee or expense, the relative amount of GUC Claims, or such other matters as the GUC Claims Trustee deems relevant) and in accordance with the GUC Claims Trust Agreement.

(g)     *Tax Treatment*.  In furtherance of the GUC Claims Trust, (i) the GUC Claims Trust is intended to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code to the holders of GUC Claims, consistent with the terms of the Plan; (ii) the sole purpose of the GUC Claims Trust shall be the liquidation and distribution of the GUC Claims Trust Assets in accordance with Treasury Regulation section 301.7701-4(d), including the resolution of Other General Unsecured Claims in accordance with this Plan, with no objective to continue or engage in the conduct of a trade or business; (iii) all parties (including, without limitation, the Debtors, the Reorganized Debtors, holders of Allowed GUC Claims receiving interests in the GUC Claims Trust, and the GUC Claims Trustee) shall report consistently with such treatment; (iv) all parties (including the Debtors, the Reorganized Debtors, holders of Allowed GUC Claims receiving interests in the GUC Claims Trust, and the GUC Claims Trustee) shall report consistently with the valuation of the GUC Claims Trust Assets transferred to the GUC Claims Trust as determined by the GUC Claims Trustee (or its designee); (v) the GUC Claims Trustee shall be responsible for filing all applicable tax returns for the GUC Claims Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a); and (vi) the GUC Claims Trustee shall annually send to each holder of an interest in the GUC Claims Trust a separate statement regarding the receipts and expenditures of the trust as relevant for U.S. federal income tax purposes.  In conformity with Revenue Procedure 94-45, all parties (including, without limitation, the Debtors, the GUC Claims Trustee and GUC Claims Trust Beneficiaries) will be required to treat the transfer of the GUC Claims Trust Assets to the GUC Claims Trust, for all purposes of the Code, as (1) a transfer of the GUC Claims Trust Assets (subject to any obligations relating to those assets) directly to the GUC Claims Trust Beneficiaries (other than to the extent any GUC Claims Trust Assets are allocable to Disputed Claims), followed by (2) the transfer by such beneficiaries to the GUC Claims Trust of GUC Claims Trust Assets in exchange for GUC Claims Trust Interests.  For all U.S. federal income tax purposes, all parties must treat the GUC Claims Trust as a grantor trust of which holders of Claims who become GUC Claims Trust Beneficiaries (as determined for U.S. federal income tax purposes) are the owners and grantors.  Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including

the receipt by the GUC Claims Trustee of a private letter ruling if the GUC Claims Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the GUC Claims Trustee), the GUC Claims Trustee may timely elect to (i) treat any portion of the GUC Claims Trust allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections) and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including the Debtors, the Reorganized Debtors, holders of Allowed GUC Claims receiving interests in the GUC Claims Trust, and the GUC Claims Trustee) shall report for United States federal, state, and local income tax purposes consistently with the foregoing. The GUC Claims Trustee may request an expedited determination of taxes of the GUC Claims Trust, including any reserve for Disputed Claims, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the GUC Claims Trust for all taxable periods through the dissolution of the GUC Claims Trust.

(h)      **Non-Transferability of GUC Claims Trust Interests**. Any and all GUC Claims Trust Interests shall be non-transferable other than if transferred by will, intestate succession, or otherwise by operation of law. In addition, any and all GUC Claims Trust Interests will not constitute "securities" and will not be registered pursuant to the Securities Act or any applicable state or local securities law. However, if it should be determined that any such interests constitute "securities," the exemption provisions of Section 1145 of the Bankruptcy Code will be satisfied and the offer, issuance and distribution under the Plan of the GUC Claims Trust Interests will be exempt from registration under the Securities Act and all applicable state and local securities laws and regulations.

(i)      **Dissolution of the GUC Claims Trust**. The GUC Claims Trustee and GUC Claims Trust shall be discharged or dissolved, as the case may be, at such time as all distributions required to be made by the GUC Claims Trustee under the Plan have been made.

(j)      **Indemnification and Limitation of Liability**. The GUC Claims Trustee and each of its respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, real estate brokers, transfer agents, independent contractors, managers, members, officers, partners, predecessors, principals, professional persons, representatives, affiliate, employer and successors (each, an "Indemnified Party") shall be indemnified for, and defended and held harmless against, by the GUC Claims Trust and solely from the GUC Claims Trust Assets, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) actually incurred without gross negligence, willful misconduct, or fraud on the part of the applicable Indemnified Party (which gross negligence, willful misconduct, or fraud, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or the GUC Claims Trust Agreement, as applicable if the applicable Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the GUC Claims Trust or its beneficiaries. An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, willful misconduct, or fraud. The amounts necessary for the indemnification provided in this section (including, but not limited to, any costs and expenses incurred in enforcing the right of indemnification in this section) shall be paid out of the GUC Claims Trust Assets. The GUC Claims Trustee shall not be personally liable for the payment of any GUC Claims Trust expense or claim or other liability of the GUC Claims Trust, and no Person shall look to the GUC Claims Trustee personally for the payment of any such expense or liability. The indemnification provided in this section shall survive the death, dissolution, incapacity, resignation or removal of the GUC Claims Trustee, Indemnified Party or the

termination of the GUC Claims Trust, and shall inure to the benefit of each Indemnified Party's heirs and assigns.

# ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, any Executory Contract or Unexpired Lease of the Debtors is deemed to be an Assumed Executory Contract or Unexpired Lease, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that: (1) previously were assumed, assumed and assigned, or rejected by the Debtors; (2) are identified on the Rejected Executory Contract and Unexpired Lease List; or (3) are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute a court order approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan, the Rejected Executory Contract and Unexpired Lease List, or the Assumed Executory Contract and Unexpired Lease List pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.  Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A or by any order of the Bankruptcy Court, which has not been assigned to a third party before the Confirmation Date, shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms are modified by the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption or rejection under applicable federal law.  Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Rejected Executory Contract and Unexpired Lease List and the Assumed Executory Contract and Unexpired Lease List at any time through and including the Effective Date.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed within thirty (30) days after the later of:  (1) the Effective Date; and (2) the effective date of such rejection as established by Court Order if later than the Effective Date.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, Reorganized Debtors, the Estates, or their property without the need for any objection by the Debtors or the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as GUC Claims and shall be treated in accordance with the Plan, unless a different security or priority is otherwise asserted in such Proof of Claim and Allowed in accordance with Article VII of the Plan.

*C.*     *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Any monetary defaults under each Assumed Executory Contract or Unexpired Lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, or as soon as reasonably practicable thereafter, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. To the extent the Plan implements a Sale Transaction, the Purchaser shall pay the Cure Costs associated with each Assumed Executory Contract or Unexpired Lease. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

Any objection by a contract or lease counterparty to a proposed assumption (including, for purposes of the Plan, assumption and assignment) of an Executory Contract or Unexpired Lease or the related cure cost (including as set forth on the Assumed Executory Contract or Unexpired Lease List) must be Filed, served, and actually received by the Debtors in accordance with the Disclosure Statement Order or other applicable Final Order of the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have consented to such assumption and the proposed cure amount. For the avoidance of doubt, to the extent an Executory Contract or Unexpired Lease proposed to be assumed is not listed as having a related cure cost, any counterparty to such Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption will be deemed to have consented to such assumption and deemed to release any Claim or Cause of Action for any monetary defaults, including any cure payment, under such Executory Contract or Unexpired Lease.

For the avoidance of doubt, the Debtors or the Reorganized Debtors, as applicable, may add any Executory Contract or Unexpired Lease proposed to be assumed to the Rejected Executory Contracts and Unexpired Lease List in accordance with the time limits provided by the Plan for any reason, including if the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable cure notice or the Plan, in which case such Executory Contract or Unexpired Lease is deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption. Any Proofs of Claim Filed with respect to an Assumed Executory Contract or Unexpired Lease shall be deemed Disallowed, without further notice to or action, order, or approval of the Bankruptcy Court.

*D.*     *Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed by the Executory Contract or Unexpired Lease counterparty or counterparties to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases.

E.     *Indemnification Obligations.*

The Debtors and the Reorganized Debtors shall assume the Indemnification Obligations for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals, advisors, and agents of the Debtors, to the extent consistent with applicable law, and such Indemnification Obligations shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose.  Notwithstanding the foregoing, nothing shall impair the ability of the Reorganized Debtors to modify Indemnification Obligations (whether in the bylaws, certificates or incorporate or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, employment contracts, or otherwise) arising after the Effective Date; *provided* that none of the Reorganized Debtors shall amend or restate any of the New Organizational Documents before the Effective Date to terminate or adversely affect any of the Reorganized Debtors' Indemnification Obligations.  For the avoidance of doubt, nothing in this paragraph shall affect the assumption of any Indemnification Obligations arising under any applicable insurance policies.

F.     *Insurance Policies.*

Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, any other document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases), (i) on the Effective Date each of the Debtors' Insurance Policies shall be deemed assumed by the applicable Reorganized Debtor pursuant to sections 105 and 365 of the Bankruptcy Code as though listed on the Assumed Executory Contract and Unexpired Lease List and the Reorganized Debtors shall become and remain jointly and severally liable in full for all of the Debtors' obligations under the Insurance Policies, regardless of whether such obligations arise before or after the Effective Date, without the requirement or need for any Insurer to File a Proof of Claim, an Administrative Claim, a Cure Claim or to object to any cure amount; (ii) nothing alters, modifies or otherwise amends the terms and conditions of (or the coverage provided by) any of the Insurance Policies; (iii) such Insurance Policies shall not be impaired in any way by the Plan or Confirmation Order, but will remain valid and enforceable in accordance with their terms and applicable non-bankruptcy law; and (iv) if and to the extent applicable, the automatic stay of Bankruptcy Code section 362(a) and the injunction set forth in Article VIII.F of the Plan, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (a) claimants with valid workers' compensation claims or with valid direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims; (b) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (1) workers' compensation claims, (2) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay or the injunction set forth in Article VIII.F of the Plan to proceed with its claim, and (3) all costs in relation to each of the foregoing; and (c) the Insurers to cancel any Insurance Policies, and take other actions relating thereto, to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the Insurance Policies.

G.     *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges,

immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or are rejected or repudiated under the Plan.

Unless otherwise provided herein or in the applicable Executory Contract or Unexpired Lease (as may have been amended, modified, supplemented, or restated), modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

H.      *Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumed Executory Contract and Unexpired Lease List or the Rejected Executory Contract and Unexpired Lease List, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Debtors or the Reorganized Debtors has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

I.      *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur with respect to a Debtor, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases with respect to such Debtor pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

J.      *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Assumed Executory Contracts or Unexpired Leases, will be performed by the applicable Debtor or the applicable Reorganized Debtor that is party thereto in the ordinary course of their business. Accordingly, any such contracts and leases (including any Assumed Executory Contracts or Unexpired Leases) that have not been rejected as of the date of the Confirmation Date shall survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Distribution Date (or if a Claim is not an Allowed Claim on the Distribution Date, on the date that such Claim or Interest becomes an Allowed Claim), each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for such Allowed Claim in accordance with its priority and Allowed amount. No Holder of a Claim shall recover as a distribution under the Plan more than 100 percent of the Allowed amount of such Claim.

If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan.

To the extent any distributions made in accordance with the Plan are subject to disgorgement to the Reorganized Debtors or the GUC Claims Trust, as applicable, the Reorganized Debtors or the GUC Claims Trust, as applicable, shall effectuate the distribution of such disgorged distribution to the Holders of Allowed Claims entitled to such distributions in accordance with the Plan as soon as reasonably practicable. For the avoidance of doubt, to the extent disgorgement of a distribution made to a Holder of a Claim pursuant to the Plan is required, such Holder shall be required to disgorge any distribution but shall not be required to remit interest on such distribution.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

B. *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1. Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on such Distribution Record Date.

2. Delivery of Distributions.

Except as otherwise provided herein, the Reorganized Debtors or the GUC Claims Trust, as applicable, shall be authorized to make distributions to Holders of Allowed Claims and Allowed Interests as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided* that the Distribution Record Date shall not apply to publicly-traded Securities. The manner of such distributions shall be determined at the discretion of the Reorganized Debtors, and the address for each Holder of an Allowed Claim or Allowed Interest shall be deemed to be the address set forth in any Proof of Claim or Interest Filed by that Holder.

3. Delivery of Distributions to Holders of Allowed Claims.

The Debtors and the Reorganized Debtors or the GUC Claims Trust, as applicable, will, in their reasonable discretion, determine the method for a timely distribution of all distributions to Holders of Allowed Claims, as applicable, pursuant to the Plan.

4. Delivery of Distributions to Holders of Syndicated Bank Loan Claims.

Notwithstanding anything to the contrary in this Plan, all distributions on account of Syndicated Bank Loan Claims shall be made by wire to the Syndicated Bank Loan Agent, who shall be deemed to be the Holder of such Syndicated Bank Loan Claims, as applicable, for purposes of distributions to be made hereunder. As soon as practicable following compliance with the requirements set forth in this Article VI, the Syndicated Bank Loan Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of the Holders of the Syndicated Bank Loan Claims as reflected on the Syndicated Bank Loan Agent's records at the time in accordance with the terms of the Syndicated Bank Loan Credit Agreement, subject to any modifications to such distributions in accordance with the terms of this Plan; *provided, however*, that the Syndicated Bank Loan Agent shall retain all rights as administrative agent under the Syndicated Bank Loan Credit Agreement in connection with the delivery of distributions to Syndicated Bank Loan Lenders. Notwithstanding anything in the Plan to the contrary, and without limiting the

release provisions of the Plan, the Syndicated Bank Loan Agent shall not have any liability to any person with respect to distributions made or directed to be made by the Syndicated Bank Loan Agent.

> 5. Minimum Distribution.

No Cash payment of less than $50 shall be made to a Holder of an Allowed Claim on account of such Allowed Claim.

> 6. Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Reorganized Debtors or the GUC Claims Trust, as applicable, have determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety days from the date such distribution is returned as undeliverable. After such date, all unclaimed property or interests in property shall revert to the applicable Reorganized Debtor(s) or the GUC Claims Trust, as applicable, automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and any claim of any Holder to such property shall be fully discharged, released, and forever barred.

For the avoidance of doubt, neither the Reorganized Debtors nor the GUC Claims Trust and their respective agents and attorneys are under any duty to take any action to attempt to locate any Claim Holder.

C.    *Special Rules for Distributions to Holders of Disputed Claims.*

Except as otherwise provided in the Plan, agreed to by the Debtors or the Reorganized Debtors, or the GUC Claims Trust, as applicable, or set forth in an order of the Bankruptcy Court: (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order; *provided* that if a portion of a Claim is not Disputed, the Debtors or the Reorganized Debtors or the GUC Claims Trust, as applicable, may make a partial distribution based on such portion of such Claim that is not Disputed; and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order or the Claims have been Allowed or Disallowed. Any distributions arising from property distributed to Holders of Allowed Claims, as applicable, in a Class and paid to such Holders under the Plan shall also be paid, in the applicable amounts, to any Holder of a Disputed Claim, as applicable, in such Class that becomes an Allowed Claim after the date or dates that such dividends or other distributions were earlier paid to Holders of Allowed Claims in such Class.

D.    *Manner of Payment.*

Unless otherwise set forth herein, all distributions of New Common Stock under the Plan to the Purchaser shall be made by the Debtors or the Reorganized Debtors. At the option of the Debtors and the Reorganized Debtors, or the GUC Claims Trust, as applicable, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements. For the avoidance of doubt, to the extent the Plan implements a Sale Transaction, the Purchaser shall pay the Cure Costs associated with each Assumed Executory Contract or Unexpired Lease.

E.    *Exemption from Securities Act Registration Requirements*. The offering, issuance, and distribution of the New Common Stock pursuant to the Plan will be exempt from the registration requirements of section 5 of the Securities Act pursuant to section 4(a)(2) of the Securities Act, or any other available exemption from registration under the Securities Act, as applicable. Section 4(a)(2) of the Securities Act exempts transactions not involving a public offering, and section 506 of Regulation D of the Securities Act provides a safe harbor under section 4(a)(2) for transactions that meet certain requirements.  In reliance upon these exemptions, the offer, issuance, and distribution of New Common Stock pursuant to the Plan will not be registered under the Securities Act or any applicable state "Blue Sky" laws, and the New Common Stock issued pursuant to the Plan will be considered "restricted securities" and may not be transferred, encumbered, or otherwise disposed of in the absence of such registration or an exemption therefrom under the Securities Act or under such laws and regulations thereunder.  The New Common Stock issued under the Plan will bear a legend relating to the transfer restrictions applicable thereto.

F.    *Compliance with Tax Requirements.*

In connection with the Plan, as applicable, the Debtors, the Reorganized Debtors, and the GUC Claims Trust, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit with respect to distributions pursuant to the Plan.  Notwithstanding any provision herein to the contrary, the Debtors, the Reorganized Debtors, or the GUC Claims Trust, as applicable, shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, and establishing any other mechanisms they believe are reasonable and appropriate to comply with such requirements.  The Debtors, the Reorganized Debtors, and the GUC Claims Trust, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.  The Reorganized Debtors shall not have any duty to obtain an executed Internal Revenue Service Form W-9 (or other applicable tax form) from any Claim Holder.

The GUC Claims Trust shall not be required to make distributions on any Allowed GUC Claim if the holder thereof has not provided all documentation, that in the GUC Claims Trustee's reasonable business judgment, is necessary to determine that all tax withholding and reporting requirements for such Allowed GUC Claim.  To the extent such documentation is not provided within forty-five (45) days of written request, the distribution on such Allowed GUC Claim shall be deemed disallowed and expunged in their entirety and the funds shall become GUC Claim Trust Assets and redistributed to the other holders of Allowed GUC Claims in accordance with the terms of this Plan.

G.    *No Postpetition or Default Interest on Claims.*

Notwithstanding any documents that govern the Debtors' prepetition funded indebtedness or Proofs of Claim to the contrary, (1) postpetition and/or default interest shall not accrue or be paid on any Claims and (2) no Holder of a Claim shall be entitled to:  (a) interest accruing on or after the Petition Date on any such Claim; or (b) interest at the contract default rate.  For the avoidance of doubt, no interest shall accrue or be paid as a result of a delay, if any, between the Confirmation Date and the date a Holder of an Allowed Claim receives a distribution pursuant to the Plan.

H.    *Setoffs and Recoupment.*

The Debtors or the Reorganized Debtors or the GUC Claims Trust, as applicable, may, but shall not be required to, setoff against or recoup any payments or distributions to be made pursuant to the Plan

in respect of any Claims of any nature whatsoever that the Debtors may have against the Holder of such Claim unless waived pursuant to the terms of this Plan, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors or the GUC Claims Trust, as applicable, of any such right it may have against the Holder of such Claim.

I.    *No Double Payment of Claims.*

To the extent that a Claim is Allowed against more than one Debtor's Estate, there shall be only a single recovery on account of that Allowed Claim, but the Holder of an Allowed Claim (other than GUC Claims) against more than one Debtor may recover distributions from all co-obligor Debtors' Estates until the Holder has received payment in full on the Allowed Claims. No Holder of an Allowed Claim shall be entitled to receive as a distribution under the Plan more than payment in full of its Allowed Claim, and each Claim shall be administered and treated in the manner provided by the Plan only until payment in full on that Allowed Claim.

J.    *Claims Paid or Payable by Third Parties.*

1.    Claims Paid by Third Parties.

Any Claim will be deemed reduced and/or Disallowed, as applicable, without a Claim objection having to be Filed by the Debtors, the Reorganized Debtors or the GUC Claims Trust (as applicable), and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim (i) receives payment in part or in full (as applicable) on account of such Claim from a person or entity that is not a Debtor or Reorganized Debtor and (ii) receives a written notice of such proposed reduction or disallowance from the Debtors, the Reorganized Debtors or GUC Claims Trust (as applicable), in accordance with the provisions of this paragraph, and does not object in writing to the proposed reduction or disallowance set forth in such notice within twenty (21) days from service of such notice. To the extent a Holder of a Claim receives, on account of such Claim, both a distribution under the Plan and a payment from a person or entity that is not a Debtor or Reorganized Debtor on account of such Claim, the Debtors, Reorganized Debtors or GUC Claims Trust (as applicable) may serve a notice of such duplicative payment and such Holder must, within 21 days of receipt thereof, either (i) repay or return the distribution received under the Plan to the Reorganized Debtors or GUC Claims Trust, as applicable, but only to the extent that the Holder of such Claim received payment on account of such Claim in an amount greater than the total amount that the holder of such Claim was owed on account of such Claim (for purposes of this provision, the total amount owed on account of such Claim shall be without regard to any limitations in the Bankruptcy Code and/or statutory cap, such as, for example, the cap provided for under section 502(b)(6) of the Bankruptcy Code), or (ii) file and serve on the Reorganized Debtors and the GUC Claims Trust an objection setting forth the basis upon which the Holder of such Claim should not be required to return the amounts set forth in the notice received by such Holder. The failure of such Holder of a Claim to either timely object or to timely repay or return such distribution received under the Plan shall result in the Holder owing the applicable Reorganized Debtor or GUC Claims Trust annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 21-day period specified above until the amount is repaid (or in the case of an objection to such notice, after 21-days from the date that the objection is resolved by agreement or final order). Notwithstanding anything herein to the contrary, (i) in recognition of the settlement contained herein concerning the Syndicated Bank Loan Claims, this Section VI.J shall not apply the Holders of the Syndicated Bank Loan Claims and (ii) this Section VI.J shall not limit, reduce, alter or otherwise modify in any way any obligations of any non-Debtor guarantor, including, without limitation, with respect to any guarantees or payment assurances arising under or relating to Executory Contracts and Unexpired Leases, whether or not rejected prior to the Confirmation Date.

2. Claims Payable by Third Parties.

Except as otherwise provided for in the Plan, no distributions under the Plan shall be made on account of a Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such a Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more of the Debtors' Insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such Insurers' agreement, the applicable portion of such Claim may be Disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3. Applicability of Insurance Policies.

Except as otherwise provided in the Plan, any distributions of insurance proceeds to Holders of Allowed Claims covered by Insurance Policies shall be in accordance with the provisions of any applicable Insurance Policy. Except as otherwise provided in the Plan, the Plan shall not otherwise constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including Insurers under any Insurance Policies, nor shall anything contained herein (a) constitute or be deemed a waiver by such Insurers of any rights or defenses, including coverage defenses, held by such Insurers, or (b) establish, determine, or otherwise imply any liability or obligation, including any coverage obligation, of any Insurer.

K. *Allocation of Distributions Between Principal and Interest.*

For distributions in respect of Allowed Claims, to the extent that any such Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED, AND DISPUTED CLAIMS

A. *Allowance of Claims.*

Except as otherwise set forth in the Plan, after the Effective Date, the Reorganized Debtors or the GUC Claims Trust, as applicable, shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim immediately before the Effective Date. Except as specifically provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed in accordance with the Plan.

B. *Claims Administration Responsibilities.*

After the Effective Date, (a) the Reorganized Debtors shall have the sole authority to File, withdraw, or litigate to judgment, objections to all Claims other than GUC Claims and the GUC Claims Trust shall have the sole authority to File, withdraw, or litigate to judgment, objections to all GUC Claims; and (b) the applicable Reorganized Debtor(s) and/or the GUC Claims Trust shall have the authority to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) the applicable Reorganized Debtor(s) and/or the GUC Claims Trust shall have the authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.    *Adjustment to Claims Without Objection.*

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted on the Claims Register by the Reorganized Debtors without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

D.    *Time to File Objections to Claims or Interests.*

Any objections or challenges to Claims or Interests shall be Filed on or before the applicable Claims Objection Deadline.

E.    *Estimation of Claims.*

Before or after the Effective Date, the Debtors or the Reorganized Debtors or the GUC Claims Trust may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. § 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.  Notwithstanding any provision to the contrary in the Plan, a Claim that has been Disallowed or expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor or GUC Claims Trustee may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated.  Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

F.    *Disputed and Contingent Claims Reserve.*

On or after the Effective Date, the Debtors and the Reorganized Debtors shall establish one or more reserves for Claims that are contingent or have not yet been Allowed, in an amount or amounts as reasonably determined by the applicable Debtors and Reorganized Debtors, consistent with the Proof of Claim Filed by the applicable Holder of such Disputed Claim.

Any assets held in any such reserve shall be subject to the tax rules that apply to "disputed ownership funds" under 26 C.F.R. 1.468B–9.  As such, such assets will be subject to entity-level taxation, and the Debtors and Reorganized Debtors shall be required to comply with the relevant rules.

G.    *Disallowance of Claims.*

Any Claims held by Entities from which the Bankruptcy Court has determined that property is recoverable under section 542, 543, 547, 548, 549, 550, or 553 of the Bankruptcy Code or that is a

transferee of a transfer that the Bankruptcy Court has determined is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and the full amount of such obligation to the Debtors has been paid or turned over in full; ***provided, however***, that the foregoing provision shall not apply to Holders of GUC Claims and Syndicated Bank Loan Claims who shall receive the Avoidance Action Waiver effective upon the Effective Date of the Plan.

All Proofs of Claim Filed on account of an Indemnification Obligation shall be deemed satisfied and Disallowed as of the Effective Date to the extent such Indemnification Obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court. All Proofs of Claim Filed on account of an employee benefit shall be deemed satisfied and Disallowed as of the Effective Date to the extent the Reorganized Debtors elect to honor such employee benefit, without any further notice to or action, order, or approval of the Bankruptcy Court.

Except as provided herein or otherwise agreed to by the Reorganized Debtors or the GUC Claims Trust, as applicable, in their sole discretion, any and all Proofs of Claim Filed after the Bar Date shall be deemed Disallowed as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.

*H.* *Amendments to Proofs of Claim.*

On or after the Effective Date, a Proof of Claim or Interest may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors or the GUC Claims Trust, as applicable, and any such new or amended Proof of Claim or Interest Filed that is not so authorized before it is Filed shall be deemed Disallowed in full without any further action.

*I.* *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever Disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless before the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

*J.* *No Distributions Pending Allowance.*

Except as otherwise set forth herein, if an objection to a Claim or portion thereof is Filed as set forth in Article VII.C of the Plan, no payment or distribution provided under the Plan shall be made on account of such Disputed Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

K.      *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date a Disputed Claim becomes Allowed, the Reorganized Debtors shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan, as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim unless required under such order or judgment of the Bankruptcy Court.

## ARTICLE VIII.
## RELEASE, INJUNCTION, EXCULPATION, AND RELATED PROVISIONS

A.      *Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors, if applicable), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by the Debtors or Affiliates with respect to any Claim or Interest (other than any default or "event of default" under the Syndicated Bank Loan Credit Agreement or any related documentation) that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date.  The entry of the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.  For the avoidance of doubt, from and after the Effective Date, any Claim for adequate protection (as required by the Bankruptcy Code) of any Secured Claim for post-Effective Date diminution in value shall be deemed satisfied, discharged, and released, effective as of the Effective Date, and neither the Debtors nor the Reorganized Debtors shall have any obligation to provide such protection.

B.      **Release of Liens.**

**Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, and except with regard to Secured Claims that the Debtors elect to Reinstate in accordance with Article III.B.2(b) of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns (including**

45

Reorganized Cinemex, if applicable), in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or the Reorganized Debtors, as applicable. The Reorganized Debtors are authorized to execute any document or make any filing necessary to further document the release of any lien, security interest or similar encumbrance.

C. **Releases by the Debtors.**

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates, from any and all claims and Causes of Action whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the day-to-day management of the Debtors, any decisions made or not made by the Debtors' board members, and/or the ownership or operation of the Debtors), the Reorganized Debtors (including the formation thereof, if applicable), the Debtors' prepetition activities (including any intercompany transactions), the DIP Orders (and any payments or transfers in connection therewith), the New Organizational Documents, any preference or avoidance claims pursuant to sections 544, 547, 548, or 549 of the Bankruptcy Code, the settlements and/or treatment of Claims and Interests contemplated by the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including the reliance by any Released Party on the Plan or the Confirmation Order) created or entered into in connection with the Disclosure Statement, the Plan, the Sale Transaction, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan (if any), or the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the releases described herein are: (1) in exchange for the good and valuable consideration provided by or on behalf of the Released Parties; (2) a good faith settlement and compromise of the Claims and Interests released herein; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any claim or Cause of Action released pursuant to the releases described herein or asserting (directly or indirectly) or trading any claim or Cause of Action released pursuant to the releases described herein against any Released Party at any time.

D. **Releases by Holders of Claims and Interests.**

As of the Effective Date, except to enforce distributions under the Plan, each Releasing Party is deemed to have released and discharged each Released Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf

of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the day-to-day management of the Debtors, any decisions made or not made by the Debtors' board members, and/or the ownership or operation of the Debtors), Reorganized Cinemex (including the formation thereof), the Debtors' prepetition operations and activities, the New Organizational Documents, the DIP Orders (and any payments or transfers in connection therewith), the Sale Transaction, the settlements contemplated by the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including the reliance by any Released Party on the Plan or the Confirmation Order) created or entered into in connection with the Disclosure Statement, the Plan, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan (if any), or the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

In order to avoid being deemed a Releasing Creditor and granting the releases set forth in Article VIII of the Plan, a creditor casting a ballot for acceptance or rejection of the Plan must indicate its intent to opt out of the releases by checking the "OPT OUT" box on its Ballot. Parties that do not vote may opt out of these release by submission of an Opt Out Form in advance of the deadline for voting on the Plan. Creditors and other parties in interest who fail to take such action shall be deemed to have consented to the third-party release provision contained in Article VIII.D of the Plan.

Notwithstanding anything to the contrary in the foregoing or otherwise in the Plan, Plan Supplement or Confirmation Order, in no event shall any of the Syndicated Bank Loan Lenders or the Syndicated Bank Loan Agent (regardless of whether they have opted out of the releases or otherwise) be deemed to have released or discharged any claims, rights, defenses or Causes of Action they may have against Grupo Cinemex, Operadora De Cinemas, S.A. DE C.V. or any other non-Debtor Entity arising under or related to the Syndicated Bank Loan Credit Agreement and related documentation.

Notwithstanding anything to the contrary in the foregoing or otherwise in the Plan, Plan Supplement or Confirmation Order, in no event shall any Holder of a GUC Claim (regardless of whether they have opted out of the releases or otherwise) be deemed to have released or discharged any claims, rights, defenses or Causes of Action they may have against Grupo Cinemex, Operadora De Cinemas, S.A. DE C.V. or any other non-Debtor Entity arising under or related to any claim, right or defense, that such Holder of a GUC Claim may hold against such non-Debtor arising from or relating to any contractual obligations of such non-Debtor to a Holder of a GUC Claim including, without limitation, on account of a guaranty, surety, or payment assurances agreed to by such non-Debtor relating to any Executory Contracts or Unexpired Leases, whether or not rejected prior to the Confirmation Date.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that each release described herein is: (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise as set forth in the Plan; (5) in the best interests of the Debtors and their Estates; (5) fair, equitable, and reasonable; (6) given and

made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the releases described herein.

E.     **Exculpation.**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including the reliance by any Exculpated Party on the Plan or the Confirmation Order) created or entered into in connection with the Disclosure Statement, the Plan, the Sale transaction, the Filing of the Chapter 11 Cases, the negotiation, terms, or execution of any settlement agreements effectuated pursuant to Federal Rule of Bankruptcy Procedure 9019 in the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan (if any), or the distribution of property under the Plan, or any other related agreement in connection with the Plan, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct, or gross negligence.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  For the avoidance of doubt, nothing in this Section VIII.E shall be deemed to have released or exculpated either Grupo Cinemex, Operadora De Cinemas, S.A. DE C.V. or any other non-Debtor Entity from their obligations to satisfy any (i) Syndicated Bank Loan Claims arising under or related to the Syndicated Bank Loan Credit Agreement and related documentation; or (ii) claim, including, without limitation, any contractual obligations, held by a Holder of a Claim, for compliance with the terms of, and satisfaction of, guarantees or payment assurances, given in connection with, arising under or relating to any Executory Contracts and Unexpired Leases, whether or not rejected prior to the Confirmation Date.

F.     **Injunction.**

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have Held, Hold, or may Hold Claims or Interests that have been released pursuant to Article VIII.C or Article VIII.D of the Plan, shall be discharged pursuant to Article VIII.A of the Plan, or are subject to exculpation pursuant to Article VIII.E of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the GUC Claims Trust, the GUC Claims Trust Assets, the GUC Claims Trustee, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims

48

or interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; (5) asserting any claim relating to or arising from the Sale Transaction; and (6) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

G.      *Channeling Injunction.*

Except as otherwise specifically provided in the Plan, the Enjoined Parties shall be permanently restrained, and enjoined, with regard to the Claims set forth in this Article VIII.G (1)-(6) (collectively, the "Enjoined Claims") from ever:

1.      commencing, asserting, continuing, filing, conducting, or bringing, directly, indirectly, or derivatively, any Claim, demand, suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum), against any of the Released Parties, or their respective property, including the proceeds of such property, with regard to all matters arising out of or related to any involvement of any of the Released Parties whatsoever in transactions, acts, or events in any manner related to the Debtors and their predecessors, affiliates, successors, principals, directors, officers, and related entities;

2.      asserting, continuing, filing, conducting, or bringing, directly, indirectly, or derivatively, any Claim, demand, suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum), against any of the Released Parties, or their respective property, including the proceeds of such property that would result in the avoidance of allegedly fraudulent (actual or constructive) or preferential transfers from the Debtors to any of the Released Parties, regardless of whether such Released Party is the initial or subsequent transferee, and/or recovery of such allegedly fraudulent (actual or constructive) or preferential transfers from such Released Party;

3.      enforcing, levying, employing legal process (including proceedings supplementary), whether prejudgment or post-judgment, attaching, garnishing, sequestering, collecting, or otherwise recovering by any means or in any manner, any Claims against the Released Parties, or their respective property, including the proceeds of such property, with regard to all matters arising out of or related to any involvement of any of the Released Parties whatsoever in transactions, acts, or events in any manner related to the Debtors, and their predecessors, affiliates, successors, principals, directors, officers, and related entities;

4.      pursuing, aiding, or abetting any action brought by any person or entity seeking recovery, contribution and/or indemnity from any of the Released Parties, or their respective property, including the proceeds of such property, with regard to all matters arising out of or related to any involvement of any of the Released Parties whatsoever in transactions, acts, or events in any manner related to the Debtors and their predecessors, affiliates, successors, principals, directors, officers, and related entities;

5.      enforcing any terms set forth in any settlement agreement by and among any of the Released Parties and any of the Enjoined Parties that would resolve,

compromise, or settle Claims that would otherwise be enjoined by the channeling injunction set forth in this section; and

6.        pursuing any of the Enjoined Claims recited herein as they relate to any Claims against retained professionals including accountants and legal counsel as well as their agents and assigns of any of the Released Parties or against the GUC Claims Trust, the GUC Claims Trust Assets, the GUC Claims Trustee, or any of its agents or professionals.

The injunction described in this section and incorporated into the Confirmation Order shall be referred to as the "Channeling Injunction."

Notwithstanding anything herein to the contrary, or in the Plan Supplement or Confirmation Order, in no event shall anything in the Plan, the Plan Supplement or Confirmation Order, including, without limitation, the "Channeling Injunction," restrain or enjoin any of (i) the Syndicated Bank Loan Lenders or the Syndicated Bank Loan Agent from commencing, asserting, continuing, filing, conducting, or bringing any claims, rights, defenses or Causes of Action they may have against Grupo Cinemex, Operadora De Cinemas, S.A. DE C.V. or any other non-Debtor Entity arising from or related to the Syndicated Bank Loan Credit Agreement and related documentation or otherwise taking any enforcement action under the Syndicated Bank Loan Credit Agreement or related documentation against such Entities; or (ii) the Holders of Claims from commencing, asserting, continuing, filing, conducting, or bringing any claims, rights, causes or action, or defenses they may have against Grupo Cinemex, Operadora De Cinemas, S.A. DE C.V. or any other non-Debtor Entity arising under or related to any contractual obligation, including without limitation any guaranty, surety or payment assurances agreed to by such non-Debtors relating to Executory Contracts or Unexpired Leases, whether or not rejected prior to the Confirmation Date. The Bankruptcy Court shall expressly retain jurisdiction in enforcing, implementing and interpreting the scope of the Channeling Injunction.

H.        *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

I.        *Recoupment.*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Proof of Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

J.        *Binding Effect.*

On the Effective Date, except as otherwise provided herein to the contrary, and effective as of the Effective Date, the Plan will bind, and will be deemed binding upon, all Holders of Claims against and Interests in the Debtors, and such Holder's respective successors and assigns, to the maximum extent

permissible by law, notwithstanding whether or not such Holder (1) will receive any property or interest in property under the Plan, or (2) has filed a Proof of Claim or Interest in the Chapter 11 Cases, or (3) failed to vote to accept or reject the Plan or affirmatively voted to reject the Plan.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.     *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation that the following shall have been satisfied or waived pursuant to the provisions of Article IX.C of the Plan:

1.     the Bankruptcy Court shall have entered the Disclosure Statement Order and the Confirmation Order in a manner consistent in all material respects with the Plan and in a form (a) acceptable to the Purchaser in its reasonable discretion and (b) reasonably acceptable to the Committee and Syndicated Bank Loan Agent; and

2.     the Confirmation Order shall, among other things:

(a)     authorize the Debtors and the Reorganized Debtors, as applicable, to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

(b)     authorize the Debtors and the Reorganized Debtors, as applicable/necessary, to: (i) implement the Restructuring Transactions and take any and all actions necessary to effectuate the terms of the Stock Purchase Agreement; (ii) distribute the New Common Stock; and (iii) enter into any agreements, transactions, and sales of property, as set forth in the Plan Supplement with respect to the Debtors or the Reorganized Debtors, as applicable, including the GUC Claims Trust Agreement;

(c)     provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order in furtherance of, or in connection with, any transfers of property pursuant to the Plan, including any deeds, mortgages, security interest filings, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan shall not be subject to transfer or recording taxes or fees to the extent permissible under section 1146 of the Bankruptcy Code, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment;

(d)     authorize and approve the compromise and settlement set forth in the Plan; and

(e)     contain the release, injunction, and exculpation provisions contained in Article VIII herein.

*B.    Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C of the Plan:

1.    the Confirmation Order shall have become a Final Order;

2.    the Plan and the applicable documents included in the Plan Supplement, including any exhibits, schedules, documents, amendments, modifications, or supplements thereto, and inclusive of any amendments, modifications, or supplements made after the Confirmation Date but before the Effective Date, shall have been filed and be in form and substance reasonably satisfactory to the Committee;

3.    the New Organizational Documents with respect to the Reorganized Debtors shall be in full force and effect (with all conditions precedent thereto having been satisfied or waived), subject to any post-closing execution and delivery requirements provided for therein, and shall be in form and substance reasonably satisfactory to the Purchaser, the Committee and the Syndicated Bank Loan Agent;

4.    the Purchaser shall have deposited the Purchase Price into the Sale Proceeds Account;

5.    the Purchaser shall have funded the Cap-Ex Escrow;

6.    the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and the Restructuring Transactions, and shall have executed and delivered all documents related thereto;

7.    the GUC Claims Trust Agreement shall have been fully executed, the GUC Claims Trust Assets shall have been transferred to the GUC Claims Trust, and the GUC Claims Allocation shall have been funded to a bank account identified by the GUC Claims Trustee; and

8.    all Allowed Professional Fee Claims approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such Allowed Professional Fee Claims after the Effective Date have been placed in the Professional Fee Escrow Account pending approval of the Professional Fee Claims by the Bankruptcy Court and all fees and expenses payable pursuant to Article II of the Plan shall have been paid in full.

*C.    Waiver of Conditions.*

The conditions to Confirmation and Consummation set forth in this Article IX may be waived by the Debtors and/or Reorganized Debtors with the prior written consent of the Committee and the Syndicated Bank Loan Agent (which consent shall not be unreasonably withheld, delayed or conditioned), without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

*D.    Substantial Consummation.*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), with respect to any of the Debtors, shall be deemed to occur on the Effective Date with respect to such Debtor.

*E.      Effect of Failure of Conditions.*

If the Effective Date does not occur with respect to any of the Debtors, the Plan shall be null and void in all respects with respect to such Debtor, and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by or Claims against or Interests in such Debtors; (2) prejudice in any manner the rights of such Debtors, any Holders of a Claim or Interest, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by such Debtors, any Holders, or any other Entity in any respect.

# ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

*A.      Modification and Amendments.*

Subject to the limitations contained in the Plan, and on prior notice to and with the consent of the Committee and the Syndicated Bank Loan Agent (which consent shall not be unreasonably withheld, delayed or conditioned), the Debtors reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

*B.      Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

*C.      Revocation or Withdrawal of Plan.*

Following consultation with the Committee and the Purchaser, the Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date.  If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effectuated by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims;  or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

# ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters

arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code to the extent provided under applicable law, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or Unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or Unsecured status, priority, amount, or Allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V of the Plan, any Executory Contracts or Unexpired Leases to the Rejected Executory Contracts and Unexpired Lease List, or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

5.      adjudicate, decide, or resolve any and all matters related to the Causes of Action enumerated in the Schedule of Retained Causes of Action;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary to execute, implement, or consummate the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement, including injunctions or other actions as may be necessary to restrain interference by an Entity with Consummation or enforcement of the Plan;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      adjudicate, decide, or resolve any and all matters related to the Restructuring Transactions or the Plan;

10.     resolve any cases, controversies, suits, disputes, Causes of Action, or any other matters that may arise in connection with the Consummation, interpretation, or enforcement of the Plan, the Disclosure Statement, the Confirmation Order, the Restructuring Transactions, or any Entity's obligations incurred in connection with the foregoing, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, the Disclosure Statement, the Confirmation Order, or the Restructuring Transactions;

11.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary to implement such releases, injunctions, and other provisions;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action relating to the distribution or the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.J.1 of the Plan;

13.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by or assess damages against any Entity with regard to Consummation or enforcement of the Plan or the Restructuring Transactions;

14.     enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.     enter an order or decree concluding or closing the Chapter 11 Cases;

16.     adjudicate any and all disputes arising from or relating to distributions under the Plan or any of the transactions contemplated therein;

17.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code, including any request made under section 505 of the Bankruptcy Code for the expedited determination of any unpaid liability of a Debtor for any tax incurred during the administration of the Chapter 11 Cases, including any tax liability arising from or relating to the Restructuring Transactions, for tax periods ending after the Petition Date and through the closing of the Chapter 11 Cases;

20.     hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee benefit program, regardless of whether such termination occurred before or after the Effective Date;

21.     hear and determine all pre-Effective Date disputes involving the obligations or terms of the Cap-Ex Escrow Agreement;

22.     hear and determine all disputes involving the obligations or terms of the GUC Claims Trust Agreement;

23.     except as otherwise limited herein, recover all assets of the Debtors and property of the Estates, wherever located;

24.     enforce all orders previously entered by the Bankruptcy Court and resolve any issues not enumerated above related to any matters adjudicated in the Chapter 11 Cases; and

25.     hear any other matter not inconsistent with the Bankruptcy Code.

Notwithstanding the foregoing, the Bankruptcy Court shall retain non-exclusive jurisdiction to adjudicate, decide, or resolve any and all matters related to objections to Claims.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A. *Immediate Binding Effect.*

Subject to Article I.B of the Plan, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon, as applicable, the Debtors, the Reorganized Debtors, the Committee, any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, exculpations, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B. *Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or advisable to effectuate and further evidence the terms and conditions of the Plan. The Debtors, the Reorganized Debtors, and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C. *Dissolution of the Committee.*

On the Effective Date, the Committee shall dissolve and all members, employees, or agents thereof shall be released and discharged from all rights and duties arising from or related to the Chapter 11 Cases; *provided* that such official committee shall be deemed to remain in existence solely with respect to, and shall not be heard on any issue except, applications filed by the Professionals pursuant to sections 330 and 331 of the Bankruptcy Code. From and after the Effective Date, neither the Debtors, nor the Reorganized Debtors, nor their respective estates shall be responsible for paying any fees or expenses incurred after the Effective Date by the members of or advisors to the Committee.

D. *Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of the Judicial Code, including fees and expenses payable to the U.S. Trustee, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, will be paid by each of the applicable Reorganized Debtors for each quarter (including any fraction thereof) until the applicable Chapter 11 Case of such Reorganized Debtors is converted, dismissed, or closed, whichever occurs first. All such fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the applicable Reorganized Debtor shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee, until the earliest of the date on which the applicable Chapter 11 Case of the Reorganized Debtors is converted, dismissed, or closed.

E.    *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor, Settling Lender, or any other Entity with respect to the Holders of Claims or Interests prior to the Effective Date.

F.    *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, assign, Affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.    *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

1.    if to the Debtors, to:

Cinemex Holdings USA, Inc.,
175 South West 7th St., Suite 1108
Miami, FL 33130
Attention:  Luis Castelazo
Email: luis.castelazo@cmxcinemas.com

with copies (which shall not constitute notice) to:

Quinn Emanuel Urquhart & Sullivan, LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Attention:  Patricia Tomasco
Email: pattytomasco@quinnemanuel.com

–and–

Bast Amron LLP
One Southeast Third Avenue
Suite 1400
Miami, FL 33131
Attention: Jeffrey Bast
E-mail: jbast@bastamron.com

2.    if to the Committee, to:

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, DE 19801
Attention:  Robert J. Feinstein
              Bradford J, Sandler
Email: rfeinstein@pszjlaw.com
        bsandler@pszjlaw.com

Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Attention:  Paul Steven Singerman
              Brian Rich
Email:  singerman@bergersingerman.com
        brich@bergersingerman.com

After the Effective Date, the Reorganized Debtors shall have the authority to send a notice to Entities that request to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.      *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.      *Entire Agreement.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.      *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://cases.omniagentsolutions.com/Cinemex    or    the    Bankruptcy    Court's    website    at http://www.flsb.uscourts.gov/bankruptcy.

**K.** *Nonseverability of Plan Provisions.*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as applicable, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors and/or the Reorganized Debtors; and (3) nonseverable and mutually dependent.

**L.** *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors shall be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys shall be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors shall have any liability for the violation of any applicable law (including the Securities Act), rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

**M.** *Waiver or Estoppel.*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed before the Confirmation Date.

**N.** *Closing of Chapter 11 Cases.*

Upon the occurrence of the Effective Date, the Reorganized Debtors shall be permitted to close all of the Chapter 11 Cases except for the Chapter 11 Case of Cinemex Holdings, and all contested matters and adversary proceedings relating to each of the Debtors, including objections to Claims, shall be administered and heard in the Chapter 11 Case of Cinemex Holdings; *provided* that for purposes of sections 546 and 550 of the Bankruptcy Code, the Chapter 11 Cases shall be deemed to remain open until the Chapter 11 Case of Cinemex Holdings has been closed.

When all Disputed Claims have become Allowed or Disallowed and all remaining Cash has been distributed in accordance with the Plan, the Reorganized Debtors shall seek authority from the Bankruptcy Court to close the Chapter 11 Case of Cinemex Holdings in accordance with the Bankruptcy Code and the Bankruptcy Rules.

O.   *Creditor Default.*

On and after the Effective Date, any act or omission by a holder of a Claim or an Interest in contravention of the provisions of the Plan shall be deemed an event of default under the Plan. Upon an event of default, the Reorganized Debtors or the GUC Claims Trust, as applicable, may seek to hold the defaulting party in contempt of the Confirmation Order and shall be entitled to reasonable attorneys' fees and costs in remedying such default.  Upon the finding of such a default by a creditor, the Bankruptcy Court may: (a) designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (b) enforce the Plan by order of specific performance; (c) award judgment against such defaulting creditor in favor of the Reorganized Debtors or the GUC Claims Trust, as applicable, in an amount, including interest, to compensate the Reorganized Debtors or the GUC Claims Trust, as applicable, for the damages caused by such default; and (d) make such other order as may be equitable that does not materially alter the terms of the Plan.

[*Remainder of page intentionally left blank.*]

Dated: October 28, 2020

CINEMEX USA REAL ESTATE HOLDINGS,
INC., CINEMEX HOLDINGS USA, INC. and CB
THEATER EXPERIENCE LLC

*/s/ Luis Castelazo*

Prepared by:
QUINN EMANUEL URQUHART & SULLIVAN LLP
Patricia B. Tomasco (admitted pro hac vice)
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: 713-221-7000
Facsimile: 713-221-7100
Email: pattytomasco@quinnemanuel.com

–and–

Juan P. Morillo (FBN 135933)
1300 I Street, NW, Suite 900
Washington, D.C.  20005
Telephone: 202-538-8000
Facsimile: 202-538-8100
Email: juanmorillo@quinnemanuel.com

–and–

Eric D. Winston (admitted pro hac vice)
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: 203-443-3000
Facsimile: 203-443-3100
Email: ericwinston@quinnemanuel.com

–and–

BAST AMRON LLP
Jeffrey P. Bast (FBN 996343)
Brett M. Amron (FBN 148342)
One Southeast Third Avenue, Suite 1400
Sun Trust International Center
Miami, Florida 33131
Telephone: 305-379-7904
Facsimile: 305-379-7905
Email: jbast@bastamron.com  Email: bamron@bastamron.com

*Co-Counsel to the Debtors and Debtors in Possession*